# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY<br><br>                    Plaintiff<br><br>v.<br><br>BRIMAR TRANSIT, INC.<br><br>                    Defendant.<br>and<br><br>PITTSBURGH PUBLIC SCHOOL DISTRICT<br><br>                    Intervenor-Defendant | : : : : : : : : : : : : : : : : | Civil Action No. 2:18-cv-01129-NBF |

## NATIONAL LIABILITY & FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff, National Liability & Fire Insurance Company ("National"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings pursuant to FEDERAL RULES OF CIVIL PROCEDURE 9(c) and 12(c).  As explained more fully below, National is entitled to judgment on its complaint as a matter of law regarding defendant Brimar Transit, Inc. ("Brimar") and intervenor Pittsburgh Public School District's ("the School District") claims for insurance coverage.  The auto policy issued to Brimar plainly affords no coverage for the underlying lawsuit filed against these defendants.

## I.    INTRODUCTION

This action concerns defendants' claim that they are entitled to defense and indemnity under a policy of insurance National issued to Brimar, with regard to a 2018 lawsuit entitled *M.M., parent and natural guardian of K.M., a minor v. Pittsburgh Public School District and Brimar*

*Transit, Inc.*, Case No.: GD18-003257, pending in the Allegheny County Court of Common Pleas (the "Underlying Action"). The Underlying Action is based upon an alleged sexual assault of a minor student by a fellow student who was under the supervision of defendant, Brimar. *See* Third Amended Complaint of M.M., Exh. A to Plaintiff's Second Amended Complaint, Dkt. 46, ¶¶ 8, 14, 27-29, 45, 52-53.

The coverage grant contained in the business auto policy provides coverage only to the extent there was bodily injury "resulting from" the ownership, maintenance or use of a covered auto. Because the Underlying Action fails to allege injury resulting from the ownership, maintenance or use of a vehicle, no coverage exists for this claim. Furthermore, the policy of insurance issued to Brimar excludes claims arising from sexual assault or molestation. The Underlying Action seeks damages in connection with alleged sexual abuse and molestation and falls squarely within the above-referenced exclusion. Consequently, there is no coverage for the Underlying Action.

National seeks a declaration that it has no duty to defend or indemnify defendants for underlying claims arising from the alleged sexual assault of a minor who was in the care of Brimar's employee. National also seeks an order upholding National's contractual right to reimbursement of all defense costs (including attorney's fees) that it has and will have paid on behalf of Brimar pursuant to the right of recoupment outlined in the insurance contract.

## II.    FACTUAL BACKGROUND

The following undisputed facts are taken from M.M.'s Third Amended Complaint ("the Underlying Complaint," Exh. A to Second Amended Complaint, Dkt. 46), Brimar's Answer with Affirmative Defenses and the other pleadings of record in this action.[1]

---

[1] FED. R. OF CIV. P. 10(c) states that a "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." As such, when reviewing a complaint, "a court should consider not only the allegations

## A.      The Underlying Action

On May 31, 2018, M.M., parent and natural guardian of K.M., a minor, filed the Underlying Complaint against the Pittsburgh Public School District and Brimar Transit, Inc. (collectively, the "Underlying Defendants"). The Underlying Action is based upon an alleged sexual assault that occurred on a school bus operated by Brimar on April 29, 2016. *Id.*, ¶¶ 14, 27-29, 46. It alleges that Brimar negligently failed to supervise K.M.'s assailant, causing K.M.'s injuries. *Id.*, ¶¶ 8, 21-27, 29-30, 45, 58, 62. The complaint alleges that each of Brimar and School District is, respectively, liable for its own breaches of duty. *Id.*, ¶¶ 56-124.

