IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(PITTSBURGH)

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | CIVIL ACTION NO. 2:18-cv-1129 |
| Plaintiff | |
| v. | |
| BRIMAR TRANSIT, INC., | |
| Defendant | |
| and | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT | |
| Intervenor-Defendant | |

## BRIMAR TRANSIT, INC'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, Brimar Transit, Inc. ("Brimar") by and through its attorneys, Stephen H. Lebovitz, Robert A. Lebovitz, Lebovitz & Lebovitz, P.A. respectfully submits this Memorandum of Law in Opposition to Motion for Judgment on the Pleadings and in support thereof states as follows:

**I.    INTRODUCTION**

Plaintiff, National Liability & Fire Insurance Company ("National") has filed a Motion for Judgment on the Pleadings seeking a ruling that as a matter of law they are neither required to provide a defense nor to indemnify Brimar and the Pittsburgh Public School District ("School District") as a result of matters alleged in a lawsuit captioned *M.M., parent and natural guardian of K.M. a minor v. Pittsburgh Public School and Brimar Transit, Inc.* filed at No. GD 18-003257

which is currently pending in the Allegheny County Court of Common Pleas ("Underlying Action") The Underlying Action was brought against Brimar and the School District due to the conduct of non-party minor student ("T.B") in relationship to the minor plaintiff. Brimar is primarily charged for negligence and/or breach of contract for allowing an incident to take place while transporting the students' home from school on or about Friday, April 29, 2016. The Underlying Complaint has claims for negligence, breach of contract, third-party beneficiary, intentional infliction of emotional distress, common carrier liability, intentional misrepresentation and claims for assault and battery, humiliation, embarrassment, injury and apprehension, all of which are separate and distinct from a claim for sexual assault and physical assault by the minor male student T.B. who is not a party to this action.

     National seeks a declaration it has neither a duty to defend nor to indemnify the Defendants due to exclusion in their policy arguing that the policy covers bodily injury resulting from the ownership, maintenance and use of a covered auto, but because the injury may not have occurred due to the maintenance or use of the auto, that there is no coverage. All of their legal analysis deals with maintenance and use and does not address ownership issues. National also seeks to avoid coverage due to the exclusions for sexual assault and/or molestation. There are neither allegations of sexual assault nor molestation conducted by any employee/representative of Brimar, and the alleged actor is not a party to the Underlying proceedings.

     Brimar seeks to have the Motion for Judgment on the Pleadings filed by National dismissed.

## II.   COUNTERSTATEMENT OF THE FACTS

     While National has pointed to certain Paragraphs from the Underlying Complaint, Brimar's Answer and other pleadings are of record in this action, and the following additional Paragraphs in the Complaint in the Underlying Action are relevent to the pending motion:

     Paragraph 35 sets forth *"The male student is not a Defendant in this case as, upon*

2

*information and belief, he did not have the mental capacity to appreciate his actions were wrong. For this reason, the male student was not criminally charged…"*

Paragraph 53 includes a claim for humiliation, embarrassment, injury, assault, battery, and apprehension.

Paragraph 11 alleges that Brimar is liable for errors, omissions, negligence, and acts of its employees, agents, drivers and those acting on its behalf.

Count I of the Underlying Complaint is a claim for Negligence.

Count V of the Underlying Complaint is a claim for Intentional Infliction of Emotional Distress and has claims for damages based on assault alone.

Brimar has alleged in its Answer and Affirmative Defenses to Plaintiff's Complaint the following:

57. At all times material hereto the driver was operating the van in a safe and proper manner, adhering to any and all rules of the road.

58. At no time material hereto during the operation of the vehicle was the driver aware or made aware of the events that would constitute the alleged allegations and was not aware of any sexual assault and/or molestation.

59. At no time material hereto did the School or School District, Additional Defendant in the Underlying action make available any bus monitor or provide any extra personnel to assist the driver and protect the students from non-transportation related issues.

