UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| BRIMAR TRANSIT INC., | ) ) |
| Defendants, | ) ) |
| and | ) ) |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, additional insured | ) ) ) |
| Intervenor Defendant. | ) ) ) |

Civil Action No. 2:18-cv-1129

## **INTERVENOR DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Intervenor Defendant, Pittsburgh Public School District (the "District" or "Pittsburgh Public Schools") respectfully requests that the Court deny Plaintiff, National Liability & Fire Insurance Company's ("National" or the "Insurer") motion for judgment on the pleadings. The Pleadings establish that the District is an additional insured under the insurance policy, and that National owes a defense to Brimar Transit Inc. ("Brimar") and to the District in the underlying suit. In the alternative, issues of material fact remain to be resolved with respect to National's claims and the District's counterclaim. Should the Court determine that issues of material fact remain, the District respectfully requests that the Court stay this case pending the resolution of the underlying suit so that Brimar's defense in that suit is not disrupted, and the issues of National providing a defense and indemnity can be determined together in this case.

## I. Legal Standards

### a. Judgement on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Minnesota Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001). The Court generally cannot consider matters outside of the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997). A court, however, may appropriately consider a document attached to the complaint, a document "integral to or explicitly relied upon in the complaint," or an otherwise indisputably authentic document. Id. (citations omitted).

"[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery. Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1368 (1969)).

### b. Interpretation of an Insurance Contract

"In order to decide whether a claim comes within the insurance policy's coverage, we must first ascertain the policy's scope. Moreover, the proper focus of this scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved." Lebanon Coach

Co. v. Carolina Cas. Ins. Co., 675 A.2d 279, 283 (Pa. Super. 1996) (citing Butterfield v. Giuntoli, 670 A.2d 646, 652-53 (Pa. Super. 1995) *allocator denied by* Butterfield v. Mikuta, 683 A.2d 875 (Pa. 1996)).

Under Pennsylvania Law, the duty to defend is separate and distinct from the duty to indemnify. Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. 574, 533 A.2d 1363, 1368 (Pa. 1987) ("[t]he duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage."). An insurer has a duty to defend whenever the allegations in a complaint set forth a claim which potentially falls within the coverage provided by the policy. Lucker Mfg. Inc., v. The Home Ins. Co., 23 F.3d 808, 821 (3d Cir. 1994); Cadwallader v. New Amsterdam Cas. Co., 396 Pa. 582, 152 A.2d 484, 488 (Pa. 1959). The duty to defend is triggered even if the allegations against the insured are groundless, false or fraudulent. D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986). It likewise arises when the potential for a covered claim exists and the determination of coverage depends upon the existence or non-existence of undetermined or disputed facts. Germantown Ins. Co., v. Martin, 595 A.2d 1172, 1174 (Pa. Super. 1991). Where a complaint raises a claim potentially within the scope of coverage, the duty to defend remains with the insurer until the claim is narrowed to one patently outside the policy coverage. Id.

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).

**II.     Argument**

The District respectfully requests that National's Motion for Judgment on the Pleadings be denied for the following reasons: a) the District is an additional insured; b) the underlying injury was the result of the ownership and/or use of the school van/bus; c) the sexual abuse exclusion does not apply; d) the contractual liability exclusion does not apply to the contract between Brimar

3

and the District; e) the Court should look to extrinsic evidence after discovery to determine if the Policy is ambiguous; and f) the District pled sufficient facts to support a plausible contract claim.

### a. The District is an additional insured.

National argues that the District is not an additional insured under the purported Policy, because its name does not appear on the face of the Policy. The District is an additional insured under the Policy, because there are allegations in the underlying Complaint filed in the Court of Common Pleas of Allegheny County at M.M. v. Brimar Transit, Civ. No. GD 18-003257, that the District is liable for the conduct of Brimar. In the alternative, there are material facts which remain to be resolved with respect to whether the District is a named additional insured.

