THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY<br><br>      Plaintiff<br><br>v.<br><br>BRIMAR TRANSIT, INC.<br><br>      Defendant.<br>and<br><br>PITTSBURGH PUBLIC SCHOOL DISTRICT<br><br>      Intervenor-Defendant | Civil Action No. 2:18-cv-01129-NBF |

**NATIONAL LIABILITY & FIRE INSURANCE COMPANY'S
BRIEF IN REPLY TO DEFENDANTS' OPPOSITION TO NATIONAL'S TO MOTION
FOR JUDGMENT ON THE PLEADINGS**

Plaintiff National Liability & Fire Insurance Company ("National"), by and through its undersigned counsel, respectfully submits the following Reply Brief in response to defendants Brimar Transport, Inc. ("Brimar") and the Pittsburgh Public School District's ("the District") opposition to National's motion for judgment on the pleadings.

  **I.  INTRODUCTION**

Defendants fail to demonstrate that the bodily injury alleged in the underlying complaint resulted from the "ownership, maintenance, or use of a covered 'auto.'" As further explained below, they cannot. Furthermore, the Policy's Abuse or Molestation Exclusion (the "Exclusion") expressly bars coverage arising out of alleged, actual or threatened abuse, molestation or sexual contact, "whether or not intentional, by anyone of any person." Notwithstanding this clear and unambiguous language, defendants, without support, argue that the terms "by anyone" means "only by some people" (*i.e.*, only employees of an Insured), and that "whether *or not* intentional"

1

means "*only if* intentional." (S.D. Br., pp. 10-13; B. Br., pp. 11-16) Defendants have failed to offer a basis for circumventing the Exclusion and this alone requires judgment in favor of National.

## II. ARGUMENT

### A. Because the bus was merely the location of the assault, and not the cause of it, coverage is not triggered for the use or ownership of an auto.

The underlying complaint makes clear that the victim's injuries in this case were not caused by a bus; they were personally inflicted by an individual. Defendants nevertheless contend this case is analogous to *State Auto Ins. Assoc. v. Kuhfahl*, 527 A.2d 1039 (Pa. Super. 1987) and *Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 675 A.2d 279 (Pa. Super. 1996), where injuries occurred in the process of unloading or discharging a child from a motor vehicle. In marked contrast from the present case, the vehicles in those cases were the cause, and not the mere location, of the injuries. In *Kuhfahl*, a causal connection existed between the covered auto and the injuries sustained by the child passenger who was struck after alighting from a parked vehicle. "His location at the time the colliding car struck him was directly linked to where Mr. Kuhfahl stopped his car." *Id.* at 1044. Similarly, in *Lebanon Coach,* a student was struck by another vehicle after alighting from the school bus. 675 A.2d at 282. The court held that the subject injury resulted from the use of a covered vehicle because the injured child's location at the time of the accident was directly linked to the manner in which the bus driver had stopped the bus to discharge her. *Id.* at 291. In contrast, here, the bus's only connection to the injury is that it was the situs of the alleged abuse. The injuries inflicted were not caused by the auto and could have occurred anywhere.[1] *See Roach v. Port Authority of Allegheny County*, 550 A.2d 1346, 1350 (Pa. Super. 1988).

---

[1] Indeed, the underlying complaint alleges the victim was abused by the same student at various other locations. (Third Am. Comp ("TAC") of M.M., Exh. A to National's Second Am. Comp ("SAC"), Dkt. 46-1, ¶¶ 13, 15-16, 33)

2

### B. The Exclusion cannot be interpreted contrary to its express terms.

Pennsylvania law requires that insurance contracts be interpreted according to their express terms, and not given "strained" interpretations in an effort to establish coverage. *Madison Constr. Co. v. Harleysville Mut. Ins. Co*, 735 A.2d 100, 106 (Pa. 1999). This principle overrides defendants' arguments seeking to avoid or contradict the express wording of the Exclusion.

