IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(PITTSBURGH)

| | | |
|---|---|---|
| NATIONAL LIABILITY & <br> FIRE INSURANCE COMPANY, | : <br> : <br> : | CIVIL ACTION NO. 2:18-cv-1129 |
| Plaintiff | : <br> : | |
| v. | : <br> : | |
| BRIMAR TRANSIT, INC., | : <br> : | |
| Defendant | : <br> : <br> : | |
| and | : <br> : | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT | : <br> : <br> : | |
| Intervenor-Defendant | : | |

**BRIMAR TRANSIT, INC'S SUR-REPLY BRIEF IN OPPOSITION TO NATIONAL'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, Brimar Transit, Inc. ("Brimar") by and through its attorneys, Stephen H. Lebovitz, Robert A. Lebovitz, Lebovitz & Lebovitz, P.A. respectfully submits this Sur-reply Brief in Opposition to National Liability & Fire Insurance Company's (National) Motion for Judgment on the Pleadings and in support thereof states as follows:

I.  INTRODUCTION

National's Brief in Reply demonstrates the complexity and the ambiguity of the terms, conditions and language of their policy. National continues to ignore the controlling operation of the word ownership in their policy and relies on first party benefits/no-fault benefit cases rather than liability cases to ignore their duty and obligation to cover bodily injury from the ownership of a covered auto. It is undisputed that the incident alleged to have occurred in the Underlying

Complaint occurred on a vehicle covered by National and further it is undisputed that at no time did anyone connected with Brimar engage in any form of molestation or sexual contact. While the policy is clear that ownership of a vehicle will invoke coverage, the policy is similarly unclear as to what the abuse or molestation exclusion covers. Brimar maintains that it has coverage under the policy for the actions alleged in the Underlying Complaint and would not need to circumvent any exclusion contained in the policy.

## II. ARGUMENT

### A. Coverage is triggered by the ownership of a covered auto.

Both *State Auto Ins. Assoc, v. Kuhfal*, 527 A.2d 1039 (Pa. Super. 1987) and *Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 675 A.2d 279 (Pa. Super. 1996) found coverage in negligence actions for injuries sustained in the transportation home from school of children of tender years. The phrase "*ownership, maintenance or use*" creates a nexus between injuries sustained by the child and the use of the vehicle in both cases as well as in this case. The mere fact that the injuries alleged could have occurred elsewhere are not controlling, but rather go to the negligence claims against Brimar for their duty to supervise and notice. The injured children in the above cited cases could have similarly been struck by cars not in conjunction with transportation home from school, yet because they were being transported home from school at the time, they became injured there was the connection to the ride home. The incident also alleges that the bus was in use and actually transporting the children home from school.

### B. The exclusion in the insurance policy is not applicable to the present situation.

The basic tenet of contract law is that special provisions restricted general. *CVS Inc. v. Hasbro Inc.*, 1994 U.S. Dist. LEXIS 11317 (E.D. Pa.) "When interpreting an insurance policy, Pennsylvania courts "employ an analysis which . . . recognizes that most insurance transactions are not freely bargained between equals but are largely adhesive in nature.' *Bishops, Inc. v. Penn*

*Nat. Ins.*, 2009 PA Super 225, 984 A.2d 982, 989 (Pa. Super. Ct. 2009). Specifically, the insurer 'bears the burden of establishing the applicability of an exclusion in an insurance contract,' and exclusions 'are always strictly construed against the insurer and in favor of the insured.' *Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206-207 (3d Cir. 2001)*. 'The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.' *Essex Ins. Co. v. Starlight Mgmt. Co., 198 F. App'x 179, 183 (3d Cir. 2006) (quoting Britamco Underwriters, Inc. v. Weiner, 431 Pa. Super. 276, 636 A.2d 649, 651 (Pa. Super Ct. 1994))*". In *Tran v. Seneca Ins. Co.*, 2015 U.S. Dist. LEXIS 139527 (E.D. PA 2015) *6.

National seeks to set aside the well accepted rules for contractual interpretation and ignores the guidelines in the *Jewel* case. *Nat'l Cas. Co. v. Jewel's Bus Co.*, 880 F. Supp.2d 914 (N.D. Ill. 2012). Rather, National now wants to use a "belt and suspenders" approach to make their contract make more sense. National cites *U.S. v. Carona*, 630 F.3d 917, 2011 U.S. App. LEXIS 319, (9th Cir. 2011) a California case where a sheriff was charged with federal crimes relating to corruption. There, the court addressed statutory interpretation of overlapping and redundant statutes. This is entirely distinguishable from applying fundamental rules of contract interpretation against the drafter National. Even in *Corona*, the court refers to the rule of levity which requires ambiguous criminal laws to be interpreted in favor of the defendant.

