UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Civil Action No. 2:18-cv-1129 ) ) |
| vs. | ) ) |
| BRIMAR TRANSIT INC., | ) ) |
| Defendants, | ) ) |
| and | ) ) |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, additional insured | ) ) ) |
| Intervenor Defendant. | ) ) ) |

**INTERVENOR DEFENDANT'S SUR REPLY BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Although Plaintiff, National Liability & Fire Insurance Company ("National" or the "Insurer") raises several different arguments in its reply brief, the outcome is still the same. Intervenor Defendant, Pittsburgh Public School District (the "District" or "Pittsburgh Public Schools") respectfully requests that the Court deny National's motion for judgment on the pleadings.  Without reiterating its prior arguments, and only responding to the new issues brought up in National's reply brief, National's motion should be denied, inter alia, because: 1) the reasonable expectation analysis is not limited to unsophisticated consumers; 2) the sexual abuse exclusion was intended to insure the risk of a sexual assault committed by a third-party, and to exclude from coverage a sexual assault committed by an insured; 3) the Court should not infer a belt and suspenders approach in this case especially not on a motion for judgment on the pleadings; and 4) given the policy language and allegations in the complaint, the District is an additional

insured, and whether the District is a <u>named</u> additional insured is a question of fact that needs to be resolved in discovery/trial.

**I.     The reasonable expectation analysis is not limited to unsophisticated consumers.**

National argues that the Court should not consider the reasonable expectations of the insured in this case, and that the reasonable expectation doctrine does not apply to business consumers such as Brimar and the District. It is well settled under Pennsylvania law that the Court must consider the reasonable expectations of the insured, and that analysis is not limited to unsophisticated consumers, but can apply to sophisticated business entities.

As the Pennsylvania Supreme Court noted in <u>Collister v. Nationwide Life Ins. Co.</u>, 388 A.2d 1346 (Pa. 1978):

> The reasonable expectation of the insured is the focal point of the insurance transaction involved here. *E. g., Beckham v. Travelers Ins. Co.*, 424 Pa. 107, 117-18, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid. Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent. Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefit of the insured's lack of understanding of the transaction.

<u>Id.</u> at 1353-54. "The policyholder has no duty to read the policy unless under the circumstances it is unreasonable not to read it." <u>Pressley v. Travelers Prop. Cas. Corp.</u>, 817 A.2d 1131, 1141 (Pa. Super. 2003) (citing <u>Rempel v. Nationwide Life Ins. Co., Inc.</u>, 370 A.2d 366, 369 (Pa. 1977). "When the insurer elects to issue a policy differing from what the insured requested and paid for,

2

there is clearly a duty to advise the insured of the changes so made." Id. (citations omitted). "The burden is not on the insured to read the policy to discover such changes." Id.

"In the reasonable expectations analysis, the insurer must demonstrate that the insured did not have a reasonable expectation of coverage." West v. Lincoln Benefit Life Co., 509 F.3d 160, 171 (3d Cir. 2007). The Court must examine the dynamics of the insurance transaction to ascertain the reasonable expectations of the insured. Michael v. Stock, 162 A.3d 465, 478 (Pa. Super. 2017). Where the insurer or its agent has created in the insured a reasonable expectation of coverage, even the most clearly-written exclusion will not bind the insured. Liberty Mutual Insurance Co. v. Treesdale, Inc., 418 F.3d 330, 344 (3d Cir. 2005)(citation omitted).

Contrary to National's assertion, the reasonable expectations analysis is not limited to individual consumers, but can apply to sophisticated business entities. See e.g. Austin James Assocs. v. Am. Int'l Specialty Lines Ins. Co., No. 3:12cv1125, 2012 U.S. Dist. LEXIS 144449, at *6 (M.D. Pa. Oct. 5, 2012) ("The issue therefore, comes down to whether or not the "reasonable expectations" doctrine can be used by commercial entities or if it applies only to individuals. After a careful review, we agree with the plaintiff's position that it may be able to use the reasonable expectations doctrine.") (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895 (3d Cir. 1997)) (predicting "Pennsylvania courts would apply the reasonable expectations doctrine even where the insured is a "sophisticated purchaser" of insurance, that is a large commercial enterprise."); See also Id. at *6 - *13 (tracing the development of the law and relying, inter alia, upon UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497 (3d Cir. 2004) and Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of America, 581 F. Supp. 2d 677, 690 (W.D. Pa. 2008)).

