UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:18-cv-1129 |
| vs. | ) ) | |
| BRIMAR TRANSIT INC., | ) ) | |
| Defendant, | ) ) | |
| vs. | ) ) | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, | ) ) ) | |
| Intervenor Defendant. | ) | |

**Brief in Opposition to Motion for Leave to File Third Amended Complaint**

I.      Introduction

Plaintiff, National Liability and Fire Insurance Company ("National") is in denial with respect to this Court's Order finding that National owed a duty to defend Brimar Transit Inc. ("Brimar") and the Pittsburgh Public School District (the "District") in the underlying suit in state court.  National is attempting to use the amendment process to re-litigate the issue of its duty to defend.  This issue has been settled conclusively by this Court.  If National wishes to challenge the Court's Order, it should file a motion for reconsideration or ask the Court to convert the Order to a final judgment and file an appeal.  This Court's order finding a duty to defend, coupled with voluntary settlement of the underlying suit, renders National's claim for a declaratory judgment on indemnification, as well as its claims for reimbursement of defense costs moot.  National should not be permitted to use the amendment process in an attempt to resurrect those claims and avoid this Court's judgment finding a duty to defend.

National's motion should be denied, because National has not shown good cause and failed to diligently pursue its proposed additional claims when it knew of them, to the prejudice of Brimar and the District.  In addition, given this Court's prior ruling, the posture of the underlying suit, the insurance policy, and Pennsylvania law, National's proposed additional claims would be futile. Specifically:

1) National's claim for a declaratory judgment with respect to indemnity was rendered moot and/or non-justiciable given this Court's prior order and settlement of the underlying suit (**Proposed Counts II & VI**).

2) National's contract claim for reimbursement is rendered moot and is not viable given this Court's Order finding a duty to defend (**Proposed Count III**).  National has no contractual basis for reimbursement from the District.

3) Under Pennsylvania Law, an insurer is prohibited from seeking reimbursement of defense costs under an equitable theory such as unjust enrichment (**Proposed Counts IV & VII**).  See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 546 (Pa. 2010) ("We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters.").

4) The remedy for breach of the duty to defend is reimbursement of actual defense costs incurred by the insured – not the amount the insurer would have incurred had it provided a defense (**Proposed Count VIII**).  See Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321-22 (Pa. 1963) ("Based on the usual contract rule for determining damages, the recovery for breach of the covenant to defend will ordinarily

be the cost of hiring substitute counsel and other costs of the defense. This recovery may be in addition to any other obtained against the insurer.").

II.      Legal Standard

In considering a Motion for Leave to Amend a Complaint after the expiration of the date set in the original case management order, the plaintiff must first show good cause why leave to amend should be granted pursuant to Rule 16, and only after such finding should the Court apply the standard set forth in Rule 15(a).  See McWreath v. Range Res. - Appalachia, LLC, 81 F. Supp. 3d 448, 473 (W.D. Pa. 2015) (citing Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 118 (W.D. Pa. 2010).  When a party has sufficient access to information to assert claims earlier in litigation, good cause is lacking and denial of the motion to amend is appropriate.  Id.  "Many courts have recognized that '[w]here ... the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.'" Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 119 (W.D. Pa. Sep.15, 2015) (Fischer, J.) (quoting Price v. Trans Union, LLC, 737 F.Supp.2d 276, 280 (E.D. Pa. 2010)).

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED R. CIV P. 15(a)(2). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 200 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." Id. (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)). "It is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." Wainwright v. City of Sharon, 2016 U.S. Dist. LEXIS 3013, *4-5 (W.D. Pa. Jan. 11, 2016) (citations omitted). "As to prejudice, the Court of Appeals has 'considered whether allowing

3

an amendment would result in additional discovery, cost, and preparation to defend against new

facts or new theories." Id. (quoting Graham 271 F.R.D. at 123.). The test under Rule 15(a) is in

the disjunctive, meaning that if any one of these elements is met, then amendment should not be

permitted.  Id.

