IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Judge Nora Barry Fischer<br>) Civil Action No. 18-1129 |
| BRIMAR TRANSIT, INC., | )<br>) |
| Defendant, | ) |
| and | )<br>) |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, | )<br>)<br>) |
| Intervenor Defendant. | ) |

**MEMORANDUM OPINION**

I.     INTRODUCTION

In this insurance coverage dispute, Plaintiff National Liability & Fire Insurance Company, ("National"), seeks leave to file a Third Amended Complaint setting forth additional allegations and claims against Defendant Brimar Transit, Inc., ("Brimar"), and Intervenor Defendant Pittsburgh Public School District, (the "District"), following the settlement of the underlying action styled M.M., parent and natural guardian of *K.M., a minor v. Pittsburgh Public School District and Brimar Transit, Inc.*, Case No. GD-18-003257, ("underlying action"), in the Court of Common Pleas of Allegheny County. (Docket Nos. 122; 125). Brimar and the District oppose National's motion and advocate that the Court's prior Memorandum Opinion finding that National had a duty to defend both Brimar and the District under the insurance contract controls the disposition of this action given the voluntary settlement by the insurance company prior to any decision narrowing the underlying claims. (Docket Nos. 126; 127). After careful consideration

1

of the parties' positions in light of the relevant standards, and for the following reasons, National's motion [122] is denied.

II.     BACKGROUND

As the parties are familiar with the facts of this matter, which are also fully set forth in the Court's Memorandum Opinion denying National's motion for judgment on the pleadings and is fully incorporated herein, the Court sets forth only those facts necessary to resolve the instant motion.  See *National Liability & Fire Ins. Co. v. Brimar Transit, Inc., et al.*, 433 F. Supp. 3d 747 (W.D. Pa. Jan. 14, 2020).  The Court's Case Management Order issued on January 28, 2019 noted that the Court granted Plaintiff's oral motion to amend its complaint by February 11, 2019 and established a deadline of March 11, 2019 for any further amendments to pleadings or joinder of parties.  (Docket No. 40).  As directed, National filed its three-count, 64-paragraph Second Amended Complaint on February 11, 2019 asserting claims for declaratory relief against Brimar and the District seeking declarations that it had no duty to defend or indemnify them in the underlying action and a separate claim for contractual damages against Brimar seeking reimbursement of defense costs advanced on its behalf.  (Docket No. 46). The attachments to the Second Amended Complaint included: the underlying complaint ("M.M. complaint"); Policy No. 73 APB 001185 obtained by Brimar from National for the policy period of January 11, 2016 through January 11, 2017 (the "Policy"); the transportation services agreement between Brimar and the District (the "Agreement"); and, the Pennsylvania School Bus Driver's Manual.  (Docket No. 46-1).

In the January 14, 2020 Memorandum Opinion, the Court analyzed the Policy, the underlying M.M. complaint and the parties' arguments, denied National's motion and held that National owed a duty to defend both Brimar and the District in the state tort action.  *Id*. at 751,

769. The Court noted that since the duty to defend is broader than the duty to indemnify, "any further determinations as to the duty to indemnify either Defendant are premature given the procedural posture of the state tort action and this federal insurance coverage case." *Id*. None of the parties sought reconsideration of the Court's Memorandum Opinion nor pursued an appeal.[1]

Following the Court's decision, the parties requested additional discovery and an Amended Case Management Order was issued on January 22, 2020, establishing a discovery deadline of May 20, 2020. (Docket No. 94). The Court further noted that the previously entered Case Management Order remained in full force and effect such that the Court did not set a new deadline for the parties to file motions for leave to amend pleadings. (*Id*.). Hence, the lack of a new deadline demonstrated that the pleadings had closed and none of the parties anticipated a basis to seek a further amendment at the time.

The underlying action proceeded toward a trial date in the Court of Common Pleas of Allegheny County. (Docket No. 99). However, after jury trials were suspended due to the COVID-19 pandemic, global settlement negotiations ensued in an effort to resolve this insurance coverage case and the underlying tort action, resulting in a voluntary settlement between National and the M.M. plaintiffs in December of 2020. (Docket Nos. 97; 102; 104; 106; 112). Prior to the settlement, there were no judicial rulings issued by the Court of Common Pleas narrowing or dismissing any of the claims set forth in the M.M. complaint. (*See* Docket No. 125-1). Although there were some efforts toward the resolution of this federal insurance coverage action, the parties reported that this case was not settled and did not request that this Court refer the case for a judicial settlement conference, leading to the current motions practice.

