UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) | |
| | ) | Civil Action No. 2:18-cv-1129 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BRIMAR TRANSIT INC., | ) ) | |
| Defendant, | ) ) | |
| vs. | ) ) | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, | ) ) | |
| | ) | |
| Intervenor Defendant. | ) | |

**Brief in Opposition to Motion for Reconsideration**

I.       Introduction

Plaintiff, National Liability and Fire Insurance Company's ("National") Motion for Reconsideration should be denied.  National has not demonstrated a change in the controlling law, the availability of new evidence or a need to correct a clear error of law or fact, or to prevent a manifest injustice.  See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  National simply seeks to reargue the motion or to raise new arguments that should have been included in a reply brief responding to defendant Pittsburgh Public School District's (the "District") brief in opposition.  In addition, the limited issues raised by National would not change the outcome of the Order, given the Court's alternative rulings.  See El v. City of Pittsburgh, No. 2:15-cv-00834-NBF, 2017 U.S. Dist. LEXIS 162209, at *12 (W.D. Pa. Sep. 28, 2017) (citing Durst v. Durst, 663 Fed. App'x 231, 237 (3d Cir. 2016) (affirming the District Court's denial of a motion for reconsideration based, in part, on the fact that the issue raised in the motion would not have changed the outcome of the prior decisions)).

This Court's Order denying National's Motion for Leave to File Third Amended Complaint (the "Order"), on its own, is not appropriate for certification for interlocutory appeal.  The Order does not present a substantial ground for difference of opinion, and allowing immediate appeal will not materially advance the ultimate termination of the litigation.  See Knipe v. Smithkline Beecham, 583 F. Supp. 2d 553, 598-99 (E.D. Pa. 2008).

 The District respectfully requests that this Court enter final judgment in favor of the District and Brimar, and against National on all of National's claims pursuant to Fed. R. Civ. P. Rule 54(b), based upon this Court's two Orders, the first from January 14, 2020 and the second, more recently, on September 7, 2021.

II.     Legal Standards

"[A] judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe, 176 F.3d at 677.

"Certification pursuant to § 1292(b) should be granted 'sparingly' and only when three conditions are met: (1) where immediate appeal may avoid protracted and expensive litigation, (2) the request involves a controlling question of law, and (3) where there is a substantial basis for differing opinion." Harris v. Kellogg, Brown, & Root Servs., Civil Action No. 08-563, 2009 U.S. Dist. LEXIS 36253, at *2-3 (W.D. Pa. Apr. 30, 2009) (citations omitted).

Federal Rule of Civil Procedure 54(b), "Judgment on Multiple Claims or Involving Multiple Parties," provides:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are

involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R .Civ. P. 54(b).

III.   <u>Argument</u>

National raised three issues in its Motion for Reconsideration: 1) the Court committed an error of fact as to when its proposed new claims could have been brought; 2) the Court made an error of law by holding that National was required to move to set aside the Court's Order on Judgment on the Pleadings; and 3) the Court erred in ruling that National's indemnity claims were futile.

The Court should reject these arguments.  The Court did not err in determining that National had all the information it needed to bring any proposed potentially viable claim by the time the Court made its ruling upon judgment on the pleadings.  The Court did not hold that National was required to move to set aside the Court's prior order.  The Court cited the rule as persuasive authority and the rationale of the rule as one factor in its determinations concerning diligence of plaintiff, prejudice to defendants, and efficient use of judicial resources.  National's indemnity claims are clearly futile given the Court's prior rulings, the Policy language, and disposition of the underlying lawsuit.

      **a.  The Court did not err in determining that National was either not diligent in bringing its proposed amendments or was bound by its prior strategic decisions in not bringing the claims.**

National alleges that it could not have brought its claims for reimbursement of defense costs and the settlement payment, because it did not pay the District its defense costs until (not

coincidentally) one day before it filed its Motion to Amend.  Before responding to the issue substantively, a little context is in order to counter National's misleading[1] recitation of the facts.

