UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Civil Action No. 2:18-cv-1129 ) ) |
| vs. | ) ) ) |
| BRIMAR TRANSIT INC., | ) ) |
| Defendant, | ) ) |
| vs. | ) ) ) |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, | ) ) ) ) |
| Intervenor Defendant. | ) |

**Sur Reply Brief in Opposition to Motion for Reconsideration**

**I.     Introduction**

Plaintiff, National Liability and Fire Insurance Company ("National") raises no new issues in its Reply Brief which warrant reconsideration by this Court. National has still not demonstrated a change in the controlling law, the availability of new evidence or a need to correct a clear error of law or fact, or to prevent a manifest injustice. See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). National's motion should be denied.

The Pittsburgh Public School District (the "District") respectfully requests that this Court enter final judgment in favor of the District and Brimar Transit Inc. ("Brimar"), and against National on all of National's claims pursuant to Fed. R. Civ. P. Rule 54(b), based upon this Court's two Orders, the first from January 14, 2020 and the second, more recently, on September 7, 2021.

**II.     National's "Ripeness" Argument is Misplaced.**

National continues to argue that it was diligent in pursuing the claims proposed in its Third Amended Complaint, because, it suggests, it could not bring its claims for reimbursement until it

made its first payment to the District thirteen months after this Court ordered it to provide a defense to the District, and one day prior to its deadline to file a Motion for Leave to File a Third Amended Complaint. National attempts to inject new immaterial evidence in order to "correct the District's material misrepresentations of facts about the timing of National's payment of the District's defense costs." National, however, never cites to any material misrepresentations of fact the District allegedly made. In support of its position, National cites a purported February 14, 2020 letter that it admits it never sent to the District, nor to the District's counsel, until April 28, 2020. By that time, National had taken the unusual step of seeking the District's bills for reimbursement through opposing counsel in this coverage action, rather than through appointment of an independent claims adjuster in the underlying action. Even after the District produced the invoices, National implied that they were somehow forgeries or fakes or not paid by the District by requesting cancelled checks. We have never before been called upon to produce cancelled checks to an insurance carrier for reimbursement of defense costs. It was obvious to the District that National had no intention of timely paying for the District's defense costs, and instead made the strategic decision to attempt to compromise the District's fee claim as part of a global settlement. National only started to make defense payments to the District after it dreamed up a nonviable equitable claim for reimbursement that it proposed in its Third Amended Complaint.

In any event, this Court is not interested in the back and forth between the District and National for reimbursement of defense costs.[1] Such an inquiry would be more appropriate for a

---

[1] The District does want to respond to the allegation by National that the District "continued to conflate defense and coverage expenses." This firm has extensive experience working on multiple matters simultaneously for the District including separate coverage and defense matters, as well as extensive experience providing insurance defense representation to School Districts. This firm is meticulous in its billing practices and ensuring that each separate matter for the District is billed separately, including defense and coverage matters. If there was any expense or fee from this coverage action which was inadvertently entered on the invoice for the underlying case, which the

later bad faith claim against National. This Court did not base its decision on the Motion for Leave to Amend on the timing of National's defense payments to the District. The District only responded to National on the timing of the payments to show the absurdity of its argument that it was delayed in bringing any claims for reimbursement until it made payments, the timing of which was totally within its control.

With respect to National's ripeness argument, the District agrees that National has no currently viable claims for reimbursement of defense and settlement costs   However, it has nothing to do with National delaying its defense payments to the District. National has no legal basis for any reimbursement of defense and settlement costs from the District, either through the Policy or any equitable theory. Even accepting National's theories and argument on "ripeness," those theoretical claims would still not be "ripe." Any such claim for reimbursement is entirely dependent upon this Court or an Appeals Court reversing this Court's decision determining that National owed a defense to the District. Because this Court has found a duty to defend, National's claims for reimbursement of defense and settlement payments are futile and the Court should not reconsider its Order on National's Motion for Leave to Amend.

### III. National's Claim on its Duty to Indemnify is Futile.

National argues that its claim on its duty to indemnify is not futile, and that it should be permitted to put on unspecified evidence in support of that claim. National ignores the most important evidence, however, the Policy itself.

With respect to indemnity, the policy provides in relevant part:

SECTION II - LIABILITY COVERAGE
A. Coverage

---

District denies, National has never cited to any of those specific alleged errors. National is trying to imply that it needed to cull through numerous entries "conflating defense and coverage expenses" which we assure the Court was not the case.

