**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY | : : : | |
| Plaintiff | : | |
| v. | : | Civil Action No. 2:18-cv-01129-NBF |
| BRIMAR TRANSIT, INC. | : : | |
| Defendant, | : : | |
| and | : | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT | : : : | |
| Intervenor-Defendant | : : | |

**NATIONAL LIABILITY & FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**COZEN O'CONNOR**

Wendy N. Enerson, Esquire
(*admitted pro hac vice)*
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 382-3162
wenerson@cozen.com

Charles J. Jesuit, Jr., Esquire
(*admitted pro hac vice*)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215-665-6967
cjesuit@cozen.com

Paul Steinman, Esquire
One Oxford Centre
31 Grant St., 41st Floor
Pittsburgh, PA 15219
412-620-6544
psteinman@cozen.com

*A*t*torneys for Plaintiff National Liability & Fire Insurance Company*

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................- 1 -

II.    CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS ..............................- 4 -

III.   PENNSYLVANIA PRINCIPLES OF CONTRACT INTERPRETATION .................- 4 -

IV.    ARGUMENT ..........................................................................- 5 -

   A.  Defendants Have Failed to Demonstrate the Existence of Any General Liability Policy ..........................................................................- 5 -

   B.  The Policy Issued to Brimar Does Not Provide Indemnity Coverage to Defendants Because K.M's Injuries Do Not Result From the Ownership, Maintenance, or Use of a Covered Auto ...................................................- 5 -

   C.  Indemnity Coverage is Barred by the Abuse or Molestation Exclusion Because K.M.'s Alleged Injuries and Damages Arise Out of Abuse, Molestation, or Sexual Contact .........................................................- 12 -

   D.  National is Entitled to Reimbursement From Brimar and PPSD of Defense Costs and Settlement Monies it Has Paid ..........................- 18 -

V.     RELIEF REQUESTED .............................................................- 20 -

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*12th Street Gym, Inc. v. Phila. Indemnity Ins. Co.*,
Civ. A. No. 03393, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006)........................13, 14, 18

*401 Fourth St. Inc. v. Investors Ins. Grp.*,
583 Pa. 445, 879 A.2d 166 (Pa. 2005) .......................................................................4

*Allstate Prop. & Cas. Ins. Co. v. Squires*,
667 F.3d 388 (3d Cir. 2012)........................................................................................6

*Alvarino v. Allstate Ins. Co.*,
537 A.2d 18 (Pa. Super. 1988)..............................................................................7, 11

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr.*,
2 A.3d (Pa. 2010) .....................................................................................................18

*Am. Western Home Ins. Co. v. Donnelly Distrib. Inc.*,
No. 14-797, 2015 WL 505407 (E.D. Pa. Feb. 6, 2015) ...........................................19

*Arcadia Ins. Co. v. Hinds County School District*,
No. 3:12-CV-188-CWR-LRA, 2013 WL 12091099 (S.D. Miss. Mar. 29,
2013) .........................................................................................................................17

*Bd. of Pub. Educ. Of the Sch. Dist. of Pittsburgh v. National Union. Fire Ins. Co.*,
709 A.2d 910 (Pa. Super. Ct. 1998)....................................................................14, 15

*Camacho v. Nationwide Ins. Co.*,
460 A.2d 353 (Pa. Super. 1983), aff'd, 473 A.2d 1017 (Pa. 1984) .....................7, 14

*Day v. State Farm Mutual Ins. Co.*,
396 A.2d 3 (Pa. Super. 1978)......................................................................................6

*Erie Ins. Exch. v. Claypoole*,
673 A.2d 348 (Pa. Super. 1996).............................................................................8, 9

*Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363, 1367 (Pa. 1987).........................11

*Erie Ins. Group v. Catania*,
95 A.3d 320 (Pa. Super. 2014).....................................................................................4

*Erie Insurance Exchange v. Eisenhuth*,
    451 A.2d 1024 (Pa. Super. 1982)................................................................8

*Essex Ins. Co. v. RMJC*,
    No. 07-4528, 306 Fed. Appx. 749 (3d Cir. Jan. 7, 2009) ...........................19

*Gen. Refractories Co. v. First State Ins. Co.*,
    855 F.3d 152 (3d Cir. 2017).........................................................................13

*Gene & Harvey Builders*,
    517 A.2d at 916.............................................................................................4

*Harper v. Gulf Ins. Co.*,
    No. 01-cv-201-J, 2002 WL 32290984 (D. Wyo. Dec. 20, 2002) ...............13

*Ironshore Specialty Ins. Co. v. Conemaugh Health Sys.*,
    No. 3:18-cv-153, 2019 WL 1283976 (W.D. Pa. Mar. 20, 2019)................19

*Lebanon Coach Co. v. Carolina Cas. Ins. Co.*,
    675 A.2d 279 (Pa. Super. 1996)..................................................................11

*Lucas-Raso in Smith v. United Services Automobile Ass'n*,
    572 A.2d 785 (Pa. Super. 1995)....................................................................7

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*,
    735 A.2d 100 (Pa. 1999) ..............................................................................4

*Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co.*,
    170 A.2d 571 (Pa. 1961) .........................................................................6, 13

*Nationwide Mut. Fire Ins. Co. v. Mr. & Mrs. K., et al.*,
    Civ. No. 05-569, 2005 WL 3434081 (W.D. Pa. Dec. 13, 2005).................14

*Nautilus Insurance Co. v. Gardner*,
    Civ. A. No. 04-1858, 2005 WL 664358 (E.D. Pa. Mar. 21, 2005).............4

*Ohio Casualty Group of Ins. Cos. v. Bakaric*,
    513 A.2d 462 (Pa. Super. 1986)................................................................6, 7

*Pa. State Univ. v. Pa. Manufacturers' Ass'n Ins. Co.*,
    Civ. A. No. 03195, 2016 WL 2737438 (Pa. Com. Pl. May 4, 2016)........17

