IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(PITTSBURGH)

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | CIVIL ACTION NO. 2:18-cv-1129 |
| Plaintiff, | |
| v. | |
| BRIMAR TRANSIT, INC., | |
| Defendant, | |
| v. | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, | |
| Intevenor-Defendant. | |

### BRIMAR TRANSIT, INC.'S MEMORANDUM IN OPPOSITION TO NATIONAL LIABILITY & FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT

**AND NOW** comes, Defendant, Brimar Transit, Inc. by and through its attorney, Stephen H. Lebovitz, Esquire, and Lebovitz & Lebovitz, P.A., and submits Plaintiff's Memorandum in Opposition to National Liability & Fire Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and avers in support thereof:

### PRELIMINARY STATEMENT

The dispute at issue between National Liability & Fire Insurance Company "National" and Brimar Transit, Inc. "Brimar" and the Pittsburgh Public School District "PPSD" is well known before the Court and recently on 1/22/2022, (Docket 150) the Court Ordered as follows:

> ORDER that upon consideration of the parties' disputes set forth in their Joint Status Report 149 and the proposed judgment submitted by Defendants, to which

>Plaintiff does not consent, and the Court fully understanding Defendants' position that judgment should be entered at this time in light of the Court's prior rulings, 91, 128, 142, such that a cross-motion for summary judgment is unnecessary, Plaintiff shall file its motion for summary judgement by 2/14/22 and Defendants shall file their responses by 3/7/2022. No further briefing will be permitted without leave of court. The Pittsburgh Public School District should proceed to dismiss its counterclaim and cross-claims, forthwith. Signed by Judge Nora Barry Fischer on 1/22/2022.

The dates indicated in the above Order were modified and extended to accommodate the attempt of the Plaintiff to obtain a deposition for discovery purposes in the underlying case.

The Court's Memorandum Opinion dated 12/23/21 (Docket 142) set forth that:

The Court proceeds to its discussion without a lengthy recitation of the facts and procedural history because it writes primarily for the parties, who are well-familiar with the facts of this insurance coverage dispute and the underlying action styled *M.M., parent and natural guardian of K.M., a minor v. Pittsburgh Public School District and Brimar Transit, Inc.* Case No. GD-18-003257, ("underlying action"), in the Court of Common Pleas of Allegheny County. The background of the litigation is also sufficiently detailed in the prior opinions in this matter. *See e.g., National Liability & Fire Ins. Co. v. Brimar Transit, Inc., et al.,* 433 F.Supp. 3d 747 (W.D.Pa. Jan. 14, 2020); Docket No. 129 (W.D.Pa., Sept. 7, 2021).

The underlying case was unilaterally settled by National and the docket was settled and discontinued on 12/22/2020, prior to trial leaving numerous unresolved questions of facts/theories of liability in this multi-party, multi-theory of liability State Court action. The Plaintiff's "uncontested facts" do not limit or rule out the various applicable theories that provide coverage to the Defendants.

Plaintiff has filed their Motion and Brief for Summary Judgment with an extensive series of attachments, exhibits, appendixes, etc. The matter now before the Court is the Plaintiff seeking summary judgement for recoupment of all its expenses arising out of the underlying action, notwithstanding the fact that this Court has already ruled in the dismissal of Plaintiff's Motion for Judgment on the Pleadings, (Docket 91) where Plaintiff's Motion for Judgment on the Pleading (Docket 53) was denied and the Plaintiffs subsequent unilateral settlement of the underlying suit.

In the Plaintiff's Preliminary Statement, Plaintiff tells a narrative of facts as they see fit

from picking and choosing amongst various discovery depositions taken which Plaintiff apparently obtained from its coverage counsel provided to Brimar in the underlying suit and/or from Plaintiff's claim's adjuster provided to Defendant Brimar in the underlying suit. None of the deposition transcripts were sought and/or obtained through discovery or from the actual party Defendants in this pending matter.  Notwithstanding National's attempt to recreate the record with their undisputed facts, the fact is that the Motion for Judgment on the Pleadings properly considered all issues involving coverage in the case.  Plaintiff is now seeking to relitigate those legal issues by use of depositions which were not necessarily completed, ruled upon by a trier of fact subject to rebuttal, cross-examination or any ultimate findings of facts or resolution in the underlying case.  These excerpts may or may not even be admissible had the case gone to trial.  As set forth as a law of this case in the Judgment on the Pleadings, there were multiple factors indicating ways which would have afforded coverage under the policy.

