UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:18-cv-1129 |
| vs. | ) ) | |
| BRIMAR TRANSIT INC., | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| PITTSBURGH PUBLIC SCHOOL DISTRICT, additional insured | ) ) ) | |
| Intervenor Defendant. | ) ) ) | |

**<u>INTERVENOR DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTORY BACKGROUND.....................................................................3

II.   FACTS – See Responsive Concise Statement of Additional Material Facts...........3

III.  LEGAL STANTANDARDS ...................................................................................... 3

      a.  SUMMARY JUDGMENT ........................................................................3

      b.  INTERPRETATION ON AN INSURANCE CONTRACT.......................4

IV.  ARGUMENT……………………………………………………………...5

      a.  National owed a duty to defend the District and Brimar in the Underlying
         Suit**.**

           i.  The District is an additional insured………………………………6

          ii.  The underlying injury was the result of the ownership and/or
              use of the school bus……………………………………………7

         iii.  The Sexual Abuse Exclusion does not apply**……………………..**11

      b.  Settlement of the Underlying Suit makes it impossible for the
         Court to make a meaningful determination about indemnity
         under the Policy and renders the issue of indemnity moot………………14

      c.  Even in the unlikely event that the Court determines that there is
         no coverage for the District under the Policy with respect to indemnity,
         National is not entitled to reimbursement of defense costs
         or its voluntary settlement payment in the Underlying Suit……………...17

V.   CONCLUSION.................................................................................................... 21

2116234.1

<u>INTERVENOR DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT</u>

## I. <u>Introduction</u>

Intervenor Defendant, Pittsburgh Public School District (the "District" or "Pittsburgh Public Schools") respectfully requests that the Court deny Plaintiff, National Liability & Fire Insurance Company's ("National" or the "Insurer") motion for summary judgment, and enter judgment in favor of Defendants. This Court has already held in this case that the District is an additional insured under the insurance policy, and that National owed a defense to Brimar Transit Inc. ("Brimar") and to the District in the underlying suit at <u>M.M., parent and natural guardian of K.M., a minor v. Pittsburgh Public School District and Brimar Transit, Inc.</u>, Case No. GD-18-003257 (the "Underlying Suit"). Settlement of the Underlying Suit makes it impossible for the Court to make a meaningful determination about indemnity under the Policy and renders the issue of indemnity moot. Even in the unlikely event that the Court determines that there is no coverage for the District under the Policy with respect to indemnity, National is not entitled to reimbursement of defense costs or its voluntary settlement payment in the Underlying Suit.

## II. <u>FACTS – See Responsive Concise Statement of Additional Material Facts</u>

## III. <u>Legal Standards</u>

### a. <u>Summary Judgment</u>

Summary judgment is appropriate if there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. <u>Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). An issue is genuine

3

only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]here the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). "In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor." Zurich Am. Ins. Co. v. Century Steel Erectors Co., L.P., Civil Action No. 19-998, 2020 U.S. Dist. LEXIS 65724, at *12-13 (W.D. Pa. Apr. 14, 2020) (citing Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001)).

### b. Interpretation of an Insurance Contract

"In order to decide whether a claim comes within the insurance policy's coverage, we must first ascertain the policy's scope. Moreover, the proper focus of this scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved." Lebanon Coach Co. v. Carolina Cas. Ins. Co., 675 A.2d 279, 283 (Pa. Super. 1996) (citing Butterfield v. Giuntoli, 670 A.2d 646, 652-53 (Pa. Super. 1995) allocator denied by Butterfield v. Mikuta, 683 A.2d 875 (Pa. 1996)).

Under Pennsylvania Law, the duty to defend is separate and distinct from the duty to indemnify. Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. 574, 533 A.2d 1363, 1368 (Pa. 1987) ("[t]he duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage."). An insurer has a duty to defend whenever the allegations in a complaint set forth a claim which potentially falls within the coverage provided by the policy. Lucker Mfg. Inc., v. The

Home Ins. Co., 23 F.3d 808, 821 (3d Cir. 1994); Cadwallader v. New Amsterdam Cas. Co., 396 Pa. 582, 152 A.2d 484, 488 (Pa. 1959).  The duty to defend is triggered even if the allegations against the insured are groundless, false or fraudulent. D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986). It likewise arises when the potential for a covered claim exists and the determination of coverage depends upon the existence or non-existence of undetermined or disputed facts. Germantown Ins. Co., v. Martin, 595 A.2d 1172, 1174 (Pa. Super. 1991). Where a complaint raises a claim potentially within the scope of coverage, the duty to defend remains with the insurer until the claim is narrowed to one patently outside the policy coverage. Id.

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).

