# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL LIABILITY & FIRE  )
INSURANCE COMPANY,  )
     )     Civil Action No. 2:18-cv-1129
     Plaintiff,  )
     )
vs.  )
     )
BRIMAR TRANSIT INC.,  )
     )
     Defendant,  )
     )
vs.  )
     )
PITTSBURGH PUBLIC SCHOOL  )
DISTRICT,  )
     )
     Intervenor Defendant.  )

## DEFENDANT, PITTSBURGH PUBLIC SCHOOL DISTRICT'S, RESPONSE TO PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS

1.    Defendant Brimar Transit, Inc. ("Brimar") is a transportation company engaged in the operation of school buses. Second Amended Complaint, ECF No. 46 ("SAC"), at ¶4.

**Response**: **Admitted.**

2.    Intervenor-Defendant Public School District of Pittsburgh (hereinafter, "School District") is a governmental entity located at 341 S. Bellfield Avenue, Pittsburgh, PA 15213, that provides educational services. SAC at ¶¶5-6.

**Response**: **Admitted.**

3.    Brimar and School District were sued in a matter captioned, *M.M., parent and natural guardian of K.M., a minor v. Pittsburgh School Dist. and Brimar Transit, Inc.*, in the Court of Common Pleas of Allegheny County, Pennsylvania (the "Underlying Action"). Enerson Decl., ¶ 3, Ex. A.

**Response**: **Admitted.**

4.    On December 7, 2018, Plaintiffs filed a Third Amended Complaint (the "Underlying

Complaint") against Brimar and the School District (collectively, the "Defendants") in the Underlying Action. Enerson Decl., Ex. A.

**Response**: **Admitted.**

5.      In April 2016, Brimar contracted with the School District to transport students to and from school. Enerson Decl., Ex. A, at ¶¶ 11 and Exhibit A to the Underlying Complaint (contract between Brimar and School District).

**Response**: **Admitted in part. Brimar agreed to safely transport students.**

6.      The Underlying Action is based upon an April 29, 2016 sexual assault that occurred on a school bus operated by Brimar (the "April 29 sexual assault"). Enerson Decl., Ex. A, at ¶¶ 14, 27-29, 46.

**Response**: **Admitted in part and contested in part.  It is admitted that the Underlying Complaint alleged a sexual assault.  It is denied that that was the only claim in the Underlying Complaint. The Underlying Complaint included various allegations including negligence claims, breach of contract claims, and vicarious liability claims against the District and Brimar.**

7.      Underlying Plaintiff K.M. is a disabled minor female who attended Pittsburgh Classical Academy, which is administered by the School District. Enerson Decl., Ex. A, at ¶¶ 2, 5-6.

**Response**: **Admitted.**

8.      A male student (hereinafter "student perpetrator") sexually assaulted K.M. while on a school bus that Brimar operated. The student perpetrator also attended Pittsburgh Classical Academy and was disabled. *Id.* ¶¶ 13, 14, 27-29, 46-49.

**Response**: **Admitted in part and contested in part.  It is admitted that the Underlying Complaint alleged a sexual assault.  It is denied that that was the only claim in the Underlying Complaint. The Underlying Complaint included various allegations including negligence claims, breach of contract claims, and vicarious liability claims against the District and Brimar.**

9.      The bus was a small van-like bus approximately 11 feet long with the capacity to

transport about nine student passengers. Richardson Affidavit, ¶ 9, Ex. B, Transcript of Deposition

of Marciano Nesbeth ("Nesbeth Dep. Tr.") at 215:20-22; 279:20-22; Richardson Affidavit, ¶ 9, Ex.

C, Transcript of Deposition of Theodore R. Vasser, III at 57:10-11; 57:16-20; 98:10-15; 98:25 to

99:10.

**Response**: **Admitted.**

10.     M.M. is the parent and legal guardian of K.M. Underlying Complaint, Enerson Decl.,

Ex. A at ¶ 1.

**Response**: **Admitted.**

11.     K.M. alleges that the April 29 sexual assault caused K.M. to suffer from anxiety and

emotional distress, including experiencing fear and distress of encountering the student perpetrator.

Richardson Affidavit, ¶ 10, Ex. J, Plaintiffs' Answer to Interrogatory No. 18.

**Response**: **Admitted in part and Contested as stated, but immaterial.  It is admitted that the**
**Underlying Complaint alleged a sexual assault.  It is denied that that was the only claim or cause**
**of the injuries in the Underlying Complaint.  The Underlying Complaint included various**
**allegations which caused bodily injury including negligence claims, breach of contract claims,**
**and vicarious liability claims against the District and Brimar.  To the extent this statement is**
**relying upon alleged facts in the Underlying Suit which were outside the four corners of the**
**Underlying Complaint, those allegations are immaterial to the determination on coverage.**

12.     On January 27, 2016, the student perpetrator inappropriately fondled K.M.'s breasts

while he and K.M. were in gym class equipment room (the "gym class sexual assault"). Richardson

Affidavit, ¶ 10, Ex. J, Plaintiffs' Answers to Interrogatory Nos. 27, 28, 29; Richardson Affidavit, ¶ 9,

Ex. D, Transcript of the Deposition of Candice Miller ("Miller Dep. Tr.") at 50:1 to 52:10.

**Response**: **Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a**
**characterization of the gym class incident as an inappropriate "fondling" or a "sexual assault."**
**These sources are also incomplete and inappropriate for summary judgment in the Underlying**
**Suit, because they are missing, inter alia, any testimony from the alleged perpetrator. To the**

**extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

13.     Before the gym class sexual assault and April 29 sexual assault, paraprofessional/classroom assistant Michelle Stanton had to separate K.M. and the student perpetrator on multiple occasions during school, including during lunch in the cafeteria, because K.M. and the student perpetrator were inappropriately close. Richardson Affidavit, ¶ 9, Ex. E Transcript of the Deposition of Michelle Stanton ("Stanton Dep. Tr.") at 16:19 to 20:4.

**Response: Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

14.     Prior to the gym class sexual assault and April 29 sexual assault, all of the students, including K.M. and the student perpetrator, had been instructed by paraprofessional/classroom assistant Michelle Stanton that only one person was permitted to be in the gym equipment room at one time. Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 23:20 to 24:24.

**Response: Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

15.     Michelle Stanton instructed the students that only one person could be in the gym equipment room at a time because of prior incidents that had occurred, including the incident involving K.M. and the male perpetrator in the cafeteria during lunch, and to make sure that no student would be touching another student or inappropriately in another student's space. Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 24:1 to 25:15.

**Response: Contested as stated but immaterial.  The source cited by Plaintiff does not support**

**the contention that there was any additional specific incident in the cafeteria between minor**

**plaintiff and the male perpetrator outside of any incidents that may occur between any students**

**who are "teenagers" and "have hormones." To the extent this statement is relying upon alleged**

**facts in the Underlying Suit which were outside the four corners of the Underlying Complaint,**

**those allegations are immaterial to the determination on coverage.**

16.     Michelle Stanton testified at her deposition as follows:

Q. You said prior incidents had prompted you to give that instruction. Did any of those prior incidents involve the male student?

