**THIS AGREEMENT,**

By and between

**THE BOARD OF PUBLIC EDUCATION
OF THE SCHOOL DISTRICT OF PITTSBURGH,**

Hereinafter referred to as "SCHOOL DISTRICT" or "DISTRICT,"

And

**BRIMAR TRANSIT
712 Rebecca Ave
Pittsburgh, PA 15221,**

Hereinafter referred to as "CARRIER,"

**WITNESSETH:**

**WHEREAS,** SCHOOL DISTRICT is desirous of securing pupil transportation services, and

**WHEREAS,** CARRIER is prepared to provide such transportation services,

**NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:**

**General Terms and Conditions**

1. CARRIER and SCHOOL DISTRICT agree that the following definitions apply to this agreement:

   a. "Employee" – A person under the employ of a CARRIER.

   b. "Prime Time" – That continuous period from the first assigned pick-up time in the morning to the last drop-off time in the morning, plus that continuous period from the first assigned pick-up time in the afternoon to the last drop-off time in the afternoon.

   c. "Off-Peak Time"- That period from the time the vehicle reaches its last morning drop-off point assigned during prime time until the first afternoon pick-up point assigned during prime time, plus those hours following the last assigned drop-off point in the afternoon.

   d. "School Day" – A day when the Pittsburgh Public Schools are actually in session providing a full educational program for its students or a day designated by SCHOOL DISTRICT'S Director of Pupil Transportation as a "School Day".

e. "School Year" – That period of time beginning with the fall semester (usually August or September) and continuing through to the end of the spring semester (usually June), and including summer runs (usually June through August).

f. "Accepted Vehicle" – A vehicle that meets the requirements of the Pennsylvania Vehicle Code and all regulations promulgated thereunder that may be used for the transportation of school children and that is properly registered, licensed and insured for that purpose.

2. **For the purpose and interpretation of this contract, CARRIER and SCHOOL DISTRICT agree that transportation of school students is an extraordinary and specialized function, the essence of which is that the students be transported to and from school regularly, safely, and promptly, without interruption or incident, and that the interests of the students take precedence over the interests of either the CARRIER and its drivers or of the DISTRICT. CARRIER understands and agrees that its primary obligation is to operate its affairs so that the DISTRICT will be assured of this continuous and reliable service. Recognizing that, for the protection of the students, drivers and all other persons coming in contact with students must be of stable personality and of the highest moral character, CARRIER agrees to accept the responsibility of assuring such qualities in personnel.**

3. CARRIER agrees to provide pupil transportation services to SCHOOL DISTRICT on school days during the school years 2016/17, 2017/18, 2018/19, 2019/20, and 2020/21 in accordance with the terms and conditions set forth in this Agreement. CARRIER has the right to cancel this agreement with 180 days' notice to DISTRICT'S Director of Pupil Transportation.

4. CARRIER understands and agrees that the transportation performed under this contract is based on a time schedule. Therefore, CARRIER agrees to comply with such schedules within reason, and provide enough substitute drivers and vehicles to cover absenteeism and vehicle breakdowns.

5. CARRIER agrees that repeated failure to adhere to the schedule will constitute a breach of this contract. At the discretion of the Superintendent of Schools, this provision will not apply to adverse weather conditions, "acts of God," and other emergencies.

6. CARRIER understands and agrees that continuity of drivers and assignments is essential, and that failure to maintain reasonable continuity shall be sufficient grounds for termination. The DISTRICT reserves the right to determine what constitutes reasonable.

7. It is understood between the parties to this Agreement that the number and type of vehicles offered by CARRIER for each of the five respective school years (2016/17 - 2020/21) which are listed on Exhibit "A", represent only the maximum number of vehicles DISTRICT may utilize hereunder. SCHOOL DISTRICT reserves the right to utilize up to the maximum number of vehicles listed on Exhibit "A", to utilize any lesser number of vehicles, or, in fact, to utilize no vehicles at any time during the term of this Agreement. The decision as to the number of CARRIER'S vehicles that will be utilized by SCHOOL DISTRICT at any given time during the term of this Agreement will be made by SCHOOL

DISTRICT'S Director of Pupil Transportation and the Pupil Transportation Director's decision to modify the number of vehicles supplied by CARRIER is final, and any such decision can be made for any reason whatsoever.

8. CARRIER agrees that SCHOOL DISTRICT'S Director of Pupil Transportation, while attempting to assign vehicles to areas convenient to CARRIER'S garage, shall have the right to assign vehicles to specific routes and change those routes at any time.

9. CARRIER agrees that, with the exception of taxi service requested by SCHOOL DISTRICT, DISTRICT shall have exclusive use of all vehicles operated during each school day during the school years 2016/17 - 2020/21.

10. CARRIER agrees that SCHOOL DISTRICT shall incur no costs for the operation of vehicles other than those set forth in the Pupil Transportation Rate Sheet attached as Exhibit "A".

11. CARRIER agrees to indemnify, defend and hold harmless SCHOOL DISTRICT, its directors, officers, agents and employees against any and all loss, damage, cost and expenses which DISTRICT may hereafter suffer or incur arising from CARRIER'S obligations under this Agreement.

12. It is understood and agreed to by both parties hereto that CARRIER, while engaged in carrying out and complying with any of the terms and conditions of this contract, is an INDEPENDENT CONTRACTOR and is not an officer, agent or employee of SCHOOL DISTRICT.