The Underlying Complaint alleges that K.M. was sexually abused by a male student while riding the bus and that the Underlying Defendants are responsible. *Id.*, ¶ 21-22, 24-29, 46. It seeks compensatory and punitive damages based upon bodily injury caused by the sexual abuse and molestation. *Id.*, ¶¶ 53-53. K.M. and the other student perpetrator attended the same school, which was administered by intervenor School District. *Id.*, ¶¶ 2, 13. National has defended Brimar, subject to a reservation of rights, in the Underlying Action. *See* Plaintiff's Second Amended Complaint, Dkt. 46, ¶ 15, Brimar Answer to Second Amended Complaint, Dkt. 47, ¶ 15, National has not defended School District, which retained its own counsel to defend it. *See* Counterclaim of defendant-intervenor School District, Dkt. 48, ¶¶ 17-19.

## B.      The Policy

National issued policy number 73 APB 001185 to Brimar for the policy period January 1, 2016 through January 1, 2017 (the "Policy"). A true and correct copy of the Policy is attached to National's Second Amended Complaint as Exh. B, Dkt. 46. The Policy provides, in pertinent part:

---

contained in the complaint itself but also the exhibits attached to it which the complaint incorporates." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994).

**BUSINESS AUTO COVERAGE FORM**

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." . . .

\*　　　　　\*　　　　　\*

**PENNSYLVANIA CHANGES – DEFENSE COSTS**

This endorsement modifies insurance provided under the following:
COMMERCIAL AUTOMOBILE COVERAGE PART
…

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

\*　　　　　\*　　　　　\*

**ABUSE OR MOLESTATION EXCLUSION**

PLEASE READ THIS ENDORSEMENT CAREFULLY

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

The following exclusion is added to the policy:

4

This insurance does not apply to bodily injury or property damage arising out of:

    (a) the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone of any person; or

    (b) the negligent:

          (i)      employment;

          (ii)     investigation;

          (iii)    supervision; or

          (iv)   retention of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above; or

    (c) the reporting to authorities or failure to report to authorities the alleged, actual or threatened abuse, molestation or sexual contact by anyone of any person.

All other terms, conditions and agreements shall remain unchanged.

*          *          *

## III.    STANDARD OF REVIEW

### A.    Judgment on the Pleadings

FED. R. CIV. P. 12(c) provides that "after the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund* Corp., 539 F.3d 218, 221 (3d Cir. 2008) (internal quotations and citations omitted).

### B.    Pennsylvania principles of contract interpretation

Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). In actions arising under an insurance policy, Pennsylvania courts have established a general rule that it is a necessary prerequisite for the insured to show a claim within the coverage provided by the

policy. *Erie Ins. Group v. Catania*, 95 A.3d 320 (Pa. Super. 2014); *see also TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 461 (W.D. Pa. 2013). Where, as here, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n, Ins. Co.* 517 A.2d 910, 913 (Pa.1986). "Even if a term is not defined in an insurance policy, a term is not ambiguous where it possesses a clear legal or common meaning that may be supplied by the court." *Nautilus Insurance Co. v. Gardner*, Civ. A. No. 04-1858, 2005 WL 664358, *12 (E.D. Pa. Mar. 21, 2005) (*citing City of Erie v. Guar. Nat'l Co.*, 109 F.3d 156, 163 (3d Cir. 1997)). The Pennsylvania Supreme Court and the Third Circuit Court of Appeals have cautioned courts against straining to find ambiguity in insurance contract language, as policy language should be read to avoid creating or finding ambiguity wherever possible. *Gene & Harvey Builders,* 517 A.2d at 916; *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981). Extrinsic evidence for purposes of interpreting the contract is ordinarily irrelevant, *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1964) and not even discoverable. *Kendall et al. v. Lancaster Exploration & Development Co., LLC*, 323 F. Supp.3d 664, 682 n. 118 (M.D. Pa. 2018).

### C.     Duty to defend

The obligation to defend arises only when the complaint filed by the injured party may potentially come within the coverage of the policy. *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963). An insurer's potential duty to defend is "determined <u>solely</u> by the allegations of the complaint in the [underlying] action." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence. *Id. See also Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d

660, 673 (3d Cir. 2016). Given these rules, insurance coverage is an appropriate subject for disposition by way of judgment on the pleadings.