60. Additional Underlying Defendant had assumed the responsibility to provide monitors under their contractual agreement with Brimar specifically at No. 39. A copy of This Agreement is attached as Exhibit "1" and incorporated into this Affirmative Defenses.

Brimar has raised other issues of material fact in their Answer to Third Amended Complaint, New Matter and Crossclaim.

Brimar maintains that it was unaware of any alleged prior history between K.M. and T.B.

Brimar has coverage afforded under the National issued policy 73 APB 001185 which is in effect for the date of the incident. This policy was obtained pursuant to contract with the School District and required coverage of set limits and that the School District is to be named an additional insured. Pursuant to these requirements, Brimar sought and obtained a comprehensive insurance policy to cover them for their operations as required by the School District from National.

### III.   STANDARD OF REVIEW

#### A.   JUDGMENT ON THE PLEADINGS

Under Fed. R. Civ. P.12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. For purposes of a motion for judgment on the pleadings, the court must interpret the facts alleged in the pleadings and the reasonable inferences that can be drawn therefrom in the light most favorable to the non-moving party. The court is thus required to take as true the factual allegations of the non-movant's pleading and to treat as false any contradictory allegations in the moving party's pleading. *Lewis v. Neal*, 905 F. Supp. 228, 1995 U.S. Dist. LEXIS 16815

#### B.   INTERPRETATION OF INSURANCE CONTRACTS

The Court in Nat'l Cas. Co. v. Young, 2009 U.S. Dist. LEXIS 61353 sets forth :
"[A] duty to defend is broader than the duty to indemnify." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 908 A.2d 888, 896 n.7 (Pa. 2006). Accordingly, an insurer may have a duty to defend even though it may ultimately have no duty to indemnify. Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). "[A] insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or potentially bring the claims within the policy coverage." Belser v. Rockwood Cas. Ins. Co., 2002 PA Super 27, 791 A.2d 1216, 1222 (Pa. Super. Ct. 2002) (quoting Bd. of

4

Public Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 709 A.2d 910, 913 (Pa. Super Ct. 1998)) (emphasis added). If there is no possibility that any of the underlying claims could fall within the coverage of the policy, then the insurer has no duty to defend or indemnify. Sphere Drake, P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 428 (E.D. Pa. 1999). When an insurer's defense obligation is triggered under the policy, the insurer must provide a defense "even if such suit is groundless, false, or fraudulent." Britamco Underwriters, Inc. v. Weiner, 431 Pa. Super. 276, 636 A.2d 649, 651 (Pa. Super. Ct. 1994), appeal denied, 540 Pa. 575, 655 A.2d 508 (Pa. 1994). "[I]f a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch, 193 F.3d at 746.

"Under Pennsylvania law, the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the Court.'" *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009) (quoting *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008)). In its analysis, a court first looks to the terms of the policy "which are a manifestation of the intent of the parties." Id. (internal [*11] quotations omitted). "When the language of the policy is clear and unambiguous, [the court] must give effect to that language*." Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007). In cases where the wording is ambiguous, relevant extrinsic evidence should be considered to resolve the ambiguity. See *Bokunewicz v. Purolator Prods., Inc.*, 907 F.2d 1396, 1401 (3d Cir. 1990) (citing *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986)); see also *12th Street Gym, Inc. v. Gen. Star Indem. Co.*, 980 F. Supp. 796, 801-02 (E.D. Pa. 1997). When such evidence does not resolve the dispute, the policy provision is to be construed in favor of the insured and against the insurer as the drafter of the agreement. See *Bateman v. Motorists Mutual Ins. Co*., 527 Pa. 241, 590 A.2d 281, 283 (Pa. 1991). Contractual language is ambiguous if "it is reasonably susceptible of different constructions and capable of