> Section II (A) (1) provides for who is covered as an insured under the Policy:
> 1. Who is an insured
>    The following are "insureds"
>    \*\*\*
>    c. Anyone liable for the conduct of an "insured" described above, but only to the extent of that liability

(Policy, Doc. No. 46-2, p. 60, Section II (A) (1)(c)).

Although the District denies that it has any liability in the underlying case, the underlying complaint is replete with allegations that the District is liable for the conduct of Brimar, its agents, representatives and/or employees. The gist of the underlying complaint against the District is that the District and Brimar made an agreement to keep the two students separate while Brimar transported the students on Brimar's bus. Underlying Plaintiff alleges that Brimar's driver failed to keep the students separate, failed to prevent the alleged sexual assault, and failed to stop it once it started. Underlying Plaintiff alleges that the District is liable for the driver's conduct in breaching the alleged agreement. Although ultimately the District contends that it will not be held liable for Brimar's conduct, for purposes of the insurer's evaluations of whether to provide a defense, the allegations in the underlying Complaint include allegations that the District is liable

4

for Brimar's driver's conduct and therefore, coverage must be afforded to the District as a named, additional insured.

In the alternative, there are material facts yet to be resolved with respect to whether the District is a named additional insured on the purported Policy.  National argues that the District's name does not appear on the face of the Policy.  The District does not know whether the Policy attached to the Complaint is an authentic copy of the policy actually issued to Brimar.  National's attorney thinks it is, and the District is not challenging the attorney's veracity.  The District, however, has evidence tending to show that the purported Policy may not be the actual policy and has made allegations raising material questions of fact with respect to whether the District is a named additional insured on the actual policy.

For example, in paragraph 21 of its Answer, the District denied that Exhibit B was the entire policy issued to Brimar and explained, "It is denied that the document attached as Exhibit B is the entire Policy or all the policies issued by National.  National certified in writing to the District that it issued a Commercial General Liability ("CGL") policy in addition to the Business Auto policy, and that the District was a named insured on that policy."  In paragraph 23, the District denied that it was not an insured under the National Policy and explained, "National certified in writing that the District was a named insured under both the Business Auto policy and the CGL policy."  The District further alleged in its Affirmative Defenses and Counterclaim that:

> 63.    National and Brimar intended the District to be an additional insured under both the CGL Policy and the Auto Business Policy.
> 64.    At the time it contracted with Brimar, National knew of Brimar's contract with the District.
> 65.    At the time it contracted with Brimar, National knew that Brimar's contract with the District required the District to be an additional insured under the policy.
> 66.    At the time it contracted with Brimar, National knew that Brimar's contract with the District constituted an insured contract, generally and as that term is defined in the policies.
> 67.    At the time it contracted with Brimar, National agreed to name the District as an additional insured under the policies.

5

> 68.   National represented to Brimar that the District was an additional insured under the policies.
> 69.   National represented to the District that the District was an additional insured under the policies
> ................................................................
> [Counterclaim]
> 2.   National issued a CGL Policy and a Business Auto Policy to Brimar which insured Brimar for covered losses sustained in its business providing transportation to students of the District.
> 3.   The District contracts with Brimar for the safe transportation of certain students to and from school.
> 4.   Brimar's contract with the District requires Brimar to defend and indemnify the District for claims arising from the contract.
> 5.   Brimar's contract with the District requires Brimar to maintain insurance coverage of at least $1,000,000 per occurrence ($5,000,000 umbrella) and to name the District as an additional insured under those insurance policies.
> 6.   Brimar's contract with the District constitutes an insured contract.
> 7.   National agreed to name the District as an additional insured on its CGL and Business Auto policies issued to Brimar.
> 8.   National represented to the District that it was an additional insured on a CGL Policy issued to Brimar with $2,000,000 aggregate coverage and a Business Auto Policy issued to Brimar for $1,000,000 single limit coverage.

(Doc. No. 48.)  For purposes of National's Motion for Judgment on the Pleadings, the Court should construe these allegations, and any reasonable inferences, in favor of the District.  The District contends that a reasonable inference can be drawn to conclude that the parties knew and intended the District to be a named additional insured on the Policy, and that the District was listed in the Policy that was actually issued.  The intention of National to insure the risk of Brimar's contract with the District is also evidenced by the contractual exclusion which does not exclude an "insured contract," of which the Brimar/District contract is one.