Contrary to Pennsylvania law, defendants impermissibly seek to have this Court rewrite the Exclusion so that, rather than applying to abuse by "anyone," it applies only to abuse by an employee of the insured. But they offer no support linguistically or legally as to how "by anyone" can be interpreted to mean "by only some people." Relying upon *Nat'l Cas. Co. v. Jewel's Bus Co*, 880 F. Supp.2d 914 (N.D. Ill. 2012), Defendants argue that if subparagraph "a" of the Exclusion is applied to a case of negligent supervision, that would make superfluous subparagraph "b," which also addresses negligent supervision (among other things). They contend this violates a rule of construction by which courts, in appropriate instances, have sought to interpret contract provisions to avoid improper redundancy. Defendants' positions, however, fail to recognize that unlike some insurance contract provisions, courts have held that *exclusion*s frequently do contain overlapping provisions or reflect a "belt and suspenders" approach, such that an interpretation allowing for redundancy is proper. "The term 'belt and suspenders' is sometimes used to describe the common tendency of lawyers to use redundant terms to make sure that every possibility is covered. 'That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants but only the cautious nature of the person wearing the pants.'" *U.S. v Carona*, 630 F.3d 917, 927 (9th Cir. 2011) (citation omitted); *American Empire Surplus Lines v. Chabad House,* 771 F. Supp.2d 1336, 1341 (S.D. Fla. 2011), *aff'd*, 450 Fed. Appx. 792 (11th Cir. 2011) (finding

no ambiguity when reading both subparagraphs of similar abuse or molestation exclusion together and noting that insurer probably included both paragraphs in an abundance of caution); *Nationwide Mutual Ins. Co. v. Illinois Cheer Extreme Athletics*, No. 12 C 9448, 2014 WL 1017664, *9 (N.D. Ill. Mar. 17, 2014) (overlap between sexual molestation exclusion and assault and battery exclusion did not create or evidence any ambiguity). Courts confronted with arguments regarding redundancy have held that overlapping provisions are not sufficient to disregard broad and unqualified exclusions contained in the policy. *See, e.g., In re SRC Holding Grp. v. Exec. Risk Indem., Inc.*, 545 F.3d 661, 670 (8th Cir. 2008); *TMW Enterprises, Inc. v. Federal Ins. Co.*, 619 F.3d 574, 578 (6th Cir. 2010) (noting that although courts often avoid interpreting contracts to contain superfluous words, this canon is a tool for dealing with ambiguity, not for creating ambiguity). Consistent with this analysis, courts have held coverage to be barred whenever subparagraph "a" of such an exclusion applies. *Hernández v. Colegio Y Noviciado,* Civ. No., 12-2052 (PAD), 2015 WL 1417052, *2 (D.P.R. Mar. 27, 2015) (the phrase "by anyone of any person" in the abuse exclusion means the policy excludes coverage for all claims related to sexual abuse, regardless of the involved parties); *Erie Ins. Exch. v. First United Methodist Church*, 690 F. Supp. 2d 410 (W.D. N.C. 2010).

Moreover, even if subparagraph "a" were deemed inapplicable based upon the "doctrine of superfluidity" (it is not), subparagraph "b" would bar coverage in light of the allegations in the complaint alleging negligent supervision by the Brimar driver. (M.M's TAC, Exh. A to National's SAC, Dkt. 46-1, ¶¶ 24-30, 57-71). Contrary to the District's contention that subparagraph "b" only applies where "supervision" of an insured's employee is at issue, subparagraph "b" uses no such language, but expressly applies to negligent supervision of "anyone … whose conduct would be excluded by (a) above …" As National explained it its moving brief, "anyone" plainly includes

4

the perpetrator in this case, whose misconduct is undisputedly alleged to have resulted from the Brimar driver's negligent supervision of him. Indeed, language similar to subparagraph "b" has been applied in situations where, as here, a minor under the supervision of an insured abuses another minor. *See*, *e.g.*, *Community Action for Greater Middlesex Cnty, Inc. v. American Alliance Ins. Co.*, 757 A.2d 1074 (Conn. 2000); *Hernández,* 2015 WL 1417052, *3. Accordingly, even if the erroneous approach in *Jewel's Bus Co.*, that subparagraph "a" does not apply to negligent supervision claims, were adopted (incorrectly), the Exclusion would still apply to bar coverage in this case, pursuant to subparagraph "b."

Brimar also contends the Exclusion cannot apply because the abuse and molestation alleged here may have been committed by one who could not "appreciate his actions were wrong." However, the Exclusion expressly states that it applies to any "sexual contact, whether or not intentional." Defendants do not dispute that the underlying action arises from sexual contact with the underlying claimant. Moreover, Brimar's argument has been explicitly rejected. *See*, *e.g.*, *Cmty. Action for Greater Middlesex County,* 757 A.2d at 1083; *Nautilus Ins. Company v. Our Camp Inc.*, 136 Fed. Appx. 134, 138 n. 2 (10th Cir. 2005). "[T]he exclusion at issue here, as well as common definitions of 'abuse' and 'molestation' do not require an element of intent." *Id.*