National cites a series of cases to attempt to overcome the theory that negligent supervision is a different cause of action than the abuse of conduct. All those cases cited have a different endorsement than the one contained in the policy sold to Brimar. All contain a care, custody or control provision. The Florida case *Am. Empire Surplus Lines Ins. Co. v. Chabad House of North Dade, Inc.,* 771 F. Supp.2d 1336, 1341 (S.D. Fla. 2011), aff'd, 450 Fed. Appx. 792 (11th Cir. 2011) case is factually distinguishable since the policy excludes the actual or threatened abuse or molestation of any person while in the care, custody or control of any insured. Similarly, in the Wyoming case of *Nautilus Ins. Co. v. Our Camp, Inc.,* 136 Fed. Appx.

134; 2005 U.S. App. LEXIS 10678 (10th Cir. 2005) where a camper was sexually molested and abused by a co-camper, and the camp employees did not properly respond. The applicable exclusion precluded the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured. The court rejected concluding the negligence claims were separate causes of action from the injuries contrary to *St. Paul Fire & Marine Insurance Co. v. Schrum*, 149 F.3d 878 (8th Cir. 1989) which applied Missouri law upholding several causes of actions. In Footnote 2, the *Nautilus* court applying Wyoming law discusses *Cmty. Action for Greater Middlesex County, Inc. v. Am. Alliance Ins. Co., 254 Conn. 387, 757 A.2d 1074, (Conn. 2000).*, the Supreme Court of Connecticut had to consider an endorsement that expressly excludes coverage for bodily or personal injury arising out of the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured.

National criticizes Brimar's reliance on *St. Paul Fire & Marine Insurance Co. v. Schrum*, 149 F.3d 878 (8th Cir. 1989) based on *Nationwide Mut. Fire Ins. Co. v. Mr. and Mrs. K., T.K., et al.*, Civ. A. No. 05-569, 2005 WL 3434081 (W.D. Pa. Dec. 13, 2005). The Mr. and Mrs. K. case was dismissed where no response was filed by the Respondent. However, the *Schrum* case was discussed in *Am Family Mut. Ins. Co. v. Bower*, 752 F. Supp. 2d 957, 2010 U.S. Dist. LEXIS 118567, (N.D. Indiana 2010) which also found the alleged role of parent's failure to supervise was a separate and distinct claim from any sexual molestation committed by their son. Although it was undisputed that the son's actions were not accidental, the alleged role of the parents (failure to supervise) fell within the concept of "accident" upon which an "occurrence" was defined in the policy. Coverage was not precluded by policy's exclusions relating to sexual molestation, criminal law, or intentional acts. The Bower Court cited the *Bd. of Public Edn. of the School District of Pittsburgh v. Natl. Union Fire Ins. Co.,* 709 A.2d 910, 916-917 (Pa. Super

1998) "Where it is alleged that negligence allowed a crime to occur, does the claim against the negligent arise from the negligence or from the criminality? We believe it is the former."

In *Frankenmuth Mutual Ins. Co. v. Williams*, 690 N.E. 675 (1997), the Indiana Supreme Court concluded that the insurer could not rely on the intentional acts exclusion because the insured's negligence caused a separate injury from the intentional act of another insured, i.e., the negligent supervision injured the plaintiff by creating an increased exposure to the risk of molestation which "must be considered separately from the injuries resulting from the molestation itself." *Frankenmuth*, 690 N.E.2d at 679. See also, *U.S. Fidelity & Guar. Co.,* 819 F.Supp. at 760 ("In refusing to separate the employer's alleged negligence from the employee's intentional conduct, [other] courts impermissibly ignored the employer's independent acts which gave rise to the alleged tort"); *St. Paul Fire & Marine Ins.,* 149 F.3d at 880-881 (applying Missouri law and noting that the intentional tort was "merely incidental" to the negligent-supervision claim, making the negligence a separate and nonexcluded cause of the victim's injuries).

In *Bd. of Public Edn.* an insurer was obligated to provide a defense for an insured in a civil rights action when allegations made were regarding appellant's negligence, not physical injuries to a student, and so were not excluded by the language of the policy. The court reached this decision in consideration of *Britamco Underwriters, Inc. v. Weiner*, 431 Pa. Super. 276, 636 A.2d 649, alloc. denied, 540 Pa. 575, 655 A.2d 508 (1994), another declaratory judgment action, also involving claims resulting from an alleged physical attack on a bar patron, by a bar employee. In *Weiner*, the Court made the determination that the insurer owed a duty to defend, which stemmed from the complaint's allegation that the injury was caused by intentional conduct or negligent conduct. Because there was a legitimate prospect that negligence, rather than intentional assault or battery caused the injury, the exclusion did not excuse the insurer's duty to defend. The criminality alleged is one party removed from the insured.