In this case, looking at the context surrounding the procurement of insurance and the entire transaction, it is reasonable for Brimar and the District to expect that the insurance covers the duty of safely transporting school students to and from school.

Brimar is in the business of safely transporting students to and from school. National knew of Brimar's business at the time Brimar applied for the insurance. Brimar has a duty to keep students safe while they are riding in the bus. National knew of Brimar's duty to keep students safe while they are riding in the bus. National knew that Brimar had a contractual duty to provide insurance for the District as an additional named insured, and to insure the risk of transporting students safely to and from school. National represented to Brimar, and the District, that it was providing coverage of Brimar's business risks, including the safe transport of students to and from school, with both a business auto coverage policy and a general commercial liability policy. Under these circumstances, the only reasonable interpretation of insuring injuries resulting from the "ownership" or "use" of the bus includes injuries occurring to students while they are passengers on the bus. Likewise, it is reasonable for the insured to expect that the District is an additional named insured under the policy.

**II.     The sexual abuse exclusion was intended to insure the risk of a sexual assault committed by a third-party, and to exclude from coverage a sexual assault committed by an insured.**

It is common in the insurance industry to insure the risk of intentional torts or crimes committed by third-parties, but exclude coverage for intentional torts or crimes committed by an insured. That is exactly what section (b) of the sexual abuse exclusion is intended to do – narrow the scope of the previous provision (section (a)) to limit it to sexual abuse allegedly committed by an insured, and not by a third-party. Both provisions must be read together.

National argues that "negligent supervision" in section (b) refers to supervision of student passengers on the bus. This contradicts National's own interpretation of the policy which National

4

argues does not cover supervision of students but only covers bus collisions. Interpreting section (b) as National argues and interpreting the ownership or use of the vehicle to not include safe transportation of students as advocated by National would create an irreconcilable conflict within the policy. National's interpretation is also inconsistent with the context and language of section (b) of the exclusion. Section (b) excludes claims for the "negligent employment," "negligent investigation," "negligent supervision," "negligent retention" or "negligent entrustment" of anyone whose conduct would be excluded by section (a). By including "negligent employment," "negligent investigation," "negligent retention" and "negligent entrustment," in addition to "negligent supervision," in the context of insurance coverage for a bus company, it is clear that the policy is referring to negligent supervision of Brimar employees i.e. bus drivers who are also insureds.

The District, perhaps invited this argument by National by imprecisely referring generically to all types of negligent employment type claims as negligent "supervision" claims. Nevertheless, it is clear from the context that the exclusion is referring to all negligent employment type claims including "negligent employment," "negligent investigation," "negligent retention," "negligent supervision" and "negligent entrustment." Even if National was correct and "negligent supervision" was intended to apply to negligent supervision of a student passenger on the bus, the underlying complaint includes allegations that both the District and Brimar negligently employed, retained, investigated, and supervised their employees whose conduct was not excluded by section (a) of the sexual abuse exclusion, because they did not commit the sexual abuse. The exclusion, therefore, would not apply to those claims.

**III.    The Court should not infer a "belt and suspenders" approach in this case, especially on a Motion for Judgment on the Pleadings.**

National argues that the Court should ignore the plain language of section (b) of the sexual abuse exclusion and resolve the patent ambiguity between section (a) and section (b) by inferring