III.   Argument

      a. **National failed to show good cause and failed to diligently pursue its proposed additional claims when it knew of them to the prejudice of Brimar and the District.**

When National filed its motion for judgment on the pleadings, National insisted that its

rights and responsibilities pursuant to the insurance policy could be determined strictly on the

pleadings, and by comparing the four corners of the insurance policy, complaint in the underlying

state suit, and pleadings in this case.  National maintained that the Court could determine whether

there was coverage under the policy, and whether the District was an additional insured as a matter

of law based solely upon the pleadings.  This Honorable Court agreed with National at least with

respect to the duty to defend, and the District's status as an insured for purposes of the duty to

defend.  Consequently, the Court denied National's motion for judgment on the pleadings, and

granted partial judgment in favor of the District and Brimar with respect to National's duty to

defend.  National did not like the outcome of its motion for judgment on the pleadings and now

seeks a "do over" over a year later.

Although the Court's judgment in favor of the District and Brimar was not a final order for

purposes of immediate appeal, it is well settled that amendment is improper when a judgment

based upon that pleading still stands.  See Jang v. Bos. Sci. Scimed, Inc., 729 F.3d 357, 367-68

(3d Cir. 2013) ("When a party seeks leave to amend a complaint after judgment has been entered,

it must also move to set aside the judgment pursuant to Federal Rule of Civil Procedure 59(e) or

60(b), <u>because the complaint cannot be amended while the judgment stands</u>.") (emphasis added) (citing <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 252 (3d Cir. 2007); 6 Charles Alan Wright et al., Federal Practice and Procedure § 1489 (3d ed. 2013)).  While this case does not involve a final order, the rationale is the same.  Allowing amendment would essentially vacate this Court's order granting judgment on the pleadings in favor of Brimar and the District and the parties would be forced to redo the entire process where the parties had a complete opportunity to litigate the issue of the duty to defend and this Court spent significant judicial resources in considering the parties' arguments and entering a well-reasoned opinion and order.

In addition, National's new theory of unjust enrichment for reimbursement of defense costs was just as available to National at the time of its Second Amended Complaint (even if it is not a viable claim either then or now).  There is no requirement that National needed to ascertain the exact amount of final defense costs before bringing a claim.  In fact, National brought a contract claim against Brimar for reimbursement of defense costs when they were actively defending Brimar and the defense was far from complete.  National chose not to bring any unjust enrichment claims before filing its motion for judgment on the pleadings, and only now that they do not like the outcome of their motion and the amount of the defense costs, do they choose to bring those nonviable claims.  The United States Court of Appeals for the Third Circuit has explicitly condemned this "wait-and-see" approach and considers it justification for a Court denying a motion for leave to amend.  <u>See</u> <u>Jang</u>, 729 F.3d at 368 ("Delay may become undue when a movant has had previous opportunities to amend a complaint but instead delays making a motion to amend until after judgment has been granted to the adverse party, and when allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.") (internal quotations and citation omitted); <u>See also</u> <u>Id.</u> ("This court has declined to

reward a wait-and-see approach to pleading.") (citing Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."); In re Adams Golf, Inc. Secs. Litig.., 381 F.3d 267, 280 (3d Cir. 2004) ("Plaintiffs relied at their peril on the possibility of adding to their complaint. . . .").)

Nevertheless, even if the Court finds a showing of good cause by National, the proposed amendments should be denied, because they are futile.

      **b.** **Given this Court's prior ruling, the posture of the underlying suit, the insurance policy, and Pennsylvania law, National's proposed additional claims would be futile.**

            **i.** **National's claim for a declaratory judgment with respect to indemnity was rendered moot and/or non-justiciable given this Court's prior order and settlement of the underlying suit (Proposed Counts II & VI).**

On January 14, 2020, this Court denied National's motion for judgment on the pleadings, and granted judgment on the pleadings in favor of the District and Brimar with respect to National's duty to defend, and the District's status as an insured for purposes of the duty to defend. The Court declined entering a judgment on the pleadings for the duty to indemnify in favor of any of the parties because of the posture of the underlying case.  The underlying case had not yet gone to trial so there was no finding of liability upon any of the claims in the underlying suit, and no party had been required to pay money damages which would have triggered the duty to indemnify, if one existed.

In the underlying action at the time of this Court's Order, the parties were preparing for trial, National was providing a defense for Brimar, and the District was providing its own defense. After this Court's Order, National did not offer to provide defense counsel for the District, did not

provide an adjuster to oversee the defense, and did not provide any instructions for billing guidelines or procedures for submitting past or future bills. The District continued to employ undersigned counsel to defend it in the underlying suit. The District's defense Counsel contemporaneously documented all defense costs and legal fees incurred in defense of the underlying suit and billed the District on a monthly basis for those costs and expenses. Those defense costs and fees, actually incurred by the District, have been approved and paid by the District with approval of the Board of School Directors (the "Board"). Eventually, National's coverage Counsel in this action asked for the District's invoices in discovery in this case.