---

[1] The Court notes that motions for reconsideration are due within 7 days under this Court's Practices and Procedures. *See Practices and Procedures of Judge Nora Barry Fischer*, at § II.M, *available at:* https://www.pawd.uscourts.gov/sites/pawd/files/Fischer_Practices_Procedures_2_28_20.pdf (effective 2/28/2020).

National now seeks leave to file an eight-count, 136 paragraph proposed Third Amended Complaint against Defendants including the following claims: Count I – Declaratory Relief against Brimar (Duty to Defend); Count II – Declaratory Relief against Brimar (Duty to Indemnify); Count III – Claim for Contractual Recoupment of Defense Costs against Brimar; Count IV – Claim for Unjust Enrichment against Brimar; Count V – Declaratory Relief against the District (Duty to Defend); Count VI – Declaratory Relief against District (Duty to Indemnify); Count VII – Claim for Unjust Enrichment against the District; Count VII – Claim for Declaratory Relief against the District (Reasonable and Necessary Defense Costs – In the Alternative).  (Docket No. 125-1).

The factual allegations in the proposed Third Amended Complaint largely mirror those set forth in the Second Amended Complaint which was the subject of the January 14, 2020 Memorandum Opinion, with a few notable exceptions.  (*Compare* Docket No. 125-1 *with* Docket No. 46).  To that end, National notes that it "respectfully disagrees with the Court's decision with regard to the duty to defend, and reserves all of its rights to appeal that decision."  (*Id*. at n.1).  National adds all of the following:

> 18. The Underlying Complaint does not include any allegation that the School District was vicariously liable for the conduct of Brimar or any allegation that Brimar was vicariously liable for the conduct of the School District.
>
> …
>
> 20. National provided a defense to Brimar with respect to the Underlying Action, subject to a written reservation of rights and disclaimer, which included a reservation of National's right to seek recoupment of defense costs if it was later determined that no coverage exists. A true and correct copy of the July 24, 2018 Letter is attached hereto as Exhibit "B".
>
> 21. The School District retained counsel of its own choosing to defend it in the Underlying Action.
>
> 22. On January 14, 2020, this Court determined that National had a duty to defend both Brimar and the School District in connection

4

with the Underlying Action, but determined that issues related to the duty to indemnity were premature.

23. In late December 2020, National paid to settle the Underlying Action on behalf of Brimar and the School District, and the underlying plaintiffs' claims against Brimar and the School District were dismissed with prejudice. Brimar and the School District agreed to dismiss their respective cross claims and the Underlying Action in its entirety has been dismissed with prejudice.

24. National funded the settlement of the Underlying Action, subject to an express reservation of all rights which preserved its ability to challenge coverage in this matter, and to seek reimbursement of all funds paid.

25. Specifically, on December 4, 2020, National notified Brimar and the School District in writing that if "National make any settlements to the plaintiffs in the [Underlying Action], National will seek full reimbursement" from Brimar and the School District. A true and correct copy of the December 4, 2020 letter is attached hereto as Exhibit "C".

26. National also memorialized its reservations to dispute coverage in the underlying settlement agreement itself.

27. In accordance with the Court's January 14, 2020 Order, and without waiving any of its rights to appeal that Order, on February 10, 2021, National issued payment to counsel for the School District in the amount of $266,800.86 for its documented and paid defense costs incurred in defending the School District in the Underlying Action. A true and correct copy of the February 10, 2021 letter is attached hereto as Exhibit "D".

28. National's payment of defense costs to counsel for the School District was made subject to all of its rights to dispute coverage, and National expressly advised the School District that it fully intended to seek reimbursement of all monies paid to or on behalf of the School District, including defense and settlement payments. See Exh. D.

29. National's payment to counsel for the School District was also made subject to its right to challenge the reasonableness and necessity of the reimbursed defense costs in the event a duty to defend is deemed to exist as to the School District. See Exh. D.

5

>30. National has incurred $80,958.79 in defense costs on behalf of Brimar in connection with the Underlying Action.

(*Id*. at ¶¶ 18, 20-30). Through its claims noted above, National seeks declarations that it has no duty to defend or indemnify both Brimar and the District; asserts claims for reimbursement of defense costs and raises alternative theories of unjust enrichment against both. National also sets forth an alternative claim against the District seeking reimbursement of any defense costs deemed unreasonable or unnecessary. (*Id*.).