On January 14, 2020 this Court entered an Order requiring, inter alia, National to provide a defense to the District. National has never accepted that Order.  After this Court's Order, National did not offer to provide defense counsel for the District, and did not provide any instructions for billing guidelines or procedures for submitting past or future bills.  The District continued to employ undersigned counsel to defend it in the underlying lawsuit. The District's defense Counsel contemporaneously documented all defense costs and legal fees incurred in defense of the underlying lawsuit and billed the District on a monthly basis for those costs and expenses.  National formally requested invoices and bills for the District's defense costs in the underlying case, in discovery in this case, on June 17, 2020.  On July 17, 2020, the District timely responded and produced all invoices paid by the District in the underlying lawsuit.  Because they were being produced to opposing counsel in discovery in ongoing litigation, and not to a claims evaluator who had been assigned by the carrier, the District redacted wherever counsel's strategy or legal advice could be gleaned in order to preserve any privilege that may apply.

National did not pay the invoices, ask for additional documentation, assert that they could not evaluate the invoices due to the redactions or assert that any entries were for unrelated matters. National ignored the submissions.  Instead of paying for the District's defense costs, National made the strategic decision to attempt to compromise the District's fees at mediation of the underlying claim, without articulating any specific challenge to the invoices except that they were too high. At the mediation on November 6, 2020, National made the unusual request, through the mediator,

---

[1] The attorneys currently working on the case on behalf of National were not actively involved in this case at the time of this Court's Order on judgment on the pleadings, so we can give them the benefit of the doubt that they were not intentionally misleading the Court.

for the District's cancelled checks showing they actually paid the invoices.  Although insulted by National's implication that the invoices were possibly something other than the actual paid invoices as represented by counsel, the District provided the cancelled checks within a week.

On February 11, 2021, three months later, and one day before the deadline for National's Motion for Leave to Amend, District counsel received a check via overnight Federal Express purporting to be partial payment for the District's defense costs.  Now National makes the tortured and circular argument that it could not make a claim for reimbursement, because it had not yet made that payment.  Contrary to National's assertion, the timing of the proposed amendment was not dependent upon the partial payment of defense costs.  National controlled both the timing of the payment and the untimely filing of the Motion to Amend.  The timing of the payment was deliberately dependent upon the timing of the motion in an obvious attempt to manufacture a nonexistent equitable claim for reimbursement that counsel had dreamed up for their proposed Third Amended Complaint.

As this Court has already held, National made several strategic decisions, and had several opportunities to amend, making amendment at this point inappropriate.  First, when the District was allowed to intervene, National had the opportunity to amend, and did amend the Complaint to add a claim against the District.  National made a strategic decision to challenge the District's position as an insured under the Policy, and not to make the alternative claim that if the District is an insured, it is subject to the reimbursement provision of the Policy.  To now claim that it could not have brought such a claim is, at best, disingenuous.  After all, National made that same claim from the beginning against Brimar.  National did not need to wait for a Court determination to make that claim against Brimar, and it likewise did not need to wait to make that claim against the District.

Next, after this Court determined on January 14, 2020, that the District was an insured and that National had a duty to defend it, National again made the strategic decision not to amend the Complaint to add a claim for reimbursement against the District.  Even though the Court of Appeals has chastised such a "wait and see" approach, it would then have been at least a logical time to amend the complaint.  See Jang v. Bos. Sci. Scimed, Inc., 729 F.3d 357, 368 (3d Cir. 2013) ("This court has declined to reward a wait-and-see approach to pleading.") (citing Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."))

Nevertheless, amendment to add additional claims for reimbursement would have been futile.

In the Second Amended Complaint, National made a contract claim against Brimar for reimbursement of defense costs incurred in defense of the underlying lawsuit.  Because this Court has already determined that National owes a duty to defend Brimar, this claim is no longer viable and judgement should be entered against National and its amendment should be denied as futile. This claim is dependent upon a finding by a Court that there is no duty to defend.  Because this Court found such a duty, there is no basis for this claim and it should be denied.