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"…

(See Proposed Third Amended Complaint p. 13 (Doc. No. 123-1, p. 14.))  The term "damages" is not defined in the policy.[2]  Even a common sense layperson's interpretation of the phrase "legally must pay as damages" would be limited to mandatory payments as a result of verdict, trial or other binding legal proceeding, and would not include voluntary settlement payments.  Regardless of your definition of damages, the voluntary settlement payment does not qualify as "sums an "insured" legally must pay as damages."  Likewise, defense costs are not "sums an "insured" legally must pay as damages."

The settlement agreement also legally forecloses the possibility that either the District or Brimar will be required to pay legal damages, ever.  Any declaration concerning the right to indemnity would be a hypothetical exercise and not an actual controversy.  There were no findings with respect to any of the claims in the underlying lawsuit so it is impossible to determine which claims are covered and which claims are not.  This Court properly declined to enter judgment with respect to indemnity for exactly this reason.  See e.g. Cincinnati Ins. Companies v. Pestco, Inc., 374 F. Supp. 2d 451, 465 (W.D. Pa. 2004) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action.") (citations omitted.)  Now that it is clear that none of the parties can be responsible to pay legal damages pursuant to the settlement agreement and Policy, the claim on the duty to indemnify is not viable and its proposed amendment should be denied as futile.

---

[2] Merriam-Webster defines "damages" as: "**damages** *plural*: compensation in money imposed by law for loss or injury: The judge awarded them $5,000 in *damages*." https://www.merriam-webster.com/dictionary.

4

### IV. National's Claims for Reimbursement are Futile.

#### a. National has no contractual claim for reimbursement from the District under the Policy.

National first argues that it has a right to seek reimbursement from the District for its defense costs and settlement pursuant to the Policy. Once again, however, National ignores the language of the Policy itself.

The Policy's reimbursement provision provides in relevant part:

> B. If we initially defend an insured ("insured") or pay for insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(See Proposed Third Amended Complaint p. 15 (Doc. No. 123-1, p. 16.)) National did not initially defend or pay for the District's defense, even under a reservation of rights. National denied a defense to the District, and did not partially pay for the District's defense costs until a year after this Court found that National owed a defense to the District. Therefore, this payment does not qualify for reimbursement under the Policy.

Nevertheless, without any support or argument, National claims that the payment of defense costs to the District does qualify for reimbursement pursuant to the Policy. The District is at a loss for how this provision could apply to either the defense payments made to the District or to the voluntary settlement payment, which is probably why National ignores this provision. Perhaps National intends to argue that "initially" means "ever" or "eventually" which would be

5

absurd.[3]  The only reasonable interpretation of the phrase "[i]f we initially defend an insured or pay for insured's defense" is that the carrier started providing a defense or started paying for a defense contemporaneously with, or within a reasonably short period of time after, the claim is tendered i.e. at the beginning.  Certainly, several years later does not qualify as "initially."  If there was any doubt that "initially" meant "initially" in the Policy, the second paragraph further clarifies that initially refers to the initiation of the claim or lawsuit.  The second paragraph limits reimbursement to defense costs incurred after a formal written reservation of rights is provided to the insured, making it clear that "initially" refers to the initiation of the claim or lawsuit when the carrier is required to provide its reservation of rights letter.  This is especially true under Pennsylvania law which requires a reservation of rights letter, in order to be effective, to be sent "timely" with respect to the commencement of the claim.  See e.g. Erie Ins. Exch. v. Lobenthal, 114 A.3d 832, 840 (Pa. Super. 2015) (holding that a reservation of rights letter sent seven months after the Complaint was filed, was untimely.)

### b. National has no viable equitable claim for reimbursement from the District.

Because the reimbursement provision of the Policy does not apply to the payment made to the District, National argues that it is entitled to reimbursement from the District pursuant to an equitable theory of unjust enrichment.  Such a claim for reimbursement of defense and settlement costs based upon unjust enrichment, with no contractual right, is not permitted under Pennsylvania Law.  See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 546 (Pa. 2010) ("We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which

---

[3] "Initially: at the beginning: at first."  "Ever: always: at any time."  "Eventually: at an unspecified later time: in the end."  See https://www.merriam-webster.com/dictionary.

a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters. Accordingly, we affirm the order of the Superior Court.")