*Roach v. Port Authority of Allegheny County*,
    550 A.2d 1346 (Pa. Super. 1988)............................................................7, 11

*Schweitzer v. Aetna Life and Casualty Co.*,
    452 A.2d 735 (Pa. Super. 1982)....................................................................7

*St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*,
  655 F.2d 521 (3d Cir. 1981)........................................................................................4

*State Auto Ins. Ass'n v. Kuhfahl*,
  527 A.2d 1039 (Pa. Super. 1987)................................................................................6

*TIG Ins. Co. v. Tyco Int'l Ltd.*,
  919 F. Supp. 2d 439 (W.D. Pa. 2013)...................................................................4, 5

*U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*,
  80 F.3d 90 (3d. Cir. 1996)..........................................................................................6

## Statutes

No-Fault Act Section 1009.103 .........................................................................................7

Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq. .........................7

## Other Authorities

Federal Rule of Civil Procedure 56 ...................................................................................1

Federal Rule of Civil Procedure 56(c) ..............................................................................1

Local Civil Rule 56............................................................................................................1

Plaintiff, National Liability & Fire Insurance Company ("National"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and avers in support thereof:

## I.   PRELIMINARY STATEMENT[1]

This action involves Defendants Brimar Transit, Inc. ("Brimar") and Pittsburgh Public School District's ( "PPSD") (collectively, the "Defendants") demands for defense[2] and indemnity under business auto policy number 73 APB 001185 issued by National to Brimar for the policy period of January 11, 2016 to January 11, 2017 (the "Policy"). Brimar and PPSD seek coverage for claims asserted against them in the 2018 lawsuit entitled *M.M., parent and natural guardian of K.M., a minor v. Pittsburgh Public School District and Brimar Transit, Inc.*, Case No.: GD18-003257, filed in the Allegheny County Court of Common Pleas[3] (the "Underlying Action"). K.M. sought recovery in the Underlying Action for injuries she sustained following an April 29, 2016 sexual assault ("April 29 sexual assault") by a male student ("student perpetrator") while the students were on a bus operated by Brimar.

The Policy's auto liability coverage applies only to losses involving bodily injury caused by an accident "*and* resulting from the ownership, maintenance or use of a covered 'auto'." The Policy does not provide coverage to Defendants because the underlying discovery establishes that K.M.'s injuries unambiguously arose from the April 29 sexual assault and did not result from the

---

[1] National's Motion is also supported by its Concise Statement of Undisputed Material Facts pursuant to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56. In this Memorandum, National refers herein to those numbered facts, along with supporting documents from the record therein as "SUMF ¶__."

[2] On January 14, 2020, this Court determined that National had a duty to defend both Brimar and the School District in connection with the Underlying Action, but determined that issues related to the duty to indemnify were premature. ECF Doc. 91. National respectfully disagrees with the Court's decision with regard to the duty to defend, and reserves all of its rights to appeal that decision.

[3] The  Underlying Action has been settled and was dismissed on December 22, 2020. SUMF ¶ 76.

ownership, maintenance, or use of the school bus. The student perpetrator merely used the bus as a situs of opportunity to continue his pattern of inappropriate sexual assaults and harassing behavior towards K.M both on and off school grounds.

To this end, discovery revealed that PPSD's staff had to separate K.M. and the student perpetrator on multiple occasions before the April 29 sexual assault, including during lunch in the cafeteria, because K.M. and the male perpetrator were inappropriately close. SUMF ¶ 13. Underlying discovery also confirmed an incident where the student perpetrator touched K.M.'s breast in the gym equipment room three months before the April incident ("gym class assault"). SUMF ¶ ¶ 12-20. Discovery further confirmed that the male student previously touched K.M. on the waist and the leg while on the bus despite K.M.'s protests, and that K.M. felt harassed and fearful for her safety because of this student's ongoing misbehavior. SUMF ¶ 26. These incidents demonstrate the male student was indiscriminate of where he perpetrated his sexual assaults on K.M. PPSD and Brimar were aware-at the very least-of the incident in the cafeteria and of the gym class assault and agreed to keep K.M. and the male student separated w*hile at school and while on the bus*. SUMF ¶¶ 12-26. This agreement is evidence of PPSD and Brimar's understanding that these type of assaults could, and likely would, occur in various places of opportunity.

Pennsylvania law makes clear that assaults that occur in a vehicle do not give rise to auto liability coverage where the vehicle is incidental to the injury-causing event. Rather, the "use" requirement is only implicated where the injury at issue is causally connected to the *use* of the insured vehicle as a *motor vehicle*. Where the vehicle is the *situs* of an incident or the injury could have occurred anywhere else, the involvement of the motor vehicle is merely tangential to the cause of the bodily injury. Here, K.M.'s injuries directly resulted from the male student's sexual assault-a sexual assault that could happen (and indeed, previously happened) at other locations.

- 2 -

The bus only presented the student perpetrator a location for another sexual assault to occur; the sexual assault did not result from the bus's use and the bus's use was in no way essential to K.M.'s injuries. Accordingly, the Policy does not afford coverage for the claims against Defendants and National owes no duty to indemnify Brimar or PPSD as a matter of law.

Even if this Court were to construe the claims against Defendants in the Underlying Action to involve bodily injury resulting from the ownership, maintenance or use of a covered auto (which they do not), the Policy's Abuse or Molestation Exclusion precludes coverage. The Abuse or Molestation Exclusion bars coverage for bodily injury  "arising out of" the "alleged, actual or threatened abuse, molestation or sexual contact … by anyone of any person" or "the negligent: (i) employment … (iii) supervision; or (iv) retention of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above." SUMF ¶ 69. Because all of K.M.'s alleged injuries stem from the April 29 sexual assault, coverage is excluded under the plain terms of the Abuse or Molestation Exclusion and National owes no duty to indemnify Brimar or PPSD.