## **ARGUMENT**

After Plaintiff's Concise Statement of Undisputed Material Facts, Plaintiff set forth their argument in 4 parts. A through C set forth arguments previously considered in the Judgment on the Pleadings phase of this case.

Plaintiff's part A is not relevant to their Motion for Summary Judgment and no additional response is necessary. Coverage is available under the applicable business auto coverage policy in this case.

Plaintiff's main argument in part B is an attempt to relitigate the Motion for Judgment on the Pleading revolves around the issue of whether or not the injuries sustained result from the ownership, maintenance or use of a covered auto. This point has been briefed, argued, and resolved by the Court's 1/14/2020 Memorandum Opinion and Order (Docket's 91 & 92).

This Court has already held that the damages alleged in the Complaint arose from the use of a covered automobile as a matter of law. As this Court held in its January 14, 2020, Memorandum Opinion:

> In this Court's opinion, the most analogous case is Lebanon Coach Co. v. Carolina Cas. Ins. Co., 675 A.2d 279 (Pa. Super. Ct. 1996), wherein the Superior

Court found that the insurance company had a duty to defend claims alleging that an insured bus company breached its duty of care to a child who was hit by a car after being dropped off in front of the school. As the Superior Court noted:

[i]t is well settled in this Commonwealth that a common carrier owes its passengers the highest degree of care and diligence in carrying them to their destination, in setting them down at the terminus of their journey, and in enabling them to alight safely. *O'Malley v. Laurel Line Bus Company*, 311 Pa. 251, 254-55, 166 A. 868, 869 (1933). Moreover, while carrying children to and from school, a bus company is "bound to use every reasonable caution and care for the safety of these children, either while they are riding in the bus or alighting from the bus or leaving the immediate vicinity of the bus at the completion of their journey." *Vogel v. Stupi*, 357 Pa. 253, 257, 53 A.2d 542, 544 (1947). In that case our Supreme Court upheld jury verdicts against both the company operating the bus by contract as well as the driver of the vehicle which struck a minor after the minor had alighted from the bus and was crossing the state highway to reach his home. *See also Sommers v. Hessler*, 227 Pa.Super. 41, 323 A.2d 17 (1974) (carrier held to highest degree of care, regardless of whether it is common or contractual carrier).

*Lebanon Coach Co.*, 675 A.2d at 291. Most pertinent to the instant matter, however, is the Superior Court's discussion of the phrase "use of a motor vehicle."

We have interpreted the phrase "use of a motor vehicle" to mean the use of a motor vehicle *as a vehicle*, including, incident to its use as a vehicle, occupying, entering into, or alighting therefrom. *Smith v. United Services Automobile Association*, 392 Pa.Super. 248, 252, 572 A.2d 785, 787 (1990), appeal dismissed, 529 Pa. 24, 601 A.2d 276 (1992) (quotation omitted) (emphasis in original).

'The term 'use' has been defined as the general catchall of an omnibus insurance clause, designed and construed to include all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance.' *State Farm Mutual Automobile Insurance Co. v. O'Brien*, 380 F.Supp. 1279 (1974). 'The word 'use' in connection with the words ownership and maintenance ..., must be taken in its usual meaning of use of a motor vehicle.' *Assurance Company of America v. Bell*, 108 Ga.App. 766, 772, 134 S.E.2d 540 (1963).

*Lebanon Coach Co*, 675 A.2d at 290. The Superior Court concluded that the child's injuries resulted from the "use" of the bus, as the bus company owed a duty to the child to transport her to her destination safely which did not end until she reached her school after safely alighting from the bus. *Id.*

After viewing the allegations in the underlying pleading in the light most favorable to the insured, this Court holds that K.M.'s alleged bodily injuries resulted from the "use" of the bus. On its face, the Policy provides "business auto

4

coverage" for 26 multi-passenger vehicles operated as "school buses" by a transit company. (*See* Docket No. 46-2 at 57-58). At the time of the events in question, the bus was being "used" as that term is commonly understood, transporting children from school to their homes. *See Smith*, 572 A.2d 785, 787. The M.M. Complaint asserts that K.M. and the male student were riding the bus and therefore occupying it at the time the injuries were sustained. (*See e.g., M.M. Complaint* at ¶¶ 12). The alleged injuries resulted from the "use" of the bus because, akin to *Lebanon Coach*, the bus company and school district had a heightened duty to safely transport the minor child, with known special needs, from school to her home. *See Lebanon Coach Co.*, 675 A.2d at 291. Despite their knowledge of the prior assault in gym class, the District and Brimar assigned K.M. and the male student to continue to ride the same bus and voluntarily undertook the duty to separate the children by establishing a seating plan which they neglected to enforce on the date in question. (*See M.M. Complaint* at ¶¶ 12-17; 21-22; 32; 58). The factual allegations also assert that the driver neglected to intervene at a point in time when the male student had only physically assaulted, but not yet sexually assaulted, K.M. (*Id*. at ¶ 27). In addition, the driver likewise had an opportunity to intervene during the sexual assault but failed to do so, despite the cries for help by K.M. and other students on the bus. (*Id*. at ¶¶ 27-28).