## IV.    Argument

The duty to defend is separate and distinct from the duty to indemnify. Erie Ins. Exch., 533 A.2d at 1368.  An insurer has a duty to defend whenever the allegations in a complaint set forth a claim which potentially falls within the coverage provided by the policy. Lucker Mfg. Inc., 23 F.3d at 821 (3d Cir. 1994); Cadwallader, 152 A.2d at 488 (Pa. 1959). This Court has already held in this case that the District is an additional insured under the insurance policy (the "Policy"), and that National had a duty to defend Brimar and the District in the Underlying Suit.  The Court should reiterate it's Judgment at Judgement on the Pleadings and grant Summary Judgment in favor of the District that National owed a duty to defend the District, because, inter alia: i) the District is an additional insured; ii) the underlying injury was the result of the ownership and/or use of the school van/bus; and iii) the sexual abuse exclusion does not apply.

Settlement of the Underlying Suit makes it impossible for the Court to make a meaningful determination about indemnity under the Policy and renders the issue of indemnity moot.  Even in

the unlikely event that the Court determines that there is no coverage for the District under the Policy with respect to indemnity, National is not entitled to reimbursement of defense costs or its voluntary settlement payment in the Underlying Suit.

### a.   National owed a duty to defend the District and Brimar in the Underlying Suit.

### i.   The District is an additional insured.

National argues that the District is not an additional insured under the purported Policy, because its name does not appear on the face of the Policy.  The District is an additional insured under the Policy, because there are allegations in the underlying Complaint filed in the Court of Common Pleas of Allegheny County at <u>M.M. v. Brimar Transit</u>, Civ. No. GD 18-003257, that the District is liable for the conduct of Brimar.

> Section II (A) (1) provides for who is covered as an insured under the Policy:
> 1.   Who is an insured
>    The following are "insureds"
>    ***
>    c. Anyone liable for the conduct of an "insured" described above, but only to the extent of that liability

(Policy, Doc. No. 46-2, p. 60, Section II (A) (1)(c)).

Although the District denies that it has any liability in the underlying case, the underlying complaint is replete with allegations that the District is liable for the conduct of Brimar, its agents, representatives and/or employees.  The gist of the underlying complaint against the District is that the District and Brimar made an agreement to keep the two students separate while Brimar transported the students on Brimar's bus.  Underlying Plaintiff alleges that Brimar's driver failed to keep the students separate, failed to prevent the alleged sexual assault, and failed to stop it once it started.  Underlying Plaintiff alleges that the District is liable for the driver's conduct in breaching the alleged agreement.  Although ultimately the District contends that it will not be held liable for Brimar's conduct, for purposes of the insurer's evaluations of whether to provide a defense, the allegations in the underlying Complaint include allegations that the District is liable

for Brimar's driver's conduct and therefore, coverage must be afforded to the District as a named, additional insured.

As this Court found in its Memorandum Opinion on National's Motion for Judgment on the Pleadings:

> With that said, the Court is presently able to decide the separate issue of whether the District qualifies as an "insured" under § II.A.1.c of the Policy as a matter of law by interpreting the insurance contract and applying the "four-corners rule" to the M.M. Complaint. *See Lupu*, 903 F.3d at 389–90. In this regard, the plain language of the Policy does not confine the definition of "insured" to the named insured listed on the Declarations but also includes "[a]nyone liable for the conduct of an 'insured' [...] to the extent of that liability." (*See* Docket No. 46-2 at 61). Courts have interpreted such provisions to extend coverage to additional parties alleged to have been vicariously liable for the conduct of the named insured. *See e.g., Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1222 (Pa. Super. Ct. 2002) (interpreting such a provision to mean that a party qualified as an insured if the party was vicariously liable for the insured's actions); *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F. Supp. 2d 579, 585 (E.D. Pa. May 17, 1999) (court held that party qualified as an insured based on allegations he was vicariously liable for conduct of the insured). Reviewing the M.M. Complaint in the light most favorable to the District reveals that, among other theories, the underlying plaintiffs allege that there is an agency relationship between the District and Brimar and seek to hold the District responsible for the negligent acts and omissions of Brimar and its driver. (*See e.g., M.M. Complaint* at ¶¶ 10-11, 22, 30, 72-104). Therefore, the Court finds that the District is an "insured" under the Policy for the underlying claims asserting it is vicariously liable for conduct of the named insured, Brimar, or its driver.

(Doc. No. 91, pp. 19-20.)

> ii. **The underlying injury was the result of the ownership and/or use of the school bus.**

In its argument on the ownership or use of the school bus, National conflates two distinct concepts under Pennsylvania law: proximate cause/legal cause and "but for" causation.  It is true that when a policy uses the phrases "arising out of" or "resulting from" the ownership or use of a vehicle that there must be some nexus between the injury and the ownership or use of the vehicle. Pennsylvania law, however, does not require proximate or legal cause in such a situation.  <u>See</u>

Lebanon Coach Co. v. Carolina Cas. Ins. Co., 675 A.2d 279, 289 (Pa. Super. 1996).  As the Court in Lebanon Coach, explained:

> Assuming, without deciding, that she was no longer an occupant of the bus, Miss Lehman's injuries were nevertheless sustained as a result of the "use" of the COLT-owned bus driven by Lebanon Coach. "The phrase 'arising out of means causally connected with, not proximately caused by.' 'But for' causation, *i.e.,* a cause and result relationship, is enough to satisfy this provision of the policy."