A. The prior incident was the cafeteria, which is why it was very important to, okay, we need to make sure we're pro-active with these kind of things because they are teenagers and you guys have hormones, so it was constant to keep your eye out for touching, inappropriate touching. And that was just because we were in the middle school, and that was consistent all of the time.  But because they are our kids with special ed and those kind of things, we kind of will reiterate that kind of stuff so that way it was in the front of your head type of thing.

Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 24:25 to 25:15.

**Response**: **Admitted that this is an accurate transcription of a portion of the deposition**

**testimony.  Contested that it is material. To the extent this statement is relying upon alleged**

**facts in the Underlying Suit which were outside the four corners of the Underlying Complaint,**

**those allegations are immaterial to the determination on coverage.**

17.     On January 27, 2016, K.M. informed Michelle Stanton that the student perpetrator

touched her breast. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 50:20 to 51:11; 51:20-24; 52:5-

10.

**Response**: **Admitted, but immaterial. To the extent this statement is relying upon alleged facts**

**in the Underlying Suit which were outside the four corners of the Underlying Complaint, those**

**allegations are immaterial to the determination on coverage.**

18.     The Michelle Stanton then informed teacher Candice Miller of the gym class sexual

assault. *Id.* at 50:20 to 51:11; 51:20-24; 52:5-10.

**Response**: **Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a**

**characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

19.     Upon learning of the gym class sexual assault, Candice Miller spoke with K.M. and asked her what happened. *Id.*at 52:17 to 54:2; 55:4-15.

**Response**: **Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

20.     K.M. told Candice Miller that the student perpetrator touched her breast while they were in the gym equipment room. *Id.* at 53:18 to 54:15.

**Response**: **Admitted but immaterial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

21.     The School District reported the gym class sexual assault to M.M. Richardson Affidavit, ¶ 10, Ex. J, Plaintiffs' Answer to Interrogatory Nos. 27 and 29.

**Response**: **Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

22.     Candice Miller called M.M. on January 27, 2016, and left M.M. a voicemail message notifying M.M. about the gym class sexual assault. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 56:7-18; 57:17-24.

**Response**: **Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the**

**Underlying Complaint, those allegations are immaterial to the determination on coverage.**

23.     Before she called M.M., Candice Miller spoke with Principal Valerie Merlo concerning the gym class sexual assault. *Id.* at 56:10-13; 57:17-24; 153:20 to 154:12.

**Response**: **Contested as stated, but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

24.     On January 28, 2016, Candice Miller received an email from M.M. *Id.* at 57:17-24.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

25.     After M.M.'s January 28, 2016 email referred to K.M.'s breast being grabbed by the student perpetrator on January 27, 2016. Richardson Affidavit, ¶ 9, Ex. F, Transcript of the Deposition of Valerie Merlo ("Merlo Dep. Tr.") 94:18 to 95:1-8; 97:1-13; 121:7-11.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

26.     In M.M.'s January 28, 2016 email, M.M. wrote that K.M. and M.M. did not feel comfortable with the student perpetrator being in gym class with K.M. or with the student perpetrator riding the same bus as K.M. to and from school and asked if the student perpetrator could be assigned to another vehicle. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 61:5-11: 61:13-17; 108:4-19; 108:20 to 109:3; Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 98:2-5; 99:20.

**Response**: **Contested as stated but immaterial.  M.M. did not refer to the male student as the "perpetrator." To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

27.     After receiving M.M.'s email on January 28, 2016, Candice Miller went to speak with Principal Valerie Merlo. Richardson Affidavit, Ex. D, Miller Dep. Tr. 58:5-9; 59:1-5.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

28.     MASD At the meeting between Candice Miller and Valerie Merlo on January 28, 2016, a plan was developed to keep the student perpetrator and K.M. from any close contact, which included keeping them separated during breakfast, lunch or related arts classes, and on their school bus (the "Plan"). Richardson Affidavit, Ex. D, Miller Dep. Tr. 58:10 to 60:15; 106-10-18; Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 42:14 to 43:8; 44:12-17; 74:14 to 75:17; Richardson Affidavit, ¶ 9, Ex. G, Transcript of the Deposition of Kayla Reynolds ("Reynolds Dep. Tr.") at 19:11 to 21:22.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

29.     The Plan involved having school personnel in charge at the relevant times, including the classroom assistants/paraprofessionals, keep K.M. and the student perpetrator separated during school, including during breakfast, lunch, recess, and related arts class. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 59:6 to 60:3; 154:14 to 155:19.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

30.     With regard to the bus, the Plan developed by Candice Miller and Valerie Merlo was that K.M. and the student perpetrator would be assigned separated seats. K.M. was to be assigned a seat on the school bus located directly behind the driver and the student perpetrator was to be assigned a seat in the very last row of the bus. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 60:4-15;

Richardson Affidavit, Ex. E, Stanton Tr. at 35:22 to 37:2.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

31.     Candice Miller called M.M. on January 28, 2016, to discuss the Plan. Candice Miller specifically informed M.M. during this call that K.M. would be assigned to a seat directly behind the bus driver and the student perpetrator would be assigned a seat in the last row of the bus. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 62:1-13; 156:12-16; Richardson Affidavit, Ex. J, Plaintiffs' Answers to Interrogatory Nos. 31, 42.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

32.     An agreement was reached between M.M. and the School District after the gym class sexual assault that the student perpetrator would be separated from K.M. in accordance with the Plan. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 115:2-19; 121:17-25; 123:15-19; 135:4- 10; Richardson Affidavit, Ex. J, Plaintiffs' Answer to Interrogatory No. 27.

**Response**: **Contested as stated but immaterial.  It is contested that there was any legally enforceable agreement with the "School District."  None of the sources cited by Plaintiff support any agreement entered into by the School District through an affirmative vote of the School Board at a previously announced public meeting as is required by Pennsylvania law. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

33.     At school dismissal time on January 28, 2016, Candice Miller explained to K.M. and the student perpetrator's regular bus driver, Shaniece Johnson, that K.M. should be seated directly behind the driver and that the student perpetrator should be seated in the last row of the bus.

Richardson Affidavit, Ex. D, Miller Dep. Tr. at 64:8 to 65:24; 118:11-19; 156:6-20; Merlo Dep. Tr.

at 49:19 to 50:18; Richardson Affidavit, Ex. J, Plaintiffs' Answer to Interrogatory Nos. 27, 30, 31,

42; Stanton Dep. Tr. at 89:13 to 90:11.

**Response**: **Admitted but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

34.    Candice Miller told the regular bus driver Shaniece Johnson that the reason for seating

K.M. and the student perpetrator separately was because the school "wanted to make sure that there

was no touching occurring between male student and K.M. and that there was a situation that occurred

that led to us to make this decision." Richardson Affidavit, Ex. D, Miller Dep. Tr. at 65:14-24.

**Response**: **Admitted but immaterial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

35.    Shaniece Johnson told Candice Miller that the separated seating arrangement would

be followed. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 116:23 to 117:20; 125:18 to 126:13;

Richardson Affidavit, Ex. J, Plaintiffs' Answers to Interrogatory Nos. 27, 30, 31, 42.