13. The within contractor hereby verifies under penalty of perjury that he/she is either a citizen of the United States, a national of the United States, an alien lawfully admitted for permanent residence or an alien authorized to be hired for employment as a contractor of the School District of Pittsburgh.

14. CARRIER agrees that it and all of its employees shall be subject to the SCHOOL DISTRICT'S policy prohibiting sexual harassment in the workplace, its policy regarding smoking, and its policy on ethics as a condition of receiving the contract and performing under this contract. The DISTRICT will make a copy of these policies available to the CARRIER upon the CARRIER'S request.

15. CARRIER also agrees that it and all of its employees shall be subject to the SCHOOL DISTRICT's policy concerning substance abuse, as further described in paragraph 38 of this Agreement.

16. The SCHOOL DISTRICT reserves the right to terminate or cancel CARRIER's services prior to performance and will pay only for services actually performed prior to termination.

**Vehicle Requirements**

17. Upon request of the DISTRICT, CARRIER may provide nine-passenger vehicles, capable of accommodating child car seats, for the sole and exclusive transportation of the DISTRICT's pre-school students. The DISTRICT shall provide the car seats at its expense.

18. CARRIER agrees that the age of all school bus constructed vehicles made available to the DISTRICT during the term of this agreement shall not exceed twelve (12) model years and shall be manufactured in 2007 or later, except for such school bus constructed vehicles as are equipped with diesel particulate filters (DPFs) and closed crankcase ventilation systems (CCVs), which may be manufactured not earlier than 2005 and shall not exceed twelve (12) model years in age.

19. CARRIER agrees that the age of any and all nine-or-fewer-passenger vehicles made available to the DISTRICT during the term of this agreement shall not exceed ten (10) model years.

20. CARRIER agrees that 6-8 passenger capacity vehicles will not be accepted for DISTRICT use, except when DISTRICT specifically requests that type of vehicle.

21. CARRIER agrees that all accepted vehicles be registered, licensed and insured, in accordance with paragraph 1.f., under the CARRIER holding the contract.

22. CARRIER agrees to provide to SCHOOL DISTRICT'S Director of Pupil Transportation by August 1st before the beginning of the upcoming school year, a current copy of each vehicle's registration certificate as issued by the State of Pennsylvania. This certificate will indicate the manufacturer's serial number, make of body, make of chassis, year of manufacture of chassis, type of fuel used, State-rated student capacity as indicated on inspection sticker, and the serial numbers of the two way radios or mobile phones as described in paragraph 28 of this Agreement, and video cameras as described in paragraph 29. Without this information vehicles will not be assigned to CARRIER. CARRIER further agrees that the same information will be provided immediately if new vehicles are placed in service during any given school year.

23. CARRIER agrees to provide no later than July 1 of each year a certificate of insurance, naming SCHOOL DISTRICT as additional insured, verifying coverage of $1,000,000 per accident and a $5,000,000 umbrella.

24. CARRIER agrees that all vehicles will be washed at least every two (2) weeks and kept clean with a daily gathering of litter left from the previous day's operation.

25. CARRIER agrees that all vehicles used for DISTRICT will be stored in a secure area.

26. CARRIER, at no cost to SCHOOL DISTRICT, agrees to place and/or refurbish appropriate vehicle numbers and/or other identifying insignia on the front and rear body corners of all vehicles, as determined by DISTRICT'S Director of Pupil Transportation. Block numerals or letters shall be black in color and shall be a minimum of five (5) inches in height and three (3) inches wide. CARRIER further agrees that CARRIER'S name will be marked on both sides of accepted vehicles, in accordance with State law.

27. CARRIER agrees that all vehicles will be equipped with a two-way radio or mobile phone in good working order which provides contact at all times with CARRIER'S administrative offices.

28. CARRIER agrees that all vehicles of a 36-passenger or greater capacity will be equipped with working audio and video recording devices. CARRIER agrees that it will retain such audio/video recordings for a minimum of seven (7) days, and will furnish upon timely request of a school or DISTRICT official, such audio/video recordings in DVD or other technological format readily viewable with standard office equipment to the school or DISTRICT official.

29. CARRIER agrees that all vehicles that are not State Police inspected, have a GVW of less than 6,200 pounds and operated for the SCHOOL DISTRICT will not have mileage in excess of 150,000 miles.

30. CARRIER understands and agrees that DISTRICT intends to begin using GPS equipment and technology for the purposes of monitoring and evaluating CARRIER's performance of its duties under, and compliance with, the terms of this agreement. In furtherance of this objective, CARRIER agrees, at any and all times during the term of this agreement, to, at a minimum, (a) grant access and permission to District and its agents to install GPS equipment on any and all of its vehicles, (b) grant to DISTRICT and its agents, access to its vehicles and permission to perform maintenance activities on such GPS equipment, (c) allow and facilitate "live" or real time monitoring of any and all such GPS equipment the DISTRICT or its agents may have installed on CARRIER's vehicles, and **(d) accept a financial penalty of one-third (1/3) of any vehicle's daily rate per day that CARRIER does not allow and facilitate DISTRICT's "live" or real time monitoring of any vehicle's installed GPS equipment.**

31. CARRIER agrees to collect information concerning mileage and days run and furnish such information to SCHOOL DISTRICT for after school activity runs.