IV.    **ARGUMENT**

    A.    **The Underlying Complaint fails to allege bodily injury resulting from the ownership, maintenance or use of a covered auto**

The insured has the initial burden of establishing a right to coverage under the policy. *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 461 (W.D. Pa. 2013). In this case, the Policy's coverage grant provides coverage only to the extent that "bodily injury" or "property damage" is caused by an "accident" *and* results from the ownership, maintenance or use of a covered "auto." (Emphasis supplied). Therefore, for coverage to exist and the duty to defend to be triggered, the "bodily injury" which is the subject of the Underlying Action must result from the ownership, maintenance or use of the insured vehicle.

Pennsylvania law makes clear that coverage under policies which require bodily injury to result or arise from the maintenance or use of a motor vehicle require a showing that the bodily injury was causally connected to the use of the insured vehicle as a motor vehicle. *State Auto Ins. Ass'n v. Kuhfahl*, 527 A.2d 1039, 1043-44 (Pa. Super. 1987). Where use of a vehicle is "merely incidental" to the bodily injury, the accident has not "resulted" from the "use" of a motor vehicle within the meaning of the policy. *Id.* In the case of *Roach v. Port Authority of Allegheny County*, 550 A.2d 1346 (Pa. Super. 1988), the court determined there was no causal connection between the claimed injury and the use of a vehicle where the bus passenger was injured as a result of a fight between two other passengers. "The mere fact that the bus is the site where the injuries were sustained does not establish the requisite causal connection between the 'maintenance and use of a motor vehicle' and the injuries." *Id.* at 1350. *See also Alvarino v. Allstate*, 537 A.2d 18 (Pa. Super. 1987) (finding bodily injury did not arise from use of vehicle where a minor was bitten by

a dog while both were riding in a van). "We can see nothing about the use of this motor vehicle that contributed in any way to causing appellants' injuries. The only involvement of the motor vehicle in this case is that it was the situs of the dog bite." *Id.* at 21.

   Furthermore, the National Policy contains even narrower language, which requires that bodily injury *result* from (rather than merely "arise" from) the use of a covered "auto" for coverage to be available. The Pennsylvania Superior Court has acknowledged that the phrase "resulting from" as used in an automobile insurance policy should be interpreted more narrowly than "arising from." *Ohio Casualty Group of Ins. Cos. v. Bakaric*, 513 A.2d 462, 465 (Pa. Super. 1986) (finding injury to passenger-wife who was shot by driver-husband as they sat in husband's car did not "result from the use" of the car – but rather resulted from the use of a gun). The court emphasized: "the verbiage of Nationwide's automobile policy providing coverage for injuries, 'resulting from the use' of the vehicle is not as broad as the term 'arising out of the use'..." *Id.* [2]

   The above-referenced cases demonstrate the long-held position of Pennsylvania courts that in order for maintenance or use to trigger coverage under an auto insurance policy, the injury must be causally related to the use of a motor vehicle (as opposed to the vehicle simply being the location of an incident that could have occurred elsewhere). Here, like the cases cited above, the underlying plaintiff's injuries bear no causal connection to the subject vehicle as they were caused by a sexual assault perpetrated by a third party.[3] Moreover, it should be noted that in the cases cited above, *Roach* and *Alvarino* involved the broader "arising from" policy language. Because both phrases

---

[2] The only other appellate case interpreting the "resulting from" language is *Lebanon Coach Co. v. Carolina Cas. Ins. Co.* 675 A.2d 279 (Pa. Super. 1996). In that case, a student was struck by another vehicle after alighting from the school bus. *Id.* at 282. The underlying action alleged that her injuries were caused by the bus company's negligent route selection. The court held that the subject injury did "result" from the use of a covered vehicle because the injured child's location at the time of the accident was directly linked to where the bus driver had stopped the bus to discharge her. *Id.* at 291. This case is distinguishable from the Brimar fact pattern as the operation of the bus itself (its route and drop off location) was alleged to have caused the injury.

[3] The same third party is alleged to have abused K.M. at other locations, away from any auto. *See* Underlying Third Am. Compl., Exh. A to Plaintiff's Second Am. Compl., Dkt. 46, §§ 12-13,15-16.