5

being understood in more than one sense." *Hutchison*, 519 A.2d at 390. Next, a court compares the terms of the policy to the allegations in the underlying claim. *Nationwide*, 562 F.3d at 595. "It is well established that an insurer's duties under an insurance policy are triggered by the language [*12] of the complaint against the insured." Id. (quoting Kvaerner, 908 A.2d at 897). "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Id. at 595-96 (quoting *Frog, Switch*, 193 F.3d at 746). Thus, in assessing whether a duty to defend exists in this case, the Court will look to the language of the Policy to determine in which instances the Policy provides coverage and then will examine Romano's Amended Complaint to determine whether the allegations set forth therein constitute the type of instances that trigger coverage. See id. at 596 (citing Kvaerner, 908 A.2d at 897).

The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. However, while reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations are frustrated by policy limitations which are clear and unambiguous. However, where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer. Britamco Underwriters v. Weiner, 431 Pa. Super. 276, 636 A.2d 649, 1994 Pa. Super. LEXIS 19 "If a single allegation of a complaint is potentially covered by a policy, an insurer has an obligation to defend its insured against all claims until there is no possibility of recovery for a covered claim." CAT Internet Sys., Inc. v. Providence Washington Ins., 153 F. Supp. 2d 755, 759 (E.D. Pa. 2001) (citing Frog, Switch, 193 F.3d at 746).

## IV.   ARGUMENT

**A. The bodily injury alleged in the Underlying Complaint results from the ownership, maintenance or use of a covered auto.**

National's Commercial Policy Section 2-Liability Coverage A. Coverage "We will pay all sums and insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from the ownership, maintenance or use of a covered auto." [Doc 9-2 Page 60] The policy also provides other coverage: "We will pay the basic first party benefit in accordance with the act to or for an insured who sustained bodily injury caused by an accident arising out of the maintenance or use of auto." [Doc 9-2 Page 81] This does not remove the general liability coverage for ownership in Section 2, but is only applicable to first-party coverage.  Coverage exists, and there is a duty to defend when the bodily injury is a result from the ownership, maintenance or use of the insured vehicle.

National's analysis of *State Auto Ins. Ass'n v. Kuhfahl,* 527 A.2d 1039, 1043-44 (Pa. Super. 1987), *Roach v. Port Authority of Allegheny County*, 550 A.2d 1346 (Pa. Super. 1988) and *Alvarino v. Allstate*, 537 A.2d 18 (Pa. Super. 1987) all ignore the ownership element that affords coverage in this matter.

In *State Auto. Ins. Asso. V. Kuhfahl*, 527 A.2d 1039, 364 Pa. Super. 230, 1987 Pa. Super. LEXIS 8314, the Kuhfahl's were transporting children home from kindergarten, and one of the children got out of the car and then proceeded to run across the street towards his home, and despite Mr. Kuhfahl's warning, the child did not wait and was struck and injured by an oncoming vehicle. The court noted that the presence of small children in an automobile imposes a particular duty of care and alertness upon the driver in selecting the place for and supervising the manner of discharging the children from the vehicle. The conduct of an ambulatory child of tender years is often impulsive and unpredictable. The process of unloading a child from a motor vehicle does not end the moment the child's feet touch the ground or when his or her body is

7

entirely outside the vehicle. The court held there was a potential nexus between the injuries sustained by the child and the use of the Kuhfahl's automobile such that State Auto is obliged to defend the couples in an underlying negligence action.

"Paramount in the trial court's decision that the instant accident fell within the terms of the Kuhfahls' policy was the principle that where the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured, citing *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 170 A.2d 571 (1961). The trial court found the phrase "for the owner-ship, maintenance or use" to be such a phrase." 527 A.2d 1042.

National then relies on two first-party cases. The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. Ann. §§ 1701-1798 (1987) ("MVFRL") requires first party benefits to be available with respect to injuries that arise out of the maintenance or use of a motor vehicle 75 (Pa. C.S.A 1711, 1712).