There are many issues of material fact to be explored in discovery before a fact finder can make a determination about whether the District is an additional insured.  For example, who completed the certificate certifying that the District is an additional insured on the policies?  Why did they so certify? Were they working from a copy of the policy that actually listed the District? Did they intend to add the District as a named insured after certifying that the District was an additional insured?  Even if it turns out, despite the clear

intentions of the parties, that the District was not listed as a named additional insured on the authenticated Policy, there are several material facts to be resolved with respect to the District as an additional insured. What were the reasonable expectations of the District and Brimar, based upon the representations made by National and its agents? Why was the District omitted from the Policy? Mistake? Clerical Error? Fraud or misrepresentation? The District needs discovery to resolve these issues.

### b. The underlying injury was the result of the ownership and/or use of the school bus.

In its argument on the ownership or use of the school bus, National conflates two distinct concepts under Pennsylvania law: proximate cause/legal cause and "but for" causation. It is true that when a policy uses the phrases "arising out of" or "resulting from" the ownership or use of a vehicle that there must be some nexus between the injury and the ownership or use of the vehicle. Pennsylvania law, however, does not require proximate or legal cause in such a situation. See Lebanon Coach Co. v. Carolina Cas. Ins. Co., 675 A.2d 279, 289 (Pa. Super. 1996). As the Court in Lebanon Coach, explained:

> Assuming, without deciding, that she was no longer an occupant of the bus, Miss Lehman's injuries were nevertheless sustained as a result of the "use" of the COLT-owned bus driven by Lebanon Coach. "The phrase 'arising out of means causally connected with, not proximately caused by.' 'But for' causation, *i.e.,* a cause and result relationship, is enough to satisfy this provision of the policy."

Id. (quoting Lucas-Raso v. American Manufacturers Insurance Company, 657 A.2d 1, 3 (Pa. Super. 1995), allocatur denied 668 A.2d 111 (Pa. 1995)). Similarly, the Pennsylvania Superior Court in State Auto. Ins. Asso. v. Kuhfahl, 527 A.2d 1039 (Pa. Super. 1987) explained:

> When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured. Had the insurer desired to limit its liability to accidents with such a close causal connection to the ownership, maintenance or use of the trailer as to be encompassed within the scope of proximate causation, it could have and should have so stated in its policy.

> Construed strictly against the insurer, "arising out of"[1] means causally connected with, not proximately caused by. "But for" causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.

Id. at 1043.  This standard is met in the instant case.  The minor female student would not have suffered her injuries "but for" her use of the bus as an occupant of the bus, and the alleged inattentiveness of the bus driver.  One of the allegations central to underlying Plaintiff's Complaint against the District is that the injury could have been avoided if the students were placed on a different bus, or if Brimar had provided a bus monitor, in addition to the driver on the van.  Brimar uses the van specifically to transport students safely to and from school.  The alleged injury to the minor female student was a direct result of Brimar's alleged failure to safely transport and monitor students on its bus, and therefore, was a direct result of Brimar's use of the bus/van.

In Lebanon Coach, the Lebanon Coach Company was using its bus to transport children to and from school.  The bus stopped at an intersection to discharge its high school students.  "Paula Jo Lehman, then a minor, stepped off of the bus onto the sidewalk, walked the length of the bus to the corner crosswalk, and, walking behind the bus, began crossing the street to the high school.  While the bus remained stationary, a car driven by Beth McKinney turned onto Cornwall Road from Hauck Street and struck Paula Jo pushing her and then pinning her to the bus."  Lebanon Coach, 675 A.2d at 281-82.  In determining whether Paula Jo's injuries resulted from the ownership or use of the bus, the Court stressed the importance of the overall context and nature of the underlying business and insurance contract.  The Court must consider the use that the bus company had planned for the bus as well as the bus companies' reasonable expectation in acquiring the insurance.  See Id. at 283.  ("In order to decide whether a claim comes within the insurance policy's coverage, we must first ascertain the policy's scope.  Moreover, the proper focus of this

---

[1] In Kuhfahl, the Superior Court was construing the language "arising out of" rather than "resulting from." Nevertheless, in Lebanon Coach, the Superior Court found the phrases synonymous in this context.