Brimar misguidedly relies upon *St. Paul Fire & Marine Insurance Co. v. Schrum*, 149 F.3d 878 (8th Cir. 1989), to argue that the alleged perpetrator's actions are separate and incidental to any negligence based claims made against Brimar. The *Schrum* case is a minority position that has been disfavored in this jurisdiction, as well as others. *See Nationwide Mut. Fire Ins. Co. v. Mr. and Mrs. K.*, *T.K, et al.,* Civ. A. No. 05-569, 2005 WL 3434081 (W.D. Pa. Dec. 13, 2005) (sexual harassment exclusion barred coverage for suit alleging negligence where all alleged injuries arose directly or indirectly from sexual harassment); *Nautilus,* 136 Fed. Appx. at 138 (noting that even

5

if a tort analysis indicated separate or concurrent causes of the abuse victim's injuries, the causes in the dispute all originated, or flowed from the abuse that occurred). In *Mr. K and Mrs. K*, this Court held that, the *Shrum* court "wrongly focused upon the various tortfeasors' actions rather than the language of the policy." 2005 WL 3434081, at *3. Likewise, here, Brimar ignores that the Exclusion bars coverage based upon what allegedly happened to the victim (*e.g.*, "sexual contact"), and is not dependent upon who was responsible or why.

Finally, defendants seek to invoke the doctrine of "reasonable expectations" to achieve a strained interpretation not supported by the language of the Exclusion. The reasonable expectations doctrine, however, applies only in the most limited of circumstances and is inapplicable here because it applies only: (i) to non-commercial insureds, (ii) where the policy wording is ambiguous, and (iii) where the insured avers facts demonstrating that prior to the loss it had a basis to conclude it would be covered for such a loss (here, molestation). *Madison Construction Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 n. 8 (Pa. 1999); *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co*., 941 A.2d 706, 717 (Pa. Super. 2007); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 567 (Pa. 1983). None of these circumstances exist in this case: (i) defendants are sophisticated entities, (ii) the Policy is unambiguous, and (iii) defendants have averred no facts that prior to the loss, National made any representation that would lead them to believe the Policy would provide coverage for molestation. Additionally, defendants overlook that the Pennsylvania Supreme Court has rejected the notion that the "reasonable expectations" of an insured must be considered regardless of the terms of the insurance contract. *Id*. Indeed, last Fall, the Third Circuit Court of Appeals, applying Pennsylvania law, confirmed that regardless of the circumstances, "generally, courts cannot invoke the reasonable expectations doctrine to create an ambiguity where the policy is unambiguous." *Frederick Mutual*

*Ins. Co. v. Hall*, 2018 WL 5879474, *2 (3d. Cir. 2018) (citing *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 717 (Pa. Super. 2007)). Here, where the language of the Policy is clear and unambiguous the language alone should be the "polestar" of the court's inquiry. *Madison*, 735 A.2d at 106.

> **C. Defendants' arguments against dismissal fail to meet the *Twombly* standard or otherwise raise a fact question.**

The District has asserted factually deficient claims that do not meet the federal civil pleading standard announced a decade ago in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). *Twombly* requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* at 555; *McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009).The Court need not accept as true any unsupported conclusions, unsupported inferences, and "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, in *McGovern*, the Third Circuit upheld the district court's denial of plaintiff's request for discovery in order to plead a *prime facie* case. 554 F.3d at n. 5.

Accordingly, the District's assertion of an "implied contract" fails to adequately plead a *prima facie* contract claim that would raise a plausible right to relief, failing to cite to the date, content, or speaker of alleged representations regarding coverage under the Policy or any allegations of a course of conduct between National and the District that would support that a contract was formed between National and the District. The District's vague statements are insufficient to meet the *Twombly* standard. Because the District has failed to adequately plead the existence of a contract between the District and National or facts tending to show that the Policy issued to Brimar and attached to National's Complaint is not authentic or complete, it has failed to

7

plead a *prima facie* claim and no time for discovery is needed.[2] Although the District argues "there are material facts yet to be resolved with respect to whether the District is a named additional insured on the purported Policy" and "the District … has evidence tending to show that the purported Policy may not be the actual policy …," it makes only unsubstantiated references to such evidence, which is insufficient to create an issue of fact. National did not issue a CGL policy to Brimar and there is no evidence to suggest otherwise. It was incumbent on the District to allege facts that plausibly support a legally viable affirmative defense or counterclaim for reformation.[3] It has made no genuine effort to do so.

Defendants provide no legitimate basis for further time for discovery to circumvent the granting of National's properly brought motion. The provisions of the Policy are not ambiguous, and thus the defendants' arguments to resort to extrinsic evidence must be rejected. *Standard Venetian Blind Co.,* 469 A.2d 563 at 568. And while the District invokes "course of performance" as a ground for introducing extrinsic evidence, it fails to allege any *facts* that would plausibly demonstrate there was any relevant course of performance.