The recent case of *Fid. Nat'l Title Ins. Co. v. Maxum Indem. Co.*, 2017 U.S. Dist. LEXIS 147134 (E.D. Pa. September 12, 2017) also cites *Board of Pub. Educ. of the Sch. Dist. v. National Union Fire Ins. Co.* Superior Court of Pennsylvania Mar 16, 1998 709 A.2d 910.

The court agreed with Fidelity that the endorsement would not have barred coverage for the theory of negligent supervision and maintenance of the Escrow Account. The alleged comingling and conversion of funds arise out of the negligence. Pennsylvania law applicable in the case sub judice would reject the decision under Wyoming law in *Nautilus*, supra.

*Fid. Nat'l* also notes that even in cases where only "a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover" on the covered claim. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

### C. The exclusion is not applicable, ambiguous and in contravention with the reasonable expectations of Brimar.

At all times, Brimar contends that it has had a reasonable expectation to have coverage for the type of situation which was alleged to have occurred here, that the sexual molestation and abuse exclusion only applied to Brimar and/or negligent supervision of its employees and not to those in their care, custody or control such as students on the school bus. At all times material hereto, Brimar represented that they were seeking to obtain insurance for the transportation of students to and from school and that they were also required to have certain types of coverage and to name the School District as an additional insured. It was a reasonable expectation of Brimar that they would be covered for negligent supervision claims for injuries sustained by and between the students in Brimar's operation of transportation to and from the schools. National attempts to summarize the reasonable expectation doctrine by citing a footnote in *Madison Construction Company v. Harleysville Mutual Insurance Company*, 735 A.2d 100, 106 n.8 (Pa. 1999) Interestingly, in that same footnote, the court notes that arguments raised only in brief

6

footnotes were too underdeveloped for review (citation omitted) and the court cites *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978) wherein the doctrine was applied to protect non-commercial insured from the policy terms not readily apparent. National also cites to the *Frederick Mutual Ins. Co. v. Hall*, 2018 WL 5879474 (3rd Cir. 2018) which is a non-precedential decision. In *Fredrick Mutu*al, supra, the court followed Pennsylvania law that only objectively reasonable expectations are protected citing *Selected Risks Ins. Co. v. Bruno*, 718 F2d 67 (3rd Cir. 1983) wherein the court also stated that an insurer must prove that a named insured was aware of and knew the effect of the exclusion in order for it to apply irrespective of whether the named insured or additional insured was actually seeking coverage.

In *Austin James Assocs. V. Am. Int'l Specialty Lines Ins. Co.*, 2012 U.S. Dist. LEXIS 14449, 2012 WL 4755394, "…the Third Circuit has indeed allowed a commercial entity to use the reasonable expectations doctrine since the *Madison* Decision. See *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497 (3d Cir. 2004). In *UPMC*, the district court had found the reasonable expectations doctrine inapplicable because the insured was a 'sophisticated party' and the policy was freely negotiated and entered into by parties of equal status. Id. at 503. With regard to this ruling by the district court, the very same decision the defendant seeks in the instant case, the Third Circuit Court of Appeals stated: 'The District Court was wrong.' Id. at 504. The court explained as follows: 'neither any lack of ambiguity in the policy language nor UPMC's status as a sophisticated purchaser of insurance prevented application of the doctrine of reasonable expectations[.]' Id. Accordingly, other district courts within the Third Circuit, have also concluded that status as a sophisticated commercial insured does not automatically render the reasonable expectations doctrine inapplicable." 2012 U.S. Dist. LEXIS 144449 at *11.

In *UPMC Health Sys. v. Metro Life Ins. Co.*, 391 F.3d 497 (3rd Cir. 2004), the doctrine of reasonable expectation was used where the insured reasonably expected certain coverage, even when those expectations were in conflict with the unambiguous terms of the policy. Where an

7

insurer or its agent creates a reasonable expectation of coverage not supported by the terms of the policy, that expectation will prevail. Status of a sophisticated purchaser is not an automatically disqualifying factor. Additionally, the 3rd Circuit found and agreed with UPMC that "composition of the group" was ambiguous enough that it should be left to the jury to decide what the parties meant by that phrase.

In *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303 (3rd Cir. 1994), the case was reversed and remanded because the plaintiff should have been the provided a reasonable expectation of coverage under the policy and to allow for additional discovery.

### III.     CONCLUSION

For the above stated reasons, and those set forth in Brimar's Brief in Opposition, National's Motion for Judgment on the Pleadings should be dismissed.

Respectfully submitted,

Dated: May 31, 2019                              LEBOVITZ & LEBOVITZ, P.A.

/s/Stephen H. Lebovitz_____
Stephen H. Lebovitz, Esquire
shl@lebovitzlaw.com
Robert A. Lebovitz, Esquire
ral@lebovitzlaw.com
Lebovitz & Lebovitz, P.A.
2018 Monongahela Avenue
Pittsburgh, PA 15218-2510
(412) 351-4422
Attorneys for Defendant, Brimar