5

an intent by the drafter of the exclusion to create a redundancy, a so called "belt and suspenders" approach. National cites to no case law applying Pennsylvania law interpreting insurance contracts which infer such a redundancy into the insurance contract and/or infer a "belt and suspenders" intention. By way of contrast, the rule against superfluidity that requires a Court to give effect to all the provisions of a contract, and not to read one provision to render another provision superfluous, is routinely applied by Courts in this Circuit, applying Pennsylvania law interpreting insurance contracts. See e.g. Lee v. Sixth Mount Zion Baptist Church of Pittsburg, Civil Action No. 15-1599, 2017 U.S. Dist. LEXIS 133858, at *60-61 (W.D. Pa. Aug. 22, 2017) ("The rule is the principle that the court will not read one provision so as to render another provision of the contract superfluous.") (citing Rcn Corp. v. Paramount Pavilion Grp., LLC., 164 F. App'x 291, 296 (3d Cir. 2006); see also Dubrosky v. Colonial Life & Acc. Ins. Co., 129 F. App'x 691, 693 (3d Cir. 2005) ("This interpretation must be rejected under the cardinal principle that each term of a contract should be given meaning so that no term is superfluous."))

National's interpretation is also inconsistent with the well-settled concept under Pennsylvania law that where a general provision is followed by a more specific provision, the specific provision qualifies or limits the general provision. See e.g. Metzger v. Clifford Realty Corp., 476 A.2d 1, 6 (Pa. Super. 1984) ("Specific provisions of an instrument will be regarded as qualifying the meaning of broad general terms. Paragraph 5(b) being more specific, it qualified the general language of paragraph 4(b).") (citing In re Alloy Manufacturing Co. Employees Trust, 192 A.2d 394 (Pa. 1963)); See also Musko v. Musko, 697 A.2d 255, 256 (Pa. 1997) ("When specific or exact provisions seem to conflict with broader or more general terms, the specific provisions are more likely to reflect the intent of the parties than the general provisions."); Clairton Slag, Inc. v. Dep't of Gen. Servs., 2 A.3d 765, 773 (Pa. Commw. 2010) ("specific provisions ordinarily qualify the meaning of general provisions,"); Great American Ins. Co. v. Norwin Sch. Dist., 544

F.3d 229, 247 (3d Cir. 2008) ("We must also keep in mind that specific provisions ordinarily control more general provisions.")

In addition, by advocating for a "belt and suspenders" interpretation, National is asking the Court to go beyond the language of the exclusion to resolve the ambiguity by inferring an intention on the part of the drafter. This is inappropriate for a motion for judgment on the pleadings where all reasonable inferences must be drawn in favor of the non-moving parties. In order to prove or disprove an intention by the drafter to create an unnecessary redundancy not supported by the language of the policy, the parties need to take discovery[1] inquiring into the drafting history of the exclusion. Otherwise, the Court should construe the exclusion consistent with the contract principles discussed above and should not infer such a redundancy.

National cites several opinions where it claims an exclusion, with "similar language" to the sexual abuse exclusion in this case, was construed to apply. Each of the opinions cited by National, however, contain exclusions with materially distinct language, and none of those opinions considered the interpretation of the exclusion as advocated by the District in this case. Two of those opinions, Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc., 450 F. App'x 792, 793 (11th Cir. 2011) and Nationwide Mut. Ins. Co. v. Ill. Cheer Extreme Ath., Inc., No. 12 C 9448, 2014 U.S. Dist. LEXIS 34107 (N.D. Ill. Mar. 17, 2014) are factually distinguishable. Those cases each involved sexual abuse exclusions where the alleged perpetrator of the sexual abuse was an insured or employee of the insured. The District agrees that even the exclusion in this case could apply in that factual scenario.

---

[1] National claims the District admitted that it does not need discovery. This claim is disingenuous. The portion of the Rule 26 report cited by National was drafted prior to the District's involvement in the case. The District has always been clear about the discovery it would be seeking, and this Court reiterated in the initial case management conference the potential extensive discovery that would be needed by defendants.

Each of the other three opinions cited by National, Hernández v. Colegio Y Noviciado Santa Maria Del Camino, Inc., No. 12-2052 (PAD), 2015 U.S. Dist. LEXIS 39728 (D.P.R. Mar. 27, 2015); Erie Ins. Exch. v. First United Methodist Church, 690 F. Supp. 2d 410 (W.D.N.C. 2010); and Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co., 757 A.2d 1074 (Conn. 2000) contain identical language in a sexual abuse exclusion which is materially distinct from the exclusion in this case. In those cases, the exclusions excluded coverage for bodily injury "arising out of: (a) the actual or threatened abuse or molestation by anyone of any person **while in the care, custody or control of any insured**, or (b) the negligent: (i) employment; (ii) investigation; (iii) supervision; (iv) reporting to the proper authorities, or failure to so report; or (v) retention . . . of a person **for whom any insured is or ever was legally responsible and** whose conduct would be excluded by (a) above." Cmty. Action for Greater Middlesex Cty. 757 A.2d at 1081-82 (emphasis added).