Because of the COVID-19 Pandemic, the parties were unable to complete preparations for trial, and unable to hold trial. Instead, the parties pursued settlement of the underlying suit, and the District and National agreed to pursue global settlement of the underlying suit as well as this coverage dispute. During the mediation, National's coverage counsel took the lead and directly controlled the monetary offers to Plaintiff. Neither Brimar nor the District took any part in making offers to the Plaintiff or responding to the Plaintiff's demands, nor were they invited to do so by National. National made a voluntary payment to Plaintiff of $150,000 to settle the underlying lawsuit. After an agreement in principal was made to settle the underlying suit with Plaintiffs, National expressed that it was reserving its nonexistent rights to seek reimbursement of the settlement funds from Brimar and the District. Of course, there is no right to reimbursement of such a voluntary settlement payment either in the law or the insurance policy, and National has pointed to no valid authority for such a reimbursement right. Unilaterally stating that you are reserving some nonexistent right does not create such a right. Given National's intransigence, the parties were unable to reach a global settlement.

In the settlement agreement, Plaintiff agreed to dismiss all its claims or potential claims against the District and Brimar. There was no finding of fault in the agreement and no factual findings or recitations of facts of the underlying suit. The parties never developed any record nor did the parties narrow any of the legal issues in pursuit of summary judgment or at trial. The settlement agreement has rendered the declaratory judgment action with respect to indemnity moot, because it is impossible for Brimar or the District to pay damages for which National would be required to provide indemnity regardless of whether the claim was a covered claim or non-covered claim. See Rendell v. Rumsfeld, 484 F.3d 236, 241 (3d Cir. 2007) ("The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.") (citing In re Surrick, 338 F.3d 224, 230 (3d Cir. 2003)).

With respect to indemnity, the policy provides in relevant part:

SECTION II - LIABILITY COVERAGE
A. Coverage
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"…

(See Proposed Third Amended Complaint p. 13 (Doc. No. 123-1, p. 14.)) The term "damages" is not defined in the policy. Even a common sense layperson's interpretation of the phrase "legally must pay as damages" would be limited to mandatory payments as a result of verdict, trial or other binding legal proceeding, and not voluntary settlement payments. Regardless of your definition of damages, the voluntary settlement payment does not qualify as "sums an "insured" legally must pay as damages." Likewise, defense costs are not "sums an "insured" legally must pay as damages."

The settlement agreement also legally forecloses the possibility that either the District or Brimar will be required to pay legal damages.  Any declaration concerning the right to indemnity would be a hypothetical exercise and not an actual controversy.  There also were no findings with respect to any of the claims in the underlying suit so it is impossible to determine which claims are covered and which claims are not.  This Court properly declined to enter judgment with respect to indemnity for exactly this reason.  See e.g. Cincinnati Ins. Companies v. Pestco, Inc., 374 F. Supp. 2d 451, 465 (W.D. Pa. 2004) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action.") (citations omitted.)  Now that it is clear that none of the parties can be responsible to pay legal damages, the claim for indemnification is moot and its proposed amendment should be denied as futile.

> **ii.  National's contract claim for reimbursement is rendered moot and is not viable given this Court's Order finding a duty to defend (Proposed Count III).   National has no contractual basis for reimbursement from the District.**

National made a contract claim against Brimar for reimbursement of defense costs incurred defending the underlying suit.  Because this Court has already determined that National owes a duty to defend Brimar, this claim is no longer viable and should be dismissed and its amendment should be denied as futile.  This claim is dependent upon a finding by a Court that there is no duty to defend.  Because this Court found such a duty, there is no basis for this claim and it should be denied.

National made no such contract claim against the District and does not include one in the proposed amendments because the payment made to the District does not qualify for reimbursement under the policy even if a Court would later find that there was no duty to defend.

The Policy's reimbursement provision provides in relevant part:

B. If we initially defend an insured ("insured") or pay for insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(See Proposed Third Amended Complaint p. 15 (Doc. No. 123-1, p. 16.))  National did not initially defend nor pay for the District's defense costs under a reservation of rights.  National denied a defense to the District, and did not partially pay for the District's defense costs until a year after this Court found that they owed a defense to the District.  Therefore, this payment does not qualify for reimbursement under the Policy.  Because the reimbursement provision does not apply to the payment made to the District, National is attempting to amend the complaint to add an entirely new theory of reimbursement based upon unjust enrichment.  As set forth more fully below, such a claim for reimbursement of defense costs based upon unjust enrichment is not permitted under Pennsylvania Law.