The proposed Third Amended Complaint is supplemented with more attachments, including three purported reservation of rights letters: a July 24, 2018 letter from National to Brimar regarding the Policy and Claim Number 00414024; a December 4, 2020 letter from National's former counsel to Brimar's counsel; and, a February 10, 2021 letter from National's current counsel to the District's counsel. (Docket No. 125-1). Notably, National's July 24, 2018 reservation of rights letter to Brimar analyzed the coverage issues with reference to a prior version of the underlying M.M. complaint, as the version attached to the proposed Third Amended Complaint was filed and served in state court on December 7, 2018. (Docket No. 125-1 at 72).

To that end, the July 24, 2018 reservation of rights letter stated that "the Policy does not apply to the allegations of, and damages sought in the Lawsuit [and that] [National] will provide [Brimar] with a defense against the Lawsuit subject to a full and complete reservation of rights under the Policy and applicable law" but further states that National reserved the right to withdraw from the defense if it determined that the Policy does not apply to the lawsuit, to file a declaratory judgment action against Brimar, and "to seek reimbursement of any defense fees, defense costs, or any other sums expended or incurred by National Liability while defending the lawsuit or causes of action alleged in the Lawsuit to which the Policy does not or could not potentially apply." (*Id*. at 292, Ex. "B"). However, the letter continued that "[t]he determination regarding application of

6

the Policy to the Lawsuit and claims asserted against [Brimar] is based on information National Liability has received to date. If the claims or related allegations are expanded or modified in any manner or if you receive any documents related to the Lawsuit, such as pleadings, amended pleadings, please immediately forward the new information to me so that National Liability may review the revised allegations to determine whether the insurance provided by the Policy would apply to them."[2] (*Id*.). Despite National's stated commitment to reevaluate its coverage decision with reference to any amended pleadings, it has not attached a reservation of rights letter specifying that National was reserving its rights as to the operative underlying M.M. complaint.[3]

The more recent December 4, 2020 letter from National's counsel to counsel for Brimar and the District states the following:

> I write with regard to the action pending in Allegheny County, captioned M.M., parent and natural guardian of K.M., a Minor v. School District of Pittsburgh, Pa. and Brimar Transit, Inc., No. GD18-003257 (the "Allegheny County Action"). This letter confirms that, if National makes any settlement payment to the

---

[2]     The Court notes that the M.M. plaintiffs filed several amended pleadings in the state court action. The initial complaint was filed on May 31, 2018 and amended complaints were filed on September 11, 2018; October 25, 2018; and December 7, 2018.  Only the initial M.M. complaint had been filed as of the date of the July 28, 2018 reservation of rights letter and it contained 94 paragraphs and 7 counts against Brimar and the District (i.e., Count I - negligence; Count II – breach of contract; Count III – Third Party Beneficiary; Count IV – state-created danger; Count V – intentional infliction of emotional distress; Count VI – fraud/misrepresentation; and Count VII – common carrier liability). As the Court noted in its Memorandum Opinion, the underlying M.M. Complaint from December 7, 2018 contains 124 paragraphs and 6 counts against them.

[3]     The Court notes that under Pennsylvania law, an insurance company owes a duty of good faith and fair dealing to its insured during the claims process, including the duty to timely conduct a reasonable investigation of the insured's claims and to communicate with the insured. *See e.g.,* 31 Pa. Code §§ 146.5 and 146.6. As such, insurers have a corresponding duty to "promptly advise their insureds if they are contemplating denying coverage," *Selective Wray Ins. Co. v. MAK Serv., Inc.*, 232 A.3d 762, 770, n.5 (Pa. Super. Ct. 2020), and if the insurer is defending under a reservation of rights, it must timely and "fairly inform the insured of the insurer's [coverage] position" in order to preserve any defenses to coverage and the applicability of any pertinent exclusions. *Id.* (citing *Brugnoli, v. United Nat. Ins. Co.*, 284 Pa. Super. 511, 426 A.2d 164, 167 (Pa. Super. Ct. 1981)). "Once an insurer identifies a reasonable foundation for denying a claim, it is not relieved of its duty of good faith and fair dealing" with its insured, and "if evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and fair dealing requires it to reconsider its position." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1145 (Pa. Super. Ct. 2006). Accordingly, it is best practice for the insurer to "send multiple reservation of rights letters during the evolution of the case" to clearly communicate its position as to any new evidence or allegations. *Selective Wray Ins. Co.,* 232 A.3d at 770 (citing *Erie Ins. Exchange v. Lobenthal*, 114 A.3d 832, 836-37 (Pa. Super. Ct. 2015)). All told, an insurance company that fails to clearly communicate its coverage position in its reservation of rights letters to its insured may be found to have waived or be estopped from asserting some or all of its coverage defenses in a declaratory judgment action. *Id.* at 770-71.