National asserted no such contract claim against the District and does not include one in the proposed amendments because the payment made to the District does not qualify for reimbursement under the policy, even if a Court would later find that there was no duty to defend.

The Policy's reimbursement provision provides in relevant part:

> B. If we initially defend an insured ("insured") or pay for insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

> The right to reimbursement under this provision will only apply to the costs
> we have incurred after we notify you in writing that there may not be coverage and
> that we are reserving our rights to terminate the defense or the payment of defense
> costs and to seek reimbursement for defense costs.

(See Proposed Third Amended Complaint p. 15 (Doc. No. 123-1, p. 16.))  National did not initially defend or pay for the District's defense, even under a reservation of rights.  National denied a defense to the District, and did not partially pay for the District's defense costs until a year after this Court found that National owed a defense to the District.  Therefore, this payment does not qualify for reimbursement under the Policy.

Because the reimbursement provision does not apply to the payment made to the District, National attempted to amend the Complaint to add an entirely new theory of reimbursement based upon unjust enrichment.  Such a claim for reimbursement of defense costs based upon unjust enrichment, with no contractual right, is not permitted under Pennsylvania Law.  See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 546 (Pa. 2010) ("We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters. Accordingly, we affirm the order of the Superior Court.")  National attempts to distinguish this case by arguing that the rule only applies in the absence of a contractual right to reimbursement in the Policy.  The District agrees with the premise that the rule is only applicable in the absence of the contractual right in the Policy.  The District disagrees, however, that the case is distinguishable from this case.  Here, there is also no contractual right to reimbursement from the District.  As set forth above and in the District's response to the Motion for Leave to Amend, neither the defense costs paid to the District, nor the voluntary settlement payment, qualify for reimbursement under the Policy.  Therefore, there is no

contractual right to such reimbursement.  Absent such a contractual right, an equitable claim is prohibited.  Id.

> ### b. The Court did not hold that National was required to move to set aside the Court's prior order.

National argues that the Court made an error of law by holding that National was required to move to set aside the Court's Order on Judgment on the Pleadings prior to moving for amendment.  The Court did not hold that National was required to move to set aside the Court's prior order.  The Court cited the rule as persuasive authority only and the rationale of the rule as one of several factors in its determinations concerning diligence of plaintiff, prejudice to defendants, and efficient use of judicial resources.

As previously argued by the District in its response to the motion to amend, it's the rationale behind the rule that should be applied to this case, not the rule itself:

"Although the Court's judgment in favor of the District and Brimar was not a final order for purposes of immediate appeal, it is well settled that amendment is improper when a judgment based upon that pleading still stands.  See Jang v. Bos. Sci. Scimed, Inc., 729 F.3d 357, 367-68 (3d Cir. 2013) ("When a party seeks leave to amend a complaint after judgment has been entered, it must also move to set aside the judgment pursuant to Federal Rule of Civil Procedure 59(e) or 60(b), because the complaint cannot be amended while the judgment stands.") (emphasis added) (citing Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); 6 Charles Alan Wright et al., Federal Practice and Procedure § 1489 (3d ed. 2013)).  While this case does not involve a final order, the rationale is the same.  Allowing amendment would essentially vacate this Court's order granting judgment on the pleadings in favor of Brimar and the District and the parties would be forced to redo the entire process where the parties had a complete opportunity to litigate the issue of the duty to defend and this Court spent significant judicial

resources in considering the parties' arguments and entering a well-reasoned opinion and order."

(Doc. No. 126, pp. 4-5.)

This Court agreed with that rationale.

In addition, the Court of Appeals has held that a party seeking leave to file an amended complaint after a judgment has been entered must contemporaneously move to set aside the judgment because a "complaint cannot be amended while the judgment stands." See Wolfington, 935 F.3d at 210. The Court agrees with the defense that the same principles should apply to bar the proposed amendments in this case. . . . [T]he Court sees no basis to reconsider its ruling that National owes a duty to defend Brimar and the District and will not permit it to re-plead its claims in an effort to reopen and challenge that ruling.