National argues that its reimbursement claims based upon unjust enrichment are not futile, because "Pennsylvania federal courts permit unjust enrichment claims by the insurer for reimbursement where it is determined that the policy does not provide coverage." (Doc. No. 138-1, p. 4.) (citing Essex Ins. Co. v. RMJC, 306 Fed. Appx. 749, 755-56 (3d Cir. 2009); Am. Western Home Ins. Co. v. Donnelly Distrib. Inc., No. 14-797, 2015 WL 505407, at *4 (E.D. Pa. Feb. 6, 2015)) ("Donnelly").[4] As discussed above, neither National's payment of defense costs, nor National's voluntary settlement payment to Plaintiff in the underlying lawsuit can be considered "indemnity payments." In addition, due to the settlement agreement, it is impossible for National to be liable for any "indemnity payments." The opinion cited by National explicitly distinguishes defense costs and settlement payments from indemnity payments. In finding that reimbursement of indemnity payments under certain circumstances is appropriate, the United States Court of Appeals for the Third Circuit explicitly noted that reimbursement of defense costs and settlement payments, as in this case, is not permitted:

> Policy considerations also weigh in favor of allowing recovery of indemnity payments in cases like this one. Courts are mindful of the potential conflict of interest that lurks wherever insurers undertake the legal defense of their insureds. In some instances, permitting insurers to seek restitution would exacerbate those conflicts. For example, as *Terra Nova* and *Coregis* recognized, allowing restitution

---

[4] National's reliance upon Donnelly is misplaced. This wrongly decided case from the Eastern District of Pennsylvania goes directly against the binding precedents of Jerry's Sport Ctr. and Terra Nova. Even applying Donnelly's unique Eastern District test, National's settlement payment would not qualify for reimbursement. National made the $150,000 settlement payment primarily for its own benefit (National would have spent well in excess of that total defending Brimar and the District through trial in the underlying matter, regardless of any finding on liability.) Permitting reimbursement would also "upset the delicate incentive structure inherent in the insurer/insured relationship." Donnelly, at *8.

7

> for an insurer's defense or settlement costs risks altering the incentives the law has created for insurers to provide vigorous and effective defenses.

Id. at 755. Allowing recovery of defense costs and settlement payments as occurred in this case would be directly in contravention of the binding precedent and reasoning of the Pennsylvania Supreme Court in Jerry's Sport Ctr, 2 A.3d at 546 ("[R]ecognizing a right of reimbursement outside of the policy would empower each insurer to design its own right to reimbursement subject only to the insurer's designs. . . . A right of reimbursement outside of the four corners of the insurance contract would open the door to this kind of maneuvering by insurance companies at their policyholders' expense.")  This is exactly what National is attempting to do in this case.  Design its own right to reimbursement in an attempt to fit the defense and settlement payments into that right.  Unilaterally stating that you are reserving some nonexistent right does not create such a right.

### V. This Court Should Enter Final Judgment in Favor of the District and Brimar, and Against National on all of National's Claims Pursuant to Fed. R. Civ. P. Rule 54(b).

National has made several questionable strategic decisions throughout this litigation (starting with ruling the Plaintiff in the Underlying Suit to file a complaint rather than settling the suit pre-complaint for a fraction of what it ended up spending on the claim), but its current position against this Court entering final judgment goes directly against its own stated interest.  National has repeatedly claimed that this Court erred in its decision that it owed a defense to Defendants and more recently, that National's claim for indemnity is futile.  National has repeatedly claimed that it intended to appeal this Court's decision on the duty to defend, and has even asked this Court to certify its order on its duty to indemnify for interlocutory appeal.  Entering final judgment on those claims would allow National to move forward with its stated intention of appealing this Court's Orders.  Why would National want to force the parties to defend piecemeal appeals and

proceed through unnecessary and costly summary judgment motions when this Court has already resolved the dispositive legal issues? It's time for National to take its intended appeals or accept this Court's rulings and move on.