For the foregoing reasons, and as explained more fully below, National is entitled to summary judgment as a matter of law regarding Brimar and PPSD's claims for indemnity coverage under the Policy and judgment should therefore be entered declaring that National has no duty to indemnify Defendants for the claims against them in the Underlying Action. Additionally, as provided by the clear terms of the Policy, National is entitled to reimbursement of the defense costs (including attorney's fees) that it has paid on behalf of Defendants. Because the Policy does not afford coverage, National is also entitled to reimbursement from Brimar and the District of all monies paid in the settlement of the Underlying Action.

## II.   CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

National hereby incorporates by reference paragraphs 1 through 87 of its Concise Statement of Undisputed Material Facts as though set forth fully herein.

## III.   PENNSYLVANIA PRINCIPLES OF CONTRACT INTERPRETATION

Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). The insured bears the burden of proving that a claim falls within the parameters of coverage in actions arising under an insurance policy. *Erie Ins. Group v. Catania*, 95 A.3d 320 (Pa. Super. 2014); *see also TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 461 (W.D. Pa. 2013). Where, as here, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n, Ins. Co.* 517 A.2d 910, 913 (Pa.1986). "Even if a term is not defined in an insurance policy, a term is not ambiguous where it possesses a clear legal or common meaning that may be supplied by the court." *Nautilus Insurance Co. v. Gardner*, Civ. A. No. 04-1858, 2005 WL 664358, *12 (E.D. Pa. Mar. 21, 2005) (*citing City of Erie v. Guar. Nat'l Co.*, 109 F.3d 156, 163 (3d Cir. 1997)).

The Pennsylvania Supreme Court and the Third Circuit Court of Appeals have cautioned courts against straining to find ambiguity in insurance contract language, as policy language should be read to avoid creating or finding ambiguity wherever possible. *Gene & Harvey Builders,* 517 A.2d at 916; *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981). The goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy. *401 Fourth St. Inc. v. Investors Ins. Grp.*, 583 Pa. 445, 879 A.2d 166, 171 (Pa. 2005).

## IV.    ARGUMENT

### A.    Defendants Have Failed to Demonstrate the Existence of Any General Liability Policy

PPSD alleged in a conclusory manner the existence of a General Liability policy issued by National to Brimar. SUMF ¶ 86. National repeatedly informed Defendants it did not issue any General Liability policy to Brimar and produced documents in discovery to support that position. SUMF ¶ 87. Defendants can point to no evidence to support the conclusory allegation that a General Liability policy exists and failed to engage in any discovery on this issue. Additionally, PPSD represented in the January 21, 2022 Joint Status Report that it intended to voluntarily dismiss its Counterclaim against National regarding any General Liability policy. Accordingly, there is no genuine issue of material fact regarding the existence of a General Liability policy and the Court must conclude, as National has repeatedly represented, that National did not issue a General Liability policy to Brimar.

### B.    The Policy Issued to Brimar Does Not Provide Indemnity Coverage to Defendants Because K.M's Injuries Do Not Result From the Ownership, Maintenance, or Use of a Covered Auto

Under Pennsylvania law, Brimar and the District have the initial burden of demonstrating that coverage exists under the Policy for the claims against them in the Underlying Action. *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 461 (W.D. Pa. 2013)("The insured has the initial burden of establishing a right to coverage under the policy."). The Policy provides coverage only to the extent that "bodily injury" is caused by an "accident" *and* results from the ownership, maintenance or use of a covered "auto." SUMF ¶ 67. (Emphasis supplied). Therefore, as a threshold to coverage, Defendants must show that the "bodily injury" which is the subject of the Underlying Action, *i.e.*, the April 29 sexual assault, resulted from the ownership, maintenance or

- 5 -

use of an insured vehicle. As set forth below, Defendants cannot meet this necessary prerequisite to coverage as a matter of law.

The Pennsylvania Supreme Court has held that the phrase "arising out of" in the context of an automobile insurance policy "means causally connected with, not proximately caused by." *Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co*., 170 A.2d 571, 573 (Pa. 1961). The Pennsylvania Superior Court has acknowledged that the phrase "resulting from" as used in an automobile insurance policy, such as the NFL&F Policy, should be interpreted <u>more</u> <u>narrowly</u> than "arising from." *Ohio Casualty Group of Ins. Cos. v. Bakaric*, 513 A.2d 462, 465 (Pa. Super. 1986) (emphasis supplied). The history of cases addressing the "use" requirement consistently hold, both under the narrower "results from" and the broader "arising out of" language, that coverage only applies under an auto policy where the bodily injury is causally connected to the use of the insured vehicle as *a motor vehicle*. *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 95 (3d. Cir. 1996); *State Auto Ins. Ass'n v. Kuhfahl*, 527 A.2d 1039, 1043-44 (Pa. Super. 1987).

In determining whether there is a causal connection between the injury and maintenance or use of a motor vehicle, a court must "determine the 'instrumentality' used to cause the injury." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d at 95. Pennsylvania intermediate appellate courts quite broadly hold that if injuries are caused by 'an instrumentality or external force other than the motor vehicle itself,' the vehicle will not be regarded as having contributed to the cause of the injuries pursuant to both the "results from" and "arising out of" language. *See e.g. Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 392 (3d Cir. 2012); *see also Day v. State Farm Mutual Ins. Co*., 396 A.2d 3, 5 (Pa. Super. 1978) (emphasis supplied) (holding that claim was not within the scope and terms of the automobile insurance policy because the insured's injuries in a fist fight with another driver were not caused by a motor vehicle but by a third person

knocking down the injured insured with his fists); *Lucas-Raso in Smith v. United Services Automobile Ass'n*, 572 A.2d 785, 787 (Pa. Super. 1995) (holding that injuries a boy sustained while riding his bicycle when another boy threw hay at him from a passing vehicle causing the boy to crash into a tree were not arising from the ownership, maintenance, or use of the vehicle, but rather by the "intentional act of a third party, [i.e.] the passenger, throwing the hay").