For all of these reasons, National's motion for judgment on the pleadings is denied to the extent that it argues that there is no duty to defend because the claims set forth in M.M. Complaint are beyond the scope of the coverage provided in the Policy.  (Doc. No. 91, pp. 28-29.)

Plaintiff's Part C attempts to relitigate the abuse or molestation exclusion previously discussed by this Court on pages 29 through 34 of the Memorandum Opinion (Docket 91).

… viewed in the light most favorable to the insured, the factual allegations against Brimar and the District are very broad, sound in negligence and assert various breaches of duties to K.M. and her mother, M.M. before, during, and after the alleged sexual assault. (*See M.M. Complaint* at ¶¶ 1-124). Continuing the analogy utilized by the Superior Court, the male student's sexual misconduct grew from the failures of Brimar and the District to tend to the needs of the passengers on the bus, including the victim K.M. *See Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh*, 709 A.2d at 916. If the seating plan had been enforced, as they had agreed, the alleged actions would not have occurred. Hence, the claims for "bodily injury" asserted against Brimar and the District arise out of their own negligence and not only from the male student's sexual assault.

In any event, the exclusion does not eliminate National's duty to defend all potential claims in the underlying action for several compelling reasons. *See Ramara*, 814 F.3d at 673. First, the provision expressly lists the types of negligence claims which are excluded including the insured's "(i) employment; (ii) investigation; (iii) supervision; or (iv) retention, … of anyone … whose

conduct would be excluded" because that person engaged in "alleged, actual or threatened abuse, molestation or sexual contact." (Docket No. 46-2 at 90). At most, the exclusion bars a claim for the District's and Brimar's negligent supervision of the male student, but the factual allegations asserted against them are much broader, as the Court has already recounted above. *See* § IV.B.1, *supra*. National certainly could have written this provision to exclude all negligence claims against its insured if anyone (e.g., a noninsured third party) engaged in "alleged, actual or threatened abuse, molestation or sexual contact," but it chose language that specifically limited the instances of its insured's negligence to which the exclusion pertains. (Docket No. 46-2 at 90). Again, the law requires that such exclusionary language must be read against the insurance company. *Swarner*, 72 A.3d at 645.

Second, the M.M. Complaint is reasonably read as describing the male student's actions as constituting an assault and battery due to non-sexual contact, he initiated against K.M. before the alleged sexual assault took place. (*See M.M. Complaint* at ¶ 27). Third, the assault and battery are also expressed as alternative theories to the alleged sexual assault if the same is not ultimately proven at the forthcoming trial. (*Id*.). Indeed, the underlying complaint contains multiple factors why a sexual assault may not be proven including: the inability of the male student to form the applicable mens rea; the lack of physical evidence due to the delays in reporting the incident and K.M.'s examination at Children's Hospital several days after the event; and, K.M.'s own special needs causing difficulties in reporting and/or testifying as to the incident. (*Id*. at ¶¶ 6; 12; 32; 35; 37-38). Of course, the allegations that the District's and Brimar's negligence led to the male student's assault and battery of K.M. avoid the invoked exclusion entirely.

To conclude, the Court finds that National has failed to meet its burden to demonstrate that an exclusion operates to bar all potential claims asserted against its insured in the underlying action.

National also briefly argues, in the alternative, that the contractual liability exclusion bars "any liability of Brimar to the School District under an indemnity clause, or by virtue of any obligation created in the Brimar-School District contract." (Docket No. 54 at 13). National's counsel conceded at the motion hearing that this is a secondary argument but has not further developed the grounds for same. (Docket No. 82 at 23). In light of the Court's rulings that the M.M. Complaint contains factual allegations wherein K.M. and M.M. assert claims against Brimar which are covered by the Policy and not subject to any exclusion, triggering its duty to defend Brimar from such claims, no further discussion of this particular exclusion is warranted at this time.  P 32-34

Defendant incorporates by reference it's prior Docket 58, and PPSD Docket 59 as well as Docket 65 and 66.

Responding to Part D, National is not entitled to reimbursement of defense costs and

settlement monies paid. This Court has considered this issue in its Memorandum Opinion dated 9/27/01 (Docket 128) and has discussed National's duty to indemnify concerning several legal principles.