Id. (quoting Lucas-Raso v. American Manufacturers Insurance Company, 657 A.2d 1, 3 (Pa. Super. 1995), allocatur denied 668 A.2d 111 (Pa. 1995)).  Similarly, the Pennsylvania Superior Court in State Auto. Ins. Asso. v. Kuhfahl, 527 A.2d 1039 (Pa. Super. 1987) explained:

> When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured. Had the insurer desired to limit its liability to accidents with such a close causal connection to the ownership, maintenance or use of the trailer as to be encompassed within the scope of proximate causation, it could have and should have so stated in its policy. Construed strictly against the insurer, "arising out of"[1] means causally connected with, not proximately caused by. "But for" causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.

Id. at 1043.  This standard is met in the instant case.  The minor female student would not have suffered her injuries "but for" her use of the bus as an occupant of the bus, and the alleged inattentiveness of the bus driver.  One of the allegations central to underlying Plaintiff's Complaint against the District is that the injury could have been avoided if the students were placed on a different bus, or if Brimar had provided a bus monitor, in addition to the driver on the van.  Brimar uses the van specifically to transport students safely to and from school.  The alleged injury to the minor female student was a direct result of Brimar's alleged failure to safely transport and monitor students on its bus, and therefore, was a direct result of Brimar's use of the bus/van.

---

[1] In Kuhfahl, the Superior Court was construing the language "arising out of" rather than "resulting from." Nevertheless, in Lebanon Coach, the Superior Court found the phrases synonymous in this context.

In <u>Lebanon Coach</u>, the Lebanon Coach Company was using its bus to transport children to and from school.  The bus stopped at an intersection to discharge its high school students.  "Paula Jo Lehman, then a minor, stepped off of the bus onto the sidewalk, walked the length of the bus to the corner crosswalk, and, walking behind the bus, began crossing the street to the high school. While the bus remained stationary, a car driven by Beth McKinney turned onto Cornwall Road from Hauck Street and struck Paula Jo pushing her and then pinning her to the bus."  <u>Lebanon Coach</u>, 675 A.2d at 281-82.  In determining whether Paula Jo's injuries resulted from the ownership or use of the bus, the Court stressed the importance of the overall context and nature of the underlying business and insurance contract.  The Court must consider the use that the bus company had planned for the bus as well as the bus companies' reasonable expectation in acquiring the insurance.  <u>See Id.</u> at 283.  ("In order to decide whether a claim comes within the insurance policy's coverage, we must first ascertain the policy's scope. Moreover, the proper focus of this scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved.") (citation omitted.)  <u>See also</u>, <u>Id.</u> at 290. (noting that the phrase "use of a motor vehicle" has been interpreted to include occupying a vehicle, and that the term 'use' "must be considered with regard to the setting in which it is employed.")

In considering the use to which the bus company put its buses, the Court examined the duty of the bus company to its minor student passengers.  "[Lebanon Coach] by contract accepted a grave responsibility to carry children to and from school, and in discharge of this duty it was bound to exercise the highest practical degree of care." <u>Id.</u> at 291 (<u>quoting</u> <u>Vogel v. Stupi</u>, 53 A.2d 542, 545 (Pa. 1947)).  The Court opined that the bus company had a duty to transport minor students safely to their destination, and the passengers' minor status heightened that duty.  <u>Id.</u> 290-91. ("In the instant case, we opine that Lebanon Coach had a duty to carry Paula Jo Lehman safely to her

destination and afford her an opportunity to alight safely. Whereas in <u>Tyler v. Insurance Company of North America</u>, <u>supra</u>, the place of safety where the bus company's duty to its passenger ended was the shoulder of the road, instantly, we conclude that Lebanon Coach's duty to minor Paula Jo Lehman continued until Miss Lehman reached the safety of the other side of the immediate street she had to cross to reach her school.")  The Court essentially concluded that because the injury occurred within the parameters of the bus company's duty to keep the minor student passengers safe, the injury resulted from the use of the school bus.  <u>Id.</u> at 290-92.