**Response**: **Admitted but immaterial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

36.    Paraprofessional Kayla Reynolds also told Shaniece Johnson that K.M. and the

student perpetrator were to be separated on the bus. Richardson Affidavit, Ex. G, Reynolds Dep. Tr.

at 10:11-20; 22:6 to 23:18.

**Response**: **Admitted but immaterial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

37.    After the gym class sexual assault, the School District informed M.M. that an

agreement was reached between the School District and Brimar and that K.M. and the student perpetrator would be kept separated on the bus. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 123:15-19.

**Response: Contested as stated but immaterial.  It is contested that there was any legally enforceable agreement with the "School District."  None of the sources cited by Plaintiff support any agreement entered into by the School District through an affirmative vote of the School Board at a previously announced public meeting as is required by Pennsylvania law. None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

38.     After the gym class sexual assault, the student perpetrator continued to demonstrate infatuation with K.M. and his interest in K.M. and attempts to touch K.M. inappropriately continued on the bus. Richardson Affidavit, Ex. J, Plaintiffs' Answer to Interrogatory No. 42; Richardson Affidavit, Ex. D, Miller Dep. Tr. at 85:18 to 89:7; 180:15 to 181:10; Richardson Affidavit, ¶ 11, Ex. K, KM PPS 000001 – 000003.

**Response: Contested as stated but immaterial.  None of the sources cited by Plaintiff support a characterization of the gym class incident as a "sexual assault."  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

39.     The agreement to keep K.M. and the student perpetrator separated on the bus in accordance with the Plan was followed for a period of time by Shaniece Johnson and by a substitute male driver who drove the bus after Shaniece Johnson went out on maternity leave. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 123:20 to 124:15; Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 118:9 to 119:13.

**Response: Admitted, but immaterial. To the extent this statement is relying upon alleged facts**

in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.

40.     On Friday, April 29, 2016, neither Shaniece Johnson nor the substitute male driver was driving the bus. Instead, a substitute female driver was driving the bus. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 124:7-20; Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 138:20 to 140:20; Richardson Affidavit, Ex. G, Reynolds Dep. Tr. at 24:8-17.

**Response**: **Admitted, but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

41.     On Friday, April 29, 2016, the agreement to keep K.M. and the student perpetrator separated on the bus was not adhered to. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 116:9- 17; 125:3-17.

**Response**: **Contested as stated but immaterial.  It is contested that there was any legally enforceable agreement with the "School District."  None of the sources cited by Plaintiff support any agreement entered into by the School District through an affirmative vote of the School Board at a previously announced public meeting as is required by Pennsylvania law. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

42.     On Friday, April 29, 2016, the substitute bus driver did not keep K.M. and the student perpetrator separated and this resulted in the sexual assault occurring. Richardson Affidavit, Ex. J, Plaintiffs' Answer to Interrogatory No. 42.

**Response**:  **Admitted in part and Contested in part but immaterial.  It is admitted that the substitute bus driver did not keep K.M. and the male student separated.  It is denied that this allegation, was the only allegation in the Underlying Complaint of the cause of Plaintiff's injuries.  The Underlying Complaint contained numerous additional allegations including**

**negligence by the District and Brimar in training and supervising their employees as well as injuries caused by an assault or battery that was not a sexual assault.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

43.     At approximately 4:30 p.m. on April 29, 2016, Kayla Reynolds called Candice Miller and told her that she was behind K.M.'s school bus and saw that K.M. was sitting in the back seat of the bus with the student perpetrator. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 77:25 to 79:3; 157:21 to 158:2; 158:18-22; 172:5-18; 176:2-10.

**Response**: **Admitted but immaterial to the coverage issue.**

44.     The following Monday, May 2, 2016, Candice Miller spoke with K.M. concerning K.M. not being in her assigned seat on April 29, 2016. During this conversation, K.M. became upset and informed Candice Miller that the student perpetrator told her to come to the back of the bus, and that her pants and the student perpetrator's pants were down, and something was put in her butt, which she believed to be a finger. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 80:9 to 82:2; 159:6-13; 178:7-11; Richardson Affidavit, ¶ 9, Ex. H, Transcript of the Deposition of Melissa Ringold ("Ringold Dep. Tr.") at 25:7 to 26:17; Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 105:11 to 106:14.

**Response**: **Admitted, but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

45.     K.M. stated that the student perpetrator told her to pull her pants down, that she said kept saying "no," and that she asked him to stop. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 82:18 to 83:11; Richardson Affidavit, Ex. F, Ringold Dep. Tr. at 26:15-17.

**Response**: **Admitted, but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those**

allegations are immaterial to the determination on coverage.

46.     Candice Miller testified at deposition that what the student perpetrator did to K.M. on

April 29, 2016 was a sexual assault. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 22-25.

**Response**: **Admitted, but immaterial. To the extent this statement is relying upon alleged facts**

**in the Underlying Suit which were outside the four corners of the Underlying Complaint, those**

**allegations are immaterial to the determination on coverage.**

47.     During a conversation with K.M. on Monday, May 2, 2016, Candice Miller wrote

down K.M.'s statements verbatim. K.M. stated as follows:

> On Friday when we were going home [REDACTED] touched me. he
> tried to hug me. I pushed him off of me. I hit him in the back. Then
> [REDACTED] started talking to [REDACTED] about me and him in
> bed together. I asked him what he was talking about. Then I hit him
> for talking about me inappropriate. Then he told me to lay on him. I
> said no. then he said please. I said no. Then he forced me to lay on
> him. He told me to pull my pants down. And he pulled his pants down
> too. Then he stuck his finger or something else in my butt. And I
> pushed him off of the seat. When I was getting off of the bus, he
> slapped my butt and said hey. Then I hit him back in the hand hard.
>
> On Thursday or Tuesday last week when I was sitting on the bus. He
> told me to lay down on the space on the bus. I said no. Then he
> touched my leg. I kicked him. Then I asked my frieds [*sic*] to tell
> [REDACTED] to stop. Then he wanted me to kiss him. So I hit him
> in the elbow. Then when I was almost home, he said bye in a funny
> voice.
>
> One more time, I was watching videos w/ [REDACTED],
> [REDACTED], and [REDACTED]. Then [REDACTED] tried to
> touch my waist. I pushed him towards the window.

Richardson Affidavit, Ex. D, Miller Dep. Tr. at 85:18 to 89:7; 180:15 to 181:10; Richardson

Affidavit, Ex. K, KM PPS 000001 – 000003.

**Response**: **Contested as inadmissible hearsay, but immaterial. To the extent this statement is**

**relying upon alleged facts in the Underlying Suit which were outside the four corners of the**

**Underlying Complaint, those allegations are immaterial to the determination on coverage.**

48.    Teacher Melissa Ringold spoke with the student perpetrator on May 2, 2016 and the student perpetrator confirmed the factual statements made by K.M. concerning the April 29 sexual assault. Richardson Affidavit, Ex. H, Ringold Dep. Tr. at 28:5 to 30:1.