## Driver Requirements

32. CARRIER agrees to submit on company letterhead, no later than August 15th of each year, an alphabetical list of each of its drivers, with hire dates. The following *current* information on each driver shall also be submitted or updated annually by August 15th of each year:
    a. A copy of the annual physical examination;
    b. A copy of the Commercial Driver's License and/or Pennsylvania Driver's License;
    c. A copy of the MVR (updated annually);
    d. Copies of the Act 24 Arrest/Conviction form;
    e. Copies of the Pennsylvania Act 151 Criminal History, a copy of the Pennsylvania Child Abuse Act 34 clearance, and an FBI fingerprint check, all of which shall be dated later than December 31, 2014, and not more than three years old, and;
    f. A copy of the Act 168 Sexual Misconduct Disclosure for all drivers hired after December 22, 2014.

33. *CARRIER and DISTRICT stipulate that if CARRIER services school runs assigned by DISTRICT with a driver who does not have all of the documentation enumerated in paragraph 32 on file with DISTRICT, CARRIER will be in breach of this agreement.*

34. CARRIER agrees that a driver in possession of an "occupational license," allowing the driver to only drive to work and back home, will not be allowed to drive a school vehicle for SCHOOL DISTRICT.

35. CARRIER agrees any driver whose criminal history and background checks under Acts 34, 114, and 151, the latter relating to Child Abuse Clearance, contain a disqualifying conviction under said acts shall not operate a vehicle transporting DISTRICT students and further agrees that said driver shall be removed from operating such a vehicle should such a conviction come to the attention of DISTRICT. CARRIER further agrees that it will require all drivers to notify CARRIER of any offenses committed after the dates of the MVR and criminal history and background checks respectively, and should it become aware of any such offenses or convictions during the term of this agreement, through driver notification or any other means, it shall promptly notify the DISTRICT through the Director of Pupil Transportation and shall remove said driver from transporting DISTRICT students and having any direct contact with such students.

36. The SCHOOL DISTRICT reserves the right to assess the character and ability to perform all necessary duties of all bus drivers who are employees of CARRIER. Such an assessment of an individual driver's character and ability may be above and beyond the requirements that are set forth in the Public School Code of 1949 at Section 111, 24 P.S. § 1-111, and also under 23 Pa. C.S. § 6355, which deals with child abuse background clearances. Nothing in section 111 of the Public School Code or in 23 Pa. C.S. § 6355 precludes DISTRICT from assessing the overall compatibility of an individual bus driver employed by CARRIER, and determining that the overall nature of such driver's significant criminal background may be sufficient to prohibit said driver and CARRIER from transporting children within the DISTRICT.

37. CARRIER agrees that all drivers and safety personnel, at all times when performing services for DISTRICT, will wear identification conspicuously on their persons. Such identification will be at least the size of a Pennsylvania driver's license and include CARRIER'S name, as well as the name of the employee and a photograph of the employee.

38. CARRIER shall certify that each driver has passed an approved and certified pre-employment drug/alcohol screening test before being permitted to transport students for SCHOOL DISTRICT. The CARRIER shall further comply with all federal and state requirements relating to drug/alcohol testing including those issued by the Department of Health and Human Services, the National Highway Traffic Administration, and any other applicable law or regulation. CARRIER's failure to comply with these provisions may be deemed a material breach of the contract by the DISTRICT. The certificate shall be executed and returned to the Director of Pupil Transportation at the time of the execution of the contract.

39. CARRIER agrees that drivers and monitors employed for SCHOOL DISTRICT runs will have attained twenty-one (21) years of age.

40. CARRIER agrees that a driver for whom the DISTRICT does not meet all the requirements of paragraphs 32 – 39 will not drive for the SCHOOL DISTRICT and that, further, use of a driver not credentialed within the meaning of this paragraph will constitute a breach of this agreement.

41. CARRIER agrees to provide the necessary drivers, at its cost and expense, and further agrees that a properly trained and licensed driver will operate each vehicle.

42. CARRIER agrees to provide, at no cost to SCHOOL DISTRICT, any training for its drivers which may be required by the Vehicle Code (Pa. Act 81 of 1976) and any other Federal or State statute or regulation.

43. CARRIER agrees that only adult employees of CARRIER who meet the criteria for drivers enumerated in paragraphs 32, 33, and 39 of this agreement and assigned students will be on vehicle during operation of run paid for by SCHOOL DISTRICT. When a monitor is requested by DISTRICT, such monitor will also meet the criteria for drivers enumerated in paragraphs 32, 33, and 39 of this agreement. Reimbursement for monitors requested by DISTRICT will be made in accordance with paragraph 50 of this agreement.

**Carrier Reimbursement**

44. **CARRIER agrees to receive compensation from DISTRICT under the terms of this agreement via direct deposit.**

45. SCHOOL DISTRICT agrees to pay for a minimum of two prime time hours for each utilized accepted vehicle on each school day during the school years 2016/17, 2017/18, 2018/19, 2019/20, and 2020/21.

46. In determining the payments to be made under the Pupil Transportation Rate Sheet, CARRIER understands that it will receive compensation for prime time runs, which exceed a given hour by thirty (30) minutes or less, an amount half-way between the rate for the given hour and the rate for the next higher given hour. Reimbursement for taxi service will be made at the rates for five-to-eight passenger vehicles.