("resulting from" and "arising from") appear in the National Policy in different contexts,[4] they must be deemed to have different meanings. The Policy coverage grant, which employs the term "resulting from," is drafted more narrowly than other sections of the Policy, demonstrating an intention that the policy provide coverage only where the operation of the vehicle itself causes the harm. Accordingly, the Policy can only be interpreted to require that the injury have resulted from operation of a vehicle for the duty to defend to be triggered.

Simply stated, the Underlying Complaint fails to allege that K.M. was injured by automobile use. Her injuries were not "vehicle-caused" – *they were caused by a classmate assaulting a disabled child.* Because the underlying plaintiff's injuries did not result from the use of the vehicle, the Underlying Complaint fails to allege a potentially covered claim under an auto policy, and the duty to defend has not been triggered.

**B.    The Underlying Complaint alleges bodily injury arising out of molestation or sexual contact and therefore coverage is barred by the Abuse or Molestation Exclusion**

Even if the Underlying Complaint sufficiently alleged "bodily injury" resulting from the ownership, maintenance or use of a covered "auto," (it does not) the Abuse or Molestation Exclusion expressly bars coverage for the Underlying Action. Coverage is excluded for claims for "bodily injury" "arising out of : … a) the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone of any person …" *See* Policy, Exh. B to Second Am. Compl., Dkt. 46, p. 89. The plain, recognized, intent of this provision is "to exclude from coverage all classifications of damages arising out of incidents of molestation." *Harper v. Gulf Ins. Co.*, No. 01-cv-201-J, 2002 WL 32290984, *6 (D. Wyo. Dec. 20, 2002) (quoting *Lincoln County v. Doe*, 749 So.2d 943, 946 (Miss. 1999)). This court previously concluded that such a

---

[4] Policy, Ex. B to Second Am. Compl., Dkt. 46, pp. 56, 89.

Molestation or Abuse Exclusion applies when the alleged damages arose from sexual conduct, regardless of the legal theory upon which the Insured's liability depended. *Nationwide Mut. Fire Ins. Co. v. Mr. & Mrs. K., et al.*, Civ. No. 05-569, 2005 WL 3434081 (W.D. Pa. Dec. 13, 2005) (holding sexual harassment exclusion barred coverage for suit alleging negligence where all alleged injuries arose directly or indirectly from sexual harassment).

Pennsylvania law has interpreted the term, "arising out of" very broadly. *Manufacturers Casualty Ins. Co.*, 170 A.2d 571 at 573 (construing "arising out of" in the context of an exclusionary clause to be causally connected with, not proximately caused by, and noting that "but for" causation, *i.e.*, a cause and result relationship, is enough to satisfy such a provision); *see also Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (finding that "arising out of" has an unambiguous meaning under Pennsylvania law when used in the context of an insurance exclusion – meaning causally connected with, even if proximately caused by).

Pennsylvania courts have universally enforced sexual abuse exclusions similar to the one at issue here. *See, e.g., 12th Street Gym, Inc. v. Phila. Indemnity Ins. Co.,* Civ. A. No. 03393, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006). In *12th Street Gym*, coverage for a sexual assault was barred where the underlying complaint alleged that that the gym negligently employed a massage therapist who improperly touched women during massage sessions. *Id.* at *9; *see also Pa. State Univ. v. Pa. Manufacturers' Ass'n Ins. Co.*, Civ. A. No. 03195, 2016 WL 2737438 (Pa. Com. Pl. May 4, 2016) (enforcing policies' Sexual Abuse or Molestation Exclusion and finding insurer had no duty to defend underlying claims against university for negligent employment, hiring and retention of sexual abuser).

The operative complaint in the Underlying Action makes the following allegations, which clearly establish that the bodily injury alleged by the underlying plaintiff is causally related to molestation or sexual contact and subject to the Abuse or Molestation Exclusion:

> 27.    During the bus trip home on April 29, 2016, the male student pinned K.M. down on the seat and was on top of K.M. At that time, she yelled out for him to stop and the bus driver did not take any action to stop the incident from occurring or to separate the students. The driver was negligent in failing to be attentive and/or respond and this allowed the assault to occur and continue.