Mrs. Roach was injured as a result of a fight on a PAT bus between two other passengers. This was only a case to collect medical coverage. The court specifically noted that they were not asked to determine the rights of the Roach's against PAT with respect to the liability for negligence.

In *Alvarino* the father and injured party (son) attempted to collect first-party benefits for a dog bite that the son suffered in a neighbor's van.

In *Lebanon Coach Co. v. Carolina Cas. Ins. Co.,* 450 Pa. Super 1; 675 A.2d 277 (1996 Pa. Super) a child was injured in a traffic accident as she exited a school bus on her way to school. The court held that the insurance provider had been explicitly contracted to provide coverage to the appellee bus company and because appellant's injury occurred in violation of appellee bus company's duty as a common carrier that the provider was obligated to provide a defense. The court in *Lebanon Coach Co*. stated in order to decide whether a claim comes within

8

the insurance policy's coverage, we must first ascertain the policy's scope.

Moreover, the proper focus of this scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved. At all times material hereto, Brimar sought to obtain the appropriate coverage for their operation of school vans transporting school students to and from school specifically in this case, children of special needs.

In both *Kuhfahl's* and *Lebanon Coach Co*. coverage was found to exist for incidents that occurred outside of the vehicle which is actually broader than in this case where an incident occurred on the school bus.

National relied on *Ohio Casualty Group of Ins. Cos. V. Bakaric*, 355 Pa. Super 345; 513 A.2d 462; 1996 Pa. Super. LEXIS 11617 to find that their policy language of "resulting from" is not as broad as "arising out of" found in other policies.

*Bakaric* is a no-fault insurance case which predates financial responsibility. There, the wife was shot by her husband during a dispute while in their car. The court did not apply the policy language of "resulting from or ownership maintenance use…" of the auto as that was contained only in the first party section pursuant to Section 103 of the old Pennsylvania No-Fault Motor Vehicle Insurance Act and not the language in the Liability Section of that policy.

The Pennsylvania Motor Vehicle Responsibility Law (MVFRL) is to be liberally construed to afford the greatest possible coverage to injured claimants, and, in close or doubtful insurance cases, a court should resolve the meaning of insurance policy provisions or legislative intent in favor of coverage for the insured. *Huston v. Septa*, 19 A.3d 6, 14 (Pa. Commw. Ct. 2011) HN10 in *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388; 2012 U.S. App. LEXIS 1395.

    **B. The Underlying Complaint contains numerous allegations that create the possibility that claims could be covered under the Policy at issue and the Abuse or Molestation Exclusion is not a bar to a defense and is inapplicable under the**

**facts of the case.**

National contends that Underlying Complaint sufficiently alleges bodily injury resulting from the ownership, maintenance or use of a covered auto, then the abuse or molestation exclusion expressly bars coverage. In support of same, National cites *Harper v. Golf Ins. Co.*, No. 01-cv-201-J, 2002 WL 32290984*6 (D. Wyo Dec. 20, 2002) a District of Wyoming case from 2002 citing a Mississippi case from 1999, *Lincoln County v. Doe, 749 So.2d 943,946 (Miss,1999).* and the Western District of Pennsylvania case of *Nationwide Mut. Fire Ins. Co. v. Mr. and Mrs. K, et al.*, Civ No. 05-569, 2005 WL 3434081 (W.D. Pa. Dec 13, 2005). In *Valley Forge Ins. Co.v. Field,* 670 F.3d 93 (1st Cir. 2012) in an issue of policy interpretation in an abuse case centered on "care, custody and control" language the court noted that "Exclusions of this type for sexual or physical abuse or molestation are not uncommon for these types of insurance policies for those who have care of others. Such exclusions appear to have been in use since 1987. See *Harper v. Gulf Ins. Co.*, No. 01–CV–201–J, 2002 WL 32290984, *6 (D.Wyo. Dec. 20, 2002) (abuse or molestation exclusion was promulgated by the Insurance Service Office, Inc., in 1987). The court in Harper cites to an insurance reporter series entitled Commercial Liability Insurance, published by the Insurance Risk Management Institute. Id. at *6 n. 9." The Harper policy language is not the same as here and dealt with an Abuse or Molestation Exclusion to the Professional Liability Coverage.