8

scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved.") (citation omitted.) See also, Id. at 290. (noting that the phrase "use of a motor vehicle" has been interpreted to include occupying a vehicle, and that the term 'use' "must be considered with regard to the setting in which it is employed.")

In considering the use to which the bus company put its buses, the Court examined the duty of the bus company to its minor student passengers. "[Lebanon Coach] by contract accepted a grave responsibility to carry children to and from school, and in discharge of this duty it was bound to exercise the highest practical degree of care." Id. at 291 (quoting Vogel v. Stupi, 53 A.2d 542, 545 (Pa. 1947)). The Court opined that the bus company had a duty to transport minor students safely to their destination, and the passengers' minor status heightened that duty. Id. 290-91. ("In the instant case, we opine that Lebanon Coach had a duty to carry Paula Jo Lehman safely to her destination and afford her an opportunity to alight safely. Whereas in Tyler v. Insurance Company of North America, supra, the place of safety where the bus company's duty to its passenger ended was the shoulder of the road, instantly, we conclude that Lebanon Coach's duty to minor Paula Jo Lehman continued until Miss Lehman reached the safety of the other side of the immediate street she had to cross to reach her school.") The Court essentially concluded that because the injury occurred within the parameters of the bus company's duty to keep the minor student passengers safe, the injury resulted from the use of the school bus. Id. at 290-92.

In this case, the Court must look to the context of the insurance contract and Brimar's reasonable expectations of coverage. Brimar is in the business of safely transporting minor students to and from school. Brimar had a contract with the District to provide such safe transportation of students, and had a duty, through its contract, to obtain insurance to satisfy its contractual obligations. National knew of Brimar's business when it entered into the insurance

9

contract with Brimar, and knew that Brimar contracted with the District to safely transport students (including special needs students) to and from school. Brimar, and the District, had a reasonable expectation that the insurance covered not only injuries caused by collisions with other vehicles, but also injuries occurring within the vans/busses and caused by Brimar's alleged failure to properly monitor the minor students it was transporting. This is especially true in this case where National is now disclaiming the CGL Policy and alleging that it only sold an auto policy that merely covers collisions. No reasonable carrier/broker would sell a school bus company a policy that did not cover the duty of the bus company to safely transport minor students to and from school, in addition to bus crashes, where that bus company has clearly detailed its business activities. In this context, Brimar's use of the vehicles includes the operation of the vehicle as well as monitoring the minor students while they occupy the van. Because the minor student was injured while a passenger of the van, the injury resulted from the use of the van.

### c. The Sexual Abuse Exclusion does not apply.

The sexual abuse/molestation exclusion does not apply, because it only applies to negligent supervision claims of an employee when that employee actually committed the alleged sexual abuse/molestation. At the very least, the District's interpretation of the exclusion is reasonable, rendering the exclusion ambiguous, and thus, requiring that it be construed against the insurance carrier. The exclusion provides in relevant part:

> This insurance does not apply to bodily injury or property damage arising out of:
>
> (a) the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone of any person; or
> (b) the negligent:
> (i) employment;
> (ii) investigation;
> (iii) supervision; or
> (iv) retention;

10

> (c) the reporting to authorities or failure to report to authorities the alleged, actual or threatened abuse, molestation or sexual contact by anyone of any person.

(Policy, Doc. No. 46-2, p. 90.) Section (a) appears to be all inclusive, excluding any claims arising from sexual abuse, no matter who committed the act. Section (b), however, contains a limitation which qualifies section (a), when both are read together. Section (b) excludes claims for the negligent employment, investigation, supervision, or retention of anyone . . . whose conduct would be excluded by (a) above."