Defendants present no argument in support of their other affirmative defenses (such as estoppel and waiver), which were shown to be legally non-viable in National's moving brief. (National Br., § E). Nor have defendants demonstrated any basis for a right to amend their complaint so as to aver specific facts, such as the content of a particular representation made by an identified person, or come forward with an affidavit setting forth facts they would develop if more time for discovery (which they have not pursued) was permitted.

---

[2] Defendants have served no discovery requests to date, and the joint Rule 26(f) Report and Joint Discovery Plan expresses the parties' agreement that National's complaint presents "a narrow legal issue regarding the application of exclusionary language and little to no factual discovery is anticipated." (Dkt. No. 33, ¶ 8)

[3] Insofar as the District or Brimar is attempting to claim fraud or mistake, they have failed to allege the circumstances giving rise to same with the required level of particularity. FED. R. CIV. P. 9(b).

### D. The District is not an "Insured" under the Policy.

The District alleges that it qualifies as an "Insured" under the Omnibus Insured Clause contained in the Policy, which conveys insured status to, among others, "anyone liable for the conduct of an 'insured' … but only to the extent of that liability," which the District argues applies to it. Brimar Policy, Dkt. No. 46-2, p. 60, Section II (A)(1)(c). However, this language has consistently been interpreted to require *vicarious liability* to have been alleged against the putative insured. *See*, *e.g.*, *Category 5 Management Group, LLC v. National Casualty Insurance Co.*, 480 Fed. Appx. 536 (11th Cir. 2012); *Indian Harbor Ins. Co. v. Valley Forge Insurance Group*, 535 F.3d 359 (5th Cir. 2008). The Underlying Complaint does not assert any claims of vicarious liability against the District for Brimar's conduct.

Indeed, it is surprising that the District contends it is alleged to be liable for Brimar's acts in an attempt to achieve Omnibus insured status given that the District (correctly) admitted in its answer to National's Second Amended Complaint that the underlying complaint only alleges that each defendant is liable for its own acts. (National's SAC, Dkt. 46, ¶19; District's Ans., Dkt. 48, ¶19) Tellingly, the District's brief contains *not a single citation* to the underlying complaint that alleges vicarious liability. Instead, District argues that the "gist" of the underlying complaint is that "the District and Brimar made an agreement to keep the two students separate while Brimar transported the students on Brimar's bus." But how a breach by Brimar of an agreement with the District would generate "vicarious liability" *for the District* is both unexplained and unfathomable. And as to the alleged indemnification agreement, the District admits that "… under the indemnification agreement, *Brimar assumes the tort liability of the District* to pay for bodily injury or property damage to a third party." (S.D. Br., p. 15) (emphasis supplied). Obviously, an

9

agreement that imposes liability *on Brimar's part to the District* cannot rationally form the basis for vicarious liability *on the District's part* such that the District would qualify as an Insured under the vicarious liability prong of the "Insured" definition.

### E. Resolution of the underlying action is immaterial to the grounds for National's motion, so there is no basis to stay this case.

In passing, the District casually suggests that the Court should stay this litigation, pending the outcome of the underlying litigation (citing *Peerless Ins. Co. v. Pa. Cyber Charter Sch.*, 19 F. Supp. 3d 635 (W.D. Pa. 2014)). However, the authority relied upon by the District concerns case law in which the court, unlike here, was presented with allegations that were "arguably covered under the Policy." *Id.* at 650. Here, by contrast, the defendants do not dispute that the underlying action arises from sexual contact, and thus the Exclusion applies regardless of how the defendants' legal responsibility for that sexual contact is adjudicated. Moreover, the Exclusion bars any claim "alleging" that sexual contact occurred, and thus bars coverage for both defense and indemnity given that the underlying claim is one "alleging" sexual contact.  It is well-established that if there is no duty to defend there can be no duty to indemnify. *Kvaerner Metals Div. v. Commercial Union Ins.* Co, 908 A.2d 888, 896 n.7 (Pa. 2006); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005); *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

### III. CONCLUSION

For the reasons stated herein, as well as those set forth in National's moving brief, National respectfully requests that this Court grant National's Motion for Judgment on the Pleadings.

Respectfully submitted,

Dated: May 17, 2019

**COZEN O'CONNOR**

*/s/Richard C. Mason*
Richard C. Mason, Esquire
(*Pro Hac Vice*)

One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215-665-2000
RMason@cozen.com

*/s/ Eugene A. Giotto*
EUGENE A. GIOTTO
One Oxford Centre, 41st Floor
Pittsburgh, PA  15219
(412) 480-8097
egiotto@cozen.com