The added language (in bold) has the effect of at least partially clarifying or resolving the ambiguities inherent in the exclusion in this case. The additional language in section (a) "while in the care, custody or control of any insured" limits the scope of section (a). While section (a) remains a general clause subject to the limiting of a more specific clause (section (b)) that follows it, by limiting itself, it is less likely than in this case (where section (a) is more general) that section (b) was intended to further limit section (a). Because section (a) is much more general and all-encompassing in our case, it is much more likely in our case that the drafter intended to limit section (a) with section (b).

The additional language in section (b) of those cases is also important. The additional language "for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above," broadens the types of negligent supervision claims which are excluded by the exclusion. In our case, as discussed above, given the context and overall transaction involved,

8

"negligent employment," "negligent investigation," "negligent retention," "negligent entrustment," and "negligent supervision," are referring to negligence in supervision of employees. All of those claims are the types of claims that can be expected to be brought against an employer for the actions of its employees.  By including "for whom any insured is or ever was legally responsible," the exclusion extends to more than just negligent supervision of employee claims, but also to negligent supervision of anyone for whom the insured is or ever was legally responsible. This arguably includes more than just employees and could include volunteers, minor students at a school or minor passengers on a bus.  The exclusion in our case does not include such clarifying or expanding language.  Therefore, it is reasonable to infer that the parties in our case intended to exclude negligent employment type claims when the employee is the alleged perpetrator i.e. his conduct is excluded by section (a) and not to exclude negligent employment type claims when the alleged perpetrator was not an employee or the insured.

**IV.     Given the policy language and allegations in the Underlying Complaint, the District is an additional insured, and whether the District is a <u>named</u> additional insured is a question of fact that needs to be resolved in discovery/trial.**

National argues that the "omnibus insured clause" should be limited to situations where the additional insured has vicarious liability for the named insured.  Such an interpretation is inconsistent with the language of the additional insured clause which does not mention vicarious liability.  The additional insured clause provides in relevant part:

> 1. Who is an insured
>    The following are "insureds"
>    \*\*\*
>    c. Anyone liable for the conduct of an "insured" described above, but only to the extent of that liability

(Policy, Doc. No. 46-2, p. 60, Section II (A) (1)(c)).  While such clauses have been interpreted to apply to vicarious liability such that anyone who is alleged to be vicariously liable for the insured is an additional insured under the contract, there is no limitation in the policy language that limits

9

the clause to vicarious liability. If the parties wanted to limit additional insured to parties who are vicariously liable for the insured, they would have said so. See e.g. PAR Elec. Contractors, Inc. v. BlueLine Rental, LLC, No. 2:16-CV-0246-TOR, 2017 U.S. Dist. LEXIS 10576, at *26-27 (E.D. Wash. Jan. 25, 2017) ("Ultimately, if Old Republic wanted the provision to work as a vicarious liability provision, it could have easily done so by including key words like "vicarious" and "negligent" that would preempt any debate.")

Because we are dealing with the duty to defend in this case, the question is not whether the District is actually liable for the conduct of Brimar or vicariously liable for Brimar, but if there are allegations in the complaint such that the District potentially could be liable for the conduct of Brimar. See Lucker Mfg. Inc., v. The Home Ins. Co., 23 F.3d 808, 821 (3d Cir. 1994) (holding that an insurer has a duty to defend whenever the allegations in a complaint set forth a claim which potentially falls within the coverage provided by the policy.) It does not matter whether those allegations are factually or legally deficient. The duty to defend extends until those claims are narrowed. See D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986) (holding that the duty to defend is triggered even if the allegations against the insured are groundless, false or fraudulent.)