### iii. Under Pennsylvania Law, an insurer is prohibited from seeking reimbursement of defense costs under an equitable theory such as unjust enrichment (Proposed Counts IV & VII).

The federal courts of the Third Circuit were originally ahead of the Pennsylvania state courts on the question of whether an insurer who provides a defense pursuant to a reservation of rights has a right to reimbursement of defense costs if a Court later determines that no duty to defend existed.  In Terra Nova Ins. Co. v. 900 Bar, 887 F.2d 1213, 1220 (3d Cir. 1989), in interpreting Pennsylvania law, the United States Court of Appeals for the Third Circuit, in dicta, predicted that the Pennsylvania Supreme Court would follow the minority rule that a declaration declaring that no duty to defend existed would not entitle the insurer to reimbursement of defense

costs already incurred, but would only permit the insurer to withdraw from the defense going forward.  See Id. ("Terra Nova's claim for a declaration that it has no duty to defend will be moot if, as we believe, the Pennsylvania Supreme Court would preclude an insurer who provides a defense under reservation of rights from recovering the cost of that defense from its insured if it is later determined that there is no coverage.")

The United States Court of Appeals for the Third Circuit later explained its reasoning after adopting the rule.

> In Linn, Pacific Indemnity brought a declaratory judgment action to determine which of several insurers had a duty to defend and indemnify Dr. Linn in suits against him to recover for injuries or death suffered by persons who had read and followed his diet book. Several of the suits against Dr. Linn were settled by the insurance companies before sufficient facts were developed to determine the basis for Dr. Linn's liability. Consequently, it was impossible to determine whether the policies provided coverage for the settlement amount. Because we could not determine which of the injured bookreaders claims would have prevailed, we held "the duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause." [In Pac. Indem. Co. v. Linn, 766 F.2d 754, 766 (3d Cir. 1985)], we observed:
>
>> to reach the opposite conclusion could conceivably result in an insured never being indemnified in a suit that its insurer settles where that insurer defends under a reservation of rights. In such a situation, it would behoove the insurer to reserve its rights and to settle the suit to avoid both the costs of litigation and, at the same time, the costs of indemnification.
>
> Id. at 766. Thus our holding was based, in part, on the concern that an insurer would be able to settle a suit without an agreement with the insured, and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy.

12th St. Gym v. Gen. Star Indem. Co., 93 F.3d 1158, 1166-67 (3d Cir. 1996) (emphasis added).

This concern by the Court of Appeals will be realized in this case if the insurer is permitted to move forward on its indemnity claim and seek reimbursement of defense costs under a theory of unjust enrichment.  The insurer settled the underlying suit and is now trying to claim that the jury would have found the claims in the underlying suit were not covered by the policy.  This Court should not permit this.

The Pennsylvania Supreme Court later adopted the minority rule as the Court of Appeals predicted. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 545 (Pa. 2010):

> The doctrine of unjust enrichment contemplates that "[a] person who has been unjustly enriched at the expense of another must make restitution to the other." Wilson Area School Dist. v. Skepton, 586 Pa. 513, 895 A.2d 1250, 1254 (Pa. 2006) (opinion announcing the judgment of the court). See also Binns v. First National Bank of California, Pennsylvania, 367 Pa. 359, 80 A.2d 768, 775 (Pa. 1951) (quoting Restatement (First) of Restitution § 1 (1937)).
> Insured was not unjustly enriched by Royal's payment of defense costs. Royal had not only the duty to defend, but the right to defend under the insurance contract. This arrangement benefited both parties. The duty to defend benefited Insured to protect it from the cost of defense, while the right to defend allowed Royal to control the defense to protect itself against potential indemnity exposure. Although Royal argues that it did not control the defense, it is apparent that Royal selected the firm to represent Insured, and pragmatically made it very difficult for Insured to retain independent counsel.

Id. The Court concluded, "We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters. Accordingly, we affirm the order of the Superior Court." Id. at 546.