> plaintiffs in the Allegheny County Action, National will seek full reimbursement to the extent of that payment from Brimar Transit, Inc. and School District of Pittsburgh. Because the Commercial Policy issued by National to Brimar was not intended to cover the claims in the Allegheny County Action and, National believes, ultimately will be declared not to cover those claims, National will be entitled to reimbursement from Brimar and School District of amounts it pays on their behalves to resolve the Allegheny County Action.
>
> Any settlement payment by National that resolves the Allegheny County Action also will extinguish any duty of National to indemnify any Insured concerning that Action.

(Docket No. 125-1 at 295, Ex. "C").

The February 10, 2021 letter from National's counsel to the District's counsel states the following, in relevant part:

> On January 14, 2020, the Court in the above-referenced matter issued a Memorandum Opinion holding that National Liability & Fire Insurance Company ("National") has a duty to defend the Pittsburgh Public School District ("School District") in M.M., parent and natural guardian of K.M., a Minor v. School District of Pittsburgh, Pa. and Brimar Transit, Inc., No. GD18-003257 (the "Allegheny County Action"). As you are aware, National respectfully disagrees with the Court's Memorandum Opinion. Notwithstanding that disagreement and subject to all of National's rights and appellate remedies to contest the Court's ruling, enclosed herein is a check issued to the School District in the amount of $266,800.86.
> …
> As National informed you previously, including at the time it contributed monies to resolve the Allegheny County Action, the National policy does not apply and any amounts National expends, including the payment enclosed herein, are on a full recourse basis. *See, e.g.* December 4, 2020 Letter from Richard Mason, Esq attached hereto. Therefore, this payment is being made solely to comply with the Court's Memorandum Opinion and in no way waives any of National's claims or coverage defenses asserted in the pending Federal court action, or any future claims or defenses to be asserted by National in that action. In making this payment, National continues to reserve all rights with respect to coverage for the Allegheny County Action, including, without limitation, its legal and equitable rights to seek reimbursement of this payment, and the

> payment issued by National on behalf of the School District and Brimar Transit, Inc. to settle the Allegheny County Action. National also continues to reserve all of its rights to contest the Court's Memorandum Opinion and any future orders issued by the Court, including all appellate remedies. Further, National reserves its right to contest the reasonableness and necessity of the School District's claimed defense costs. Of particular note, in light of the School District's heavily redacted invoices, National is unable to discern whether any particular task and related fee was reasonable or necessary. Now that the Allegheny County Action has resolved, please provide unredacted copies of all defense invoices.
>
> Neither this letter nor any future communication, investigation, or action by National is intended, or should be deemed or construed, as an admission that the National Policy issued to Brimar Transit, Inc. applies to the Allegheny County Action. This letter should not be viewed as a waiver of any right or defense available to National, now or in the future, or an expansion of any duties National may have or may in the future acknowledge.

(Docket No. 125-1 at 297-98, Ex. "D").

At this stage of the proceedings, National has paid the M.M. plaintiffs to resolve the state tort action, paid counsel for Brimar and reimbursed the District for its attorneys' fees and costs expended in defense of the case. Although there were prior negotiations to resolve this insurance coverage case, the parties have not reported that the case has settled. Thus, the Court must proceed to resolve the present disputes set forth in National's motion, brief, proposed Third Amended Complaint and the briefs in opposition filed by the Defendants. (Docket Nos. 122; 125; 126; 127). National declined to seek leave to file a reply brief in support of its motion and none of the parties have requested oral argument. Accordingly, the Court considers the motion to fully briefed and ripe for disposition.[4]

### III.  LEGAL STANDARDS

---

[4] The Court notes that it has presided over numerous other matters in the interim, including criminal sentencings and compassionate release motions addressing the impact of the COVID-19 pandemic on individuals who are detained in correctional institutions, all of which in this Court's estimation took priority over this dispute.