(Doc. No. 128, pp. 14-15.) (emphasis added.)

The Court's Order also did not rely upon the rule for its holding. The Court explicitly found that National did not diligently bring its proposed new claims, and possessed all the information to make such claims much earlier in the litigation. "Overall, the totality of the circumstances demonstrate that National expressly failed to preserve its ability to bring the instant motion and did not diligently pursue the claims in its proposed Third Amended Complaint, notwithstanding its numerous opportunities to do so. See Race Tires Am., Inc., 614 F.3d at 84. Therefore National's motion is denied because it has failed to satisfy the "good cause" standard under Rule 16(b)(4)." (Id. at 13-14.)

> c. **National's indemnity claims are clearly futile given the Court's prior rulings, the Policy language, and disposition of the underlying lawsuit.**

On January 14, 2020, this Court denied National's Motion for Judgment on the Pleadings, and granted Judgment on the Pleadings in favor of the District and Brimar with respect to National's duty to defend, and the District's status as an insured for purposes of the duty to defend. The Court declined to enter a judgment on the pleadings with respect to the duty to indemnify in favor of any of the parties because of the posture of the underlying case. The underlying case had

not yet gone to trial so there was no finding of liability upon any of the claims in the underlying lawsuit, and no party had been required to pay money damages which would have triggered the duty to indemnify, if one existed.

In lieu of trial, the parties, including National, agreed to mediate the case in an attempt to settle the underlying lawsuit. The underlying lawsuit was settled through mediation, and National made a voluntary payment to Plaintiff of $150,000 to settle the underlying lawsuit. After an agreement in principal was made, National expressed that it was reserving its nonexistent rights to reimbursement of the settlement funds from Brimar and the District. Of course, there is no right to reimbursement of such a voluntary settlement payment either in the law or pursuant to the insurance Policy, and National has pointed to no valid authority for such a reimbursement right. Unilaterally stating that you are reserving some nonexistent right does not create such a right.

In the settlement agreement, Plaintiff agreed to dismiss all of its claims or potential claims against the District and Brimar. There was no finding of fault in the settlement agreement and no factual findings or recitations of facts of the underlying lawsuit. The parties never developed any record, nor did the parties narrow any of the legal issues in pursuit of summary judgment or at trial. Given the settlement agreement, and this Court's prior ruling finding a duty to defend, National's proposed indemnity claims are futile. Indemnity is futile, because it is impossible for Brimar or the District to pay damages for which National would be required to provide indemnity, regardless of whether the claim was a covered claim or non-covered claim.

With respect to indemnity, the policy provides in relevant part:

SECTION II - LIABILITY COVERAGE
A. Coverage
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"…

10

(See Proposed Third Amended Complaint p. 13 (Doc. No. 123-1, p. 14.))  The term "damages" is not defined in the policy.  Even a common sense layperson's interpretation of the phrase "legally must pay as damages" would be limited to mandatory payments as a result of verdict, trial or other binding legal proceeding, and not voluntary settlement payments.   Regardless of your definition of damages, the voluntary settlement payment does not qualify as "sums an "insured" legally must pay as damages."   Likewise, defense costs are not "sums an "insured" legally must pay as damages."

The settlement agreement also legally forecloses the possibility that either the District or Brimar will be required to pay legal damages.  Any declaration concerning the right to indemnity would be a hypothetical exercise and not an actual controversy.  There also were no findings with respect to any of the claims in the underlying lawsuit so it is impossible to determine which claims are covered and which claims are not.  This Court properly declined to enter judgment with respect to indemnity for exactly this reason.  See e.g. Cincinnati Ins. Companies v. Pestco, Inc., 374 F. Supp. 2d 451, 465 (W.D. Pa. 2004) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action.") (citations omitted.)  Now that it is clear that none of the parties can be responsible to pay legal damages, the claim for indemnification is moot and its proposed amendment should be denied as futile.