First, National argues that it should be permitted to offer evidence in support of its duty to indemnify. National's chosen vehicle for offering that evidence was amending the Complaint and adding allegations in support of its indemnity claim, based upon the settlement in the Underlying Suit. This Court considered those allegations and determined that National's claim for a declaration that it had no duty to indemnify was futile. ("The Court would also alternatively hold that leave to amend should be denied as the proposed amendments are futile." (Doc. No. 128 p. 15.)) In other words, even assuming that all of its additional allegations were true and there was evidentiary support for them, National failed to state a claim for a declaration that it owed no duty to indemnify. See e.g. Gross v. Stryker Corp., 858 F. Supp. 2d 466, 505 (W.D. Pa. 2012) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).") (citations omitted.)

Next, National argues, without any factual support or citation to legal authority: "Second, entry of final judgment on the duty to indemnify can only be made upon the Court's consideration and ruling on a proper dispositive motion or after a trial." Once again, National is faced with its own strategic decisions in this lawsuit, and is seeking a do over. National chose the vehicles by which it sought this Court's disposition of its declaratory judgment claims. First, National insisted upon filing a Motion for Judgment on the Pleadings, seeking a declaration with respect to both its duty to defend, and its duty to indemnify. At that time, National made the strategic decision that it did not need any facts or evidence besides the allegations in the Complaint to seek disposition of its declaratory judgment claims. There is no question that a Motion for Judgment on the

Pleadings is a "proper dispositive motion." National just did not like this Court's disposition of its claims.

Next, after settlement of the Underlying Suit, the Court ordered the parties to meet and confer concerning the posture of the case and procedures moving forward. The parties could not agree so each filed its own proposal. In its position statement, National stated that due to the settlement of the Underlying Suit, "the issue of National's indemnity obligations, if any, is now ripe for disposition." (Doc. No. 120, p. 4.) In order to dispose of its declaration of its indemnity obligations, National proposed to "seek leave to amend its Complaint to assert that no coverage exists for the settlement under its policy." (Id.) The Court set a deadline of February 12, 2021 for National's motion (The District received the first down payment from National on its defense costs via Federal Express February 11, 2021.) After considering the parties' briefings, as well as the additional proposed allegations in support of its claim that National had no duty to indemnify for the settlement payment, the Court disposed of the indemnity claim by finding National's claim futile (among other reasons.) In disposing of National's proposed indemnity claim based upon the settlement payment, this Court held:

> In this Court's estimation, National has failed to plead sufficient facts in the proposed Third Amended Complaint to state a plausible claim for declaratory judgment asserting that it has no duty to indemnify the Defendants. To reiterate, the Court reviewed the M.M. complaint asserting multiple claims against Brimar and the District as well as the Policy language and determined that National had a duty to defend them. (Docket No. 91). At most, National has now pled that it disagrees with this Court's decision, settled with the M.M. plaintiffs in the underlying action prior to trial, paid for Brimar's defense, and reimbursed the District for its attorney's fees and defense costs. (Docket No. 125-1). National issued reservation of rights letters in December of 2020 concerning the settlement and February of 2021 with regards to the reimbursement to the District. (Id.). Both letters indicate that National reserved the right to challenge this Court's rulings, including through an appeal. (Id.). Yet, National has not alleged that the trial court made any factual findings prior to the settlement and it is uncontested that the settlement of the underlying action took place prior to the trial court making any rulings narrowing the scope of the M.M. complaint. (Id.). Absent any rulings or

10

factual findings from the trial court in the underlying case, the insurer's pre-trial settlement precludes this Court from undertaking a more nuanced coverage decision than has already been produced. *See Sapa*, 939 F.3d at 250, n.3. Therefore, National's proposed Third Amended Complaint may also be denied due to the futility of the claims.

(Doc. No. 128 p. 17.)

Although National has already been permitted to litigate disposition of its claims through its own chosen vehicles, National now seeks to re-litigate those claims once again through a redundant, unnecessary and costly motion for summary judgment, because it disagrees with the Court's decisions. National should not be permitted to continue to waste the parties' and Court's time and resources on futile claims.

### VI. Conclusion

For the reasons set forth above, Plaintiff's Motion for Reconsideration should be denied. The District respectfully requests that this Honorable Court enter final judgment in favor of the District and Brimar, and against National on all of National's claims pursuant to Fed. R. Civ. P. Rule 54(b).

Respectfully submitted,

Date: October 21, 2021

By: */s Matthew C. Fergus*

Jaime N. Doherty, Esquire
Pa. ID#89402
Matthew C. Fergus, Esquire
Pa. ID#205506
Goehring Rutter & Boehm
*Counsel for Defendant,
Pittsburgh Public Schools*