Where the involvement of the motor vehicle is "merely incidental" to the cause of the bodily injury, the injuries do not result from the use of a motor vehicle. *Alvarino v. Allstate Ins. Co.*, 537 A.2d 18, 21-22 (Pa. Super. 1988) (holding that there was no coverage under auto insurance policy for child's injuries caused by a dog bite while riding in a van because the fact that the vehicle was the situs where the injuries occurred was not sufficient to establish the requisite causal connection between the vehicle and the injuries); *see also Roach v. Port Authority of Allegheny County*, 550 A.2d 1346 (Pa. Super. 1988) (holding that bus passenger's injuries sustained as a result of a fight between two other passengers did not arise out of the maintenance or use of a motor vehicle); *Ohio Casualty Group Ins. Co. v. Bakaric, et al.*, 513 A.2d 462 (Pa. Super. 1986) (holding that passenger shot by driver in car did not "result from the use" of the car – but rather resulted from the use of a gun); *Camacho v. Nationwide Ins. Co*., 460 A.2d 353 (Pa. Super. 1983), aff'd, 473 A.2d 1017 (Pa. 1984) (holding that driver's injuries while inside of car caused when driver picked up a bottle that had been thrown into his car exploded did not arise out of the use of a motor vehicle[4]); *Schweitzer v. Aetna Life and Casualty Co*., 452 A.2d 735 (Pa.

---

[4] In *Camacho*, the court analyzed whether the injured plaintiff was entitled to no-fault benefits under the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq., repealed by 1984, Feb. 12, P.O. 26, No. 11, § 8(a), effective Oct. 1, 1984 ("No-Fault Act"). *Camacho*, 460 at 353. Section 1009.103 of the No-Fault Act defined the injuries to be covered as, "Injury means accidentally sustained bodily harm to an individual and that individual's illness, disease, or death resulting therefrom," and victim as, "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." *Id*. The court held, "[i]t is clear that [the No-Fault

Super. 1982) (holding that injuries sustained by owner of car who was physically assaulted while inside her vehicle did not arise from the use of the motor vehicle); *Erie Insurance Exchange v. Eisenhuth*, 451 A.2d 1024 (Pa. Super. 1982) (holding that insurer had no duty to defend or indemnify insured driver sued by a passenger who had been shot by a police officer while in the insured's vehicle because the passenger's injuries did not arise out of the ownership, maintenance or use of the motor vehicle; rather, the injuries was caused by a gunshot).

The Pennsylvania Superior Court case *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 350 (Pa. Super. 1996) is particularly illustrative because of the factual similarities with the instant case. In *Claypoole*, several minor children and their parents/guardians filed a complaint[5] against a school district, bus company and its president, and bus driver, alleging that the bus driver had sexually molested the minor children on numerous occasions while driving the children to and from school over the course of two school years. *Claypoole*, 673 A.2d 348, 350 (Pa. Super. 1996). The insurer issued a combination automobile insurance policy ("combination policy") and a commercial automobile insurance policy ("commercial policy"). *Id*. The combination policy provided that the insurer would pay losses "arising out of the ownership, maintenance, or use" of the company's automobiles, and the commercial policy covered losses caused by accidents arising "out of the ownership, maintenance, use, loading or unloading" of the company's vehicles. *Id*. The insurer

---

Act] was never intended to be a general liability insurance which would cover all injuries, no matter how remotely connected with the use or maintenance of a motor vehicle, but is intended to cover motor vehicle accidents." *Id*.

[5] The complaint alleged that the school district, its superintendent, and the bus company and its president violated the plaintiffs' civil rights; alleged claims for assault and battery against the bus driver by "negligently, intentionally, and unlawfully engaging in offensive and harmful physical conduct in the nature of sexual abuse and offensive touching of" the minor children; and alleged negligent hiring and entrustment against the bus company and its president resulting from the company's employment of the bus driver. *Id*. at 350. The civil rights claims were dismissed. *Id*. at 351.

sought a declaration that it had no duty to defend or indemnify the bus company, its president, or the bus driver in the underlying plaintiffs' civil action. *Id*. at 351.

The court held that the insurer had no duty to defend or indemnify the bus driver[6] for the claims in the underlying action which alleged that the sexual molestation of the minor children resulted from the driver's negligent, intentional, and unlawful conduct because, *inter alia*, the sexual molestation of the minor children did not arise "out of the ownership, maintenance, use, loading or unloading" of the bus company's automobiles as required under the policies. *Id*. at 354-356. The court stated, "no causal connection exists between the operation of a school bus and the injuries suffered by its minor passengers who have been sexually molested by its driver … [in] other words, [the insurer] never agreed to provide insurance coverage to [the bus driver] for the injuries alleged by the plaintiffs." *Id*. at 356.

Here, the Policy's business auto coverage requires that the underlying bodily injury be "resulting from the ownership, maintenance or use of a covered 'auto'." SUMF ¶ 67. All of the claims against Defendants in the Underlying Action are premised on the injuries K.M. suffered because of the April 29 sexual assault. SUMF ¶¶ 40-63. As the cases discussed establish, Defendants must show that K.M.'s bodily injury was causally connected to the use of the bus as a motor vehicle. To meet this requirement, the bus must have been more than the mere situs of the April 29 sexual assault. The undisputed material facts clearly show that it was not. The evidence demonstrates that the instrumentality that caused K.M.'s injuries on April 29, 2016 was the student perpetrator; not the bus. The student perpetrator sexually assaulted K.M. while she was riding on the bus and, thereby, directly caused her injuries. SUMF ¶¶ 40-63.