> The Court of Appeals has recognized that "[i]f triggered, the duty to defend also carries 'a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy.'" *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249-50 (3d Cir. 2019) (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997)). "Both duties are at issue until the underlying 'claim is confined to a recovery that the policy does not cover.'" *Id*. However, a decision on the insurer's duty to indemnify may be muddled by a settlement of the underlying action and make it impossible to determine what theories of liability, if any, would have prevailed at trial. *Id*. at n.3 (citing *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 766 (3d Cir. 1985)). This is particularly true if there are multiple claims and parties in the underlying action and there was no fact finding made by the trial court prior to the settlement on which a nuanced coverage determination could be made. *Id*. As the Court of Appeals later clarified, the holding in *Linn* "was based, in part, on the concern that an insurer would be able to settle a suit without an agreement with the insured and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy."*12th Street Gym, Inc. v. General Star Indem. Co.*, 93 F.3d 1158, 1167 (3d Cir. 1996). In such situations, Pennsylvania law does not permit the insurer to try the underlying case before the coverage decision may be made by the Court and the duty to indemnify follows the duty to defend. *See also Liberty Mutual Ins. Co. v. Penn National Mut. Casualty Ins. Co.*, 499 F. Supp. 3d 130, 141-42 (W.D. Pa. Nov. 6, 2020) (Hornak, C.J.) ("the two prerequisites for indemnification under the '*Linn* Rule' are: (1) that the nature of the case as being one with multiple parties, multiple theories of liability, and settlement making liability among competing parties impossible to Case 2:18-cv-01129-NBF Document 128 Filed 09/07/21 Page 16 of 18 17 determine and (2) there must be a concern that an insurer could foreclose indemnification by its conduct relative to the underlying lawsuit. When those factors converge, the indemnity obligation follows the duty to defend.").

> In this Court's estimation, National has failed to plead sufficient facts in the proposed Third Amended Complaint to state a plausible claim for declaratory judgment asserting that it has no duty to indemnify the Defendants. To reiterate, the Court reviewed the M.M. complaint asserting multiple claims against Brimar and the District as well as the Policy language and determined that National had a duty to defend them. (Docket No. 91). At most, National has now pled that it disagrees with this Court's decision, settled with the M.M. plaintiffs in the underlying action prior to trial, paid for Brimar's defense, and reimbursed the District for its attorney's fees and defense costs. (Docket No. 125-1). National issued reservation of rights letters in December of 2020 concerning the settlement and February of 2021 with regards to the reimbursement to the District. (*Id*.).

7

Both letters indicate that National reserved the right to challenge this Court's rulings, including through an appeal. (*Id*.). Yet, National has not alleged that the trial court made any factual findings prior to the settlement, and it is uncontested that the settlement of the underlying action took place prior to the trial court making any rulings narrowing the scope of the M.M. complaint. (*Id*.). Absent any rulings or factual findings from the trial court in the underlying case, the insurer's pre-trial settlement precludes this Court from undertaking a more nuanced coverage decision than has already been produced. *See Sapa*, 939 F.3d at 250, n.3. Therefore, National's proposed Third Amended Complaint may also be denied due to the futility of the claims.[5]

[5] The Court notes that National admits that its unjust enrichment claims "will rise and fall on the Court's determination of whether coverage exists for the Underlying Act." (Docket No. 125 at 9). The Supreme Court of Pennsylvania has also held that "an insurer may not obtain reimbursement of defense costs for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 545 (Pa. 2010). Hence, no further discussion of those claims is necessary.  P 16-17.

Since the last discussions by this Court concerning *Liberty Mutual Ins. Co. v. Penn National Mut. Casualty Ins. Co*., the Third Circuit upheld same in a nonprecedential opinion on October 4, 2021, and filed November 18, 2021, at 2021 U.S. App. LEXIS 34378*; 2021 WL 5401543.

## **CONCLUSION**

For the above stated reasons, Plaintiff's Motion for Summary Judgment should be dismissed and this case now being ripe for resolution, the Court can issue final judgment in favor of the Defendants.

Dated: April 6, 2022

Respectfully submitted,

LEBOVITZ & LEBOVITZ, P.A.

/s/ Stephen H. Lebovitz
Stephen H. Lebovitz
shl@lebovitzlaw.com
Lebovitz & Lebovitz, P.A.
2018 Monongahela Avenue
Pittsburgh, PA 15218-2510
(412) 351-4422
Attorney for Defendant, Brimar Transit, Inc.