In this case, the Court must look to the context of the insurance contract and Brimar's reasonable expectations of coverage.  Brimar is in the business of safely transporting minor students to and from school. Brimar had a contract with the District to provide such safe transportation of students, and had a duty, through its contract, to obtain insurance to satisfy its contractual obligations.   National knew of Brimar's business when it entered into the insurance contract with Brimar, and knew that Brimar contracted with the District to safely transport students (including special needs students) to and from school.  Brimar, and the District, had a reasonable expectation that the insurance covered not only injuries caused by collisions with other vehicles, but also injuries occurring within the vans/busses and caused by Brimar's alleged failure to properly monitor the minor students it was transporting.  In this context, Brimar's use of the vehicles includes the operation of the vehicle as well as monitoring the minor students while they occupy the van.  Because the minor student was injured while a passenger of the van, the injury resulted from the use of the van.

As this Court found in its Memorandum Opinion on National's Motion for Judgment on the Pleadings:

> After viewing the allegations in the underlying pleading in the light most favorable to the insured, this Court holds that K.M.'s alleged bodily injuries resulted from the "use" of the bus. On its face, the Policy provides "business auto coverage" for 26 multi-passenger vehicles operated as "school buses" by a transit

company. (*See* Docket No. 46-2 at 57-58). At the time of the events in question, the bus was being "used" as that term is commonly understood, transporting children from school to their homes. *See Smith, 572 A.2d 785, 787.* The M.M. Complaint asserts that K.M. and the male student were riding the bus and therefore occupying it at the time the injuries were sustained. (*See e.g., M.M. Complaint* at ¶¶ 12). The alleged injuries resulted from the "use" of the bus because, akin to *Lebanon Coach,* the bus company and school district had a heightened duty to safely transport the minor child, with known special needs, from school to her home. *See Lebanon Coach Co.*, 675 A.2d at 291.

(Doc. No. 91, pp. 28-29.)

### iii.  The Sexual Abuse Exclusion does not apply.

The sexual abuse/molestation exclusion does not apply, because it only applies to negligent supervision claims of an employee when that employee actually committed the alleged sexual abuse/molestation.

The exclusion provides in relevant part:

> This insurance does not apply to bodily injury or property damage arising out of:
>
> (a) the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone of any person; or
> (b) the negligent:
> (i) employment;
> (ii) investigation;
> (iii) supervision; or
> (iv) retention;
>
> of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above; or
>
> (c) the reporting to authorities or failure to report to authorities the alleged, actual or threatened abuse, molestation or sexual contact by anyone of any person.

(Policy, Doc. No. 46-2, p. 90.)  Section (a) appears to be all inclusive, excluding any claims arising from sexual abuse, no matter who committed the act.  Section (b), however, contains a limitation which qualifies section (a), when both are read together.   Section (b) excludes claims for the

negligent employment, investigation, supervision, or retention of anyone . . . whose conduct would be excluded by (a) above."

In this case, the only person whose conduct would be excluded by (a) above would be the minor male student.  In other words, while section (b) would exclude negligent supervision claims against an employer if the employee were the actual offender, section (b) would not exclude negligent supervision claims against an employer where the employee did not commit the sexual abuse/assault, as was the case here.

This interpretation is consistent with the legal notions that different provisions in a contract should be read together, so as to give all the words meaning, and that a general subpart is limited by a more specific subpart, later or earlier in the pertinent exclusion.

Reading both sections (a) and (b) together, consistently, claims are excluded that arise from a sexual assault, as are claims for negligent supervision of individuals who commit a sexual assault, but claims of negligent supervision for individuals who did not commit the sexual assault are not excluded.  This latter scenario is the case here, where Plaintiff asserts negligent supervision claims against Brimar and the District for employees who did not commit the sexual assault and therefore, whose conduct is not excluded by section (a).

Section (a) describes a very broad exclusion, while section (b) provides a more specific exclusion and exception to the exclusion.  It is well settled under Pennsylvania contract law that where a general provision is followed by a more specific provision, the specific provision qualifies or limits the general provision.  See e.g. Metzger v. Clifford Realty Corp., 476 A.2d 1, 6 (Pa. Super. 1984) ("Specific provisions of an instrument will be regarded as qualifying the meaning of broad general terms. Paragraph 5(b) being more specific, it qualified the general language of paragraph 4(b).") (citing In re Alloy Manufacturing Co. Employees Trust, 192 A.2d 394 (Pa. 1963)); See also Musko v. Musko, 697 A.2d 255, 256 (Pa. 1997) ("When specific or exact

provisions seem to conflict with broader or more general terms, the specific provisions are more likely to reflect the intent of the parties than the general provisions."); Clairton Slag, Inc. v. Dep't of Gen. Servs., 2 A.3d 765, 773 (Pa. Commw. 2010) ("specific provisions ordinarily qualify the meaning of general provisions,"); Great American Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 247 (3d Cir. 2008) ("We must also keep in mind that specific provisions ordinarily control more general provisions.")