**<u>Response</u>: Contested as inadmissible hearsay, but immaterial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

49.    The student perpetrator admitted that he urged K.M. to pull down her pants and her underwear; that he pulled down his own pants and underwear; that K.M. was sitting on his lap; and that he "put his finger in her." Richardson Affidavit, Ex. H, Ringold Dep. Tr. at 48:5 to 49:22; Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 115:1 to 117:6.

**<u>Response</u>: Contested as inadmissible hearsay, but immaterial. In addition, the male student's deposition was not taken.  It is presumed that the male student would have testified at the trial in the Underlying Suit had the suit gone to trial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

50.    Candice Miller spoke with another male student after the April 29 sexual assault. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 83:21-24.

**<u>Response</u>: Admitted, but immaterial.**

51.    This other male student told Candice Miller that K.M. moved to the back of the bus with the student perpetrator and that K.M. was hitting the student perpetrator and telling him to stop; that he (the other male student) also told the student perpetrator to stop; and that the student perpetrator would not stop. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 83:25 to 84:10; Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 116:20 to 117:6.

**<u>Response</u>: Contested as inadmissible hearsay, but immaterial. In addition, the other male student's deposition was not taken.  It is presumed that the other male student would have**

**testified at the trial in the Underlying Suit had the suit gone to trial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

52.     The other male student also told Candice Miller that he saw the student perpetrator touching K.M.'s breast. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 84:11-15.

**Response**: **Contested as inadmissible hearsay, but immaterial.  In addition, the other male student's deposition was not taken.  It is unknown whether the other male student would have testified at the trial in the Underlying Suit had the suit gone to trial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

53.     According On May 2, 2016, Melissa Ringold also asked the other male student to write down a statement of what happened on the bus on April 29, 2016, and the other male student independently wrote as follows:



Richardson Affidavit, Ex. H, Ringold Dep. Tr. at 31:17 to 32:10; 33:9-21; 53:3 to 56:23; Richardson Affidavit, Ex. K, KM PPS 000004.

**Response**: **Contested as inadmissible hearsay, but immaterial.  In addition, the other male student's deposition was not taken.  It is unknown whether the other male student would have testified at the trial in the Underlying Suit had the suit gone to trial.  To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the**

**Underlying Complaint, those allegations are immaterial to the determination on coverage.**

54.    The other male student wrote on May 2, 2016 that the student perpetrator touched K.M.'s boobs, that the K.M. and the student perpetrator's pants were down, and that K.M. was saying "no." Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 134:24 to 135:18.

**Response**: **Contested as inadmissible hearsay, but immaterial. In addition, the other male student's deposition was not taken. It is unknown whether the other male student would have testified at the trial in the Underlying Suit had the suit gone to trial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

55.    The other male student was interviewed on a later date by a therapist and stated that he had seen the student perpetrator touch K.M.'s breasts on several occasions on the bus prior to April 29, 2016. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 92:7 to 93:8; 141:8 to 143:4; Richardson Affidavit, ¶ 9, Ex. I, Deposition transcript of Justin Drexler ("Drexler Dep. Tr.") at 71:21 to 73:4.

**Response**: **Contested as inadmissible hearsay, but immaterial. In addition, the other male student's deposition was not taken. It is unknown whether the other male student would have testified at the trial in the Underlying Suit had the suit gone to trial. To the extent this statement is relying upon alleged facts in the Underlying Suit which were outside the four corners of the Underlying Complaint, those allegations are immaterial to the determination on coverage.**

56.    Valerie Merlo reported the April 29 sexual assault to the police and submitted a ChildLine Support Report. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 85:2-14.

**Response**: **Admitted.**

57.    On May 2, 2016, Valerie Merlo telephoned the owner of Brimar, Marciano Nesbeth, and informed him that a student had molested another student on the bus on April 29, 2016. Richardson Affidavit, Ex. B, Nesbeth Dep. Tr. at 65:17 to 66:15; 68:18-24.

**Response**: **Admitted, but immaterial.**

58.    After the April 29, 2016 sexual assault, K.M. and the student perpetrator were

completely separated by the School District. The School District arranged for a separate bus for the student perpetrator. The student perpetrator also did not attend to the same related arts classes, recess, or other activities as K.M., and K.M. and the student perpetrator did not attend the same breakfast and lunch. Richardson Affidavit, Ex. D, Miller Dep. Tr. at 93:10 to 94:3; Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 58:2-12; Richardson Affidavit, Ex. F, Merlo Dep. Tr. at 69:12 to 70:10; Richardson Affidavit, Ex. I, Drexler Dep. Tr. 77:13 to 78:16.

**Response**: **Admitted, but immaterial.**

59.      After the April 29, 2016 sexual assault, K.M. would become upset upon hearing the student perpetrator's name and would tell the classroom assistant/paraprofessional that somebody has said the student perpetrator's name. Richardson Affidavit, Ex. E, Stanton Dep. Tr. at 92:14-22.

**Response**: **Admitted but immaterial.**

60.      The Underlying Complaint, *inter alia,* alleged that:

> 6. K.M. was diagnosed with disabilities and the Defendant School District is aware of these disabilities and her needs. The Defendants had a duty of care to all students, including K.M., entrusted in their care at school and/or during transportation to and from school. The Defendants specifically owed a duty to K.M. and breached said duties of care as described herein. The Pennsylvania Department of Transportation publishes guidelines for school bus drivers. The Pennsylvania School Bus Drivers Manual, as published by the department of Transportation, recognizes certain duties that are owed to students with disabilities and/or special needs. These duties would apply to both K.M. and the male student described herein.
>
> *      *      *
>
> 10. At all times relevant hereto the Defendants had a duty and obligation to provide a safe environment for students, including K.M., and this included during the time K.M. was transported to and from school.
>
> *      *      *
>
> 12.      K.M. was assigned transportation in which the Defendant Brimar would transport K.M. home from school. The transportation vehicle (referred to herein as "the bus" and/or "the vehicle") was not a full-size bus, but a smaller vehicle and, on average, approximately seven (7) students would be on the vehicle each day. M.M. was notified and assured of the agreement that steps would be taken to

protect her daughter and prevent the male student from sitting next to her on the school bus. The school district had a duty to provide transportation for K.M. and Brimar had a duty to provide safe transportation and both Defendants breached this duty. M.M. detrimentally relied on the assurances of the school district that the Defendants would adhere to this agreement. M.M. detrimentally relied on these assurances and such reliance forms the consideration of the agreement K.M. would continue to ride the bus. This consideration avoided the school district and/or Brimar from having to provide alternative transportation. The consideration between the school district and Brimar is established as a result of alternative transportation not having to be provided so long as the agreement was adhered to. M.M. relied on the agreement of the school district and Brimar that the male student would be separated from K.M. As a result of this reasonable reliance and assurance, M.M. refrained from further action as a result of the prior sexual assault in gym class.

*  *  *

13. One of the students who was assigned to the same bus  as K.M. was a male student who also had disabilities and behavioral problems (referenced herein as "the mail student").