47. CARRIER will be paid monthly by SCHOOL DISTRICT on the basis of properly certified invoices. CARRIER will also receive from DISTRICT, following the completion of ten (10) days of public school operation during each school year, a payment equal to ten (10) times the estimated daily rate under this Agreement. This payment will be deducted from the CARRIER'S invoice for the last full school month's (usually May) two week payment.

48. If the working audio/video recording devices described in paragraph 28 of this agreement are digital and employ at least two cameras (front and rear), DISTRICT agrees to pay CARRIER an additional Two Dollars ($2.00) per day per vehicle. As a condition of this reimbursement, CARRIER agrees to furnish proof of ownership of such cameras and the vehicles in which they are installed.

49. a.) Should the self-service retail price of diesel fuel and gasoline in Allegheny County exceed Two and 75/100 Dollars ($2.75) per gallon according to the most recent West Penn AAA Fuel Gauge Report, SCHOOL DISTRICT agrees to pay CARRIER an additional sum per vehicle (not under PUC Rates), of One Dollar ($1.00) per day of operation beginning with the next full calendar month, and an additional One Dollar ($1.00) per day of operation for each additional ten cent ($0.10) increase in the self-service retail price of diesel fuel and gasoline. If the self-service retail price of diesel fuel and gasoline in Allegheny County, according to the most recent AAA Fuel Gauge Report, includes taxes which CARRIER is not required to pay, CARRIER agrees that, for the purposes of determining what additional compensation, if any, should be paid under this paragraph, the self-service retail price of diesel fuel or gasoline will be reduced by an amount equal to the taxes which CARRIER is not required to pay.

b.) Should the self-service retail price of diesel fuel and gasoline in Allegheny County fall below One and 75/100 Dollars ($1.75) per gallon according to the most recent West Penn AAA Fuel Gauge Report, SCHOOL DISTRICT will deduct the sum of One Dollar ($1.00) per vehicle (not under PUC Rates) per day of operation, which would otherwise be payable under this Agreement to CARRIER, beginning with the next full calendar month, and DISTRICT will further deduct an additional One Dollar ($1.00) per day of operation per vehicle for each additional ten cent ($0.10) decrease in the self-service retail price of diesel fuel and gasoline.

50. CARRIER understands and agrees that SCHOOL DISTRICT reserves the right to begin purchasing fuel for CARRIERS during the term of this contract and that at such time as DISTRICT begins purchasing fuel for CARRIER, paragraph 49 of this agreement will be void. It is further agreed that the cost of such fuel shall be deducted from CARRIER'S monthly invoice with the balance being due to the CARRIER less any other agreed upon adjustments.

51. SCHOOL DISTRICT will pay CARRIER an additional Twenty Dollars ($20.00) per hour per vehicle when a monitor is requested by DISTRICT to ride on vehicle.

**Evaluation of Service and Compliance**

52. SCHOOL DISTRICT'S Director of Pupil Transportation will evaluate the provision of services by CARRIER under this Agreement twice annually. The evaluation process will take into consideration, by way of illustration but not limitation, the following items: (1) CARRIER'S safety record; (2) transportation complaint record; (3) CARRIER'S vehicles' condition, including cleanliness and mechanical condition; (4) CARRIER'S vehicle facility— housing and maintenance; (5) CARRIER'S general contractual compliance and responsiveness to SCHOOL DISTRICT'S transportation needs

53. CARRIER agrees that a representative from SCHOOL DISTRICT'S Pupil Transportation staff will visit CARRIER'S garage during the first two weeks of every August, and at other times as Director of Pupil Transportation may require, to verify accuracy of vehicle identification cards. CARRIER also agrees to cooperate with and facilitate such verification by DISTRICT'S representative.

### Other Requirements

54. CARRIER agrees to have an "in house" employee dedicated to dispatching vehicles and answering phone calls available from 6:00 AM (5:00 AM on inclement weather mornings) until fifteen minutes after the last vehicle serving SCHOOL DISTRICT returns to the garage, or 5:00 PM, whichever is later. CARRIER further agrees that DISTRICT and parents will be able to reach CARRIER throughout a given school year at the same phone number with which CARRIER begins a given school year.

55. CARRIER agrees to furnish safety vehicles and staff if running ten or more vehicles for the district. Safety vehicles must be easily identifiable as such by the public. Driver of safety vehicle must be able to contact all drivers of school buses as well as members of the general public. The safety person must function in that capacity alone and should not be required to also work as a school bus driver. CARRIER agrees to furnish at least one safety vehicle and safety person for each garage. Safety vehicles must have markings with 8 inch lettering that identifies the carrier and that it is a safety vehicle.

56. CARRIER agrees that at least one member of CARRIER's safety staff will participate in a monthly Safety Committee meeting at SCHOOL DISTRICT'S Transportation Office.

57. CARRIER agrees to cooperate with school principals in conducting semi-annual (September and March) bus evacuation drills.

58. CARRIER agrees to notify the appropriate school principal when vehicles will be more than Ten (10) minutes late when arriving at school.