> 28.    During this time period, the other students on the bus were yelling out to the bus driver, who ignored the cries/yells of the other students. Sufficient time went by while K.M. and the male student were next to each other and this allowed the male student to continue with the sexual assault as a result of the driver's negligence.

> 29.    During this time period, the pants of both K.M. and the male student were down. During this time period, K.M. was penetrated from behind by the male student. In spite of the vehicle not being large and the bus driver obviously being able to hear and/or see what was going on if the bus driver had been paying attention, the driver took no action to stop or prevent the assault.

> 30.    The incident in question was allowed to occur as a result of the Defendants breaching their agreement and procedure of separating these two (2) students. The incident was further allowed to occur as a result of the bus driver ignoring the students and failing to pay attention to her surroundings that a sexual assault was occurring in proximity to her.

> *       *       *

> 38.    K.M. was subjected to testing, including testing for sexually transmitted diseases as a result of the sexual assault that is the subject of this litigation.

> 39.    K.M. described the incident in question in detail to medical providers at Children's Hospital of Pittsburgh. This description confirmed penetration and a sexual assault. The Children's Hospital records further confirm a report of not only penetration but kissing of her chest by the 12 year-old male student.

> *       *       *

11

41.     As a direct and proximate result of the sexual assault described herein, K.M. has experienced great emotional distress and is at an increased risk for emotional problems that are associated with children who have suffered a sexual assault.

*          *          *

52.     This action is brought on behalf of M.M. as parent and guardian of her daughter, K.M., a minor child.  As a direct and proximate result of the claims set forth herein, the Plaintiffs are entitled to the damages set forth herein as a result of the physical sexual assault as well as the mental anguish which came about as a result of the subject claims.  These damages include those for treatment, medical tests therapy, emotional anguish, past and future medical expenses, past and future therapy expenses, post-traumatic stress, increased risk for post-traumatic stress and/or emotional issues associated with victims of sexual assault.

53.     As a result of the physical and sexual assault, K.M. experienced, she has experienced emotional distress and has the potential to develop post-traumatic stress and issues associated with child sexual abuse throughout her life. Said actions of the Defendants resulted in Plaintiff incurring humiliation, embarrassment and injury. K.M. also experienced the damages recoverable for assault and battery, including apprehension, and said damages would not have occurred but for the actions of the Defendants as described herein.

*See* Underlying Third Am. Compl., Exh. A to Plaintiff's Second Am. Compl., Dkt. 46. The "bodily injury" which is the subject of the Underlying Action and Brimar's claim for liability coverage is causally related to, and therefore arises from, molestation or sexual contact.  Thus, the first prong "(a)" of the Abuse or Molestation Exclusion is triggered, as the Claim is one "arising out of … the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by any one of any person …"

Moreover, while prong "a" alone is conclusive in barring coverage under the Policy, given that each prong of the Exclusion applies in the disjunctive (such that triggering of any one bars coverage), prong "(b)" also applies.  Prong "b" applies whenever, among other things, a claim arises out of "the negligent … *supervision* … of anyone or negligent entrustment to anyone whose

conduct would be excluded by (a) above ..." *See* Policy, Exh. B to Plaintiff's Second Am. Compl., Dkt. 46, p. 89 (emphasis supplied). The Underlying Complaint expressly alleges that the bodily injury to K.M. arose from the negligent supervision by the Brimar driver of the student who perpetrated the assault. *See* Underlying Third Am. Compl, Exh. A to Plaintiff's Second Am. Compl., Dkt. 46, ¶¶ 8, 14, 27-29, 45, 52-53. Thus, while the Exclusion bars coverage so long as prong "(a)" is triggered, in this case both prongs "(a)" and "(b)" are triggered. *See Arcadia Ins. Co. v. Hinds County School District*, No. 3:12-CV-188-CWR-LRA, 2013 WL 12091099, *4 (S.D. Miss. Mar. 29, 2013).