In *Nationwide Mut. Fire Ins. Company v. Mr. and Mrs. K. No. 05-569,2005 U.S. Dist. LEXIS 32573 (W.D. Pa. Dec. 13, 2005*) claimant alleged that insured homeowners negligently failed to prevent their child from sexually harassing another child. Nationwide obtained summary judgment when Defendants, Ms. B.G, J.T., Mr. J.P.; Mr. and Mrs. K and T.K.; Mr. and Mrs. S. and M.S.; and Mr. and Mrs. R and K.R. have failed to provide timely answers and Default Judgments have been entered against them. The homeowner's policy language is also different than that here. The court also distinguished the holding from *St. Paul Fire & Marine*

10

*Insurance Co. v. Schrum,* 149 F.3d 878 (8th Cir. 1998), where two children were allegedly molested by a third party while the children were in the Schrum home. In holding that the exclusion did not apply, the Schrum Court focused upon the conduct attributed to the various tortfeasors. The court concluded that the third party's alleged acts of molestation were merely "incidental" to the children's claims against the Schrums. The decisive factor in a negligent supervision claim is the obligation and ability to supervise and control the child, not the instrumentality that caused the harm.

    Defendant Brimar's reading of the exclusion endorsement is that this insurance does not apply to bodily injury or property damage arising out of the National exclusion under Part A. The alleged actual or threatened abuse or molestation or sexual contact whether or not intentional by anyone or any person or Part B. The negligent employment investigation supervision or retention of anyone or negligent entrustment to anyone whose conduct would be excluded under Part A above to mean that if abuse or molestation took place by the insured then there would be no coverage for the actual molestation or the vicarious negligent type claim for the insured. This is consistent with the understanding that they are a common carrier bus transit company and transporting children of tender years and that anything Brimar would be covered for claims for injury while being transported.   The cases cited by the Plaintiff all contain examples where the sexual abuse exclusion was applied for an employee or family member of the insured being the actor engaging in the abuse which is different from the current situation where none of the allegations of abuse were directed towards an employee of Brimar. The alleged actor is an non- party who was specifically alleged not to have been competent to appreciate or intend any harm. T.B. actions are separate, distinct and incidental to any claims made against Brimar in the Underlying Action.   National is attempting to impute this to Brimar to deny coverage. Material issue of fact exists to determine whether there would be an actual finding of sexual abuse or molestation in the underlying complaint. There is ambiguity in the

policy and a position that the exclusion would only apply to actions of the insured and not a third party.

Plaintiff cites paragraphs 27, 28, 29, 30, 38, 39, 41, 52 and 53 as allegations to be excluded under the abuse or molestation exclusion. There are still other allegations that would trigger coverage and the underlying case may be resolved without a finding of abuse or molestation given the capacity of the alleged third-party actor.

Generally, an intentional acts exclusionary clause excludes only injury or damage of the same general type which the insured intended to cause. An insured intends an injury if he desired to cause a consequence of his act knowing that such consequences were substantially certain to result. *United Servs. Auto. Ass'n. v. Elitzky*, 517 A.2d at 989. In the context of sexual molestation charges, a different rule applies as outlined in Wiley v. State Farm Auto. Insurance, 995 F2d 457 464 3rd Circuit 1993 wherein an inferred intent rule was adopted in liability cases involving an insured adult's intentional sexual abuse of a child to raise a conclusive presumption of the insured's intent to harm the victim. These cases were discussed in *Nationwide Mut. Fire Ins. Co. v. Craig*, 1995 U.S. Dist. Lexis 16844 where Mr. Craig had been involved in an incident of sexual molestation of minors, and there was a question as to whether Mr. Craig understood the harmfulness of his conduct and thus inflicted unexpected and unintended injury. The Wiley Rule inferred intent and coverage was denied. That exclusion did not necessarily apply to the claims against Ms. Craig for alleged negligence in failing to prevent her husband's harmful intentional acts. The exclusion denies coverage for intentional acts of the insured. The court's analysis of the duty to defend Mrs. Craig must extend beyond the intentional acts exclusion in her policy. Mrs. Craig ran afoul of the transferred intent or implied intent Rule 2 and that the underlying act of her husband was found not to be an occurrence since it was intentional. The Craig case finds no coverage for the wife because of the intentional act of her husband, and therefore, there was no occurrence to be covered. It is distinguished from the current situation because both the husband