In this case, the only person whose conduct would be excluded by (a) above would be the minor male student. In other words, while section (b) would exclude negligent supervision claims against an employer if the employee were the actual offender, section (b) would not exclude negligent supervision claims against an employer where the employee did not commit the sexual abuse/assault, as was the case here.

This interpretation is consistent with the legal notions that different provisions in a contract should be read together, so as to give all the words meaning, and that a general subpart is limited by a more specific subpart, later or earlier in the pertinent exclusion.

Reading both sections (a) and (b) together, consistently, claims are excluded that arise from a sexual assault, as are claims for negligent supervision of individuals who commit a sexual assault, but claims of negligent supervision for individuals who did not commit the sexual assault are not excluded. This latter scenario is the case here, where Plaintiff asserts negligent supervision claims against Brimar and the District for employees who did not commit the sexual assault and therefore, whose conduct is not excluded by section (a).

Section (a) describes a very broad exclusion, while section (b) provides a more specific exclusion and exception to the exclusion. It is well settled under Pennsylvania contract law that

11

where a general provision is followed by a more specific provision, the specific provision qualifies or limits the general provision. See e.g. Metzger v. Clifford Realty Corp., 476 A.2d 1, 6 (Pa. Super. 1984) ("Specific provisions of an instrument will be regarded as qualifying the meaning of broad general terms. Paragraph 5(b) being more specific, it qualified the general language of paragraph 4(b).") (citing In re Alloy Manufacturing Co. Employees Trust, 192 A.2d 394 (Pa. 1963)); See also Musko v. Musko, 697 A.2d 255, 256 (Pa. 1997) ("When specific or exact provisions seem to conflict with broader or more general terms, the specific provisions are more likely to reflect the intent of the parties than the general provisions."); Clairton Slag, Inc. v. Dep't of Gen. Servs., 2 A.3d 765, 773 (Pa. Commw. 2010) ("specific provisions ordinarily qualify the meaning of general provisions,"); Great American Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 247 (3d Cir. 2008) ("We must also keep in mind that specific provisions ordinarily control more general provisions.")

In a similar case, Nat'l Cas. Co. v. Jewel's Bus Co., 880 F. Supp. 2d 914 (N.D. Ill. 2012), an insurance coverage/declaratory judgment dispute arose over a sexual abuse exclusion where a private bus company's driver molested a student during transport.

Aside from the one main difference, that here, a minor male student, and not the driver committed the alleged assault, the remaining facts are similar to this case:

> The underlying litigation stems from the alleged sexual assault of J. Doe on a school bus by Willie Bledsoe ("Bledsoe"). Bledsoe was employed by Jewel's Bus Company ("Jewel's") as a bus driver. At the relevant times, the City of Chicago Board of Education ("Board") and Chicago Public Schools ("CPS") contracted with Jewel's to provide transportation for children to and from school. J. Doe required "paraprofessional support" relating to transportation, meaning that an aide was required to be present on the school bus with him. However, for a period of about five days in September 2009, J. Doe was transported to school on the bus without an aide or attendant present. During this period, on September 15, 2009, Bledsoe picked up J. Doe from his home, purportedly to transport the child to school. On that day, Bledsoe instead restrained J. Doe for the entire school day and sexually assaulted J. Doe while on the school bus. Bledsoe threatened J. Doe and

>   warned him not to tell anyone about the sexual assault or the fact that he
>   had not been to school that day.

Id. at 915.  National Casualty issued a business auto policy to Jewel's, and the Board was named as an additional insured on the policy. The terms of the insurance agreement between National Casaulty and Jewel's/Board provided:

>   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

Id. at 916.  The policy also included an exclusion for sexual abuse. The "Sexual and/or Physical Abuse Exclusion," provided:

>   This policy does not apply to "bodily injury," "property damage" or "personal injury" sustained by any person arising out of or resulting from "sexual and/or physical abuse" by any person who actively participates in any act of "sexual and/or physical abuse."
>
>   We shall have no duty to defend any "suit" against you seeking payment in connection with any claim made against you for "sexual and/or physical abuse."
>
>   The following Definition is added to the policy:
>
>   "Sexual and/or physical abuse" means any sexual or physical injury or abuse action or behavior, including but not limited to assault and battery, negligent or deliberate touching, corporal punishment and mental abuse.
>
>   All other terms and conditions remain unchanged.