There are such allegations in the underlying complaint in this case. In fact, the entire gist of the allegations below against the District are that the District is liable for the actions or inactions (conduct) of Brimar, its agents, representatives and/or employees. The underlying complaint alleges, inter alia, that the District and Brimar made an agreement to keep the two students separate while Brimar transported the students on Brimar's bus. Underlying Plaintiff alleges that Brimar's driver failed to keep the students separate, failed to prevent the alleged sexual assault, and failed to stop it once it started. Underlying Plaintiff alleges that the District is liable for the driver's conduct in breaching the alleged agreement. Although ultimately the District contends that it will

10

not be held liable for Brimar's conduct, for purposes of the insurer's evaluation of whether to provide a defense, the allegations in the underlying Complaint include allegations that the District is liable for Brimar's driver's conduct and therefore, coverage must be afforded to the District as an additional insured.

Other District Courts in this Circuit have interpreted similar additional insured endorsements to provide coverage beyond that of vicarious liability.  As the Court in Md. Cas. Co. v. Regis Ins. Co., CIVIL ACTION NO. 96-CV-1790, 1997 U.S. Dist. LEXIS 4359 (E.D. Pa. Apr. 1, 1997) explained:

> In construing an insurance policy, if the words of the policy are clear and unambiguous, the Court must give the words their plain and ordinary meaning. Pacific Indemnity, 766 F.2d at 760-61. The plain wording of the Additional Insured Endorsement shows that it applies to any liability sought to be imposed upon the additional insured because of something the named insured is alleged to have done or failed to have done. In the instant case the alleged act or omission of the named insured is failure to maintain the parking lot. Through Ms. Linder's Complaint against the Society, liability is sought to be imposed upon the Society as the result of an alleged act or omission of the named insured. It does not matter that the Society cannot be held vicariously liable for the negligence of Ran. The liability "sought to be imposed" against the Society is the result of an alleged act or omission of Ran - e.g. its alleged failure to properly maintain the lot.

Id. at *16-17.  Such is the case here where the underlying plaintiff is alleging that the District is liable for the conduct of Brimar.  Construing the additional insured clause as narrowly as advocated by National, also has the potential of nullifying the clause entirely.  As the United States Court of Appeals for the Tenth Circuit noted:

> Where the additional insured is held no more than vicariously liable for the acts of the named insured, the additional insured would have an action for indemnity against the primary wrongdoer. Thus, an endorsement that provides coverage only for the additional insured's vicarious liability may be illusory and provide no coverage at all. In this light, it is obvious that additional insureds expect more from an endorsement clause than mere protection from vicarious liability.

Marathon Ashland Pipe Line LLC v. Md. Cas. Co., 243 F.3d 1232, n.5 (10th Cir. 2001) (citations and quotations omitted).

11

Whether the District is a <u>named</u> additional insured is an issue that involves resolution of disputed material facts.  The District alleged that National represented to them in writing that: the District is an additional named insured on the operative policies; there is both a commercial general liability ("CGL") policy and commercial auto policy in which the District is a named insured; and the CGL and commercial auto policies have separate limits of $2,000,000 aggregate coverage and $1,000,000 single limit coverage, respectively.  Based upon those representations, the District alleged that the Policy attached to the complaint is not the actual policy/policies or is inconsistent with the terms of the policy/policies as represented to the District.  The parties need discovery to prove/disprove whether the policy is the actual policy, and the effect of the representations made to the District that it was an additional named insured on both a CGL policy and commercial auto policy.

**V.     Conclusion**

For the reasons set forth above, and in the parties' primary briefs, the District respectfully requests that this Honorable Court deny Plaintiff's Motion for Judgment on the Pleadings.

Respectfully submitted,

GOEHRING RUTTER & BOEHM

Date: May 31, 2019                    By:   /s Matthew C. Fergus
                                            Matthew C. Fergus, Esquire
                                            Pa. ID#205506

                                            Frick Building
                                            437 Grant Street, 14th Floor
                                            Pittsburgh, PA 15219
                                            (412) 281-0587

                                            *Counsel for Intervenor Defendant,*
                                            *Pittsburgh Public School District*