In this case, National is attempting to recover through this new theory what it could not recover by the terms of the Policy. Specifically, the settlement payment is not covered under the reimbursement provision, and the payment for the District's defense costs is not covered because National did not initially provide a defense to the District under a reservation of rights. Under such circumstances, a claim for reimbursement based upon unjust enrichment cannot stand and that proposed amendment should be denied as futile.

**iv.   The remedy for breach of the duty to defend is reimbursement of actual defense costs incurred by the insured – not the amount the insurer would have incurred had it provided a defense (Proposed Count VIII).**

National never offered to provide a defense to the District, and never made any effort or expressed any concern about the actions the District was taking in preparing for the trial in the underlying action.  Even after this Court's Order, National did not offer to provide defense counsel for the District, did not provide an adjuster to oversee the defense, and did not provide any instructions for billing guidelines or procedures for submitting past or future bills.  The District continued to employ undersigned counsel to defend it in the underlying suit. The District's defense Counsel contemporaneously documented all defense costs and legal fees incurred in defense of the underlying suit and billed the District on a monthly basis for those costs and expenses.  Those defense costs and fees, actually incurred by the District, have been approved and paid by the District with approval of the Board.  Eventually, National's coverage Counsel in this action asked for the District's invoices in discovery in this case, but refused to pay any of the invoices until the night before its motion for leave to amend was filed.

National points to an opinion in passing that supports its position that it is only required to reimburse the District for what it or the Court consider reasonable and necessary.  A closer look at the opinion reveals, however, that it is unrelated to the situation in this case.  This is not a case where the District declined National's choice of counsel and instead hired its own counsel over National's objection.  In this case, the District was forced to hire its own counsel, because National did not provide counsel as it was required by its duty to defend.  In addition, the District has a duty to the tax paying public to control the costs of litigation as well as minimize the District's potential liability as a self-insured public entity.  In choosing defense counsel, setting rates for defense counsel, and managing litigation, the Solicitor works closely with the Board and every contract, payment and major litigation strategy must be approved by the Board by a vote of the Board at a previously advertised public meeting or executive session.  The defense costs incurred by the

District have already been scrutinized for reasonableness and necessity by the Board on behalf of the taxpayers of the District.  The Board presumably undertook its duty with the dual purpose of controlling unnecessary litigation costs and minimizing the District's potential exposure to liability.   After such review, the District's defense costs are presumptively reasonable and necessary.  Under the circumstances of this case, it would be inappropriate for an insurer or this Court to second guess the legally binding judgement and votes of the Board.

    The District does not take issue with this Court's capabilities in undertaking a review of legal bills for reasonableness and necessity, and such review would most likely reaffirm the Board's judgment in paying the fees and costs.  The District, however, is not aware of any authority in support of such a review under the circumstances of this case.  National does not point to any binding authority that limits recovery of the District to only a portion of its actual defense costs. Rather, the relevant case law for the measure of damages for breach of the duty to defend, is the actual cost of the defense. "A refusal without good cause to defend breaches this obligation and gives rise to a cause of action regardless of the good faith of the insurer." Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322 (Pa. 1963) (citing King v. Automobile Underwriters, Inc., 187 A.2d 584 (Pa. 1963)).  "Based on the usual contract rule for determining damages, the recovery for breach of the covenant to defend will ordinarily be the cost of hiring substitute counsel and other costs of the defense. This recovery may be in addition to any other obtained against the insurer." Id.; see also Zeitz v. Zurich Gen. Acci. & Liab. Ins. Co., 67 A.2d 742, 746 (Pa. Super. 1949) ("It follows from what has already been said that the clauses, here considered, are clearly separate, distinct and independent promises on the part of the insurer; that its failure to defend subjects it to liability to the insured for the costs and fees expended in successfully opposing a

claim for damages.")   Accordingly, amendment adding this new theory and claim should be denied.

IV.    <u>Conclusion</u>

For the reasons set forth above, Plaintiff's Motion for Leave to File Third Amended Complaint should be denied.  National has not made a showing of good cause, and given this Court's prior ruling, the posture of the underlying suit, the insurance policy, and Pennsylvania law, National's proposed additional claims would be futile.

Respectfully submitted,

Date: February 19, 2021                             By: <u>*/s Matthew C. Fergus*</u>

Jaime N. Doherty, Esquire
Pa. ID#89402
Matthew C. Fergus, Esquire
Pa. ID#205506
Goehring Rutter & Boehm
*Counsel for Defendant,*
*Pittsburgh Public Schools*