9

A party seeking leave to amend the pleadings after the deadline set by the Court's case management order must demonstrate good cause under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). A Case Management Order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Good cause requires a demonstration of due diligence. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). "Many courts have recognized that where the party knows or is in possession of information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Greygor v. Wexford Health Sources, Inc. et al.*, Civ, A. No. 14-1254, 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016) (internal citation and quotation marks omitted).

Only after the moving party demonstrates good cause under Rule 16(b)(4) does the Court consider whether the motion to amend meets the Rule 15 standard. *Premier Comp Sols.*, 970 F.3d at 319 ("A party must meet [the Rule 16(b)(4)] standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."). Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "'When a party seeks leave to amend a complaint after judgment has been entered, it must also move to set aside the judgment pursuant to Federal Rule of Civil Procedure 59(e) or 60(b), because the complaint cannot be amended while the judgment stands.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019) (quoting *Jang v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 367-68 (3d Cir. 2013)) (further citation omitted). "'Where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors.'"

*Id.* (quoting *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001)) (further citation omitted). As this Court has previously explained:

> "[M]otions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citations omitted). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSK Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Further, "[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety and Health Review Com'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "As to prejudice, the Court of Appeals has 'considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.'" *Graham [v. Progressive Direct Ins. Co.]*, 271 F.R.D. [112,] at 122 [W.D. Pa. 2010] (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'" *Id.* (*quoting Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007)). The test under Rule 15(a) "is in the disjunctive, meaning that if [Defendants] meet[ ] [their] burden to prove any one of these elements, the [amendment] should not be permitted." *Id.*

*Greygor*, 2016 WL 772740, at *2.

## IV. DISCUSSION

The parties dispute whether National has met its burden to demonstrate that it should be granted leave to file its proposed Third Amended Complaint at this time. (Docket Nos. 122; 125; 126; 127). National maintains that it has shown good cause for the proposed amendments and that Defendants will not be prejudiced by same because its newly advanced claims merely seek "to clarify and supplement the existing claims for declaratory relief and assert related contractual and equitable claims for reimbursement if this Court rules in National's favor with respect to coverage." (Docket No. 125 at 2). Defendants counter that National has not demonstrated good

cause because its proposed amendments and additional claims were not diligently pursued and should have been brought much earlier in the case. (Docket Nos. 126; 127). They continue that National did not move to set aside the prior judgment that National had a duty to defendant both Brimar and the District and the proposed amendments are also futile given the Court's prior rulings and National's voluntary settlement of the underlying tort action prior to trial and any judicial rulings narrowing the M.M. plaintiffs' claims. (*Id*.). Having carefully considered the parties' positions, the Court holds that National has failed to demonstrate that its Third Amended Complaint should be permitted under the prevailing standards. Therefore, its untimely motion to amend its complaint a third time will be denied. The Court's rationale follows.

With respect to Rule 16, National has not established good cause for failing to adhere to the March 11, 2019 deadline to file motions to amend pleadings or add new parties. National also has not acted with diligence by waiting to seek leave to amend more than a full year after the Court's Memorandum Opinion holding that National had a duty to defend Brimar and the District and several months after the period for fact discovery closed on October 29, 2020. As this Court has held previously,

> "[c]arelessness, or attorney error, which might constitute 'excusable neglect' under Rule 6(b), is insufficient to constitute 'good cause' under Rule 16(b)." Likewise, tactical errors and delays by experienced attorneys, such as those made in this action, do not demonstrate that Plaintiffs acted with diligence to this Court.

*Graham*, 271 F.R.D. at 121 (quoting *Chancellor v. Pottsgrove School Dist.*, 501 F. Supp. 2d 695, 701-02 (E.D. Pa. 2007) (citations omitted)). Further, a party is presumptively not diligent if it delays acting on information that it possessed earlier in the litigation. *Id.* at 119.