National argues that its indemnity claims are not futile, because it claims that some coverage issues for purposes of indemnity do not need an adjudication or factual findings by the Court in the underlying lawsuit.  The only such issue that National cites is the issue of whether the damages alleged in the Complaint "arose from the use of a covered auto."  (Doc. No. 131, p. 10.)  National is correct that resolution of this issue does not require a finding by the Court in the

underlying lawsuit.  This does not, however, support National's argument that its indemnity claims

are not futile, because this Court has already held that the damages alleged in the Complaint arose

from the use of a covered automobile <u>as a matter of law</u>.  As this Court held in its January 14, 2020

Memorandum Opinion:

> After viewing the allegations in the underlying pleading in the light most favorable to the insured, this Court holds that K.M.'s alleged bodily injuries resulted from the "use" of the bus. On its face, the Policy provides "business auto coverage" for 26 multi-passenger vehicles operated as "school buses" by a transit company. (*See* Docket No. 46-2 at 57-58). At the time of the events in question, the bus was being "used" as that term is commonly understood, transporting children from school to their homes. *See Smith*, 572 A.2d 785, 787. The M.M. Complaint asserts that K.M. and the male student were riding the bus and therefore occupying it at the time the injuries were sustained. (*See e.g., M.M. Complaint* at ¶¶ 12). The alleged injuries resulted from the "use" of the bus because, akin to *Lebanon Coach*, the bus company and school district had a heightened duty to safely transport the minor child, with known special needs, from school to her home. *See Lebanon Coach Co.*, 675 A.2d at 291. Despite their knowledge of the prior assault in gym class, the District and Brimar assigned K.M. and the male student to continue to ride the same bus and voluntarily undertook the duty to separate the children by establishing a seating plan which they neglected to enforce on the date in question. (*See M.M. Complaint* at ¶¶ 12-17; 21-22; 32; 58). The factual allegations also assert that the driver neglected to intervene at a point in time when the male student had only physically assaulted, but not yet sexually assaulted, K.M. (*Id.* at ¶ 27). In addition, the driver likewise had an opportunity to intervene during the sexual assault but failed to do so, despite the cries for help by K.M. and other students on the bus. (*Id.* at ¶¶ 27-28).
>
> For all of these reasons, National's motion for judgment on the pleadings is denied to the extent that it argues that there is no duty to defend because the claims set forth in M.M. Complaint are beyond the scope of the coverage provided in the Policy.

(Doc. No. 91, pp. 28-29.)

Next, National argues that neither its proposed indemnity claims nor its proposed unjust

enrichment claims are futile, because "Pennsylvania federal courts have permitted unjust

enrichment claims for reimbursement of indemnity payments where it is determined that the

insurer was not obligated to make the payment under the terms of the insurance policy." (Doc. No.

131, p. 10.) (<u>citing Essex Ins. Co. v. RMJC,</u> 306 Fed. Appx. 749, 755-56 (3d Cir. 2009)).  As

discussed above, neither National's payment of defense costs, nor National's voluntary settlement payment to plaintiff in the underlying lawsuit can be considered "indemnity payments." In addition, due to the settlement agreement, it is impossible for National to be liable for any "indemnity payments." The opinion cited by National explicitly distinguishes defense costs and settlement payments from indemnity payments. In finding that reimbursement of indemnity payments under certain circumstances is appropriate, the United States Court of Appeals for the Third Circuit explicitly noted that reimbursement of defense costs and settlement payments, as in this case, is not permitted:

> Policy considerations also weigh in favor of allowing recovery of indemnity payments in cases like this one. Courts are mindful of the potential conflict of interest that lurks wherever insurers undertake the legal defense of their insureds. In some instances, permitting insurers to seek restitution would exacerbate those conflicts. For example, as *Terra Nova* and *Coregis* recognized, allowing restitution for an insurer's defense or settlement costs risks altering the incentives the law has created for insurers to provide vigorous and effective defenses.

Id. at 755.