---

[6] The court held that the insurer's appeal of the trial court's decision on the duty to defend and indemnify the bus company and its president was moot. *Id*. at 357.

Notably, the student perpetrator had acted inappropriately towards K.M. and sexually assaulted K.M. on prior occasions, including touching her breast during gym class and being inappropriately close to her in the lunchroom - locations that do not involve the bus. SUMF ¶¶ 12-22, ¶ 60. Evidence in the Underlying Action further confirmed that the male student previously touched K.M. on the waist and the leg while on the bus despite K.M.'s protests, and that K.M. felt harassed and fearful for her safety because of this student's ongoing misbehavior. SUMF ¶ 60. These incidents demonstrate the student perpetrator was indiscriminate of where he perpetrated his sexual assaults on K.M. PPSD and Brimar were aware of the gym class assault and incidents in the cafeteria where K.M. and the student perpetrator were inappropriately close. This awareness resulted in an agreement to keep K.M. and the student perpetrator separated in *all* possible school-related venues: the classroom, arts and gym classes, the cafeteria, and the bus. SUMF ¶¶ 27-39. This agreement is evidence of PPSD and Brimar's understanding that these type of assaults could, and likely would, continue in various places of opportunity. After the April 29 sexual assault occurred, these separation measures were escalated for all locations: the students were completely separated at all times during school and were assigned to travel on different buses. SUMF ¶ 58.

The undisputed evidence establishes and reinforces that the bus was not casually connected to the April 29 sexual assault injuries—indeed there was nothing about the use of the bus as a motor vehicle that caused or contributed to the sexual assault suffered by K.M. The bus was merely incidental to the sexual assault and did not contribute to K.M's injuries in any manner. The only involvement of the bus in the April 29 sexual assault was as the situs of the assault. The fact that the bus was the location that K.M.'s injuries occurred is not sufficient to establish the requisite causal connection between the injuries and the ownership, maintenance, or use of the vehicle under

longstanding Pennsylvania law. *See Alvarino v. Allstate Ins. Co.*, 537 A.2d 18, 21-22 (Pa. Super. 1988); *Roach v. Port Authority of Allegheny County*, 550 A.2d 1346 (Pa. Super. 1988)[7].

    *Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 675 A.2d 279 (Pa. Super. 1996) does not change this conclusion. On the contrary, *Lebanon Coach*, which involved injuries to a minor after she alighted from a school bus and was struck by another vehicle, is consistent with the applicable cases finding coverage for injuries that only result from the use of a motor vehicle *as a motor vehicle*[8]. *Lebanon Coach* does not (and frankly cannot) stand for the limitless proposition-that has been suggested in this litigation- that "use" of an auto includes the duty to keep riders safe from all types of conceivable human conduct or, as in this case, misconduct, that might happen while occupying the bus. Such broad interpretation ignores the established causal connection requirement and is contrary to Pennsylvania law. The Pennsylvania Supreme Court has admonished courts not to read the "use" requirement in a commercial auto policy so broadly as to strip the term of any significance. *Erie Ins. Exchange v. Transamerica Ins. Co*., 533 A.2d 1363, 1367 (Pa. 1987). Here, to conclude that "use" of the bus included a heightened duty to protect

---

[7] It should be noted that the *Roach* and *Alvarino* cases involved the broader "arising from" policy language. Because both phrases ("resulting from" and "arising from") appear in the Policy in different contexts, they must be deemed to have different meanings.  The Policy coverage grant, which employs the term "resulting from," is drafted more narrowly than other sections of the Policy, demonstrating an intention that the policy provide coverage only where the operation of the vehicle itself causes the harm.  Accordingly, the Policy can only be interpreted to require that the injury have resulted from operation of a vehicle.

[8] The *Lebanon Coach* court relied on two prior Pennsylvania Superior Court cases involving injuries sustained to persons as a result of being struck by a second motor vehicle after alighting from the vehicle transporting them to their destination, which the court found to be analogous to the facts at issue. *See id*. at 290-91 (citing *Tyler v. Insurance Company of North America*, 457 A.2d 95 (Pa. Super. 1983) and *State Automobile Insurance Association v. Kuhfahl*, 527 A.2d  1039 (Pa. Super. 1987)). *Lebanon Coach* is not applicable here because K.M. did not sustain a vehicle-caused injury. Unlike in *Lebanon Coach*, K.M.'s injuries were not caused by being struck by another vehicle after disembarking from the bus at a bus stop.

K.M. in accordance with an agreement to which National was not a part, and was never aware, effectively nullifies the "use" requirement and exposes National (and other insurers) to risks it never could have anticipated.

As demonstrated by the applicable law set forth above, K.M.'s injuries have no causal connection to, and did not result from, the ownership, maintenance or use of Brimar's bus as required under the clear terms of the Policy and Pennsylvania law. Accordingly, the Policy does not provide coverage for the claims against Brimar and PPSD in the Underlying Action and National has no obligation to indemnify Defendants as a matter of law.

### C. Indemnity Coverage is Barred by the Abuse or Molestation Exclusion Because K.M.'s Alleged Injuries and Damages Arise Out of Abuse, Molestation, or Sexual Contact

Even if K.M.'s injuries were construed to be resulting from the ownership, maintenance or use of a covered "auto" (which they cannot), the Policy's Abuse or Molestation Exclusion (the "Exclusion") expressly excludes coverage for the claims against Brimar and PPSD in the Underlying Action. The Abuse or Molestation Exclusion provides that coverage is excluded for claims for "bodily injury" "arising out of" :

      (a) the alleged, actual or threatened abuse, molestation or sexual
          contact, whether or not intentional, by anyone of any person; or

      (b) the negligent:

            (i)     employment;

            (ii)    investigation;

            (iii)   supervision; or

            (iv)   retention;

      of anyone or negligent entrustment to anyone whose conduct
      would be excluded by (a) above; …

SUMF ¶ 69. Each section of the Exclusion applies in the disjunctive, such that the application of any one section bars coverage. The plain, recognized, intent of the Exclusion is "to exclude from coverage all classifications of damages arising out of incidents of molestation." *See Harper v. Gulf Ins. Co.*, No. 01-cv-201-J, 2002 WL 32290984, *6 (D. Wyo. Dec. 20, 2002) (quoting *Lincoln County v. Doe*, 749 So.2d 943, 946 (Miss. 1999)).