The District's interpretation is also consistent with the rule against superfluidity that requires that a Court give effect to all the provisions of a contract, and not read one provision to render another provision superfluous. See e.g. Lee v. Sixth Mount Zion Baptist Church of Pittsburg, Civil Action No. 15-1599, 2017 U.S. Dist. LEXIS 133858, at *60-61 (W.D. Pa. Aug. 22, 2017) ("The rule is the principle that the court will not read one provision so as to render another provision of the contract superfluous.") (citing Rcn Corp. v. Paramount Pavilion Grp., LLC., 164 F. App'x 291, 296 (3d Cir. 2006); see also Dubrosky v. Colonial Life & Acc. Ins. Co., 129 F. App'x 691, 693 (3d Cir. 2005) ("This interpretation must be rejected under the cardinal principle that each term of a contract should be given meaning so that no term is superfluous.")) In this case, interpreting section (a) of the exclusion as proposed by National would render section (b) superfluous and meaningless.  The Court must interpret the Policy to give effect to section (b) of the exclusion.

The District maintains that the exclusion at issue here only excludes negligent supervision claims for an employee who committed a sexual molestation/abuse, but does not exclude negligent supervision claims where the employee/driver did not commit the sexual abuse/molestation. Therefore, the exclusion does not apply in this case. As this Court found in its Memorandum Opinion on National's Motion for Judgment on the Pleadings:

> In any event, the exclusion does not eliminate National's duty to defend all potential claims in the underlying action for several compelling reasons. *See*

*Ramara*, 814 F.3d at 673. First, the provision expressly lists the types of negligence claims which are excluded including the insured's "(i) employment; (ii) investigation; (iii) supervision; or (iv) retention, … of anyone … whose conduct would be excluded" because that person engaged in "alleged, actual or threatened abuse, molestation or sexual contact." (Docket No. 46-2 at 90). At most, the exclusion bars a claim for the District's and Brimar's negligent supervision of the male student but the factual allegations asserted against them are much broader, as the Court has already recounted above. *See* § IV.B.1, *supra*. National certainly could have written this provision to exclude all negligence claims against its insured if anyone (e.g., a noninsured third party) engaged in "alleged, actual or threatened abuse, molestation or sexual contact," but it chose language that specifically limited the instances of its insured's negligence to which the exclusion pertains. (Docket No. 46-2 at 90). Again, the law requires that such exclusionary language must be read against the insurance company. *Swarner*, 72 A.3d at 645.

Second, the M.M. Complaint is reasonably read as describing the male student's actions as constituting an assault and battery due to non-sexual contact he initiated against K.M. before the alleged sexual assault took place. (*See M.M. Complaint* at ¶ 27). Third, the assault and battery are also expressed as alternative theories to the alleged sexual assault if the same is not ultimately proven at the forthcoming trial. (*Id.*). Indeed, the underlying complaint contains multiple factors why a sexual assault may not be proven including: the inability of the male student to form the applicable mens rea; the lack of physical evidence due to the delays in reporting the incident and K.M.'s examination at Children's Hospital several days after the event; and, K.M.'s own special needs causing difficulties in reporting and/or testifying as to the incident. (*Id.* at ¶¶ 6; 12; 32; 35; 37-38). Of course, the allegations that the District's and Brimar's negligence led to the male student's assault and battery of K.M. avoid the invoked exclusion entirely.

To conclude, the Court finds that National has failed to meet its burden to demonstrate that an exclusion operates to bar all potential claims asserted against its insured in the underlying action.

(Doc. No. 91, pp. 32-33.)

      **b. Settlement of the Underlying Suit makes it impossible for the Court to make a meaningful determination about indemnity under the Policy and renders the issue of indemnity moot.**

On January 14, 2020, this Court denied National's motion for judgment on the pleadings, and granted judgment on the pleadings in favor of the District and Brimar with respect to National's duty to defend, and the District's status as an insured for purposes of the duty to defend. The Court declined entering a judgment on the pleadings for the duty to indemnify in favor of any of the parties because of the posture of the underlying case. The underlying case had not yet gone to trial so there was no finding of liability upon any of the claims in the Underlying Suit, and no

party had been required to pay money damages which would have triggered the duty to indemnify, if one existed.

In the underlying action at the time of this Court's Order, the parties were preparing for trial, National was providing a defense for Brimar, and the District was providing its own defense. Because of the COVID-19 Pandemic, the parties were unable to complete preparations for trial, and unable to hold trial. Instead, the parties pursued settlement, and the Underlying Suit was settled. Importantly, discovery in the underlying suit was not completed. Expert discovery in the underlying suit was not completed. The parties did not depose the alleged perpetrator. The parties did not depose the student witnesses in the school bus at the time of the incident. The parties did not depose the male "substitute" driver who took over during the regular driver's maternity leave. The parties did not depose the regular driver who went out on maternity leave. The parties did not depose the plaintiff's counselor. All of the above witnesses had information related to the allegations in the complaint in the underlying suit, and their testimony would have presumably been sought by at least one of the parties had the case proceeded to trial. No party in the Underlying Suit filed any motions for summary judgment on any issues. The Court in the Underlying Suit did not make any factual findings relative to the allegations in the Complaint. The Court in the Underlying Suit did not make any legal rulings eliminating any of plaintiff's potential claims in the Complaint.