*  *  *

15. Prior to the incident that occurred on April 29, 2016, both   the Defendant Pittsburgh Public School District and the Defendant Brimar were aware of issues with and inappropriate behavior demonstrated by the male student toward K.M. This behavior originally occurred earlier in 2016. At that time, K.M. and the male student were in the same room for a physical education (gym) class. K.M. was instructed to put balls away after they were used in the physical education class. While K.M. was putting the balls away, the male student approached her and subjected her to a sexual assault by grabbing her breasts. The incident was reported to the school principal, K.M.'s teacher and the other teachers. As a result of this incident, the Defendant Brimar was notified that K.M. and the male student should be separated on the school bus. M.M. relied on this agreement and understood K.M. and the male student would be separated.

16. From and after the time of the incident in gym class, the male student was infatuated with K.M. and continued to demonstrate inappropriate behavior toward K.M. The Defendants knew or, in the exercise of reasonable diligence, should have known of this behavior. The Defendants also knew or should have known the male student was a threat to K.M. and/or a threat to engage in continued sexual assaults.

17. K.M. and the male student were separated as a result of the original incident with the male student and his continuing to exert inappropriate behavior and comments towards K.M. …

&ast;  &ast;  &ast;

23. The Defendant School District knew or should have known to keep the students separate as a result of prior incidents described above and instead placed these students on and continued to have them ride the same vehicle.

&ast;  &ast;  &ast;

25. … [O]nce the sexual assault began, the driver breached her duties to the students on the vehicle by failing to be aware of what was going on or to respond to the students as the incident occurred, which allowed the assault to both occur and to continue.

&ast;  &ast;  &ast;

27. During the bus trip home on April 29, 2016, the male student pinned K.M. down on the seat and was on top of K.M. At that time, she yelled out for him to stop and the bus driver did not take any action to stop the incident from occurring or to separate the students. The driver was negligent in failing to be attentive and/or respond and this allowed the assault to occur and continue.

28. During this time period, the other students on the bus were yelling out to the bus driver, who ignored the cries/yells of the other students. Sufficient time went by while K.M. and the male student were next to each other and this allowed the male student to continue with the sexual assault as a result of the driver's negligence.

29. During this time period, the pants of both K.M. and the male student were down. During this time period, K.M. was penetrated from behind by the male student. In spite of the vehicle not being large and the bus driver obviously being able to hear and/or see what was going on if the bus driver had been paying attention, the driver took no action to stop or prevent the assault.

30. The incident in question was allowed to occur as a result of the Defendants breaching their agreement and procedure of separating these two (2) students. The incident was further allowed to occur as a result of the bus driver ignoring the students and failing to pay attention to her surroundings that a sexual assault was occurring in proximity to her.

31. In spite of the incident occurring on a Friday afternoon, M.M., the mother of K.M., was not informed of the incident until the following school week. This prevented K.M. from being seen at Children's Hospital on the day of the incident.

&ast;  &ast;  &ast;

39. K.M. described the incident in question in detail to medical providers at Children's Hospital of Pittsburgh. This description

confirmed penetration and a sexual assault. The Children's Hospital records further confirm a report of not only penetration but kissing of her chest by the 12 year-old male student.

\*       \*       \*

41. As a direct and proximate result of the sexual assault as described herein, K.M. has experienced great emotional distress and is at an increased risk for emotional problems that are associated with children who have suffered a sexual assault.

\*       \*       \*

43. On information and belief, the School District was aware of the history between K.M. and the male student and had every opportunity for a monitor to be on the van/bus. The School District and Brimar could have prevented the sexual assault promptly, at the very least, by following the steps/agreement they originally carried out in keeping K.M. and the male student separated.

\*       \*       \*

45.     Given the disabilities of the students, as described herein, the Defendants knew or should have known of the duty of care these students were entitled to and also knew or should have known of the obligation to provide a safe and supervised environment for their students. The Defendants have breached these obligations and duties and said breach has resulted in the damages set forth herein.

46.     Following the incident in question, the School District arranged for statements and K.M. provided a statement shortly after the incident which confirmed that the male student attempted to touch her and hug her and that K.M. pushed the male student off of her. The statement also indicated that another student started to talk about K.M. being in bed with the male student, and K.M. lashed out and struck the student for talking inappropriately. The male student then told K.M. to lay on him and she said no. He then said, "please" and she again said "no". At that point, the male student forced K.M. to lay on him. The male student pulled down his pants and told K.M. to pull down her pants. K.M. then felt penetration and pushed the male student off the seat. As K.M. was getting off the bus, the male student then slapped her in the rear.

47.     K.M. also reported an incident during the prior week when she was seated on the bus and the male student told her to lay down and touched her leg. The male student wanted to kiss K.M. and she resisted. She also reported an incident when the male student touched her waist.

48.     The male student also provided a written statement to the school on or about May 2, 2016. The male student admitted that he kissed K.M., that he pulled his pants down, that K.M. pulled her pants down and that he penetrated her. This report acknowledged that

K.M. kept saying no and kept hitting him.

\*       \*       \*

52.     This action is brought on behalf of M.M. as parent and guardian of her daughter, K.M., a minor child. As a direct and proximate result of the claims set forth herein, the Plaintiffs are entitled to the damages set forth herein as a result of the physical sexual assault as well as the mental anguish which came about as a result of the subject claims. These damages include those for treatment, medical tests therapy, emotional anguish, past and future medical expenses, past and future therapy expenses, post-traumatic stress, increased risk for post-traumatic stress and/or emotional issues associated with victims of sexual assault.

53.     As a result of the physical and sexual assault, K.M. experienced, she has experienced emotional distress and has the potential to develop post-traumatic stress and issues associated with child sexual assault/abuse throughout her life.

54.     The Plaintiff is entitled to be compensated for economic and non-economic damages as described herein, including past and future medical expenses and therapy expenses as well as pain, suffering, the loss of the basic and pleasurable activities of life and expense for psychological treatment, therapy and counseling, the need for such treatment and counseling as may arise in the future as a result to being exposed to a sexual assault as a child. Plaintiff is also entitled to be compensated for severe emotional distress.

55.     In addition, Defendant Brimar is responsible for the actions and inactions, errors, omission, and conduct of the bus driver and/or the supervisors who were responsible for conveying the message that the male student and K.M. must be separated. The Defendant Brimar is also responsible for blatant disregard of their obligations and breach of the duties described herein. Said conduct was outrageous and was committed with reckless indifference to the minor Plaintiff. As a result, Plaintiff is entitled to an award of punitive damages, in addition to an award of compensatory damages.

Enerson Decl., Ex. A, Underlying Complaint, at ¶¶ 6, 10, 12-13, 15-17, 23, 25, 27-31, 39, 41, 43, 45-48, 52-55.

**Response**: **It is admitted that these are some of the allegations in the Underlying Complaint.  It is contested that these are all the allegations in the Underlying Complaint.**

61.     The Underlying Complaint alleged that Brimar negligently failed to supervise the student perpetrator on the bus, which permitted the sexual assault to occur and caused K.M.'s injuries.

*Id.* at ¶¶ 8, 21-27, 29-30, 45, 58, 62, 71.