59. CARRIER agrees to furnish two monthly invoices for all contracted pupil transportation services. The invoices will be: (1) Verified invoices listing gallons of fuel consumed in vehicles providing pupil transportation with additional evidence that the state tax was paid in accordance with the Liquid Fuels and Fuels Tax Act, and, (2) An invoice which includes all costs for providing pupil transportation.

60. CARRIER agrees, upon request, to provide SCHOOL DISTRICT with copies of purchase invoices of all vehicles utilized under this Agreement.

61. CARRIER agrees to provide SCHOOL DISTRICT with all information essential to completion and submission of State Transportation reimbursement applications.

62. CARRIER agrees to maintain electronic mail capabilities for the purpose of communication between the Pupil Transportation office and each garage.

### Penalties

63. ***In the event CARRIER fails to perform services because of the mechanical failure of equipment, CARRIER will receive no compensation for the day or days involved and the DISTRICT will have the right to secure other transportation as may be necessary and charge the cost of that transportation to the CARRIER.***

64. *Failure by CARRIER to place appropriate vehicle numbers and/or identifying insignia on the vehicles within ten (10) days of being directed to do so by SCHOOL DISTRICT'S Director of Pupil Transportation will result in a Two Dollar ($2.00) penalty per vehicle per school day, which will be deducted by DISTRICT from CARRIER'S monthly invoices. CARRIER understands and agrees that paragraph 26 of this agreement is understood as such direction.*

65. *If at any time, after any annual evaluation is conducted by SCHOOL DISTRICT'S Director of Pupil Transportation, the Director determines that CARRIER'S performance is unsatisfactory, SCHOOL DISTRICT'S Director of Pupil Transportation may modify the number of vehicles supplied by CARRIER pursuant to paragraph 7 of this Agreement.*

66. *CARRIER agrees that if it is found to not have at least one safety vehicle and safety person for each garage, a $10.00 per vehicle per day charge will be deducted from CARRIER'S monthly bill for that garage's entire fleet.*

67. *CARRIER agrees that if it is found to be out-of-compliance with paragraphs 32, 33, and 34 of this agreement, DISTRICT will deduct one half (1/2) of the daily rate for each day and each route CARRIER is out-of-compliance from CARRIER's reimbursement.*

68. *A One Thousand Dollar ($1,000.00) per day charge will be deducted from CARRIER'S monthly bill for non-compliance with the insurance coverage provision of paragraph 23 for each day CARRIER is found to be out of compliance*

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals this

__27th__ day of _____May_____, 2016.

Attest:                                              The Board of Public Education
                                                     The School District of Pittsburgh, PA

_____                              _____
Assistant Secretary                                  President

Attest:                                              (Carrier) Brimar Transit, Inc.

_____                              By:_____
(Title)                                              (Title) President

APPROVED AS TO FORM: _____
                       Solicitor

Payable from the appropriate Transportation appropriations.
Board Approved June ___, 2016

Pittsburgh Public Schools

PPS BRIMAR FED 0029

## CERTIFICATE OF COMPLIANCE WITH THE SUBSTANCE ABUSE POLICY OF THE SCHOOL DISTRICT OF PITTSBURGH

I, _____Marciano Nesbeth_____, do hereby certify that I have read and understand the Substance Abuse Policy of the School District of Pittsburgh, and have supplied a copy of same to my employees and/or subcontractors. I also declare that my employees and/or subcontractors and their employees who will be performing tasks that are high risk, safety sensitive or genuinely implicate public safety, will pass an appropriate test for substance abuse prior to being permitted access to the School District of Pittsburgh's workplace.

BRIMAR TRANSIT, INC.

BY: _____[signature]_____
Name and Title of Contractor
Marciano Nesbeth, President

Brimar Transit, Inc.
Name of Company

(412) 241-1870
Telephone No. of Contractor

NOTARY PUBLIC

_____[signature] Mildred L. Asmonga_____
Signature

May 27, 2016
Date

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mildred L. Asmonga, Notary Public
Swissvale Boro, Allegheny County
My Commission Expires Sept. 22, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## APPROVED BY SCHOOL DISTRICT OF PITTSBURGH COMPLIANCE OFFICER OR CHIEF OF STAFF

_____
Compliance Officer or Chief of Staff

_____
Date

No. 818.1

| | |
|---|---|
| SECTION: | OPERATIONS |
| TITLE: | SUBSTANCE ABUSE PROGRAM FOR CONTRACTORS |
| ADOPTED: | February 27, 2002 |
| REVISED: | |

# PITTSBURGH SCHOOL DISTRICT

## 818.1. SUBSTANCE ABUSE PROGRAM FOR CONTRACTORS

| | |
|---|---|
| 1. Purpose<br>SC 510 | The school district is committed to a policy which prohibits the use of illegal drugs and the use of alcohol at the workplace. Drug and alcohol abuse on and off the job can contribute both to incidents and to greater risk for all individuals employed on the school district's property, as well as the general public. |
| 2. Delegation of Responsibility | The Director of Facilities, Purchasing Agent and the Chief Operations Officer, as well as all other appropriate administrators and departments, are hereby authorized, empowered and directed to implement this policy and to amend existing policies, specifications and future contracts so that this policy shall be a part of said documents. |
| 3. Guidelines | The contractor shall certify that its employees have passed an appropriate drug test before the employees will be permitted access to the school district's workplaces (Pre-Access Testing). The contractor shall supply all employee test data to a third party administrator where it will be input into a database. Maintaining a current database provides the means to determine if the contractor's employees have had a valid negative test within twelve (12) months, thus avoiding duplicate testing. These requirements will help ensure that the school district's work sites are free from the use and adverse effects of illegal drugs.<br><br>The Pre-Access Testing Program will be entirely the obligation, responsibility and cost of the contractor. Each contractor is expected to establish, administer and enforce its own programs to ensure compliance with this section and certification requirements. The third party administrator will validate the contractor's substance abuse testing program, at the cost of the contractor; will implement and manage a random testing program; and will develop/maintain the database for the school district. Any arrangements for collection and testing are strictly between the contractor and the third party administrator. Alcohol testing shall be for cause only and shall be performed according to established federal guidelines. |