###### C.      The Contractual Liability Exclusion applies to bar coverage

The contractual liability exclusion bars coverage for liability arising by virtue of a contract, unless such liability would exist absent such a contract. *See* Policy, Exh. B to Plaintiff's Second Am. Compl., Dkt. 46, p. 60.  Based upon this exclusion, at a minimum, any liability of Brimar to the School District under an indemnity clause, or by virtue of any obligation created in the Brimar-School District contract, is (additionally) barred by the Contractual Liability exclusion in the National Policy (as well as by the Abuse and Molestation Exclusion).  *Pennsylvania Manufacturers Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1181 (Pa. Super. 2003).

###### D.      The School District was not made an "Insured" under the Policy, and therefore has no rights thereunder

The School District is not a Named Insured under the Policy. *See* Policy, Exh. B to Plaintiff's Second Am. Compl., Dkt. 46, p. 60. Nor was it added as an "additional insured" by endorsement. *Id. See also gen. L.B. Smith, supra* (pointing out that the putative "additional insured's" actual remedy is against the party (here, Brimar) that was supposed to have had them made an "insured.").   As a stranger to the Policy, the School District has no enforceable rights thereunder.  17 Couch on Insurance §239:104, *cited in Michigan Millers Mutual Ins. v.*

*Travelers Indemnity Co. of Connecticut et al.*, No. 16-11767, 2016 WL 7100539, *7 (E.D. Mich. Dec. 6, 2016)*; see also Brown v. Candelora*, 708 A.2d 104, 108 (Pa. Super. 1998).

Given that School District is not an "Insured" under the Policy, it can claim no rights whatsoever thereunder.   Moreover, coverage also is barred under the Policy because, as demonstrated *supra* §§ IV. A, IV. B, K.M.'s claim: (i) did not result from ownership, maintenance, or use of a covered auto, and (ii) is barred by the Abuse or Molestation Exclusion. Accordingly, Plaintiff respectfully requests that this Court grant its Motion for Judgment on the Pleadings as to defendant School District's Counterclaim.

### E.    Defendants' affirmative defenses are legally ineffective

In a bid to avoid the simple fact that this policy plainly does not apply to this claim, defendants produce a host of conclusory allegations[5] which aim to circumvent the contract.  These allegations, although not organized in a manner that might ease them being more directly confronted, appear to coalesce around four invalidly pled legal theories: (i) estoppel; (ii) waiver; (iii) "reasonable expectations," and (iv) breach of an insurance contract that National never issued.

Beginning with *estoppel*, defendants fail to plead *detrimental reliance* upon any representation by National, and thus that doctrine has not been validly pled.  A party seeking to recover via estoppel is required to plead that (1) the defendant made a promise that it should have reasonably expected to induce action or forbearance by plaintiff (here, counterclaimant, School District); (2) plaintiff took action or refrained from acting in reliance on defendant's promise; and (3) the only way to avoid injustice is by enforcing the promise. *Guerra v. Redevelopment Auth. of*

---

[5] For example, School District alleges "representations" which supposedly were made *to it*, or of which it was informed, which tellingly omit the *date*, the *speaker*, the *hearer* of these supposed representations. *See* School District Counterclaim, Dkt. 48, § 8.

*City of Philadelphia,* 27 A.3d 1284, 1292 (Pa. Super. 2011).[6] Moreover, doctrines such as estoppel and waiver are unavailable to School District, a stranger to the contract. 17 COUCH ON INSURANCE §239:104, *cited in Michigan Millers v. Travelers Indemnity Co. of Connecticut et al.*, No. 16-11767, 2016 WL 7100539, *7 (E.D. Mich. Dec. 6, 2016). Next, *waiver* is "not available to bring within the coverage of an insurance policy risks that are excluded therefrom," *Wasilko v. Home Mutual Cas. Co.*, 232 A.2d 60, 63 (Pa. Super. 1967); *see also Gerow v. State Auto*, 346 F. Supp. 3d 769, 782 (W.D. Pa. 2018), and so the doctrine cannot remake the National insurance contract so that it applies to injuries that, as here, did not result from use of an auto, nor cause the contract to cover abuse claims that the contract clearly does not undertake to cover. *Id.* To the extent that School District may be suggesting a "third-party beneficiary" argument, without identifying it as such, it has failed to plead that such an intent is "explicitly" stated in the contract, and thus such a theory fails. *Tremco v. Pennsylvania, Inc. Mfrs. Assoc. Ins. Co.,* 832 A.2d 1120, 1122 (Pa. Super. 2003).