and the wife were insured under the policy and the court inferred intent to the wife. In this case, the alleged act was neither committed by Brimar nor its employee and further the actor is not a party to the underlying case and it is undisputed that the alleged actor did not appreciate what he did. There is no inferred intent for the minor actor. Therefore, his action was an accident and Brimar would be entitled to a defense under negligence for failure to supervise and the other claims brought against them in the Underlying Complaint.

In *State Farm Fire & Cas. Co. v. Stadler*, 2000 U.S. Dist. LEXIS 885, 2000 WL 62313 where the son of the insureds plead guilty to attempted murder, the court noted that State Farm was defending the parents under the policy since negligence claims are being asserted against them.

*Aetna Life & Casualty Co. v. Barthelemy*, 33 F.3d 189, 1994 U.S. App. LEXIS 16583 a case regarding sexual relations between two students, the underlying complaint alleged that one student engaged in "negligent or reckless conduct" and that his conduct was not intentional; it did not aver any forcible conduct with regard to the sexual relations. The court found that the basis for the underlying complaint was the Barthelemy committed a tort and not a crime. The Court in First Liberty Ins. Corp. v. Anderson, 2016 U.S. Dist. LEXIS 67104 noted contrary to Nationals assertion of universal enforcement that "Pennsylvania courts have not been opposed to enforcing molestation exclusions within policies." Westfield Ins. Co. v. Holland, No. Civ.A.07-5496, 2008 U.S. Dist. LEXIS 103269, 2008 WL 5378267, at *7 (E.D. Pa. Dec. 19, 2008) (citing Neff v. Alterra Healthcare Corp., No. Civ.A.05-01421, 2006 U.S. Dist. LEXIS 87522, 2006 WL 3490816 (E.D. Pa. Dec. 4, 2006), aff'd, 271 Fed. Appx. 224, 2008 WL 821070 (3d Cir. 2008); 12th Street Gym Inc. v. Phila. Indemnity Ins. Co., No. Civ.A.031931, 2006 Phila. Ct. Com. Pl. LEXIS 239, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006)). Even broad molestation exclusions have been enforced as unambiguous. See Nat'l Cas. Co. v. Young, No. Civ.A.07-4836, 2009 U.S. Dist. LEXIS 61353, 2009 WL 2170105, at *6 (E.D. Pa. July 17, 2009)

13

(enforcing policy exclusion stating that "[c]overage is not afforded to the individual who is alleged to have directly committed such 'sexual abuse or molestation.'" which is defined as "any action or behavior or any physical contact or touching which is intended to or which culminates in any sexual act.").

When dealing with intent Pennsylvania courts have talked about inferred intent when adults are accused of molesting minors. Here the actor is a non-party minor who is specially alleged not to understand what he did. There is no need to do an inferred intent analysis on the intent to injure the underlying minor plaintiff where the underlying complaint clearly states that he did not. The Underlying Complaint, Plaintiff's Exhibit A states in Paragraph 35, "The male student is not a Defendant in this case as, upon information and belief, he did not have the mental capacity to appreciate his actions were wrong. For this reason, the male student was not criminally charged…" Since the actor could not form any requisite intent as alleged by the Underlying Plaintiff, the alleged bodily injury suffered by the Underlying Plaintiff would not be excluded for coverage as a bodily injury.