Id.  The first paragraph limited the exclusion to "any person who actively participates" suggesting that the exclusion only applied to the bus driver and not to the District.  However, the second paragraph seems to say that the exclusion applies to "any suit" against the District for sexual abuse, whether or not the District was an "active participant."  The Court found that the exclusion was ambiguous and construed it in favor of the District.  The Court found that the specific exclusion limited the more general exclusion, and concluded that the exclusion applied only to direct claims against the bus driver, but not to those claims brought against the District.  Id. at 917.

13

The District's interpretation is also consistent with the rule against superfluidity that requires that a Court give effect to all the provisions of a contract, and not read one provision to render another provision superfluous. See e.g. Lee v. Sixth Mount Zion Baptist Church of Pittsburg, Civil Action No. 15-1599, 2017 U.S. Dist. LEXIS 133858, at *60-61 (W.D. Pa. Aug. 22, 2017) ("The rule is the principle that the court will not read one provision so as to render another provision of the contract superfluous.") (citing *Rcn Corp. v. Paramount Pavilion Grp., LLC.*, 164 F. App'x 291, 296 (3d Cir. 2006); see also Dubrosky v. Colonial Life & Acc. Ins. Co., 129 F. App'x 691, 693 (3d Cir. 2005) ("This interpretation must be rejected under the cardinal principle that each term of a contract should be given meaning so that no term is superfluous.")) In this case, interpreting section (a) of the exclusion as proposed by National would render section (b) superfluous and meaningless. The Court must interpret the Policy to give effect to section (b) of the exclusion.

The District maintains that the exclusion at issue here only excludes negligent supervision claims for an employee who committed a sexual molestation/abuse, but does not exclude negligent supervision claims where the employee/driver did not commit the sexual abuse/molestation. At the very least, the exclusion is ambiguous and should be construed against the carrier. Therefore, the exclusion does not apply in this case.

### d. The Contractual liability exclusion does not apply to the contract between Brimar and the District.

The contract between the District and Brimar qualifies as an "insured contract" under the Policy and therefore, is not excluded by the contractual liability exclusion. The contractual liability exclusion in the Policy provides in relevant part:

> B. Exclusions
>    This insurance does not apply to any of the following:
>    2. Contractual
>         Liability assumed under any contract or agreement.
>         But this exclusion does not apply to liability for damages:

a.  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement;

(Policy, Doc. No. 46-2, p. 61.)  The contractual liability exclusion does not apply to an "insured contract."  The Policy defines an "insured contract" as:

H.  "Insured Contract" means:
\*\*\*
5.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Id. at p. 69.  The contract between the District and Brimar meets the definition of an insured contract.  The indemnification agreement pertains to Brimar's business, and under the indemnification agreement, Brimar assumes the tort liability of the District to pay for bodily injury or property damage to a third party.

### e. The Court can look to extrinsic evidence after discovery to determine if the Policy is ambiguous.

If the Court accepts both National's and the District's interpretations of the ownership and use requirement as well as the sexual abuse exclusion, then the Policy is ambiguous.  If the Policy is ambiguous, it must be construed in favor of the District and against National.

In the alternative, if the Court does not find a patent ambiguity, it can consider extrinsic evidence produced during discovery to determine if there is a latent ambiguity.  Should the Court take this course of action, the District urges the Court to stay this case pending the resolution of the underlying suit so that Brimar's defense in that suit is not disrupted, and the issues of National providing a defense and indemnity[2] can be determined together.