Here, the record reveals that National's untimely motion to amend resulted from a series of tactical decisions by its counsel such that the Court must conclude that neither diligence nor

good cause have been shown.  See *Johnston v. Titan Logistics & Resources, LLC et al.*, Civ. A. No. 17-1617, 2020 WL 6364148, at *6 (W.D. Pa. Oct. 29, 2020) (citing *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015)) (a party "is bound by the decisions of its prior able counsel on what amounts to litigation strategy").  First, after the March 11, 2019 deadline for amended pleadings expired, National advocated that the pleadings were closed and filed a motion for judgment on the pleadings, which this Court denied.  (Docket Nos. 53; 54; 57; 58; 59; 65; 66; 91).  Second, despite the Court's ruling in January of 2020 that National had a duty to defend both Brimar and the District in the underlying tort action, National did not contemporaneously seek leave to amend its complaint, despite it possessing more than sufficient information to plead all of its alterative theories at that time.  See *Graham*, 271 F.R.D. at 121.  Third, National entered into a stipulation with Defendants on January 21, 2020 which sought to amend the case management order and extend the period for fact discovery but did not extend any other deadlines, including the previously expired deadline to file any motions to amend pleadings.  (Docket Nos. 93; 94).  Fourth, National prosecuted its Second Amended Complaint through the completion of fact discovery, which was extended through joint request of the parties until October 29, 2020, and then participated in global mediation sessions on those claims in November and December of 2020.  (Docket Nos. 100; 102; 104; 106; 108; 112).  Fifth, National's December 2020 and February 2021 letters purportedly reserving its rights to bring these additional claims were not sent until after the deadlines for amended pleadings and discovery had elapsed and are likewise untimely.  (Docket No. 125-1).  Overall, the totality of the circumstances demonstrate that National expressly failed to preserve its ability to bring the instant motion and did not diligently pursue the claims in its proposed Third Amended Complaint, notwithstanding its numerous opportunities to do so.  See *Race Tires Am., Inc.*, 614 F.3d at 84.  Therefore,

National's motion is denied because it has failed to satisfy the "good cause" standard under Rule 16(b)(4).

Although the Court may deny National's motion on these grounds alone, the Court would alternatively hold that it has failed to meet its burden to permit the proposed amendments under Rule 15. *Cureton*, 252 F.3d at 273. For the reasons already stated, the Court finds that National has unduly delayed by waiting to seek leave to amend its complaint a third time until several months after the conclusion of the period for fact discovery.

In addition, the Court of Appeals has held that a party seeking leave to file an amended complaint after a judgment has been entered must contemporaneously move to set aside the judgment because a "complaint cannot be amended while the judgment stands." *See Wolfington*, 935 F.3d at 210. The Court agrees with the defense that the same principles should apply to bar the proposed amendments in this case. To that end, the Court followed the "four corners rule" by analyzing the allegations in the M.M. complaint under the Policy's language and found that National owed a duty to defend both Brimar and the District. (Docket No. 91). National did not timely challenge that opinion by seeking reconsideration within the 7-day deadline proscribed by this Court's Practices and Procedures and did not pursue an immediate appeal to the U.S. Court of Appeals for the Third Circuit, which may have been available. *See e.g., Practices and Procedures of Judge Nora Barry Fischer*, at § II.M. (motions for reconsideration due within 7 days); *Nautilus Ins. Co v. 200 Christian St. Partners LLC*, 819 F. App'x 87, 88-89 (3d Cir. 2020) (District Court's order denying motion for judgment on the pleadings and holding that insurance company had duty to defend was immediately appealable under 28 U.S.C. § 1292(a)(1) because of the injunctive nature of the order). While National has not presently moved for reconsideration, it admits that its

14

"position on coverage has not changed" and merely states that it respectfully disagrees with the Court's decision. (Docket No. 125). However,

> "[b]ecause of the interest in finality, at least at the district court level ... the parties are not free to relitigate issues the court has already decided," *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)), to express disagreement with the Court's rulings, *see El v. City of Pittsburgh*, Civ. A. No. 15-834, 2017 WL 4310233, at *2 (W.D. Pa. Sept. 28, 2017) (citations omitted), or to raise arguments that a party had the opportunity to present before the Court's decision."

*Cornerstone Residence, Inc. v. City of Clairton, Pennsylvania*, Civ. A. No. 17-706, 2018 WL 306670, at *1 (W.D. Pa. Jan. 5, 2018). As such, the Court sees no basis to reconsider its ruling that National owes a duty to defend Brimar and the District and will not permit it to re-plead its claims in an effort to reopen and challenge that ruling.

Beyond those reasons, Defendants would also sustain prejudice if they were now forced to defend the proposed 8-count Third Amended Complaint, rather than the straightforward claims which remain in the current pleading. *See Graham*, 271 F.R.D. at 122. Again, the period for fact discovery closed several months prior to National pursuing the proposed amendments such that Defendants would not have the opportunity to conduct discovery as to these newly advanced allegations and legal theories if they desired to do so. *Id*. They likewise would be unable to amend their own pleadings and bring additional counterclaims against National or cross claims against each other at this late stage of the proceedings. *Id*.