### d.   Certification pursuant to 28 U.S.C. §1292(b) is inappropriate.

This Court's Order denying National's Motion for Leave to File Third Amended Complaint, on its own, is not appropriate for certification for interlocutory appeal. The Order does not present a substantial ground for difference of opinion, and allowing immediate appeal will not materially advance the ultimate termination of the litigation. See Knipe v. Smithkline Beecham, 583 F. Supp. 2d 553, 598-99 (E.D. Pa. 2008).

There was no issue that the Court decided in its Order in which the Court relied upon law not settled by controlling authority. National argues that there is substantial ground for difference of opinion, because it alleges that the Court applied a "blanket rule" that a finding of a duty to defend and settlement renders indemnity claims futile. (Doc. No. 131 p. 13) (citing Am. States

Ins. Co. v. State Auto Ins Co., 721 A.2d 56, 63 (Pa. Super 1998).  The Court applied no such "blanket rule."  In determining that National's indemnity claims are futile, the Court looked to the four corners of the Complaint, the Court's prior opinion on coverage, the language of the Policy, and the circumstances of the settlement payment, and made a determination.  Nowhere did the Court apply such a "blanket rule."

In Am. States Ins. Co., the Court held that the trial Court did not err in exercising its discretion on the admission of evidence by allowing the submission of affidavits on the factual issue of whether the vehicle being driven at the time of the accident was a "temporary substitute vehicle."  Id. at 64.  The Court held that it would not apply a blanket rule estopping the carrier from presenting the affidavits in that case.  Id. That case is entirely distinguishable from the present case.  Not only did the Court not apply such a blanket rule, but National also has no factual basis to challenge the Court's decision on coverage unrelated to the underlying claims.  Once again, National points to the issue of "use of a covered auto" as an issue that is not dependent upon the underlying lawsuit.  As discussed above, however, this Court has already held that damages alleged in the Complaint arose from the use of a covered automobile as a matter of law, thus providing coverage.  The Court's holding on this issue was not dependent upon whether the Court was determining the scope of the duty to defend or duty to indemnify.  Therefore, the Court's holding would stand with respect to both the duty to defend and the duty to indemnify. (Doc. No. 91, pp. 28-29.)

In addition, allowing interlocutory appeal of the Order alone would result in piecemeal appeals and would not materially advance the termination of the litigation.  National has no viable legal theory for recovery of the voluntary settlement payment made to plaintiff in the underlying lawsuit whether it is allowed to amend its Complaint or not.  The payment does not qualify as

reimbursable defense costs pursuant to the Policy, does not qualify as an indemnity payment under the Policy, and both the Pennsylvania Supreme Court and the United States Court of Appeals for the Third Circuit have held unequivocally that an insurer cannot recover such costs of defense on an equitable theory, absent a contractual right. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 546 (Pa. 2010) ("We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters."); Terra Nova Ins. Co. v. 900 Bar, 887 F.2d 1213, 1220 (3d Cir. 1989) ("Terra Nova's claim for a declaration that it has no duty to defend will be moot if, as we believe, the Pennsylvania Supreme Court would preclude an insurer who provides a defense under reservation of rights from recovering the cost of that defense from its insured if it is later determined that there is no coverage.")

Likewise, the defense costs payments made to the District do not qualify as reimbursable defense costs or indemnification payments under the Policy, and recovery is precluded on an equitable theory, absent a contractual right. Id. The only defense costs which arguably qualify as reimbursable under the Policy (if National can survive a bad faith claim by Brimar) are the defense costs expended defending Brimar in the underlying lawsuit after an effective reservation of rights. The only possible avenue for National to recover such costs, however, would be for an appellate court to reverse this Court's judgment at judgment on the pleadings, that National owed a duty to defend Brimar. Therefore, appeal of this Order, without appeal of the Order on Judgment on the Pleadings, would not advance termination of the litigation. Accordingly, National's motion for certification should be denied.

**e.** **This Court should enter final judgment in favor of the District and Brimar, and against National on all of National's claims pursuant to Fed. R. Civ. P. Rule 54(b).**

The District respectfully requests that the Court enter final judgment in favor of Brimar and the District and against National on its declaratory judgment claims for both defense and indemnity as well as in favor of Brimar on National's contractual claim based upon this Court's two Orders, from January 14, 2020 and September 7, 2021.