Pennsylvania law has interpreted the term "arising out of" very broadly for purposes of policy exclusions. *Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co*., 170 A.2d 571, 573 (Pa. 1961) (construing "arising out of" in the context of an exclusionary clause to be causally connected with, not proximately caused by, and noting that "but for" causation, *i.e.,* a cause and result relationship, is enough to satisfy such a provision); *see also Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (finding that "arising out of" has an unambiguous meaning under Pennsylvania law when used in the context of an insurance exclusion – meaning causally connected with, even if not proximately caused by).

Pennsylvania courts have universally enforced sexual abuse or molestation exclusions similar to the one at issue here. *See, e.g., 12th Street Gym, Inc. v. Phila. Indemnity Ins. Co.,* Civ. A. No. 03393, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006). In *12th Street Gym*, the underlying plaintiff alleged that she was sexually assaulted in the massage room by one of the massage therapists working within the gym and sustained severe physical and emotional injuries as a result. *Id*. at *8. The first paragraph of the Abuse or Molestation Exclusion at issue provided that there was no coverage under the policy for "bodily injury" "arising out of: 1. [t]he actual or threatened abuse or molestation by anyone or any person while in the care, custody and control of any insured." *Id*. at *7. The court applied the language in the first paragraph of the exclusion to the

factual allegations and determined that the provision excluded coverage for the negligence claims[9]

asserted against the gym. *Id.* at *8.

    This Court previously held that a similar exclusion[10] to the Exclusion in the National Policy

applied to preclude coverage for alleged underlying injuries arising from excluded sexual conduct.

*Nationwide Mut. Fire Ins. Co. v. Mr. & Mrs. K., et al.*, Civ. No. 05-569, 2005 WL 3434081 (W.D.

Pa. Dec. 13, 2005) (holding that sexual harassment exclusion barred coverage for suit alleging

negligence because all of the alleged injuries by the underlying plaintiffs resulted, either directly

or indirectly, from sexual harassment). More specifically, the court held:

> The question before me then is whether the sexual harassment exclusion applies to
> the claims raised by the R family. After careful consideration, I find that it does.
> *The exclusion focuses upon the nature of the injuries suffered - not upon the theory
> of liability being pursued*. Here, all the injuries suffered by K.R. and her parents
> resulted, either directly or indirectly, from the sexual harassment. Indeed, the sexual
> harassment is the motivating factor for the claims. But for T.K.'s alleged harassment
> of K.R., the R family would not be pursuing any claims against the K family. In
> short, the Policy unambiguously bars coverage for injuries arising directly or
> indirectly out of sexual harassment. There is no question that the injuries alleged
> here, even presuming that they would otherwise qualify as "bodily injuries," arose
> out of the alleged sexual harassment.

2005 WL 3434081 at *6-9[11] (citing *Allstate Insurance Co. v. Bates*, 185 F. Supp.2d 607 (E.D. N.C.

2000) (emphasis supplied) (finding that an insurance company did not have a duty to defend or

---

[9] In the underlying action, the underlying plaintiff alleged that 12th Street Gym negligently exposed
plaintiff to a foreseeable risk of harm; negligently failed to properly investigate the massage
therapist's background, character and qualifications; negligently failed to properly hire, train and
supervise the massage therapist; and negligently failed to investigate rumors of the massage
therapist's prior sexual misconduct. *Id*. at *4.

[10] The policy at issue in *Nationwide* excluded "any injury" "resulting from acts or omissions
relating directly or indirectly to sexual molestation, physical or mental abuse, harassment,
including sexual harassment, whether actual, alleged or threatened." 2005 WL 3434081 at *6.

[11] By contrast, the exclusion in the errors and omission policy in *Bd. of Pub. Educ. Of the Sch.
Dist. of Pittsburgh v. National Union. Fire Ins. Co*., 709 A.2d 910 (Pa. Super. Ct. 1998) stated that
the policy did not apply to "*any claim* involving allegations of … criminal acts" and "to *any claims*

- 14 -

indemnify the wife of an alleged molester, where the wife had been sued under the theory of negligent failure to protect a minor child and where the policy at issue contained a sexual molestation exclusion); Other jurisdictions have reached the same conclusion. *See e.g. American Commerce Ins. Co. v. Porto*, 811 A.2d 1185 (S.Ct. R.I. 2002) (finding no duty to defend or indemnify a policyholder against claims of negligent hiring and supervising an adult who molested minor where the policy excluded coverage for a bodily injury claim that "arises out of … the actual, alleged or threatened molestation of a person."); *W. Am. Ins. Co. v. Embry*, 2005 U.S. Dist. LEXIS 9387, No. 4-47, 2005 WL 1026185 (W.D. Ky. April 25, 2005) (holding that a sexual molestation exclusion negated the insurer's duty to defend and indemnify a homeowner who was sued for the negligent supervision of an adult son, who molested a minor who lived with the homeowner, finding that the claims arose from the sexual molestation); *Hingham Mut. Fire Ins. Co. v. Frost*, 20 Mass. L.. Rptr. 9, 2005 WL 2527068 (Mass. Super. Aug. 31, 2005) (finding that because "it is the source from which the plaintiff's personal injury originates rather than the specific *theories of liability* alleged in the complaint which determines the insurer's duty to defend," and because the claims of negligence, loss of consortium and intentional infliction of emotional distress would not have arisen absent the sexual molestation of the children, the sexual molestation exclusion in the insurance policy barred coverage) (emphasis in original and citation omitted); *Meridian Mutual Ins. Co. v. Bidle*, 1997 U.S. Dist. LEXIS 7043 (W.D. Mich. 1997) (holding that a sexual molestation exclusion applied to the parents of the minor perpetrator who were sued under theories of negligence and *respondeat superior*); *Ristine v. Hartford Ins. Co*., 195 Or. App. 226, 97 P.3d