In the settlement agreement, Plaintiff agreed to dismiss all its claims or potential claims against the District and Brimar. There was no finding of fault in the agreement and no factual findings or recitations of facts of the Underlying Suit. The parties never developed any record nor did the parties narrow any of the legal issues in pursuit of summary judgment or at trial.

The settlement agreement has rendered the declaratory judgment action with respect to indemnity moot, because it is impossible for Brimar or the District to pay damages for which

National would be required to provide indemnity regardless of whether the claim was a covered

claim or non-covered claim.  See Rendell v. Rumsfeld, 484 F.3d 236, 241 (3d Cir. 2007) ("The

central question of all mootness problems is whether changes in circumstances that prevailed at

the beginning of the litigation have forestalled any occasion for meaningful relief.") (citing In re

Surrick, 338 F.3d 224, 230 (3d Cir. 2003)).

      With respect to indemnity, the policy provides in relevant part:

> ### SECTION II - LIABILITY COVERAGE
> A.  Coverage
> We will pay all sums an "insured" legally must pay as damages because of "bodily
> injury" or "property damage" to which this insurance applies, caused by an
> "accident" and resulting from the ownership, maintenance or use of a covered
> "auto"…

(See Proposed Third Amended Complaint p. 13 (Doc. No. 123-1, p. 14.))  The term "damages" is

not defined in the policy.  Even a common sense layperson's interpretation of the phrase "legally

must pay as damages" would be limited to mandatory payments as a result of verdict, trial or other

binding legal proceeding, and not voluntary settlement payments.   Regardless of your definition

of damages, the voluntary settlement payment does not qualify as "sums an "insured" legally must

pay as damages."   Likewise, defense costs are not "sums an "insured" legally must pay as

damages."

      The settlement agreement also legally forecloses the possibility that either the District or

Brimar will be required to pay legal damages.  Any declaration concerning the right to indemnity

would be a hypothetical exercise and not an actual controversy.  There also were no findings with

respect to any of the claims in the Underlying Suit so it is impossible to determine which claims

are covered and which claims are not.  This Court properly declined to enter judgment with respect

to indemnity for exactly this reason.  See e.g. Cincinnati Ins. Companies v. Pestco, Inc., 374 F.

Supp. 2d 451, 465 (W.D. Pa. 2004) ("As a general rule, a court entertaining a declaratory judgment

action in an insurance coverage case should refrain from determining the insurer's duty to

indemnify until the insured is found liable for damages in the underlying action.") (citations omitted.)  Now that it is clear that none of the parties can be responsible to pay legal damages, the claim for indemnification is moot.

This Court previously held as much in its Opinion finding that amendment of the Complaint to add an indemnity claim would be futile, because indemnity cannot be determined given the posture of the case.  This Court explained:

> The Court of Appeals has recognized that "[i]f triggered, the duty to defend also carries 'a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy.'" *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249-50 (3d Cir. 2019) (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997)). "Both duties are at issue until the underlying 'claim is confined to a recovery that the policy does not cover.'" *Id*. However, a decision on the insurer's duty to indemnify may be muddled by a settlement of the underlying action and make it impossible to determine what theories of liability, if any, would have prevailed at trial. *Id*. at n.3 (citing *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 766 (3d Cir. 1985)). This is particularly true if there are multiple claims and parties in the underlying action and there was no fact finding made by the trial court prior to the settlement on which a nuanced coverage determination could be made. *Id*. As the Court of Appeals later clarified, the holding in *Linn* "was based, in part, on the concern that an insurer would be able to settle a suit without an agreement with the insured, and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy." *12th Street Gym, Inc. v. General Star Indem. Co.*, 93 F.3d 1158, 1167 (3d Cir. 1996). In such situations, Pennsylvania law does not permit the insurer to try the underlying case before the coverage decision may be made by the Court and the duty to indemnify follows the duty to defend.  *See also Liberty Mutual Ins. Co. v. Penn National Mut. Casualty Ins. Co.*, 499 F. Supp. 3d 130, 141-42 (W.D. Pa. Nov. 6, 2020) (Hornak, C.J.) ("the two prerequisites for indemnification under the '*Linn* Rule' are: (1) that the nature of the case as being one with multiple parties, multiple theories of liability, and settlement making liability among competing parties impossible to determine and (2) there must be a concern that an insurer could foreclose indemnification by its conduct relative to the underlying lawsuit. When those factors converge, the indemnity obligation follows the duty to defend.").
>
> In this Court's estimation, National has failed to plead sufficient facts in the proposed Third Amended Complaint to state a plausible claim for declaratory judgment asserting that it has no duty to indemnify the Defendants. To reiterate, the Court reviewed the M.M. complaint asserting multiple claims against Brimar and the District as well as the Policy language and determined that National had a duty to defend them. (Docket No. 91). At most, National has now pled that it disagrees with this Court's decision, settled with the M.M. plaintiffs in the underlying action prior to trial, paid for Brimar's defense, and reimbursed the