**Response**: **It is contested that the Underlying Complaint only alleged that Brimar negligently failed to supervise the student perpetrator and that it was the only alleged cause of K.M.'s injuries.  The Underlying Complaint also alleged that Brimar negligently failed to supervise or train its employees causing injury, and that injury was caused by an assault and battery other than a sexual assault.**

62.    All of the damages alleged by the plaintiffs against Brimar and the School District in the Underlying Complaint were based on the injuries to K.M. caused by the April 29, 2016 sexual assault. *Id.* at ¶¶ 56-124.

**Response**: **Contested.  The Underlying Complaint alleges various alternative theories of liability and causation of Plaintiff's injuries in addition to the sexual assault.  The Court in the Underlying Suit never made any factual findings or legal determinations to limit the claims in the case to covered or uncovered cases.**

63.    All of the causes of action alleged by the plaintiffs in the Underlying Complaint against Brimar and the School District sought compensatory and/or punitive damages based on the injuries to K.M. caused by the April 29, 2016 sexual assault. *Id.* at ¶¶56-124.

**Response**: **Contested.  The Underlying Complaint alleges various alternative theories of liability and causation of Plaintiff's injuries in addition to the sexual assault.  The Court in the Underlying Suit never made any factual findings or legal determinations to limit the claims in the case to covered or uncovered cases.**

64.    National issued Brimar Transit, Inc. a business auto policy, number 73 APB 001185, for the policy period January 1, 2016 through January 1, 2017 (the "Policy"). Enerson Decl., ¶ 4, Ex. B (the "Policy").

**Response**: **Admitted.**

65.    Brimar is the Named Insured under the Policy. *Id.*

**Response**: **Admitted.**

66.    The Policy provides business auto coverage, subject to the Policy's terms, exclusions, and conditions.

**Response**: **Admitted.**

67.    The Business Auto Coverage Form of the Policy contains the following language:

**BUSINESS AUTO COVERAGE FORM**

**SECTION II – LIABILITY COVERAGE**

**A.    Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." . . .

Enerson Decl., Ex. B.

**Response**: **Admitted.**

68.    The "Pennsylvania Changes – Defense Costs" endorsement in the Policy provides:

**PENNSYLVANIA CHANGES – DEFENSE COSTS**

This endorsement modifies insurance provided under the following: COMMERCIAL AUTOMOBILE COVERAGE PART …

If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Enerson Decl., Ex. B.

**Response**: **Admitted.**

69.    The Policy contains the following exclusion:

**ABUSE OR MOLESTATION EXCLUSION**

PLEASE READ THIS ENDORSEMENT CAREFULLY

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

The following exclusion is added to the policy:

This insurance does not apply to bodily injury or property damage arising out of:

(a)  the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone of any person; or

(b)  the negligent:

> (i)      employment;
>
> (ii)     investigation;
>
> (iii)    supervision; or
>
> (iv)     retention;

of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above; or

(c) the reporting to authorities or failure to report to authorities the alleged, actual or threatened abuse, molestation or sexual contact by anyone of any person.

All other terms, conditions and agreements shall remain unchanged.

Enerson Decl., Ex. B.

**Response**: **Admitted.**

70.      In the Joint Status Report filed by the parties on January 21, 2022, the School District stated that it intends to voluntarily dismiss its Counterclaim against National, without prejudice. ECF Doc. 149, at Page 2 of 7.

**Response**: **Admitted.   The District intends to voluntarily dismiss its counterclaim against National and that claim is no longer a part of this case or this motion for summary judgment.**

71.      After Brimar made a claim for coverage under the Policy for the Underlying Action, National provided a defense to Brimar with respect to the Underlying Action, subject to a full and complete written reservation of rights and disclaimer, which included a reservation of National's right

to seek recoupment of defense costs if it was later determined that no coverage exists. July 24, 2018 Letter, Enerson Aff., Ex. C.

**Response**: **Admitted to the extent this statement only refers to Brimar.  The District tendered a claim, but was denied a defense by National and National did not present the District with a reservation of rights letter at any time.  See Responsive Concise Statement of Additional Material Facts.**

72.    The School District retained counsel of its own choosing to defend it in the Underlying Action. ECF Doc. 46, ¶ 16.

**Response**: **Admitted to the extent the District was forced to retain its own counsel, because National denied a defense to the District.  See Responsive Concise Statement of Additional Material Facts.**

73.    On August 24, 2018, National initiated this declaratory judgment action against Brimar. ECF Doc. 1.

**Response**: **Admitted.**

74.    The School District filed a Motion to Intervene on December 20, 2018, alleging that it was an additional insured under the Policy. This Court granted the School District's Motion on January 4, 2019. ECF Doc. 22; ECF Doc. 28.

**Response**: **Admitted.**

75.    On January 14, 2020, this Court determined that National had a duty to defend both Brimar and the School District in connection with the Underlying Action, but determined that issues related to the duty to indemnify were premature. ECF Doc. 91.

**Response**: **Admitted.**

76.    The parties to the Underlying Action reached a settlement after a mediation was convened and in late December 2020, National paid to settle the Underlying Action on behalf of Brimar and the School District, and the underlying plaintiffs' claims against Brimar and the School District were dismissed with prejudice. Underlying Action Docket, Enerson Decl., Ex. D.

**Response**: **Admitted but incomplete.  For additional facts concerning the voluntary settlement payment see Responsive Concise Statement of Material Facts.**

*77.* Brimar and the School District also agreed to dismiss their respective cross claims and the Underlying Action in its entirety has been dismissed with prejudice. *Id.*

**Response**: **Admitted.**

78. National funded the settlement of the Underlying Action subject to an express reservation of all rights which preserved its ability to challenge coverage in this matter, and to seek reimbursement of all funds paid. December 4, 2020 Letter, Enerson Decl., Ex. E.

**Response**: **Contested as stated.  Just because National stated unilaterally that it was reserving some hypothetical nonexistent right does not create such a right.  National has no right to reimbursement of either the District's defense costs or the settlement payment by the terms of the Policy nor through any equitable theory.**

*79.* On December 4, 2020, National notified Brimar and the School District in writing that if "National makes any settlements to the plaintiffs in the [Underlying Action], National will seek full reimbursement" from Brimar and the School District.

**Response**: **Contested as stated.  Just because National stated unilaterally that it was reserving some hypothetical nonexistent right does not create such a right.  National has no right to reimbursement of either the District's defense costs or the settlement payment by the terms of the Policy nor through any equitable theory.**

80. National also memorialized its reservations to dispute coverage and seek reimbursement in the underlying settlement agreement itself. Enerson Decl. ¶ 12.

**Response**: **Contested as stated.  Just because National stated unilaterally that it was reserving some hypothetical nonexistent right does not create such a right.  National has no right to reimbursement of either the District's defense costs or the settlement payment by the terms of the Policy nor through any equitable theory.**

81.     In accordance with the Court's January 14, 2020 Order, and without waiving any of its rights to appeal that Order, on February 10, 2021, National issued payment to counsel for the School District in the amount of $266,800.86 for its documented and paid defense costs incurred in defending the School District in the Underlying Action. February 10, 2021 Letter, Enerson Decl., Ex. F.