PPS BRIMAR FED 0031

818.1. SUBSTANCE ABUSE PROGRAM FOR CONTRACTORS - Pg. 2

The contractor's program shall also include testing for cause. Testing for cause shall include testing under any of the following circumstances:

1. Observed behavior, by a supervisor and/or the school district, indicating that the contractor's employee may be under the influence of drugs or alcohol.

2. Involvement in, or cause of, an incident or an accident, which causes or could have caused injury to the employee or another individual, or which causes or could have caused destruction or damage to the school district's property.

The contractor's program shall comply with the following:

1. For drug testing, the Department of Health and Human Services Mandatory Guidelines for Federal Workplace Drug Testing Program, 53 Federal Register 11970, April 11, 1988, (and any amendments thereto). A 10-panel test is the minimum test level required.

2. For alcohol testing, National Highway Traffic Safety Administration, Model Specifications and Evidential Breath Testing Devices, 49 Federal Register 48855, dated December 14, 1984, (and any amendments thereto). In addition, for purposes of this agreement, the cut off level for alcohol shall be 0.04%.

Random testing participants are selected by Social Security number from the total program participation. Selection is made by a computer using a number generating software program. Twenty-five percent (25%) of the total program participation is randomly tested annually. A participant may be tested more than once.

The cost for Pre-Access Testing, for cause and random testing shall be the contractor's responsibility.

The contractor shall be responsible for the removal of any contractor's employee who fails to pass the drug or alcohol test.

Any employee of the contractor who refuses to submit to the test or tampers with the samples shall not be permitted to work on any of the school district's sites.

The contractor may include in its program a rehabilitation provision for its employees. In such cases, employees may return to the job site, provided that the contractor receives evidence from the employee that the employee has successfully completed treatment at an accredited facility. Such facility must be accredited through the Joint Committee on Accreditation of Health Care Organizations. Further, the contractor shall establish a follow-up testing program for any employee

PPS BRIMAR FED 0032

818.1. SUBSTANCE ABUSE PROGRAM FOR CONTRACTORS - Pg. 3

| | |
|---|---|
| | returning to the school district's job site under this or any agreement with the school district. The follow-up testing will be performed without notice and at no cost and expense to the school district.<br><br>The contractor and the third party administrator shall maintain in strict confidence the names of its employees who fail the drug and alcohol tests.<br><br>Subject to the paragraph above, the school district may request, from time to time, and the contractor, through the third party administrator, shall provide detailed information and/or statistical reports for the school district's use in verifying the effectiveness of the contractor's program.<br><br>Subject to above, the contractor hereby grants to the school district and/or its designee the absolute right to examine and review, from time to time, any and all records related to the contractor's substance abuse program.<br><br>The contractor shall at all times indemnify, defend, protect and hold harmless the school district, its agents, officers and employees from and against any and all claims, damages, losses, costs, fines and expenses including, but not limited to, attorney's fees and investigative costs arising out of or in any way connected with the requirements of the program by any person, including the contractor's employees.<br><br>The contractor shall include the subcontractor's employees in its program or include the aforementioned requirements in its agreement with the subcontractor. |
| School Code 510<br><br>49 CFR Sec. 382.305 | |