Defendants' affirmative defense of reasonable expectations is similarly inapplicable. The doctrine of reasonable expectations has been confined to "very limited circumstances involving unsophisticated insureds," *Madison Constr. Co. v. Harleysville Mutual Ins. Co.*, 735 A.2d 100, 109 n. 8 (Pa. 1999), not pled here. Further, the doctrine can apply only where policy language has first been shown to be ambiguous, *Frederick Mutual Ins. Co. v. Hall*, No. 17-3477, 2018 WL 5879474, *2 (3d Cir. Nov. 8, 2018) (citing *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 717 (Pa. Super. 2007)), which is not the case here. Furthermore, it is not plausible that there could be a reasonable expectation of recovery for abuse or molestation from a policy with an explicit Abuse or Molestation Exclusion.

---

[6] Here, of course, any "injustice" arising from the failure of the District to become an insured should, if the Insured's allegations are correct, be remedied via its cross-claim against Brimar for failure to procure insurance.

More dubious still is School District's allegation, which National unequivocally denies[7] that National issued a "CGL Policy" affording coverage to School District. *See* School District Counterclaim, Dkt. 48, ¶¶2-11).  National did not issue a commercial general liability policy to Defendants.  That the School District makes such an allegation tacitly recognizes that the claimed injury is one of general liability rather than one resulting from the use of an auto.

Furthermore, to establish a valid breach of contract claim in Pennsylvania, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) ). (Moreover, pursuant to FED. R. CIV. P. 9(c), one claiming breach of contract must allege that all conditions precedent to that contract were satisfied, which School District's counterclaim fails to do).  The "essential terms" of a contract include "time or manner of performance and price to be paid," *Lombardo v. Gasparinin Excavating Co*., 123 A.2d 663, 666 (Pa. 1956); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009), which are wholly absent from School District's spurious allegations regarding this "contract."  Absent these essential allegations, a breach of contract action should be dismissed.  *Naples v. Bedrock Management, Inc*., No. 04-cv-4056, 2005 WL 673011 (E.D. Pa. Mar. 22, 2005) (granting motion to dismiss where complaint did not allege essential terms of contract with sufficient clarity).

## V.   RELIEF REQUESTED

For all the foregoing reasons, plaintiff, National Liability & Fire Insurance Company, pursuant to FED. R. CIV. P. 9(c) and 12(c), respectfully requests that the Court grant its Motion for Judgment on the Pleadings and issue a declaration that National Liability & Fire Insurance

---

[7] *See* National Answer to School District Counterclaim, Dkt. 52, ¶¶ 2, 7-11.

Company has no duty to defend or indemnify defendants in connection with the Underlying Action, which arises out of an alleged sexual assault. Additionally, National requests that this Court dismiss defendant School District's counterclaim. Lastly, and premised on this Court's finding that there is no duty to defend, National seeks reimbursement of all defense costs (including attorney's fees) that it has and will have paid on behalf of Brimar.

Respectfully submitted,

Dated: April 3, 2019

**COZEN O'CONNOR**

*/s/Richard C. Mason*
Richard C. Mason, Esquire
(*Pro Hac Vice*)
RMason@cozen.com
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215-665-2000

*/s/ Eugene A. Giotto*
Eugene A. Giotto, Esquire
EGiotto@cozen.com
One Oxford Centre
300 Grant Street, 41st Floor
Pittsburgh, PA 15219
412-620-6500