In *Allstate Ins. Co. v. Patterson*, 904 F. Supp. 1270, 1995 U.S. Dist. LEXIS 15975 the Central District Court in Utah held that whether the acts of minors accused of sexual abuse constituted an "accident" under the homeowner policy was a question of fact and since there was a possibility of coverage under the policy the insurer had a duty to defend. The underlying complaint alleged that three boys between the age of 12 and 6 engaged in inappropriate sexual conduct with two boys between the ages of 5 and 8.

In *Country Mut. Ins. Co. v. Hagan*, 298 Ill. App. 3d 495, 698 N.E.2d 271, 1998 Ill. App. LEXIS 524, 232 Ill. Dec. 433, the question remained as to whether homeowner's policy exclusion for intentional acts precluded coverage where a minor insured intended to injure another by sexually assault. There, whether an intent to injure may be inferred when a minor insured sexually abuses another minor was an issue of first impression in Illinois. The insured

was only 14 at the time of the alleged sexual acts and has not been charged with any criminal offense. The court noted that although a clear majority of courts in other jurisdictions infer intent when the insured is an adult (Scudder, 201 Ill. App. 3d at 927-28), the courts are evenly split with respect to the extension of this inference to minors. While a slight majority of courts are willing to infer as a matter of law that a minor insured who sexually abuses another minor does so intentionally (*Allstate Insurance Co. v. Steele*, 74 F.3d 878 (8th Cir. 1996) (holding that, under Minnesota law, a 16-year-old's intent would be inferred); *B.B. v. Continental Insurance Co.*, 8 F.3d 1288 (8th Cir. 1993) (under Missouri law, intent was inferred for perpetrator who was 13 to 16 years old at the time of the abuse); *Allstate Insurance Co. v. Bailey*, 723 F. Supp. 665 (M.D. Fla. 1989) (finding a 15-year-old's intent inferred under Florida law); *Allstate Insurance Co. v. Roelfs*, 698 F. Supp. 815 (D. Alaska 1987) (16-year-old's intent as inferred under Alaska law); *D.W.H. v. Steele*, 512 N.W.2d 586 (Minn. 1994) (inferring the intent of an 11-year-old); *Illinois Farmers Insurance Co. v. Judith G.*, 379 N.W.2d 638 (Minn. Ct. App. 1986) (intent was inferred for perpetrator who was 13 to 16 years old at the time of the abuse); *Cuervo v. Cincinnati Insurance Co.*, 76 Ohio St. 3d 41, 665 N.E.2d 1121 (1996) (inferred-intent standard applied to 16-year-old); see also *Swentkowski v. Dawson*, 881 P.2d 437 (Colo. Ct. App. 1994) (relying on both the inference of intent and an adjudication of delinquency to find that a minor acted intentionally)), almost as many jurisdictions have refused to extend the presumption of intent to minor insureds (see *Allstate Insurance Co. v. Patterson*, 904 F. Supp. 1270 (D. Utah 1995) (under Utah law, inferred-intent standard did not apply to perpetrators who were 12 to 16 years old at the time of the abuse); *Allstate Insurance Co. v. Jack S.*, 709 F. Supp. 963 (D. Nev. 1989) (under Nevada law, refusing to infer intent of 14-year-old); *United Services Automobile Ass'n v. DeValencia*, 190 Ariz. 436, 949 P.2d 525 (1997) (refusing to infer intent of 14-year-old); *Fire Insurance Exchange v. Diehl*, 450 Mich. 678, 545 N.W.2d 602 (1996) (refusing to infer intent of perpetrator who was 7 to 9 years old at the time of the abusive acts)).