---

[2] Until the underlying suit is resolved, the question of indemnification is not ripe for decision.  See e.g. Neth. Ins. Co. v. Butler Area Sch. Dist., 256 F. Supp. 3d 600, 603 n.4 (W.D. Pa. 2017) ("The Court confines its analysis to whether there is a duty to defend, as the issue of indemnification is not yet ripe. The Court will stay and administratively close

15

A contract is ambiguous if it is "reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." Metzger, 476 A.2d at 6. "Ambiguities may be either patent or latent. A patent ambiguity appears on the face of the instrument and arises from the defective, obscure, or insensible language used. Latent ambiguities arise from extraneous or collateral facts which render the meaning of a written contract uncertain although the language, on its face, appears clear and unambiguous." Id. (citing Steuart v. McChesney, 444 A.2d 659 (1982)).

"Pennsylvania law permits courts to examine certain forms of extrinsic evidence in determining whether a contract is ambiguous." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995). In making the ambiguity determination, the Court must "'consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Id. (citations omitted.) See also, Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980) ("If a reasonable alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact finder.") (citing Corbin, Contracts § 542.)

The Pennsylvania Supreme Court has recognized that the parties' "course of performance is always relevant in interpreting a writing." Norfolk S. Ry. v. Pittsburgh & W. Va. R.R., 101 F. Supp. 3d 497, 525 (W.D. Pa. 2015) (citing Atl. Richfield Co. v. Razumic, 390 A.2d 736, 741 n.6 (Pa. 1978); see also Pennsylvania Eng'g Corp. v. McGraw-Edison Co., 459 A.2d 329, 332 (Pa.

---

this case pending the conclusion of the Tait litigation."); See also Peerless Ins. Co. v. Pa. Cyber Charter Sch., 19 F. Supp. 3d 635, 650 (W.D. Pa. 2014) ("The Court will leave it to the Fayette County Court of Common Pleas to characterize the conduct and relief, if any, for which PA Cyber is found liable and then, as necessary, revisit the indemnity issue in this case. Consequently, the Court will stay and administratively close this case pending the outcome of the Underlying Lawsuit, and will take up the scope of the indemnification issue at such time as a judgment, order, or settlement makes it ripe for adjudication.")

1983) ("[Plaintiff's] contention is premised on an erroneous belief that a writing must be ambiguous in order to justify consideration of the parties' post-agreement conduct.")). "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning." Id. (quoting Atl. Richfield Co., 390 A.2d at 741 n.6 (quoting Restatement (Second) of Contracts § 228 cmt. g (Tent. Draft No. 5, 1970))). "Additionally, the court must interpret "trade terms, legal terms of art, numbers, common words of accepted usage and terms of a similar nature . . . in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent." Id. at 226 (citations omitted.)

The District has some relevant evidence to show ambiguity, but seeks discovery to uncover additional evidence. The parties' course of performance is appropriate extrinsic evidence for the Court to consider to determine whether the Policy is ambiguous. In this case, National provided a defense to Brimar. While providing a defense by itself does not establish a waiver by National, it is evidence of the parties' intentions and interpretation of the contract. If an exclusion is clear and unambiguous on its face, there is no reason to provide a defense. The District needs to explore deeper the parties' course of performance in National providing a defense to Brimar. For example, what investigation did National make of the claim in making the decision to defend? What admissions did National make in coming to its decision? Did National know the provision could be reasonably interpreted in more than one way? What evidence of the parties' intent is in the claims file?

Likewise, the Court can consider the parties' course of dealing to uncover the intentions of the parties. What representations did National's agents or Brokers make to Brimar to inform Brimar's reasonable expectation that claims such as these would be covered? Both Brimar and the District have alleged that they had a reasonable expectation that these claims were covered.

Was this exclusion included in previous policies issued by National? Was the language changed? Why or Why not?

In addition, the Court must consider industry standards and terms of art in the context of commercial liability insurance coverage for school bus companies. For example, in this context, when the sexual abuse exclusion uses the terms "negligent employment," "negligent investigation," "negligent supervision," or "negligent retention," the exclusion is referencing employees of the insured or agents of the insured for whom the insured may be vicariously liable. National seems to be arguing that "negligent supervision" refers to supervision of the passengers. That is inconsistent with the common and usual usage of that term in the industry. It is especially disingenuous in this case where National is arguing that the Policy does not cover supervision of passengers, because it is not a "use" of the school bus.