The Court would also alternatively hold that leave to amend should be denied as the proposed amendments are futile. *Greygor*, 2016 WL 772740, at *2. For the reasons already expressed, the proposed amendments to the duty to defend claims are futile given the prior ruling

deciding that issue. With respect to the claims asserting that National has no duty to indemnify, several legal principles must be considered.

The Court of Appeals has recognized that "[i]f triggered, the duty to defend also carries 'a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy.'" *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249-50 (3d Cir. 2019) (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997)). "Both duties are at issue until the underlying 'claim is confined to a recovery that the policy does not cover.'" *Id.* However, a decision on the insurer's duty to indemnify may be muddled by a settlement of the underlying action and make it impossible to determine what theories of liability, if any, would have prevailed at trial. *Id.* at n.3 (citing *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 766 (3d Cir. 1985)). This is particularly true if there are multiple claims and parties in the underlying action and there was no fact finding made by the trial court prior to the settlement on which a nuanced coverage determination could be made. *Id.* As the Court of Appeals later clarified, the holding in *Linn* "was based, in part, on the concern that an insurer would be able to settle a suit without an agreement with the insured, and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy." *12th Street Gym, Inc. v. General Star Indem. Co.*, 93 F.3d 1158, 1167 (3d Cir. 1996). In such situations, Pennsylvania law does not permit the insurer to try the underlying case before the coverage decision may be made by the Court and the duty to indemnify follows the duty to defend. *See also Liberty Mutual Ins. Co. v. Penn National Mut. Casualty Ins. Co.*, 499 F. Supp. 3d 130, 141-42 (W.D. Pa. Nov. 6, 2020) (Hornak, C.J.) ("the two prerequisites for indemnification under the '*Linn* Rule' are: (1) that the nature of the case as being one with multiple parties, multiple theories of liability, and settlement making liability among competing parties impossible to

determine and (2) there must be a concern that an insurer could foreclose indemnification by its conduct relative to the underlying lawsuit. When those factors converge, the indemnity obligation follows the duty to defend.").

In this Court's estimation, National has failed to plead sufficient facts in the proposed Third Amended Complaint to state a plausible claim for declaratory judgment asserting that it has no duty to indemnify the Defendants. To reiterate, the Court reviewed the M.M. complaint asserting multiple claims against Brimar and the District as well as the Policy language and determined that National had a duty to defend them. (Docket No. 91). At most, National has now pled that it disagrees with this Court's decision, settled with the M.M. plaintiffs in the underlying action prior to trial, paid for Brimar's defense, and reimbursed the District for its attorney's fees and defense costs. (Docket No. 125-1). National issued reservation of rights letters in December of 2020 concerning the settlement and February of 2021 with regards to the reimbursement to the District. (*Id*.). Both letters indicate that National reserved the right to challenge this Court's rulings, including through an appeal. (*Id*.). Yet, National has not alleged that the trial court made any factual findings prior to the settlement and it is uncontested that the settlement of the underlying action took place prior to the trial court making any rulings narrowing the scope of the M.M. complaint. (*Id*.). Absent any rulings or factual findings from the trial court in the underlying case, the insurer's pre-trial settlement precludes this Court from undertaking a more nuanced coverage decision than has already been produced. See *Sapa*, 939 F.3d at 250, n.3. Therefore, National's proposed Third Amended Complaint may also be denied due to the futility of the claims.[5]

---

[5] The Court notes that National admits that its unjust enrichment claims "will rise and fall on the Court's determination of whether coverage exists for the Underlying Act." (Docket No. 125 at 9). The Supreme Court of Pennsylvania has also held that "an insurer may not obtain reimbursement of defense costs for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 545 (Pa. 2010). Hence, no further discussion of those claims is necessary.

To conclude, the Court finds that National has failed to meet its burden to demonstrate good cause to permit the untimely Third Amended Complaint and that the proposed amendments are not in the interests of justice. It is also this Court's opinion that permitting the amendment would run counter to the dictates of Rule 1 "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.

V.     CONCLUSION

Based on the foregoing, National's Motion [122] is DENIED. An appropriate Order follows.

<div style="text-align: right;">
<u>s/Nora Barry Fischer</u>
Nora Barry Fischer
Senior U.S. District Judge
</div>

Dated: September 7, 2021

cc/ecf: All counsel of record.