Federal Rule of Civil Procedure 54(b), "Judgment on Multiple Claims or Involving Multiple Parties," provides:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R .Civ. P. 54(b).   "Rule 54(b) "attempts to strike a balance between undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties."" EBC, Inc. v. Clark Bldg. Sys. & Am. Compost Corp., Civil Action No. 05-01549, 2008 U.S. Dist. LEXIS 21018, at *3 (W.D. Pa. Mar. 17, 2008) (quoting Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 363 (3d Cir. 1975)).   "[M]otions pursuant to Rule 54(b) are addressed to the trial court's sound discretion, but prior to the exercise thereof, three conditions must be met: (1) there must be multiple claims or multiple parties; (2) there must be a final decision resolving the rights and liabilities of at least one party; and (3) there must be a finding that there is no just reason for delay." Id. at *4 (citing Oyster v. Johns-Manville Corp., 568 F. Supp. 83, 85 (E.D. Pa. 1983)).

In this case, there are multiple claims and multiple parties.  In its Second Amended Complaint, National asserted declaratory judgment claims against Brimar and the District that it did not owe a duty to defend nor to indemnify either Brimar or the District.  National also asserted a contract claim against Brimar for reimbursement of defense costs.  The only claim against National is a cross-claim by the District for breach of contract under the Policy for the failure to provide a defense.

This Court's January 14, 2020 Order resolved National's declaratory judgment claims with respect to the duty to defend.  That Order also resolved National's contract claim against Brimar for reimbursement of defense costs, because that claim is entirely dependent upon a Court determining that there is no duty to defend.  In addition, that Order resolved the issue of liability on the District's counterclaim for breach of contract for failure to provide a defense.  This Court, in its September 7, 2021 Opinion, held that there was no reason to revisit its prior Order, and that it was akin to a final determination on that issue.  The January 14, 2020 Order did not resolve the issue of damages on the District's counterclaim, but National has stated its intention to fully reimburse the District for its defense costs, and has paid over 90% of such costs to date resolving that claim for all practical purposes, assuming National follows through and completes payment on the remaining outstanding amounts.

This Court's Order denying National's Motion for Leave to File Third Amended Complaint resolved National's declaratory judgment claims with respect to the duty to indemnify.  Therefore, all of National's claims and liabilities have been resolved.  The only claims that have not been litigated and totally resolved are the District's counterclaim against National and crossclaim against Brimar.  The District is willing to voluntarily dismiss those claims, contingent upon all parties voluntarily dismissing their claims.  The District is only maintaining these claims, in an

abundance of caution, to preserve them in the unlikely event any of National's claims are resurrected on appeal.

National proposes to file motions for summary judgment and re-litigate all the issues that have already been resolved through this Court's two orders.  Such a procedure would be an unnecessary and superfluous exercise, given the law of the case already established by this Court's rulings.  The parties and this Court have already expended considerable resources and expenses litigating the issues, and National has offered no rational explanation why the parties should engage in such protracted and duplicative litigation.  The issues litigated in this Court's tandem of opinions have been resolved, and those claims should either be voluntarily dismissed or appealed. The District respectfully requests that the Court enter final judgment in favor of the District and Brimar, and against National on all of National's claims pursuant to Fed. R. Civ. P. Rule 54(b).

IV.    Conclusion

For the reasons set forth above, Plaintiff's Motion for Reconsideration should be denied.  The District respectfully requests that this Court enter final judgment in favor of the District and Brimar, and against National on all of National's claims pursuant to Fed. R. Civ. P. Rule 54(b).

Respectfully submitted,

Date: September 28, 2021

By: /s Matthew C. Fergus___

Jaime N. Doherty, Esquire
Pa. ID#89402
Matthew C. Fergus, Esquire
Pa. ID#205506
Goehring Rutter & Boehm
*Counsel for Defendant,*
*Pittsburgh Public Schools*

18