---

arising out of … (3) assault or battery." 709 A.2d at 912. As a result, the court's analysis focused on whether the negligence *claims* against the insured arose out of the criminal act and an assault and battery. *Id*. at 913. *Bd. of Pub. Educ. Of the Sch. Dist. of Pittsburgh* is not applicable here because the Policy's Exclusion expressly focuses on the "bodily injury" and not the claims alleged.

1206 (2004) (holding that an exclusion in a homeowners' policy for bodily injuries arising out of molestation applied to negligence claims against the wife of the molester); *Elec. Ins. Co. v. Castrovinci*, 2003 U.S. Dist. LEXIS 23413, Civ. No. 3-1706, 2003 WL 23109149 (D. Conn. Dec. 10, 2003) (concluding that claims of negligent supervision and recklessness asserted against parents of molester fell within the exclusion for claims arising out of sexual molestation); and *New London County Mut. Ins. v. Riddick*, 2004 Conn. Super. LEXIS 2657, 38 Conn. L. Rptr. 7, 2004 WL 2284207 (2004) (ruling that because the claims against the parent were causally connected to the alleged sexual molestation, the sexual molestation exclusion applied and the insurer did not have a duty to defend or indemnify the parent in the underlying action)).

Here, it is abundantly clear from both the allegations and evidence in the Underlying Action that M.M. and K.M.'s claims arose out of "molestation or sexual contact, whether or not intentional, by anyone of any one person." It cannot be disputed that what happened to K.M. on April 29, 2016 was a sexual contact or molestation. SUMF ¶¶ 40-57. K.M.'s teacher admitted at deposition that what occurred was a sexual assault. SUMF ¶ 46. Moreover, the entirety of the Underlying Complaint is based on the alleged bodily injuries suffered by K.M. as a result of the April 29 sexual assault:

> 52.    This action is brought on behalf of M.M. as parent and guardian of her daughter, K.M., a minor child. **As a direct and proximate result of the claims set forth herein, the Plaintiffs are entitled to the damages set forth herein as a result of the physical sexual assault as well as the mental anguish which came about as a result of the subject claims**. These damages include those for treatment, medical tests therapy, emotional anguish, past and future medical expenses, past and future therapy expenses, post-traumatic stress, increased risk for post-traumatic stress and/or emotional issues associated with victims of sexual assault.

> 53.    **As a result of the physical and sexual assault, K.M. experienced**, she has experienced emotional distress and has the

potential to develop post traumatic stress and issues associated with child sexual assault/abuse throughout her life.

54.     The Plaintiff is entitled to be compensated for economic and non-economic damages as described herein, including past and future medical expenses and therapy expenses as well as pain, suffering, the loss of the basic and pleasurable activities of life and expense for psychological treatment, therapy and counseling, the need for such treatment and counseling as may arise in the future **as a result to being exposed to a sexual assault as a child**. Plaintiff is also entitled to be compensated for severe emotional distress.

SUMF ¶ 60 (emphasis supplied). K.M.'s claimed injuries originate completely from the student perpetrator's sexual assault. Therefore, the "bodily injury" at issue arises out of the molestation or sexual contact and is excluded from coverage under section "(a)" of the Abuse or Molestation Exclusion.

Moreover, while section "(a)" of the Exclusion alone conclusively precludes coverage for the claims against Brimar and PPSD under the Policy, section "(b)" of the Exclusion also applies. Section "b" applies, among other things, where bodily injury arises out of "the negligent (i) employment … (iii) supervision … of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above …". SUMF ¶ 69. The Underlying Complaint contains allegations that the bodily injury to K.M. arose from the negligent supervision by the Brimar driver of the student perpetrator. SUMF ¶ 61. Therefore, while section (a) of the Exclusion bars coverage for all of the claims against the Defendants, section "(b)" also equally applies to preclude coverage for the underlying plaintiffs' claims relating to the supervision of the student perpetrator. *See Arcadia Ins. Co. v. Hinds County School District*, No. 3:12-CV-188-CWR-LRA, 2013 WL 12091099, *4 (S.D. Miss. Mar. 29, 2013); *see also Pa. State Univ. v. Pa. Manufacturers' Ass'n Ins. Co.*, Civ. A. No. 03195, 2016 WL 2737438 (Pa. Com. Pl. May 4, 2016) (enforcing policies' Sexual Abuse or Molestation Exclusion and holding that insured university was not entitled to any

coverage for the underlying claims against it for negligent employment, investigation, and retention of a sexual abuser because the bodily injury suffered by all of the abuser's victims arose out of such negligence); *12th Street Gym, Inc. v. Phila. Indemnity Ins. Co.,* Civ. A. No. 03393, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006) (holding that paragraph 2 of the Abuse or Molestation Exclusion excluded coverage for the underlying claims against the insured gym for negligent employment, supervision, hiring, and investigation).

Accordingly, because all of K.M.'s alleged injuries stem from the April 29 sexual assault, coverage is excluded under the plain terms of the Policy's Abuse or Molestation Exclusion[12] and National owes no duty to indemnify Brimar or PPSD[13].