District for its attorney's fees and defense costs. (Docket No. 125-1). National issued reservation of rights letters in December of 2020 concerning the settlement and February of 2021 with regards to the reimbursement to the District. (*Id.*). Both letters indicate that National reserved the right to challenge this Court's rulings, including through an appeal. (*Id.*). Yet, National has not alleged that the trial court made any factual findings prior to the settlement and it is uncontested that the settlement of the underlying action took place prior to the trial court making any rulings narrowing the scope of the M.M. complaint. (*Id.*). Absent any rulings or factual findings from the trial court in the underlying case, the insurer's pre-trial settlement precludes this Court from undertaking a more nuanced coverage decision than has already been produced. *See Sapa*, 939 F.3d at 250, n.3. Therefore, National's proposed Third Amended Complaint may also be denied due to the futility of the claims.

(Doc. No. 128, pp. 16-17.)

> **c. Even in the unlikely event that the Court determines that there is no coverage for the District under the Policy with respect to indemnity, National is not entitled to reimbursement of defense costs or its voluntary settlement payment in the Underlying Suit.**

On November 6, 2020, the parties in the underlying action participated in mediation with National's coverage counsel also present. National controlled the mediation and negotiated directly with Plaintiff on the amount of settlement. Neither Brimar nor the District were asked for any input on the settlement amount. National offered Plaintiff $150,000, which was later accepted by Plaintiff, to settle the underlying action. National voluntarily paid Plaintiff $150,000 to settle the case. Neither Brimar nor the District were asked by National to contribute to the settlement amount. Neither Brimar nor the District were asked by National to reimburse National for defense costs or the settlement payment. National threatened to renege on the settlement if it was unable to include language in the settlement agreement that it was reserving some hypothetical, nonexistent right to reimbursement of defense costs and the settlement payment. Of course, there is no right to reimbursement of such a voluntary settlement payment either in the law or the insurance policy, and National has pointed to no valid authority for such a reimbursement right. Unilaterally stating that you are reserving some nonexistent right does not create such a right.

This Court entered an order on January 14, 2020 finding that National owed the District a defense in the underlying action.  National did not provide reimbursement of defense costs, nor a defense in the underlying action at that time.  The District produced all invoices of defense costs to date in the underlying action in discovery in this matter on July 17, 2020.  On January 22, 2021, prior to reimbursing the District for any defense costs, National proposed to file a Motion for Leave to Amend its complaint a third time to add, inter alia, claims against the District for reimbursement of defense payments (of which it had paid none) and settlement funds based upon unjust enrichment.  National proposed and the Court ordered National to file its Motion for Leave to Amend by February 12, 2021.  On February 11, 2021, District counsel received a check via overnight Federal Express purporting to be partial payment for the District's defense costs. National filed its Motion for Leave to Amend on February 12, 2021 which was later denied by the Court.

Even if the Court finds that there was no duty to defend or no duty to indemnify the District, National has no viable claim for reimbursement against the District pursuant to the Policy.

The Policy's reimbursement provision provides in relevant part:

> B. If we initially defend an insured ("insured") or pay for insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(See Proposed Third Amended Complaint p. 15 (Doc. No. 123-1, p. 16.))  National did not initially defend nor pay for the District's defense costs under a reservation of rights.  National denied a defense to the District, and did not partially pay for the District's defense costs until a year after

this Court found that they owed a defense to the District.  Therefore, this payment does not qualify for reimbursement under the Policy.

In addition, National has no right to reimbursement of defense costs or the settlement payment pursuant to any equitable theory, because such recovery is not permitted under Pennsylvania Law.

The federal courts of the Third Circuit were originally ahead of the Pennsylvania state courts on the question of whether an insurer who provides a defense pursuant to a reservation of rights has a right to reimbursement of defense costs if a Court later determines that no duty to defend existed.  In Terra Nova Ins. Co. v. 900 Bar, 887 F.2d 1213, 1220 (3d Cir. 1989), in interpreting Pennsylvania law, the United States Court of Appeals for the Third Circuit, in dicta, predicted that the Pennsylvania Supreme Court would follow the minority rule that a declaration declaring that no duty to defend existed would not entitle the insurer to reimbursement of defense costs already incurred, but would only permit the insurer to withdraw from the defense going forward.  See Id. ("Terra Nova's claim for a declaration that it has no duty to defend will be moot if, as we believe, the Pennsylvania Supreme Court would preclude an insurer who provides a defense under reservation of rights from recovering the cost of that defense from its insured if it is later determined that there is no coverage.")