**Response: Contested.  National did not make a payment "in accordance" with this Court's Order.  National made a defense payment over a year later and after it had all the District's invoices for over 7 months, only after it dreamed up a non-existent equitable right to reimbursement and attempted to amend its complaint to include such a claim.  See Responsive Concise Statement of Additional Material Facts.**

82.     After the School District supplied additional documentation, National made a supplemental payment in the amount of $71,346.00 for the documented and paid costs incurred in defending the School District in the Underlying Action. July 9, 2021 Letter, Enerson Decl., Ex. G.

**Response: Contested as stated.  National never offered to provide a defense for the District, never provided a reservation of rights letter and never set up a system for the District to submit its bills or invoices for payment or reimbursement.**

83.     National's payments of defense costs to counsel for the School District were clearly made subject to all of its rights to dispute coverage, and National expressly advised the School District that it fully intended to seek reimbursement of all monies paid to or on behalf of the School District, including defense and settlement payments. December 4, 2020 Letter, Enerson Decl., Ex. E.; February 10, 2021 Letter, Enerson Decl., Ex. F; July 9, 2021 Letter, Enerson Decl., Ex. G.

**Response: Contested.  Just because National stated unilaterally that it was reserving some hypothetical nonexistent right does not create such a right.  National has no right to reimbursement of either the District's defense costs or the settlement payment by the terms of the Policy nor through any equitable theory. National never offered to provide a defense for the District, never provided a reservation of rights letter and never set up a system for the District**

to submit its bills or invoices for payment or reimbursement.  **See Responsive Concise Statement of Additional Material Facts.**

84.    National's payment to counsel for the School District was also made subject to its right to challenge the reasonableness and necessity of the reimbursed defense costs in the event a duty to defend is deemed to exist as to the School District. *Id.* Enerson Decl., Ex. F; Enerson Decl., Ex. G.

**Response**: **Contested.  A duty to defend the District already existed pursuant to this Court's order.  Just because National stated unilaterally that it was reserving some hypothetical nonexistent right does not create such a right.  National has no right to reimbursement of either the District's defense costs or the settlement payment by the terms of the Policy nor through any equitable theory. National never offered to provide a defense for the District, never provided a reservation of rights letter and never set up a system for the District to submit its bills or invoices for payment or reimbursement.  The remedy for failure to pay defense costs is reimbursement of actual defense costs expended plus exemplary damages should a Court determine that the carrier acted in bad faith.  See Responsive Concise Statement of Additional Material Facts.**

85.    National incurred $80,958.79 in defense costs on behalf of Brimar in connection with the Underlying Action. Enerson Decl. ¶ 16.

**Response**: **The District does not have information to either admit or contest this allegation.**

86.    The School District alleged that National issued a Commercial General Liability ("CGL") policy of insurance to Brimar. ECF Doc. 48, Count I – Counterclaim – Breach of Contract, at ¶¶ 2, 7-11.

**Response**: **The District is voluntarily dismissing its counterclaim against National so this allegation is immaterial.**

87.    National did not issue a CGL policy to Brimar. Declaration of Linda Bobro, OMA000482-483, Enerson Decl., ¶ 17, Ex. H.

**Response**: **Contested, but immaterial.  National issued a Certificate of Insurance listing the**

**District as a named insured on a CGL policy.  The District is voluntarily dismissing its counterclaim against National, however, so this allegation is immaterial.**

### RESPONSIVE CONCISE STATEMENT OF ADDITIONAL MATERIAL FACTS

1.      "The District and Brimar are parties to a contract pursuant to which Brimar agreed to provide student transportation services for the District during several school years."  (Doc. No. 91, p. 3, "Opinion" **Appendix Ex. 2**.) (<u>Citing</u> "Agreement", Exhibit A, Docket No. 46-1, **Appendix Ex. 3**.)

2.      "The relevant terms and conditions of the parties' contract state that Brimar was expected to perform such services using safe vehicles and qualified drivers in accordance with the Pennsylvania Vehicle Code and other highway standards."  (<u>Id.</u>) (<u>Citing</u> Agreement.)

3.      "Brimar was also required to maintain insurance coverage for its vehicles and to provide a certificate of insurance to the District each year naming the District "as additional insured, verifying coverage of $1,000,000 per accident and a $5,000,000 umbrella.""  (<u>Id.</u>) (<u>Citing</u> Agreement at ¶¶ 17-19; 2.f.)

4.      "Brimar further agreed "to indemnify, defend and hold harmless" the District "against any and all loss, damage, cost and expenses which the [District] may hereafter suffer or incur arising from [Brimar's] obligations under this Agreement.""  (<u>Id.</u>) (<u>Citing</u> Agreement at ¶ 8.)

5.      "As required under its agreement with the District, Brimar obtained Policy No. 73 APB 001185 from National for the policy period of January 11, 2016 through January 11, 2017, ("Policy")."  (<u>Id.</u>) (<u>Citing</u> "Commercial Policy", Docket No. 46-2, Attached to Appendix as **Exhibit 5**.)

6.      "The Business Auto Coverage Declarations ("Declarations") note that Brimar is the named insured and in the business of "school buses"; Burns & Wilcox, Inc. is listed as the producer or broker on the transaction; and the form indicates that this is a new policy, meaning that it was not renewed from a prior time period."  (<u>Id.</u>) (<u>Citing</u> Commercial Policy at 55.)

7.      "The Declarations state that the Policy provides $1,000,000 in liability coverage for a

premium of $69,654 as well as smaller premium amounts for additional coverage for personal injury protection; uninsured motorists; and underinsured motorists." (Id.) (Citing Commercial Policy at 55.)

8.     "The Schedule of Covered Autos lists 26 separate vehicles covered under the Policy, all of which are described as "passenger vans" with listed seating capacities of 7 or 9 seats." (Id.) (Citing Commercial Policy at 57-58).

9.     The District was listed as an additional insured on the Policy on a Certificate of Insurance issued by National or National's agent.   (January 8, 2016 "Certificate of Insurance," **Appendix Ex. 4**).

10.     When it issued the Policy, National knew that Brimar's contract with the District required the District to be an additional named insured on the Policy. (Id.)

11.     When it issued the Policy, National knew that it was insuring the risk of transporting students to and from school.  (Id.; Commercial Policy at 57-58; Contract between Brimar and PPS (the "Agreement"), **Appendix Ex. 3**, ¶¶2, 3, 11 & 23.)

12.     When it issued the Policy, National knew that the risk of transporting students included the risk of a student assaulting another student on a bus. (Id.; Commercial Policy at 57-58; Agreement ¶¶2, 3, 11 & 23.)

13.     Based upon the allegations in the Underlying Complaint, the District was an "insured" as that phrase is defined in the policy.  (Commercial Policy at 61; Underlying Complaint generally and ¶¶ 10-11, 22, 30, 72-104 (**Appendix Ex 6**, "Underlying Complaint.")

14.     This Court found that based upon the allegations in the Underlying Complaint, the District was an "insured" as that phrase is defined in the policy.  (Opinion, p. 20.)

15.     The Underlying Complaint alleged that Plaintiff was using the school bus when she was allegedly assaulted.  (Underlying Complaint, generally & ¶12; Opinion, pp. 22-29.)

16.     The Underlying Complaint alleged that Brimar and/or its employees or agents were using the school bus to transport students from school at the time of the incident. (Underlying Complaint, generally & ¶12; Opinion, pp. 22-29.)