Page 3 of 3

PPS BRIMAR FED 0033

### 2016-17

| | | | 2016-17 | | | | | | | All Day | off peak idle time | | off peak run time | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | school yr | two hours | 2.5 hours | 3 hours | 3.5 hours | 4 hours | 4.5 hours | 5 hours | 5.5 hours | 1 hour | 1.5 hours | 1 hour | 1.5 hours |
| 1,2 | 78-84 | 2016-17 | $ 275.49 | $ 284.14 | $ 292.83 | $ 305.53 | $ 313.56 | $ 324.25 | $ 334.29 | $ 334.31 | $ 22.24 | $ 33.36 | $ 49.46 | $ 68.20 |
| | 30-77 | 2016-17 | $ 227.12 | $ 236.96 | $ 249.79 | $ 258.57 | $ 266.66 | $ 276.79 | $ 286.92 | $ 297.71 | $ 22.24 | $ 33.36 | $ 44.22 | $ 66.33 |
| 3,4,5,6 | 16-26 | 2016-17 | $ 175.08 | $ 187.59 | $ 201.18 | $ 216.77 | $ 232.06 | $ 243.87 | $ 255.68 | $ 267.49 | $ 22.24 | $ 33.36 | $ 34.26 | $ 51.39 |
| 7,8,9 | 9 to 9 | 2016-17 | $ 155.34 | $ 162.42 | $ 170.13 | $ 176.88 | $ 183.76 | $ 192.70 | $ 201.65 | $ 209.90 | $ 22.24 | $ 33.36 | $ 32.39 | $ 48.59 |
| A | | 2016-17 | $ 140.43 | $ 147.92 | $ 154.04 | $ 160.19 | $ 167.00 | $ 174.50 | $ 182.08 | $ 190.37 | $ 22.24 | $ 33.36 | $ 32.39 | $ 48.58 |
| B | 5 to 8 | 2016-17 | $ 211.97 | $ 227.11 | $ 242.95 | $ 257.66 | $ 271.15 | $ 281.48 | $ 291.12 | $ 301.44 | $ 22.24 | $ 33.36 | $ 34.26 | $ 53.39 |
| | Lift 9 Pass | 2016-17 | $ 211.97 | $ 227.11 | $ 242.95 | $ 267.66 | $ 271.16 | $ 281.48 | $ 291.12 | $ 301.44 | $ 22.24 | $ 33.36 | $ 34.26 | $ 51.39 |
| E | Lift Bus | 2016-17 | $ 211.97 | $ 227.11 | $ 242.83 | $ 303.53 | $ 331.56 | $ 324.25 | $ 334.28 | $ 334.31 | $ 22.24 | $ 33.36 | $ 45.46 | $ 68.20 |
| F | 9-SBCV | 2016-17 | $ 275.45 | $ 286.14 | $ 292.83 | $ 303.53 | $ 331.56 | $ 324.25 | $ 334.28 | $ 256.03 | $ 22.24 | $ 33.36 | $ 32.39 | $ 48.59 |
| Z | 9-SBCV | 2016-17 | $ 163.63 | $ 176.14 | $ 190.73 | $ 205.31 | $ 220.60 | $ 237.41 | $ 244.22 | $ 256.03 | $ 22.24 | $ 33.36 | $ 34.26 | $ 51.39 |
| P | Pre-K SBCV | 2016-17 | $ 209.51 | $ 227.11 | $ 242.95 | $ 257.66 | $ 271.16 | $ 281.48 | $ 291.12 | $ 301.44 | $ 22.24 | $ 33.36 | $ 34.26 | $ 51.39 |

### 2017-18

2% increase

| vehicle | school yr | two hours | 2.5 hours | 3 hours | 3.5 hours | 4 hours | 4.5 hours | 5 hours | 5.5 hours | idle time 1 hour | 1.5 hours | run time 1 hour | 1.5 hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1,2 78-84 | 2017-18 | $ 280.96 | $ 289.82 | $ 298.69 | $ 309.60 | $ 319.84 | $ 330.73 | $ 340.97 | $ 351.19 | $ 22.68 | $ 34.03 | $ 46.37 | $ 69.56 |
| 30-77 | 2017-18 | $ 226.56 | $ 241.70 | $ 254.79 | $ 263.74 | $ 272.00 | $ 282.32 | $ 292.66 | $ 303.69 | $ 22.68 | $ 34.03 | $ 45.10 | $ 67.65 |
| 3,4,5,6 | | | | | | | | | | | | | | |
| 7,8,9 16-26 | 2017-18 | $ 178.58 | $ 191.34 | $ 206.22 | $ 221.10 | $ 236.70 | $ 248.75 | $ 260.75 | $ 272.84 | $ 22.68 | $ 34.03 | $ 34.94 | $ 52.41 |
| 9 to 9 | 2017-18 | $ 158.45 | $ 165.67 | $ 173.51 | $ 180.42 | $ 187.43 | $ 196.36 | $ 205.68 | $ 214.10 | $ 22.68 | $ 34.03 | $ 33.04 | $ 49.56 |
| A | | | | | | | | | | | | | | |
| B 5 to 8 | 2017-18 | $ 143.24 | $ 150.88 | $ 157.13 | $ 163.39 | $ 170.34 | $ 177.99 | $ 186.36 | $ 194.68 | $ 22.68 | $ 34.03 | $ 33.04 | $ 49.55 |
| D Lift 16-26 | 2017-18 | $ 216.21 | $ 231.66 | $ 247.80 | $ 273.01 | $ 276.58 | $ 287.11 | $ 296.94 | $ 307.46 | $ 22.68 | $ 34.03 | $ 34.94 | $ 52.41 |
| E Lift 9 Pass | 2017-18 | $ 216.21 | $ 231.66 | $ 247.80 | $ 273.01 | $ 276.58 | $ 287.11 | $ 296.94 | $ 307.46 | $ 22.68 | $ 34.03 | $ 34.94 | $ 52.41 |
| Lift Bus | 2017-18 | $ 280.96 | $ 289.82 | $ 298.69 | $ 309.60 | $ 319.84 | $ 330.73 | $ 340.96 | $ 351.19 | $ 22.68 | $ 34.03 | $ 46.37 | $ 69.56 |
| F 9-SBCV | 2017-18 | $ 166.90 | $ 179.66 | $ 194.54 | $ 209.41 | $ 225.01 | $ 237.06 | $ 249.10 | $ 261.15 | $ 22.68 | $ 34.03 | $ 33.04 | $ 49.56 |
| P Pre-K SBCV | 2017-18 | $ 216.21 | $ 231.66 | $ 247.80 | $ 273.01 | $ 276.58 | $ 287.11 | $ 296.94 | $ 307.46 | $ 22.68 | $ 34.03 | $ 34.94 | $ 52.41 |