Likewise in Nat'l Cas. Co. v. Jewel's Bus Co., 880 F. Supp. 2d 914, 2012 U.S. Dist. LEXIS 102462, 2012 WL 3023315 where an alleged sexual assault of a student on a school bus took place by an employee of Jewel's Bus Company, in considering a business auto policy the court held that the Sexual and/or Physical Abuse Exclusion was ambiguous and must be narrowly construed to exclude only claims involving "active participants" in the sexual abuse. The Court granted summary judgement finding no coverage for the actor but required a defense for Jewel and the Board of Education.

### C.   Contractual Liability Exclusion is not a bar to any coverage.

Any breach of contract exclusion is inapplicable and notwithstanding same and at all times material hereto was operating as and conducting school bus operations. Any and all responsibilities that inure to school transportation are covered risks. In *Lebanon Coach Co. v. Carolina Cas. Ins. Co.,* 450 Pa. Super 1; 675 A.2d 277 (1996 Pa. Super) a child was injured in a traffic accident as she exited a school bus on her way to school. The court held that the insurance provider had been explicitly contracted to provide coverage to appellee bus company and, because appellant's injury occurred in violation of appellee bus company's duty as a common carrier that the provider was obligated to provide a defense. The court in *Lebanon Coach Co*. stated in order to decide whether a claim comes within the insurance policy's coverage, we must first ascertain the policy's scope. Moreover, the proper focus of this scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved. At all times material hereto, Brimar sought to obtain the appropriate coverage for their operation of school vans transporting school students to and from school specifically in this case, children of special needs.

### V.   CONCLUSION.

The instant matter is clearly distinguishable from all of the cases cited by National

wherein here, the alleged actor is not a party to the underlying case, has specifically alleged not to have the capacity to understand and comprehend what he had done and has not been criminally charged. There is a clear separation between the actor that actively participated in the alleged sexual molestation and/or abuse and the insured.

Issues of fact exist as to how the exclusionary language in the National Policy differs from the standard language and the language of the Insurance Services Office, Inc. "ISO" used in the cases cited by National. The exclusion language has been specifically crafted to create additional means of exclusion, this does not conform to the plain reading and understanding of the exclusion and the reasonable expectations of the insured in obtaining the policy. Brimar has alleged that they purchased the necessary insurance under the circumstances as required by the School District for the transportation of students to and from school. The alleged injuries sustained in the Underlying Complaint are the type of injuries that are reasonably contemplated to be covered by the bus carrier when there is an altercation/incident as alleged between two minor students being transported home. There is no allegation of any intentional act being committed by Brimar itself. The difference in understanding of the coverage under the policy by Brimar and National creates a material issue of fact. Additional discovery is required to examine the history and policy of the changes to the policy from the original language of the "ISO" to the actual one. Discovery would also reveal the explanations, representations and inducements made by the producer of said policy to Brimar. The training and guidance supplied by National to the producer, etc. Discrepancies exist between the explanations of issuance of insurance, the amount of coverage and the type of coverage and those covered, and the actual coverage provided under the policy as presented by National. Discovery is underway in the underlying suit and depositions have been scheduled that will provide additional factual clarity in this matter. Discrepancies create material issues of fact which must be resolved for the above reasons. Alternatively, the potential for coverage for claims in the underlying case require a clear factual

picture to delineate and determine coverage requiring National's defense to continue at this time. The Motion for Judgment on the Pleading by National must be dismissed and any other matters should be stayed pending resolution of the underlying action.

Respectfully submitted,

Dated: May 3, 2019

LEBOVITZ & LEBOVITZ, P.A.

/s/Stephen H. Lebovitz
Stephen H. Lebovitz, Esquire
shl@lebovitzlaw.com
Robert A. Lebovitz, Esquire
ral@lebovitzlaw.com
Lebovitz & Lebovitz, P.A.
2018 Monongahela Avenue
Pittsburgh, PA 15218-2510
(412) 351-4422
Attorneys for Defendant, Brimar Transit, Inc.