The two cases cited by National for the proposition that "Pennsylvania courts have universally enforced sexual abuse exclusions similar to the one at issue here," were both interpreted consistent with the District's interpretation of the exclusion – the exclusion only excludes negligent supervision of employees claims when that employee committed the alleged sexual abuse. See 12th Street Gym, Inc. v. Phila. Indemnity Ins. Co., Civ. A. No. 03393, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006); Pa. State Univ. v. Pa. Manufacturers' Ass'n Ins. Co., Civ. A. No. 03195, 2016 WL 2737438 (Pa. Com. Pl. May 4, 2016). By citing those two cases with "similar" sexual abuse exclusions, is National admitting that it intended the exclusion in this case to be consistent with the exclusions in those cases? If not, the District needs the drafting history and underwriting files to determine National's intention.

The District has pled facts in its Answer, Affirmative Defenses, Counterclaim and Crossclaim that raise these issues of material fact. (See Answer, Doc. No. 48, ¶¶ 84-102.) Should the Court not find the Policy at least patently ambiguous, the District respectfully requests

discovery to uncover objective evidence for the Court to use in determining whether the Policy is latently ambiguous.

### f. The District pled sufficient facts to support a plausible contract claim.

In its Counterclaim against National, the District alleged that it had a contract with National for National to defend and indemnify the District with respect to the underlying suit. National breached that agreement by failing to provide a defense in the underlying suit. The District was damaged by incurring attorneys' fees and costs to defend the underlying suit in which National should have accepted the defense of the District.

The District has pled several alternative theories for its contract with National: an express written agreement; an implied in fact agreement; and an implied in law agreement (promissory estoppel).

With respect to the express written agreement, the District alleged that it is an additional insured under the Policy and/or that it is a named insured under either the Business Auto Policy or CGL Policy that the District will seek to acquire in discovery. (See e.g. Answer, Affirmative Defenses, Counterclaim and Crossclaim, Doc. No. 48, ¶¶ 62-69, 72-75, 77-79, Counterclaim ¶¶1-20.)

With respect to the implied in fact agreement, the District alleged that the parties intended the District to be a named additional insured under the Policy, but was left off of the Policy for some unknown reason, to be determined in discovery (mistake, error, misrepresentation). (See e.g. Id. ¶¶ 62-69, 70-76, 77-79, Counterclaim ¶¶1-20.)

With respect to the implied in law agreement, the District alleged that the parties intended the District to be an named additional insured on the Policy, the parties represented to the District that they were in fact a named additional insured under the policies, the District relied upon those

representations to award the contract to Brimar, and the District is now allegedly stuck without any coverage. (See e.g. Id. ¶¶ 62-69, 70-76, 77-79, Counterclaim ¶¶1-20.)

There are material questions of fact to be resolved through discovery with respect to each of these theories. Should the Court determine that the District's factual allegations are insufficient, the District respectfully requests leave to amend its Counterclaim to add additional factual allegations.

### III. Conclusion

For the reasons set forth above, the District respectfully requests that this Honorable Court deny Plaintiff's Motion for Judgment on the Pleadings. The pleadings establish that the District is a named additional insured under the insurance policy, and that National owes a defense to Brimar and to the District in the underlying suit. The injury in the underlying suit was a result of Brimar's ownership or use of the van/bus, and the sexual abuse/molestation exclusion does not apply. In the alternative, issues of material fact remain to be resolved with respect to National's claims and the District's Counterclaim.

Respectfully submitted,

GOEHRING RUTTER & BOEHM

Date: May 3, 2019          By:   /s Matthew C. Fergus
                                 Matthew C. Fergus, Esquire
                                 Pa. ID#205506

                                 Frick Building
                                 437 Grant Street, 14th Floor
                                 Pittsburgh, PA 15219
                                 (412) 281-0587

                                 *Counsel for Intervenor Defendant,*
                                 *Pittsburgh Public School District*