### D. National is Entitled to Reimbursement From Brimar and PPSD of Defense Costs and Settlement Monies it Has Paid

National is entitled to reimbursement of the defense costs (including attorney's fees) that it has paid on behalf of Brimar and PPSD and recoupment from Brimar and PPSD of all monies paid in the settlement of the Underlying Action.

An insurance company is entitled to reimbursement of its defense costs where there is an express provision in the written insurance policy providing for such reimbursement. *Am. &*

---

[12] National anticipates that Defendants will argue, as they have throughout this litigation, that the Sexual Molestation Exclusion is ambiguous. Plaintiff disagrees. Assuming the court is inclined to find an ambiguity, Plaintiff never intended its automobile policies to "cover abuse or molestation" allegations of any kind. *See* Declaration of Wendy N. Enerson, Esq., ¶ 17, Ex. H, OMA000424-432.

[13] Plaintiff respectfully disagrees that the Underlying Complaint seeks damages because of "an assault and battery due to non-sexual touching [the male perpetrator] initiated before the sexual assault took place." ECF Doc.91 at p. 33, citing ¶ 27 of the Underlying Complaint. Paragraph 27 alleges, consistent with the remainder of this pleading, that "the male student pinned K.M. down on the seat and was on top of K.M. At that time, she yelled out for him to stop and the bus driver did not take any action to stop the incident from occurring or to separate the students." These allegations unambiguously establish that the male perpetrator's "touching" and pinning down of K.M. were part of his sexual assault of her.

*Foreign Ins. Co. v. Jerry's Sport Ctr*., 2 A.3d, 526 (Pa. 2010). Here, the Policy provides that National has the right to reimbursement for defense costs it has incurred where it determines that the claims for which a defense has been provided are not covered under the Policy and has notified the insured of same. SUMF ¶ 68.

On July 24, 2018, National notified Brimar that it would provide a defense with respect to the Underlying Action subject to a reservation of rights, including the right to seek recoupment of defense costs if it was later determined that the Policy did not afford coverage. SUMF ¶ 71. National has incurred $80,958.79 in defense costs on behalf of Brimar in connection with the Underlying Action. SUMF ¶ 80. Pursuant to this Court's January 24, 2020 decision holding that National had a duty to defend PPSD, National paid to PPSD $266,800.86 for its documented and paid defense costs incurred in defending the Underlying Action, as well as a supplemental payment of $71,346.00 after PPSD supplied additional documentation. SUMF ¶¶ 81-82. National's payments of defense costs to PPSD were made subject to all of National's rights to dispute coverage, and National expressly advised PPSD that it fully intended to seek reimbursement of all monies paid to or on behalf of PPSD, including defense and settlement payments. SUMF ¶ 83.

With regard to the settlement monies paid by National, Pennsylvania federal courts have permitted unjust enrichment claims for reimbursement of indemnity payments where it is determined that the insurer was not obligated to make the payment under the terms of the insurance policy. *See, e.g.*, *Essex Ins. Co. v. RMJC*, No. 07-4528, 306 Fed. Appx. 749, 755-56 (3d Cir. Jan. 7, 2009) (allowing insurer to recover restitution of funds paid to satisfy judgment on behalf of insured based on finding of no coverage and where insured was on notice of insurer's coverage position); *see also Am. Western Home Ins. Co. v. Donnelly Distrib. Inc*., No. 14-797, 2015 WL 505407, at *4 (E.D. Pa. Feb. 6, 2015) (permitting insurer to recover settlement payment made on

behalf of insured under theory of unjust enrichment after finding of coverage reversed on appeal); *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys.*, No. 3:18-cv-153, 2019 WL 1283976, at *5 (W.D. Pa. Mar. 20, 2019) (finding insurer plausibly pleaded unjust enrichment claim seeking recoupment of indemnity payment).

For the reasons set forth in Sections B. and C., above, there is no coverage under the Policy for the claims against Brimar and PPSD in the Underlying Action and, therefore, National is entitled to reimbursement of its defense costs paid and recoupment of the settlement monies paid on behalf of Brimar and PPSD.

## V.    RELIEF REQUESTED

For all the foregoing reasons, National respectfully requests that the Court grant its Motion for Summary Judgment and issue a declaration that National has no duty to indemnify Brimar and PPSD for the claims against them in the Underlying Action, which claims arise out of a sexual assault and are not causally connected to the use of an auto. Further, National requests that Brimar and PPSD be ordered to reimburse National for the defense costs (including attorney's fees) that it has paid and the payments National made on behalf of the Defendants in settlement of the Underlying Action.

Respectfully submitted,

**COZEN O'CONNOR**

Dated:  March 16, 2022          By:     */s/Wendy Enerson*
                                        Wendy N. Enerson, Esquire
                                        (*admitted pro hac vice*)
                                        123 North Wacker Drive, Suite 1800
                                        Chicago, IL 60606
                                        (312) 382-3162
                                        wenerson@cozen.com

                                        -and-

- 20 -

Charles J. Jesuit, Jr., Esquire
(*admitted pro hac vice*)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215-665-6967
cjesuit@cozen.com

-and-

Paul Steinman, Esquire
One Oxford Centre
31 Grant St., 41st Floor
Pittsburgh, PA 15219
412-620-6544
psteinman@cozen.com

A*ttorneys for Plaintiff National Liability &
Fire Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day of March 16, 2022, caused a true and correct copy of the within and foregoing Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment to be served upon all counsel of record via the Clerk of Court by using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record for the parties:

Respectfully submitted,

**COZEN O'CONNOR**

Dated:  March 16, 2022        By:    */s/Wendy Enerson*
        Wendy N. Enerson, Esquire
        (*admitted pro hac vice*)
        123 North Wacker Drive, Suite 1800
        Chicago, IL 60606
        (312) 382-3162
        wenerson@cozen.com

*Attorneys for Plaintiff National Liability &
Fire Insurance Company*