The United States Court of Appeals for the Third Circuit later explained its reasoning after adopting the rule.

In Linn, Pacific Indemnity brought a declaratory judgment action to determine which of several insurers had a duty to defend and indemnify Dr. Linn in suits against him to recover for injuries or death suffered by persons who had read and followed his diet book. Several of the suits against Dr. Linn were settled by the insurance companies before sufficient facts were developed to determine the basis for Dr. Linn's liability. Consequently, it was impossible to determine whether the policies provided coverage for the settlement amount. Because we could not determine which of the injured bookreaders claims would have prevailed, we held "the duty to defend carries with it the conditional obligation to indemnify until it

becomes clear that there can be no recovery within the insuring clause." [In <u>Pac. Indem. Co. v. Linn</u>, 766 F.2d 754, 766 (3d Cir. 1985)], we observed:

> to reach the opposite conclusion could conceivably result in an insured never being indemnified in a suit that its insurer settles where that insurer defends under a reservation of rights. In such a situation, it would behoove the insurer to reserve its rights and to settle the suit to avoid both the costs of litigation and, at the same time, the costs of indemnification.
>
> *Id.* at 766. <u>Thus our holding was based, in part, on the concern that an insurer would be able to settle a suit without an agreement with the insured, and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy.</u>

<u>12th St. Gym v. Gen. Star Indem. Co.</u>, 93 F.3d 1158, 1166-67 (3d Cir. 1996) (emphasis added).

This concern by the Court of Appeals will be realized in this case if the insurer is permitted to move forward on its indemnity claim and seek reimbursement of defense costs under a theory of unjust enrichment. The insurer settled the Underlying Suit and is now trying to claim that the jury would have found the claims in the Underlying Suit were not covered by the policy. This Court should not permit this.

The Pennsylvania Supreme Court later adopted the minority rule as the Court of Appeals predicted. <u>See</u> <u>Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.</u>, 2 A.3d 526, 545 (Pa. 2010):

> The doctrine of unjust enrichment contemplates that "[a] person who has been unjustly enriched at the expense of another must make restitution to the other." <u>Wilson Area School Dist. v. Skepton</u>, 586 Pa. 513, 895 A.2d 1250, 1254 (Pa. 2006) (opinion announcing the judgment of the court). <u>See also Binns v. First National Bank of California, Pennsylvania</u>, 367 Pa. 359, 80 A.2d 768, 775 (Pa. 1951) (quoting Restatement (First) of Restitution § 1 (1937)).
>
> Insured was not unjustly enriched by Royal's payment of defense costs. Royal had not only the duty to defend, but the right to defend under the insurance contract. This arrangement benefited both parties. The duty to defend benefited Insured to protect it from the cost of defense, while the right to defend allowed Royal to control the defense to protect itself against potential indemnity exposure. Although Royal argues that it did not control the defense, it is apparent that Royal selected the firm to represent Insured, and pragmatically made it very difficult for Insured to retain independent counsel.

<u>Id.</u> The Court concluded, "We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even

2116234.1

where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters. Accordingly, we affirm the order of the Superior Court." Id. at 546.

In this case, National is attempting to recover through an equitable theory what it could not recover by the terms of the Policy.  Specifically, the settlement payment is not covered under the reimbursement provision, and the payment for the District's defense costs is not covered because National did not initially provide a defense to the District under a reservation of rights.  Under such circumstances, National cannot recover reimbursement of defense or settlement costs based upon any equitable theory of recovery.

## V.    **Conclusion**

For the reasons set forth above, the District respectfully requests that this Honorable Court deny Plaintiff's Motion for Summary Judgment and grant Summary Judgement in favor of Defendants that the District is an additional insured under the insurance policy, and that National owed a defense to Brimar and the District in the Underlying Suit.  In addition, the Court should find that the injury in the Underlying Suit was a result of the ownership or use of the van/bus, and the sexual abuse/molestation exclusion does not apply.  The question of indemnity cannot be determined and is moot, and even if the Court finds no coverage under the Policy, National is not entitled to reimbursement by the District.

Date:  April 6, 2022                                    Respectfully submitted,

GRB LAW

BY: /s/ Matthew C. Fergus

Jaime N. Doherty, Esquire
Pa. I.D. #89402
Matthew C. Fergus, Esquire
Pa. I.D. # 205506

525 William Penn Place, Suite 3110
Pittsburgh, Pennsylvania 15219
412.281.0587

22

*Counsel for Intervenor Defendant,*
*Pittsburgh Public School District*

23