17.     The Underlying Complaint alleged that the District and/or its employees or agents were using the school bus to safely transport students from school at the time of the incident. (Underlying Complaint, generally & ¶12; Opinion, pp. 22-29.)

18.     The Underlying Complaint alleged that the Plaintiff's injuries resulted from the use of a school bus that was covered under the Policy. (Underlying Complaint, generally; Opinion pp. 22-29.)

19.     This Court found the Underlying Complaint alleged that the Plaintiff's injuries resulted from the use of a school bus that was covered under the Policy. (Opinion, Appendix pp. 22-29.)

20.     The Underlying Complaint alleged that the District was vicariously liable for the actions or inactions of Brimar and Brimar's employees which caused the injury to plaintiff. (Underlying Complaint at ¶¶10-11, 22, 30, 72-104.)

21.     This Court found that the Underlying Complaint alleged that the District was vicariously liable for the actions or inactions of Brimar and Brimar's employees which caused the injury to plaintiff.  (Opinion pp. 19-20) (citing Underlying Complaint at ¶¶10-11, 22, 30, 72-104.)

22.     The Underlying Complaint alleged that Brimar and the District were liable for negligent supervision and/or training of its employees which caused the injury to Plaintiff. (Underlying Complaint generally and Opinion pp. 32-34.)

23.     This Court found that the Underlying Complaint alleged that Brimar was liable for negligent supervision and/or training of its employees which caused the injury to Plaintiff.  (Opinion pp. 32-34.)

24.     The Underlying Complaint alleged that the District was liable for its own negligence which caused the Plaintiff's injuries.  (Underlying Complaint, generally; Opinion pp. 32-34.)

25.     The Underlying Complaint alleged that the District was liable for Brimar's negligence which caused the Plaintiff's injuries. (Underlying Complaint, generally; Opinion pp. 32-34.)

26.     The Underlying Complaint alleged that the perpetrator committed an assault on the

Plaintiff prior to the alleged sexual assault.  (Underlying Complaint ¶27.)

27.     This Court found that the Underlying Complaint alleged that the perpetrator committed an assault on the Plaintiff prior to the alleged sexual assault.  (Opinion p. 29.)

28.     The recitation and characterization of the allegations in the Underlying Complaint contained in this Court's Memorandum Opinion on Motion for Judgment on the Pleadings (Doc. No. 91) are the law of the case and binding upon the parties.  The District hereby adopts that recitation and characterization of the allegations in the Underlying Complaint as its statement of undisputed material facts as relates to what allegations are contained in the Underlying Complaint in addition to the above facts.  (See Doc. No. 91, **Appendix Ex. 2**)

29.     Discovery in the Underlying Suit was not completed. (Affidavit of Jaime N. Doherty, Esq., (**Appendix Ex. 1**) ("Affidavit") ¶1.)

30.     Expert discovery in the Underlying Suit was not completed.  (Id. ¶2.)

31.     The parties did not depose the alleged perpetrator of the alleged assault in the Underlying Suit. (Id. ¶3.)

32.     The parties did not depose the student witnesses in the school bus at the time of the incident. (Id. ¶4.)

33.     The parties did not depose the regular driver of the bus that was the subject of the incident, Shaniece Johnson, who went out on maternity leave. (Id. ¶5.)

34.     The parties did not depose the "substitute" male driver who took over during some of the regular driver's maternity leave. (Id. ¶6.)

35.     The parties did not depose the plaintiff's counselor. (Id. ¶7.)

36.     All of the above witnesses had information related to the allegations in the complaint in the Underlying Suit, and their testimony would have presumably been sought by at least one of the parties had the case proceeded to trial. (Id. ¶8.)

37.     No party in the Underlying Suit filed any motions for summary judgment on any issues. (Id. ¶9.)

38.     The Court in the Underlying Suit did not make any factual findings relative to the allegations in the Underlying Complaint. (Id. ¶10.)

39.     The Court in the Underlying Suit did not make any legal rulings eliminating any of plaintiff's potential claims in the Underlying Complaint. (Id. ¶11.)

40.     On November 6, 2020, the parties in the Underlying Suit participated in mediation with National's coverage counsel also present. (Id. ¶12.)

41.     National controlled the mediation and negotiated directly with Plaintiff on the amount of settlement. (Id. ¶13.)

42.     Neither Brimar nor the District were asked for any input on the settlement amount. (Id. ¶14.)

43.     National offered Plaintiff $150,000, which was later accepted by Plaintiff, to settle the Underlying Suit. (Id. ¶15.)

44.     National voluntarily paid Plaintiff $150,000 to settle the case. (Id. ¶16.)

45.     Neither Brimar nor the District were asked by National to contribute to the settlement amount. (Id. ¶17.)

46.     Neither Brimar nor the District were asked by National to reimburse National for defense costs or the settlement payment. (Id. ¶18.)

47.     National threatened to renege on the settlement if it was unable to include language in the settlement agreement that it was reserving some hypothetical, nonexistent right to reimbursement of defense costs and the settlement payment. (Id. ¶19.)

48.     After learning that Plaintiff in the Underlying Suit intended to sue the District as well as Brimar, the District tendered its claim to National through Brimar on December 19, 2017. (Id. ¶20.)

49.     National did not provide the District a defense nor did National provide a reservation of rights letter in response to the District's tender. (Id. ¶21.)

50.     This Court entered an order on January 14, 2020 finding that National owed the

District a defense in the Underlying Suit. (<u>Id.</u> ¶22.)

51.     National did not provide reimbursement of defense costs, a reservation of rights letter nor a defense in the Underlying Suit at that time (January 14, 2020). (<u>Id.</u> ¶23.)

52.     The District produced all invoices of defense costs to date in the underlying action in discovery in this matter on July 17, 2020. (<u>Id.</u> ¶24.)

53.     On January 22, 2021, prior to reimbursing the District for any defense costs, National proposed to file a Motion for Leave to Amend its complaint a third time to add, inter alia, claims against the District for reimbursement of defense payments (of which it had paid none) and settlement funds based upon unjust enrichment. (<u>Id.</u> ¶25.)

54.     National proposed and the Court ordered National to file its Motion for Leave to Amend by February 12, 2021. (<u>Id.</u> ¶26.)

55.     On February 11, 2021, District counsel received a check via overnight Federal Express purporting to be partial payment for the District's defense costs. (<u>Id.</u> ¶27.)

56.     National filed its Motion for Leave to Amend on February 12, 2021 which was later denied by the Court. (<u>Id.</u> ¶28.)


Date:  April 6, 2022                    Respectfully submitted,

                                        GRB LAW

                                        BY: <u>/s/ Matthew C. Fergus</u>

                                        Jaime N. Doherty, Esquire
                                        Pa. I.D. #89402
                                        Matthew C. Fergus, Esquire
                                        Pa. I.D. # 205506

                                        525 William Penn Place, Suite 3110
                                        Pittsburgh, Pennsylvania 15219
                                        412.281.0587

                                        *Counsel for Intervenor Defendant,*
                                        *Pittsburgh Public School District*