### 2018-19

2% increase

| vehicle | school yr | two hours | 2.5 hours | 3 hours | 3.5 hours | 4 hours | 4.5 hours | 5 hours | 5.5 hours | idle time 1 hour | 1.5 hours | run time 1 hour | 1.5 hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1,2 78-84 | 2018-19 | $ 286.58 | $ 295.62 | $ 304.66 | $ 315.79 | $ 326.23 | $ 337.35 | $ 347.79 | $ 358.22 | $ 23.14 | $ 34.71 | $ 47.30 | $ 70.95 |
| 3,4,5,6 30-77 | 2018-19 | $ 231.09 | $ 246.53 | $ 259.88 | $ 269.01 | $ 277.44 | $ 287.97 | $ 298.51 | $ 309.76 | $ 23.14 | $ 34.71 | $ 46.00 | $ 69.01 |
| 7,8,9 16-26 | 2018-19 | $ 182.15 | $ 195.17 | $ 210.35 | $ 225.53 | $ 241.43 | $ 253.72 | $ 266.01 | $ 278.30 | $ 23.14 | $ 34.71 | $ 35.64 | $ 53.46 |
| A 9 to 9 | 2018-19 | $ 161.62 | $ 168.98 | $ 176.98 | $ 184.03 | $ 191.18 | $ 200.49 | $ 209.79 | $ 218.38 | $ 23.14 | $ 34.71 | $ 33.70 | $ 50.55 |
| B 5 to 8 | 2018-19 | $ 146.10 | $ 153.90 | $ 160.27 | $ 166.66 | $ 173.75 | $ 181.55 | $ 190.09 | $ 198.58 | $ 23.14 | $ 34.71 | $ 33.70 | $ 50.55 |
| D Lift 16-26 | 2018-19 | $ 220.54 | $ 236.29 | $ 252.76 | $ 278.47 | $ 282.12 | $ 292.85 | $ 302.88 | $ 313.61 | $ 23.14 | $ 34.71 | $ 35.64 | $ 53.46 |
| Lift 9 Pass | 2018-19 | $ 220.54 | $ 236.29 | $ 252.76 | $ 278.47 | $ 282.12 | $ 292.85 | $ 302.88 | $ 313.61 | $ 23.14 | $ 34.71 | $ 35.64 | $ 53.46 |
| F Lift Bus | 2018-19 | $ 286.58 | $ 295.62 | $ 304.66 | $ 315.79 | $ 326.23 | $ 337.35 | $ 347.78 | $ 358.22 | $ 23.14 | $ 34.71 | $ 47.30 | $ 70.95 |
| Z 9-SBCV | 2018-19 | $ 170.24 | $ 183.25 | $ 198.43 | $ 213.60 | $ 229.51 | $ 241.80 | $ 254.09 | $ 266.37 | $ 23.14 | $ 34.71 | $ 33.70 | $ 50.55 |
| P Pre-K SBCV | 2018-19 | $ 220.54 | $ 236.29 | $ 252.76 | $ 278.47 | $ 282.12 | $ 292.85 | $ 302.88 | $ 313.61 | $ 23.14 | $ 34.71 | $ 35.64 | $ 53.46 |

### 2019-20

EOT

| vehicle | school yr | two hours | 2.5 hours | 3 hours | 3.5 hours | 4 hours | 4.5 hours | 5 hours | 5.5 hours | idle time 1 hour | 1.5 hours | run time 1 hour | 1.5 hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3,4,5,6 30-77 | 2019-20 | | | | | | | | | | | | |
| 7,8,9 16-26 | 2019-20 | | | | | | | | | | | | |
| A 9 to 9 | 2019-20 | | | | | | | | | | | | |
| B 5 to 8 | 2019-20 | | | | | | | | | | | | |
| D Lift 16-26 | 2019-20 | | | | | | | | | | | | |
| E Lift 9 Pass | 2019-20 | | | | | | | | | | | | |
| F Lift Bus | 2019-20 | | | | | | | | | | | | |
| Z 9-SBCV | 2019-20 | | | | | | | | | | | | |
| P Pre-K SBCV | 2019-20 | | | | | | | | | | | | |

### 2020-21

EOT

| vehicle | school yr | two hours | 2.5 hours | 3 hours | 3.5 hours | 4 hours | 4.5 hours | 5 hours | 5.5 hours | idle time 1 hour | 1.5 hours | run time 1 hour | 1.5 hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3,4,5,6 78-84 | 2020-21 | | | | | | | | | | | | |
| 30-77 | 2020-21 | | | | | | | | | | | | |
| 7,8,9 16-26 | 2020-21 | | | | | | | | | | | | |
| A 9 to 9 | 2020-21 | | | | | | | | | | | | |
| B 5 to 8 | 2020-21 | | | | | | | | | | | | |
| D Lift 16-26 | 2020-21 | | | | | | | | | | | | |
| E Lift 9 Pass | 2020-21 | | | | | | | | | | | | |
| F Lift Bus | 2020-21 | | | | | | | | | | | | |
| P 9-SBCV | 2020-21 | | | | | | | | | | | | |

PPS BRIMAR FED 0034